# EXHIBIT A

## COMMERCIAL PROMISSORY NOTE
### (this "Note")

$1,262,500.00                                                                    May 26, 2017

FOR VALUE RECEIVED, Potomac Construction 1753 Willard, LLC and Potomac Construction Biltmore, LLC, District of Columbia limited liability companies (collectively, "Borrower"), hereby promises to pay to the order of Cornerstone Capital LLC, a Maryland limited liability company ("Lender"), the principal sum of One Million Two Hundred Sixty-Two Thousand Five Hundred and No/100 Dollars ($1,262,500.00) ("Loan") at the place and in the manner hereinafter provided, together with interest thereon at the rate or rates described below, and any and all other amounts which may be due and payable hereunder from time to time.

    1.    Interest.

        A.    Interest in the fixed amount of $252,000.00 shall be due on or before January 30, 2018 (the "Maturity Date").

        B.    If the Borrower extends the Maturity Date under 2(C) below, Interest shall accrue from and after the original Maturity Date at a rate of fifteen percent (15%) per annum.

    2.    Payments and Maturity Date.

        A.    Borrower shall make principal curtailments equal to the net proceeds received by Borrower in the sales of its properties.

        B.    If the Borrower extends the Maturity Date under 2(C) below, Interest only payments shall become due monthly on the first day of each calendar month.

        C.    On the Maturity Date, the entire outstanding principal balance, together with all accrued and unpaid interest thereon, and all other applicable fees, costs and charges, if any, shall be due and payable in full.

        D.    Notwithstanding the foregoing, the Maturity Date may be extended twice, for up to an additional Six (6) months each, provided Borrower pays an extension fee for the first extension of Twenty Thousand and No/100 Dollars ($20,000.00) before the original Maturity Date, and pays an extension fee for the second extension of Twenty Thousand and No/100 Dollars ($20,000.00), before the extended Maturity Date, and that all renovations to the Property (hereinafter defined) are complete and the Property is actively listed for sale.

        E.    All payments of principal and/or interest hereon shall be payable in lawful money of the United States and in immediately available funds. All payments received hereon shall be applied, at the Lender's option, first to late charges, if any, then to cost and expenses, if any, then to accrued but unpaid interest and then to principal. All payments hereunder shall be made without offset, demand, counterclaim, deduction, abatement, defense, or recoupment, each of which Borrower hereby waives.

    3.    Voluntary and Involuntary Prepayments.

        A.    A prepayment premium shall be payable in connection with any prepayment made under this Note as provided below:

            (i)    Borrower may voluntarily prepay all of the unpaid principal balance of this Note on a Business Day designated as the date for such prepayment in a Notice from Borrower to Lender given at least 30 days prior to the date of such prepayment. Such prepayment shall be made by paying (A) the amount of principal being prepaid, (B) all accrued interest, (C) all other sums due Lender at the time of such prepayment, and (D) the prepayment premium calculated pursuant to Section 3.F of this Note. For purposes of this Note, a "Business Day" means any day other than a Saturday, Sunday or any other day on which Lender is not open for business.

1

(ii)      Borrower may voluntarily prepay less than all of the unpaid principal balance of this Note (a "Partial Prepayment") at any time.  Upon delivery of the Partial Prepayment, a prepayment premium calculated pursuant to Section 3.F of this Note, based on the amount being prepaid, shall be due and payable to Lender upon demand.

(iii)     Upon Lender's exercise of any right of acceleration under this Note, Borrower shall pay to Lender, in addition to the entire unpaid principal balance of this Note outstanding at the time of the acceleration, (A) all accrued interest, (B) and all other sums due Lender, and (C) the prepayment premium calculated pursuant to Section 3.F of this Note, to the extent such prepayment premium does not exceed the maximum rate permitted by applicable law.

(iv)     Any application by Lender of any proceeds of collateral or other security to the repayment of any portion of the unpaid principal balance of this Note prior to the Prepayment Premium Period (hereinafter defined) and in the absence of acceleration shall be deemed to be a partial prepayment by Borrower, requiring the payment to Lender by Borrower of a prepayment premium.  The amount of any such partial prepayment shall be computed so as to provide to Lender a prepayment premium computed pursuant to Section 3.F of this Note without Borrower having to pay out-of-pocket any additional amounts.

B.      Notwithstanding the provisions of Section 3.A, no prepayment premium shall be payable with respect to (A) any prepayment made after the expiration of the Prepayment Premium Period, or (B) any prepayment occurring as a result of the application of any insurance proceeds or condemnation award under the Security Instrument.

C.      Any permitted or required prepayment of less than the unpaid principal balance of this Note shall not extend or postpone the due date of any subsequent monthly installments or change the amount of such installments, unless Lender agrees otherwise in writing.

D.      Borrower recognizes that any prepayment of the unpaid principal balance of this Note, whether voluntary or involuntary or resulting from a default by Borrower, will result in Lender's incurring loss, including reinvestment loss, additional expense and frustration or impairment of Lender's ability to meet its commitments to third parties.  Borrower agrees to pay to Lender upon demand damages for the detriment caused by any prepayment, and agrees that it is extremely difficult and impractical to ascertain the extent of such damages.  Borrower therefore acknowledges and agrees that the formula for calculating prepayment premiums set forth in Section 3.F represents a reasonable estimate of the damages Lender will incur because of a prepayment.

E.      Borrower further acknowledges that the prepayment premium provisions of this Note are a material part of the consideration for the Loan, and acknowledges that the terms of this Note are in other respects more favorable to Borrower as a result of the Borrower's voluntary agreement to the prepayment premium provisions.

F.      Any prepayment premium payable under this Section 3 shall be computed as follows:

(i)      If the prepayment is made between the date of the initial funding of the loan evidenced by this Note and the Maturity Date (the "Prepayment Premium Period"), the prepayment premium shall be the interest at the Note rate herein that would be earned on full loan amount for the balance of the Prepayment Premium Period.

(ii)     If the prepayment is made after the expiration of the Prepayment Premium Period, there shall be no prepayment premium due.

4.  Late Charges.  In the event that any payment of principal and/or interest is not actually received by the holder hereof by the fifth day after such payment is due, the Borrower agrees to pay a late charge of the greater of: (i) 10% of the amount of the late payment; or (ii) Fifty Dollars ($50.00).

5.  Events of Default.  Any one or more of the following shall constitute an "Event of Default" hereunder:  (i) if default be made in the payment of any installment due hereunder; or (ii) if a default shall occur in the performance or observance beyond any applicable grace period (if any) of any other term, covenant or agreement set forth in this Note; or (iii) if a default shall occur in the performance or observance beyond any applicable grace period (if any) of any other term, covenant or agreement in any other of the Loan Documents (hereinafter defined); or (iv) if a default shall occur in the payment or performance of any other indebtedness, obligation and liability of any kind and nature of the Borrower to the Lender, whether now existing or hereafter created or arising, direct or indirect, matured or unmatured, and whether absolute or contingent, joint, several or joint and several and howsoever owned, held or acquired, and such default shall continue beyond any applicable grace or cure period; or (v) if a default shall occur in the

2

payment or performance of any other indebtedness, obligation and liability of any kind and nature of any guarantor (or any affiliate of such guarantors) of this Note to the Lender, whether now existing or hereafter created or arising, direct or indirect, matured or unmatured, and whether absolute or contingent, joint, several or joint and several and howsoever owned, held or acquired, and such default shall continue beyond any applicable grace or cure period.  Upon any such Event of Default, the entire principal balance hereof, all accrued and unpaid interest thereon, and all other applicable fees, costs and charges, if any, shall at once become due and payable at the option of the Lender.  Failure to exercise this option shall not constitute a waiver of the right to the later exercise thereof or to exercise the same in the event of any subsequent Event of Default.

6.  Default Interest.  Notwithstanding the entry of any decree, order, judgment or other judicial action under, pursuant to, in connection with, or otherwise concerning this Note or any of the Loan Documents, upon the occurrence of an Event of Default hereunder, or under any of the Loan Documents and continuance thereof beyond any applicable grace periods and/or after the maturity of this Note (whether by acceleration, declaration, extension or otherwise), the Borrower promises to pay to the Lender whenever demanded by the Lender interest on this Note and all other amounts then and thereafter due and payable hereunder or otherwise under any of the Loan Documents at a rate of interest (the "Default Rate") equal at all times to the lesser of (i) twenty-three percent (23%) per annum, or (ii) the highest rate allowable by law from the date of such Event of Default for so long as such Event of Default continues, from the date of such maturity until payment in full of the unpaid principal balance of this Note, all accrued and unpaid interest thereon and any and all other amounts due or payable hereunder or under any of the Loan Documents.

7.  Waiver of Notice.  Each party liable herein in any capacity, whether as maker, endorser, surety, guarantor or otherwise, (i) waives presentment, demand, protest and notice of presentment, notice of protest and notice of dishonor of this debt and each and every other notice of any kind respecting this Note (except as otherwise expressly provided for herein), (ii) agrees that the holder hereof, at any time or times, without notice to it or its consent, may grant extensions of time, without limit as to the number or the aggregate period of such extensions, for the payment of any principal and/or interest due hereon, and (iii) to the extent not prohibited by law, waives the benefit of any law or rule of law intended for its advantage or protection as an obligor hereunder or providing for its release or discharge from liability hereon, in whole or in part, on account of any facts or circumstances other than full and complete payment of all amounts due hereunder.

8.  Waiver of Jury Trial.  THE LENDER, THE BORROWER AND ANY OTHER PARTY LIABLE HEREON IN ANY CAPACITY, WHETHER AS ENDORSER, SURETY, GUARANTOR, OR OTHERWISE, EACH WAIVES TRIAL BY JURY WITH RESPECT TO ANY ACTION, CLAIM, SUIT OR PROCEEDING IN RESPECT OF OR ARISING OUT OF THE LOAN EVIDENCED HEREBY AND/OR THE CONDUCT OF THE RELATIONSHIP BETWEEN THE LENDER, BORROWER AND/OR ANY OTHER PARTY LIABLE HEREON IN ANY CAPACITY, WHETHER AS ENDORSER, SURETY, GUARANTOR, OR OTHERWISE.  THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY BORROWER, AND BORROWER HEREBY REPRESENTS THAT NO ORAL OR WRITTEN STATEMENTS HAVE BEEN MADE BY ANY PARTY TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS STATED EFFECT.  BORROWER FURTHER REPRESENTS THAT IT HAS BEEN REPRESENTED BY INDEPENDENT COUNSEL OF ITS CHOICE IN THE SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH SUCH COUNSEL.

9.  Cost of Collection.  The Borrower promises to pay all costs and expenses incurred in connection with collection hereof or in the protection or realization of any collateral now or hereafter given as security for the repayment hereof, including attorneys' fees, upon the occurrence of an Event of Default in the payment of the principal of this Note or interest hereon when due, whether at maturity, as herein provided, or by reason of acceleration of maturity under the terms hereof or under the terms of any other of the Loan Documents, whether suit be brought or not.

10.  Lender's Rights and Remedies.  The failure of the Lender to exercise the option for acceleration of maturity, foreclosing, or either, following any Event of Default as aforesaid or to exercise any other option granted to it hereunder, under the Deed of Trust (as hereinafter defined) or under any other Loan Documents in any one or more instances, or the acceptance by the Lender of partial payments or partial performance, shall not constitute a waiver of any such Event of Default, but such options shall remain continuously in force.  Acceleration of maturity, once claimed hereunder by the Lender, may at its option be rescinded by written acknowledgment to that effect but the tender and acceptance of partial payment or partial performance alone shall not in any way affect or rescind such acceleration of maturity.  The rights, remedies and powers of the Lender, as provided in this Note, in the Deed of Trust and in all other Loan Documents, are cumulative and concurrent, and may be pursued singly, successively, or together against the Borrower, the Property, and/or any other security given at anytime to secure the payment hereof, all at the sole discretion of the Lender.

CSC-00162

11. <u>Lawful Interest</u>.  Notwithstanding anything to the contrary contained herein or in any of the Loan Documents, the effective rate of interest on the obligation evidenced by this Note shall not exceed the lawful maximum rate of interest permitted to be paid.  Without limiting the generality of the foregoing, in the event the interest charged hereunder results in an effective rate of interest higher than that lawfully permitted to be paid, then such charges shall be reduced by the sum sufficient to result in an effective rate of interest permitted by law and any amount which would exceed the highest lawful rate already received and held by the Lender shall be applied to a reduction of principal and not to the payment of interest.

12. <u>Setoff</u>.  In addition to all liens upon, and rights of set-off against the money, credit, stocks, bonds and/or securities or other property of any nature whatsoever of the Borrower given to the Lender by law, the Lender shall have a lien upon and a right of set-off against all money, credit, stocks, bonds and/or securities and other property of any nature whatsoever of the Borrower now or hereafter on deposit with, or held by, or in the possession of, or on account with the Lender, whether held in a general or special account or deposit, or for safe-keeping or otherwise; and every such lien and right of set-off may be exercised without demand upon or notice to the Borrower, upon an Event of Default under this Note or any of the Loan Documents.  No lien or right of set-off shall be deemed to have been waived by any act or conduct on the part of the Lender, or by any neglect to exercise such right of set-off or to enforce such lien, or by any delay in so doing, and every right of set-off and lien shall continue in full force and effect until such right of set-off or lien is specifically waived or released by an instrument in writing executed by the Lender.

13. <u>Partial Invalidity</u>.  In the event any one or more of the provisions contained in this Note or in any other of the Loan Documents shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Note or of any other of the Loan Documents, but this Note and all other of the Loan Documents shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein or therein.

14. <u>Entire Agreement</u>.  This Note may not be changed orally, but only by an agreement in writing signed by the parties against whom enforcement of any waiver, change, modification or discharge is sought.

15. <u>Security</u>.  This Note is made pursuant to the Loan Agreement of even date herewith executed by Borrower and Lender ("Loan Agreement") and is secured by, among other things, three Deeds of Trust (as the same may be amended, restated or modified from time to time, referred to herein as the "Deed of Trust") from Borrower or guarantor, conveying to Jacob A. Ginsberg, Esquire and Benjamin Smith, Esquire, Trustee(s) (collectively, the "Trustee"), for the benefit of Lender, certain real properties located at 1738 R Street NW, Washington DC, 1753 Willard Street NW, Washington DC, 1900 Biltmore Street NW, Washington DC as more particularly described therein, together with all improvements now or hereafter located thereon (collectively, the "Properties"). This Note, the Loan Agreement, the Deed of Trust and all other documents now and/or hereafter issued, executed and/or delivered in connection with the loan evidenced hereby, together with all amendments, modifications, renewals or extensions thereof, are herein collectively referred to as the "Loan Documents."

16. <u>Incorporation of Loan Documents</u>.  All of the terms, covenants, provisions, conditions, stipulations, promises and agreements contained in the Loan Documents to be kept, observed and performed by the Borrower and/or by any other parties to any one or more of the Loan Documents (except for the Lender and/or any trustees thereunder for the benefit of the Lender) are hereby made a part of this Note and incorporated herein by reference to the same extent and with the same force and effect as if they were fully set forth herein, and the Borrower promises and agrees to keep, observe and perform them or cause them to be kept, observed and performed, strictly in accordance with the terms and provisions thereof.

17. <u>Financial Reporting</u>.  During the entire term of the Loan, Borrower shall provide, or caused to be provided, to Lender certain financial information as more particularly set forth in the Loan Agreement.

18. <u>Business Purpose</u>.  The Borrower warrants and represents that the loan evidenced hereby is being made for business or commercial purposes only, and expressly is <u>NOT</u> for personal, family or household purposes.

19. <u>Governing Law</u>.  This Note shall be governed in all respects by the laws of the State of Maryland and shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, personal representatives, successors and assigns.  The Borrower hereby consents to be sued in an appropriate court in the State of Maryland in any action to enforce the provisions of this Note.  The Borrower waives any objection to the venue of any action filed by the Lender against the

4

Borrower in any state or federal court in the State of Maryland and waives any claim of forum non conveniens or for transfer of any such action to any other court.

20. Cross-Default. A default in any other agreement between the Borrower and the Lender, whether previously, simultaneously or hereafter entered into, and whether or not related to this Note, which default continues beyond any applicable grace or cure period, if any, shall constitute a default hereunder.

21. Notice. Any notices, demands, requests, communications and waivers under this Note shall be in writing and shall be (i) delivered in person, (ii) mailed, postage prepaid, either by registered or certified mail, return receipt requested, (iii) by overnight express carrier, addressed in each case as follows, or (iv) by confirmed facsimile transmission, so long as a duplicate copy of such notice is also sent by one of the other permitted forms of delivery:

if to Lender:     Cornerstone Capital LLC
                  c/o Renaissance Realty Management, LLC
                  1801 Pennsylvania Avenue, N.W., Suite 700
                  Washington, D.C. 20006
                  Attn: Mark D. Schuman, Esquire

if to Borrower:   Potomac Construction 1753 Willard, LLC
                  Potomac Construction Biltmore, LLC
                  1738 R Street, NW
                  Washington, DC 20009
                  Attn: Matthew E. Shkor

or to any other address as to any of the parties hereto, as such party shall designate in a written notice to the other party hereto. All notices sent pursuant to the terms of this Section shall be deemed received (i) if personally delivered, then on the date of delivery or refusal to accept delivery, (ii) if sent by overnight, express carrier, then on the next federal banking day immediately following the day sent, (iii) if sent by registered or certified mail, then on the earlier of the third federal banking day following the day sent or when actually received or (iv) if sent by facsimile, then on the date of such transmission.

22. Confession of Judgment. UPON THE OCCURRENCE OF ANY DEFAULT BY BORROWER ON ANY OF ITS OBLIGATIONS TO LENDER, THE BORROWER AUTHORIZES ANY ATTORNEY ADMITTED TO PRACTICE BEFORE ANY COURT OF RECORD IN THE UNITED STATES TO APPEAR ON BEHALF OF THE BORROWER IN ANY COURT HAVING JURISDICTION IN ONE OR MORE PROCEEDINGS, OR BEFORE ANY CLERK THEREOF OR PROTHONOTARY OR OTHER COURT OFFICIAL, AND TO CONFESS JUDGMENT AGAINST THE BORROWER, WITHOUT PRIOR NOTICE OR OPPORTUNITY OF THE BORROWER FOR PRIOR HEARING, IN FAVOR OF LENDER FOR THE FULL AMOUNT DUE UNDER THIS PROMISSORY NOTE PLUS COURT COSTS AND ATTORNEYS' FEES OF FIFTEEN PERCENT OF THE TOTAL AMOUNT THEN DUE HEREUNDER. THE BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE OF EXEMPTION, HOMESTEAD RIGHTS, APPEAL, STAY OF EXECUTION OR SUPPLEMENTARY PROCEEDINGS, INQUISITION, EXTENSION UPON ANY LEVY ON REAL ESTATE OR PERSONAL PROPERTY, AND ANY OTHER RELIEF FROM THE ENFORCEMENT OR IMMEDIATE ENFORCEMENT OF A JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST THE BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS, AS OFTEN AS LENDER SHALL DEEM NECESSARY OR ADVISABLE, FOR ALL OF WHICH THIS PROMISSORY NOTE SHALL BE SUFFICIENT AUTHORITY.

[SIGNATURE PAGE FOLLOWS]

5

IN WITNESS WHEREOF, the Borrower has executed and delivered this Note as of the day and year first above written.

BORROWER:

Potomac Construction 1753 Willard, LLC
a District of Columbia limited liability company

By: _____
Name: Matthew E. Shkor
Title: _____

Potomac Construction Biltmore, LLC
a District of Columbia limited liability company

By: _____
Name: Matthew E. Shkor   Title: _____

District of Columbia

    I HEREBY CERTIFY that on May 26, 2017, before me, the subscriber, a Notary Public, in and for the jurisdiction aforesaid, personally appeared Matthew E. Shkor, known to me (or satisfactorily proven) to be the person who executed the foregoing instrument, and he/she acknowledged that he/she executed the foregoing instrument for the purposes therein contained and that the same was delivered as such.

    IN WITNESS WHEREOF I hereunto set my hand and official seal.

_____
Notary Public
My commission expires: _____

KEVIN DALE ANDERSON
Notary Public, District of Columbia
My Commission Expires Jan. 31, 2020

6

# EXHIBIT B

## GUARANTY OF PAYMENT AND PERFORMANCE

**THIS GUARANTY OF PAYMENT AND PERFORMANCE** ("**Guaranty**") is dated as of **May 26, 2017** (the "**Effective Date**") by **Matthew E. Shkor**, an individual ("**Guarantor**"), for the benefit of **Cornerstone Capital LLC, a Maryland limited liability company** ("**Lender**").

### R E C I T A L S:

A.      Lender has agreed to loan the principal amount of **One Million Two Hundred Sixty Two Thousand Five Hundred and No/100 Dollars ($1,262,500.00)** ("**Loan**") to **Potomac Construction 1753 Willard, LLC and Potomac Construction Biltmore, LLC, District of Columbia limited liability companies** (collectively, "**Borrower**"), which is evidenced by a promissory note of even date herewith.

B.      As a condition precedent to Lender's extension of the Loan to Borrower and in consideration therefor, Lender has required the execution and delivery of (i) this Guaranty by Guarantor, (ii) that certain Promissory Note of even date herewith (as amended from time to time, the "**Note**") made by Borrower payable to Lender to evidence the Loan, (iii) those two certain Deeds of Trust of even date herewith (as amended from time to time, "**Deed of Trust**") from Borrower to **Jacob A. Ginsberg, Esquire** and **Benjamin Smith, Esquire**, as trustee(s) for the benefit of Lender encumbering the real property, improvements and personalty described therein (collectively, the "**Premises**"), (iv) that certain Deed of Trust of even date herewith (as amended from time to time, "**Deed of Trust**") from Guarantor to **Jacob A. Ginsberg, Esquire** and **Benjamin Smith, Esquire**, as trustee(s) for the benefit of Lender encumbering the real property, improvements and personalty described therein (collectively, the "**Premises**")and (iv) the other Loan Documents (as defined in the Note).  All terms not otherwise defined herein shall have the meanings set forth in the Loan Documents.

C.      Guarantor is affiliated with Borrower and, having an ownership and financial interest in the Premises, has agreed to execute and deliver this Guaranty to Lender.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the Guarantor hereby agrees as follows:

1.      **Guaranty of Payment**.  Guarantor hereby unconditionally, absolutely and irrevocably guaranties to Lender, the punctual payment and performance when due, whether at stated maturity or by acceleration or otherwise, of the indebtedness and other obligations of Borrower to Lender evidenced by the Note and any other amounts that may become owing by Borrower under the Loan Documents (such indebtedness, obligations and other amounts are hereinafter referred to as "**Payment Obligations**").  This Guaranty is a present and continuing guaranty of payment and not of collectability, and Lender shall not be required to prosecute collection, enforcement or other remedies against Borrower or any other guarantor of the Payment Obligations, or to enforce or resort to any collateral for the repayment of the Payment Obligations or other rights or remedies pertaining thereto, before calling on the Guarantor for payment.  If for any reason Borrower shall fail or be unable to pay, punctually and fully, any of the Payment Obligations, Guarantor shall pay such obligations to Lender in full, immediately upon demand.  One or more successive actions may be brought against the Guarantor, as often as Lender deems advisable, until all of the Payment Obligations are paid and performed in full.  The Payment Obligations, the Performance Obligations (defined below) together with all other payment and performance obligations of Guarantor hereunder, are referred to herein as the "**Obligations.**"

2.      **Performance Guaranty**. Guarantor absolutely, unconditionally and irrevocably undertakes and guarantees, for the benefit of Lender and each and every present and future holder or holders of the Note or assignee or assignees of the Loan Documents, that all performance obligations of Borrower under the Loan Documents (referred to herein as "**Performance Obligations**") shall be performed in accordance with the terms and conditions contained in the Loan Documents, free and clear of any and all liens, charges, security interests and claims of any kind and nature whatsoever.  Guarantor shall cause the Performance Obligations to be performed and paid for in the manner and at the applicable times required to be so performed and paid for by Borrower under the Loan Documents, to the extent that Borrower fails to do so at any and all applicable times.  Upon the occurrence of an Event of Default by Borrower under the Loan Documents, Guarantor agrees, on not more than fifteen (15) days' written demand by Lender (a "**Demand Notice**") to commence performance of the Performance Obligations and to diligently pursue performance thereof to completion, as described below.  Guarantor shall indemnify, defend and hold Lender harmless from and against any and all loss, damage, cost, expense, injury or liability Lender may suffer or incur in connection with third party claims brought as a result of Guarantor's performance of the Performance Obligations.  If Guarantor fails to commence and pursue diligently the performance of the Performance Obligations within fifteen (15) days after their receipt of a Demand Notice, then, either before or after pursuing any other remedy of Lender, and regardless of whether Lender shall ever pursue any such other remedy, Lender shall have the right to perform the Performance Obligations, or call upon any other reputable parties to perform the Performance Obligations, in accordance with the Loan Documents and shall have the right to expend such sums as Lender in its discretion deems proper in order so to perform the

1

Performance Obligations. During the course of any construction undertaken by Lender or by any other party on behalf of Lender, Guarantor shall pay on demand any amounts due to any contractors or material suppliers and for permits and licenses necessary to perform the Performance Obligations, without regard to any limitation on liability set forth herein. Lender at any time may require Guarantor to perform or supervise the performance of such work in lieu of Lender or any party engaged by Lender. Guarantor's obligations in connection with such work shall not be affected by any errors or omissions of Borrower, any contractor, architect, or any agent or employee of any of them in design, supervision or performance of the work, it being understood that such risk is assumed by Guarantor. Neither the performance of the Performance Obligations nor failure of said parties to perform the Performance Obligations shall relieve Guarantor of any liabilities hereunder; rather, such liability shall be continuing, except as otherwise provided herein, and may be enforced by Lender to the end that the Performance Obligations shall be completed timely as contemplated by the Loan Documents, free of any liens, without loss, expense, injury or liability of any kind to Lender.

3.    **Representations and Warranties**. The following shall constitute representations and warranties of Guarantor and Guarantor hereby acknowledges that Lender intends to make the Loan in reliance thereon:

(i)    Guarantor is not in default and no event has occurred which, with the passage of time and/or the giving of notice, would constitute a default under any agreement to which Guarantor is a party, the effect of which will impair performance by such Guarantor of his, her or its obligations under this Guaranty. Neither the execution and delivery of this Guaranty nor compliance with the terms and provisions hereof will, to the best of Guarantor's knowledge, violate any applicable law, rule, regulation, judgment, decree or order, or will conflict with or result in any breach of any of the terms, covenants, conditions or provisions of any indenture, deed of trust, instrument, document, agreement or contract of any kind that creates, represents, evidences or provides for any lien, charge or encumbrance upon any of the property or assets of the Guarantor, or any other indenture, deed of trust, instrument, document, agreement or contract of any kind to which Guarantor is a party or to which Guarantor or the property of Guarantor may be subject.

(ii)    There are no litigation, arbitration, governmental or administrative proceedings, actions, examinations, claims or demands pending, or to Guarantor's knowledge, threatened that could adversely affect performance by Guarantor of his, her or its obligations under this Guaranty.

(iii)    Neither this Guaranty nor any statement or certification as to facts previously furnished or required herein to be furnished to Lender by Guarantor, contains any material inaccuracy or untruth in any representation, covenant or warranty or omits to state a fact material to this Guaranty.

(iv)    As a member of Borrower, Guarantor will derive substantial benefit, directly or indirectly, from the making of the Loan to Borrower and from making this Guaranty by Guarantor.

(v)    This Guaranty is executed at the request of Borrower, Lender has made no representation to Guarantor as to the creditworthiness of Borrower and Guarantor assumes the responsibility for keeping informed of the financial condition of Borrower and all other circumstances with respect to the risk of nonpayment or nonperformance of the Payment Obligations and the Performance Obligations, and Guarantor agrees that Lender shall have no duty to advise Guarantor of any information known to Lender regarding any such financial conditions or circumstances.

4.    **Continuing Guaranty**. Guarantor agrees that performance of the Obligations by Guarantor shall be a primary obligation, shall not be subject to any counterclaim, set-off, abatement, deferment or defense based upon any claim that Guarantor may have against Lender, Borrower, any other guarantor of the Obligations or any other person or entity, and shall remain in full force and effect without regard to, and shall not be released, discharged or affected in any way by, any circumstance or condition (whether or not Guarantor shall have any knowledge thereof), including without limitation:

(i)    any lack of validity or enforceability of any of the Loan Documents;

(ii)    any termination, amendment, modification or other change in any of the Loan Documents, including, without limitation, any modification of the interest rate(s) described therein;

(iii)    any furnishing, exchange, substitution or release of any collateral securing repayment of the Loan, or any failure to perfect any lien in such collateral;

(iv)    any failure, omission or delay on the part of Borrower, Guarantor, any other guarantor of the Obligations or Lender to conform or comply with any term of any of the Loan Documents or any failure of Lender to give notice of any Event of Default (as defined in the Note);

2

(v)    any waiver, compromise, release, settlement or extension of time of payment or performance or observance of any of the obligations or agreements contained in any of the Loan Documents;

(vi)    any action or inaction by Lender under or in respect of any of the Loan Documents, any failure, lack of diligence, omission or delay on the part of Lender to perfect, enforce, assert or exercise any lien, security interest, right, power or remedy conferred on it in any of the Loan Documents, or any other action or inaction on the part of Lender;

(vii)    any voluntary or involuntary bankruptcy, insolvency, reorganization, arrangement, readjustment, assignment for the benefit of creditors, composition, receivership, liquidation, marshalling of assets and liabilities or similar events or proceedings with respect to Borrower, Guarantor or any other guarantor of the Obligations, as applicable, or any of their respective property or creditors, or any action taken by any trustee or receiver or by any court in any such proceeding;

(viii)    any merger or consolidation of Borrower into or with any entity, or any sale, lease or transfer of any of the assets of Borrower, Guarantor or any other guarantor of the Obligations to any other person or entity;

(ix)    any change in the ownership of Borrower or any change in the relationship between Borrower, Guarantor or any other guarantor of the Obligations, or any termination of any such relationship;

(x)    any release or discharge by operation of law of Borrower, any Guarantor or any other guarantor of the Obligations from any obligation or agreement contained in any of the Loan Documents;

(xi)    any defense arising out of any disability of Borrower; any defense arising out of the application by Borrower of proceeds of the Loan for purposes other than the purposes represented by Borrower to Lender; or

(xii)    any other occurrence, circumstance, happening or event, whether similar or dissimilar to the foregoing and whether foreseen or unforeseen, which otherwise might constitute a legal or equitable defense or discharge of the liabilities of a guarantor or surety or which otherwise might limit recourse against Borrower or any Guarantor to the fullest extent permitted by law.

5.    **Waivers**.  Guarantor expressly and unconditionally waives (i) notice of any of the matters referred to in Section 4 above, (ii) all notices which may be required by statute, rule of law or otherwise, now or hereafter in effect, to preserve intact any rights against Guarantor, including, without limitation, notice of acceptance of this Guaranty, any demand, presentment and protest, notice of protest, notice of dishonor, proof of notice of non-payment under any of the Loan Documents and notice of any Event of Default or any failure on the part of Borrower, Guarantor or any other guarantor of the Obligations to perform or comply with any covenant, agreement, term or condition of any of the Loan Documents, (iii) any right to the enforcement, assertion or exercise against Borrower, Guarantor or any other guarantor of the Obligations of any right or remedy conferred under any of the Loan Documents, (iv) any requirement of diligence on the part of any person or entity, (v) to the fullest extent permitted by law and except as otherwise expressly provided in this Guaranty or the other Loan Documents, any claims based on allegations that Lender has failed to act in a commercially reasonable manner or failed to exercise Lender's so-called obligation of good faith and fair dealing, (vi) any requirement to exhaust any remedies or to mitigate the damages resulting from any default under any of the Loan Documents, (vii) any notice of any sale, transfer or other disposition of any right, title or interest of Lender under any of the Loan Documents; (viii) any right to require Lender to proceed against Borrower, to proceed against any other person, or to proceed against or exhaust any security held by Borrower or any other person; (ix) any right to have the property of Borrower first applied to discharge the Obligations, allowing Lender, at its option, to exercise any right or remedy it may have against Borrower or any security held by Lender; (x) any defense based upon Lender's failure to disclose to Guarantor any information concerning Borrower's financial condition or any other circumstances bearing on Borrower's ability to pay and perform its obligations under any of the Loan Documents; (xi) any defense based upon any statute or rule of law which provides that the obligations of a surety may be neither larger in amount nor in any other respects more burdensome than that of a principal; and (xii) the benefit of or right to assert any statute of limitations affecting the liability of Guarantor hereunder or the enforcement thereof, to the extent permitted by law, and any part payment by Borrower or other circumstance which operates to toll any statute of limitations as to Borrower shall also serve to toll the statute of limitations as to Guarantor.

6.    **Subordination**.  Guarantor agrees that any and all present and future debts and obligations of Borrower to Guarantor hereby are subordinated to the claims of Lender and hereby are assigned by Guarantor to Lender as security for the Obligations and Guarantor's obligations under this Guaranty.

3

7.      **Subrogation Waiver**.  Until the Obligations are paid in full and all periods under applicable bankruptcy law for the contest of any payment by Guarantor or Borrower as a preferential or fraudulent payment have expired, Guarantor knowingly, and with advice of counsel, waives, relinquishes, releases and abandons all rights and claims to indemnification, contribution, reimbursement, subrogation and payment which Guarantor may now or hereafter have by and from Borrower and the successors and assigns of Borrower, for any payments made by Guarantor to Lender, including, without limitation, any rights which might allow Borrower, Borrower's successors, a creditor of Borrower, or a trustee in bankruptcy of Borrower to claim in bankruptcy or any other similar proceedings that any payment made by Borrower or Borrower's successors and assigns to Lender was on behalf of, or for the benefit of Guarantor and that such payment is recoverable by Borrower, a creditor or trustee in bankruptcy of Borrower as a preferential payment, fraudulent conveyance, payment of an insider or any other classification of payment which may otherwise be recoverable from Lender.

8.      **Reinstatement**.  The obligations of Guarantor pursuant to this Guaranty shall continue to be effective or automatically be reinstated, as the case may be, if at any time payment of any of the Obligations or Guarantor's obligations under this Guaranty are rescinded or otherwise must be restored or returned by Lender upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of Guarantor or Borrower or otherwise, all as though such payment had not been made.

9.      **Financial Information**.  Guarantor represents and warrants to Lender that (a) the financial information of Guarantor previously submitted to Lender is true, complete and correct in all material respects, disclose all actual and contingent liabilities, and fairly present the financial condition of Guarantor, and does not contain any untrue statement of a material fact or omit to state a fact material to the financial information submitted or this Guaranty and (b) no material adverse change has occurred in the financial information from the dates thereof until the Effective Date.

10.     **Transfers, Sales, Etc.**  Guarantor shall sell, lease, transfer, convey or assign (collectively, a **"Transfer"**) any of his assets, unless: (i) such Transfer is not done with the intent to defraud or hinder creditors and (ii) Guarantor's net worth and liquidity after the Transfer is not substantially less than it was as of the Effective Date, as determined by Lender in its reasonable discretion.

11.     **Enforcement Costs**.  If: (a) this Guaranty, is placed in the hands of one or more attorneys for collection or is collected through any legal proceeding; (b) one or more attorneys is retained to represent Lender in any bankruptcy, reorganization, receivership or other proceedings affecting creditors' rights and involving a claim under this Guaranty, or (c) one or more attorneys is retained to represent Lender in any other proceedings whatsoever in connection with this Guaranty,  then Guarantor shall pay to Lender upon demand all reasonable fees, costs and expenses incurred by Lender in connection therewith, including, without limitation, reasonable attorney's fees, court costs and filing fees (all of which are referred to herein as **"Enforcement Costs"**), in addition to all other amounts due hereunder.

12.     **Successors and Assigns; Joint and Several Liability**.  This Guaranty shall inure to the benefit of Lender and its successors and assigns.  This Guaranty shall be the joint and several undertaking of the Guarantor, and shall be binding on Guarantor and the respective heirs, legatees, successors and assigns of Guarantor.  Regardless of whether this Guaranty is executed by more than one person, it is agreed that the Guarantor's liability hereunder is several and independent of any other guarantees or other obligations at any time in effect with respect to the Obligations or any part thereof and that Guarantor's liability hereunder may be enforced regardless of the existence, validity, enforcement or non-enforcement of any such other guarantees or other obligations.

13.     **No Waiver of Rights**.  No delay or failure on the part of Lender to exercise any right, power or privilege under this Guaranty or any of the other Loan Documents shall operate as a waiver thereof, and no single or partial exercise of any right, power or privilege shall preclude any other or further exercise thereof or the exercise of any other power or right, or be deemed to establish a custom or course of dealing or performance between the parties hereto.  The rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law.  No notice to or demand on Guarantor in any case shall entitle Guarantor to any other or further notice or demand in the same, similar or other circumstance.

14.     **Modification**.  The terms of this Guaranty may be waived, discharged, or terminated only by an instrument in writing signed by the party against which enforcement of the change, waiver, discharge or termination is sought.  No amendment, modification, waiver or other change of any of the terms of this Guaranty shall be effective without the prior written consent of Lender.

15.     **Joinder**.  Any action to enforce this Guaranty may be brought against any Guarantor without any reimbursement or joinder of Borrower, or any other guarantor of the Obligations in such action.

16.     **Severability**.  If any provision of this Guaranty is deemed to be invalid by reason of the operation of law, or by reason of the interpretation placed thereon by any administrative agency or any court, Guarantor and Lender shall negotiate an equitable adjustment of such provision in order to effect, to the maximum extent permitted by law, the purpose of this Guaranty, and

4

the validity and enforceability of the remaining provisions, or portions or applications thereof, shall not be affected thereby and shall remain in full force and effect.

17.   **Applicable Law**.  This Guaranty is governed as to validity, interpretation, effect and in all other respects by laws and decisions of the State of Maryland.

18.   **Notice**.  Any notices, demands, requests, communications and waivers under this Guaranty shall be in writing and shall be (i) delivered in person, (ii) mailed, postage prepaid, either by registered or certified mail, return receipt requested, (iii) by overnight express carrier, addressed in each case as follows, or (iv) by confirmed facsimile transmission, so long as a duplicate copy of such notice is also sent by one of the other permitted forms of delivery::

To Lender:          Cornerstone Capital LLC
                    c/o Renaissance Realty Management, LLC
                    1801 Pennsylvania Avenue, N.W., Suite 700
                    Washington, D.C. 20006
                    Attn:  Mark D. Schuman, Esquire

To Guarantor:       Matthew E. Shkor
                    _____
                    _____

or to any other address as to any of the parties hereto, as such party shall designate in a written notice to the other parties hereto.  All notices sent pursuant to the terms of this Section shall be deemed received (i) if personally delivered, then on the date of delivery, (ii) if sent by overnight, express carrier, then on the next federal banking day immediately following the day sent, or (iii) if sent by registered or certified mail, then on the earlier of the third federal banking day following the day sent or when actually received.

19.   **CONFESSION OF JUDGMENT. UPON THE OCCURRENCE OF ANY DEFAULT BY GUARANTOR ON ANY OF HIS OBLIGATIONS TO LENDER, THE GUARANTOR AUTHORIZES ANY ATTORNEY ADMITTED TO PRACTICE BEFORE ANY COURT OF RECORD IN THE UNITED STATES TO APPEAR ON BEHALF OF THE GUARANTOR IN ANY COURT HAVING JURISDICTION IN ONE OR MORE PROCEEDINGS, OR BEFORE ANY CLERK THEREOF OR PROTHONOTARY OR OTHER COURT OFFICIAL, AND TO CONFESS JUDGMENT AGAINST THE GUARANTOR, WITHOUT PRIOR NOTICE OR OPPORTUNITY OF THE GUARANTOR FOR PRIOR HEARING, IN FAVOR OF LENDER FOR THE FULL AMOUNT DUE UNDER THIS GUARANTY PLUS COURT COSTS AND ATTORNEYS' FEES OF 15% OF THE TOTAL AMOUNT THEN DUE HEREUNDER.  THE GUARANTOR WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE GUARANTOR ANY RIGHT OR PRIVILEGE OF EXEMPTION, HOMESTEAD RIGHTS, APPEAL, STAY OF EXECUTION OR SUPPLEMENTARY PROCEEDINGS, INQUISITION, EXTENSION UPON ANY LEVY ON REAL ESTATE OR PERSONAL PROPERTY, AND ANY OTHER RELIEF FROM THE ENFORCEMENT OR IMMEDIATE ENFORCEMENT OF A JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT.  THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST THE GUARANTOR SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS, AS OFTEN AS LENDER SHALL DEEM NECESSARY OR ADVISABLE, FOR ALL OF WHICH THIS GUARANTY SHALL BE SUFFICIENT AUTHORITY.**

20.   **CONSENT TO JURISDICTION.  TO INDUCE LENDER TO ACCEPT THIS GUARANTY, GUARANTOR IRREVOCABLY AGREES THAT, SUBJECT TO LENDER'S SOLE AND ABSOLUTE ELECTION, ALL ACTIONS OR PROCEEDINGS IN ANY WAY ARISING OUT OF OR RELATED TO THIS GUARANTY WILL BE LITIGATED IN COURTS HAVING SITUS IN THE STATE OF MARYLAND.  GUARANTOR HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY COURT LOCATED WITHIN THE STATE OF MARYLAND, WAIVES PERSONAL SERVICE OF PROCESS AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY REGISTERED MAIL DIRECTED TO GUARANTOR AT THE ADDRESS STATED HEREIN AND SERVICE SO MADE WILL BE DEEMED TO BE COMPLETED UPON ACTUAL RECEIPT.**

5

21.    **WAIVER OF JURY TRIAL**. GUARANTOR AND LENDER (BY ACCEPTANCE HEREOF), HAVING BEEN REPRESENTED BY COUNSEL, KNOWINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THIS GUARANTY OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH AND AGREES THAT ANY SUCH ACTION OR PROCEEDING WILL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. GUARANTOR AGREES THAT IT WILL NOT ASSERT ANY CLAIM AGAINST LENDER ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES.

22.    <u>Entire Agreement</u>. This Guaranty embodies the entire agreement between Lender and Guarantor with respect to the guaranty by Guarantor of the Payment Obligations and the Performance Obligations. This Guaranty supersedes all prior agreements and understandings, if any, with respect to the guaranty by Guarantor of the Payment Obligations and the Performance Obligations. No condition or conditions precedent to the effectiveness of this Guaranty exist. This Guaranty shall be effective upon execution by Guarantor and delivery to Lender.

THE WRITTEN LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

IN WITNESS WHEREOF, Guarantor has executed this Guaranty of Payment and Performance under seal as of the Effective Date.

**GUARANTOR:**

_____ (SEAL)
Matthew E. Shkor, individually

District of Columbia

I HEREBY CERTIFY that on May 2⁵, 2017, before me, the subscriber, a Notary Public, in and for the jurisdiction aforesaid, personally appeared Matthew E. Shkor, known to me (or satisfactorily proven) to be the person who executed the foregoing instrument, and he/she acknowledged that he/she executed the foregoing instrument for the purposes therein contained and that the same was delivered as such.

IN WITNESS WHEREOF I hereunto set my hand and official seal.

_____
Notary Public
My commission expires: _____

KEVIN DALE ANDERSON
Notary Public, District of Columbia
My Commission Expires Jan. 31, 2020



6

# EXHIBIT C

**RETURN TO:**
Standard Title Group, LLC
1734 20th Street, NW
Washington, DC 20009

Tax Parcel I.D. No.    SSL: 0155 0152
**Title Insurer:**
STG File No.: DC17-0384

<div align="center">

## DEED OF TRUST, SECURITY AGREEMENT,
## ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FILING

</div>

**THIS DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FILING ("Deed of Trust")** is made as of **May 26 , 2017**, (the **"Effective Date")** by **Matthew E. Shkor ("Trustor")** to **Jacob A. Ginsberg, Esquire**, and **Benjamin Smith, Esquire**, trustees, either of whom may act alone (collectively, **"Trustee")**, whose address is 12505 Park Potomac Avenue, Potomac, MD 20854, for the use and benefit of **Cornerstone Capital LLC,** a Maryland limited liability company (**"Lender")**, with an address of care of Renaissance Realty Management, LLC, 1801 Pennsylvania Avenue, N.W., Suite 700, Washington, D.C. 20006, and any successor holder of the Note secured by this Deed of Trust  (**"Beneficiary")**:

<div align="center">

## R E C I T A L S:

</div>

(A)    Beneficiary has agreed to loan to Potomac Construction 1753 Willard, LLC and Potomac Construction Biltmore, LLC, District of Columbia limited liability companies, the principal amount of **One Million Two Hundred Sixty-Two Thousand Five Hundred and No/100 Dollars ($1,262,500.00) ("Loan")**.  The Loan shall be evidenced by a certain Promissory Note of even date herewith (as amended, restated or replaced from time to time, **"Note")** made by Trustor payable to Beneficiary in the original principal amount of the Loan and due on the Maturity Date (as defined in the Note), except as may be accelerated pursuant to the terms hereof or of the Note or any other Loan Document (as defined in the Note).  The Loan has been Guaranteed by Matthew E. Shkor purusant ot the that certain Guaranty of Payment and Performance of even date herewith.

(B)    A condition precedent to Beneficiary's extension of the Loan to Trustor is, among other things, the execution and delivery by Trustor of this Deed of Trust.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Trustor agrees as follows:

In order to secure the payment of the indebtedness hereinafter referred to and the performance of the obligations, covenants, agreements, warranties and undertakings of Trustor hereinafter described, Trustor hereby GRANTS, BARGAINS, SELLS, CONVEYS, TRANSFERS, ASSIGNS, MORTGAGES, WARRANTS AND SETS OVER to Trustee for the benefit of Beneficiary, its successors and assigns, and grants to Beneficiary a security interest in, the following described property, rights and interest (referred collectively herein as **"Premises")** all of which property, rights and interest are hereby granted and pledged primarily and on parity with the real estate (as defined below) and not secondarily:

**THE REAL ESTATE** located at **1738 R Street NW, Washington DC 20009** and legally described on Exhibit A attached hereto and made a part hereof (**"Real Estate")**;

**TOGETHER WITH** all improvements of every nature whatsoever now or hereafter situated on the Real Estate, and all fixtures and personal property of every nature whatsoever now or hereafter owned by Trustor and located on, or used in connection with the Real Estate or the improvements thereon, or in connection with any construction thereon, including all extensions, additions, improvements, betterments, renewals, substitutions and replacements to any of the foregoing and all of the right, title and interest of Trustor in and to any such personal property or fixtures together with the benefit of any deposits or payments now or hereafter made on such personal property or fixtures by Trustor or on its behalf (**"Improvements")**;

**TOGETHER WITH** all easements, rights of way, gores of real estate, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, mineral rights, air rights, development rights and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances whatsoever, in any way now or hereafter belonging, relating or appertaining to the Real Estate, and the reversions, remainders, rents, issues and profits thereof, and all the estate, right, title, interest, property, possession, claim and demand whatsoever, at law as well as in equity, of Trustor of, in and to the same;

**TOGETHER WITH** all rents, revenues, issues, profits, proceeds, income, royalties, "accounts," including "health-care-insurance receivables," escrows, letter-of-credit rights (each as defined in the Code hereinafter defined), security deposits, impounds,

<div align="center">1</div>

reserves, tax refunds and other rights to monies from the Premises and/or the businesses and operations conducted by Trustor thereon, to be applied against the Indebtedness (hereinafter defined), all of which Trustor hereby absolutely and unconditionally assigns to Beneficiary; provided, however, that Trustor, so long as no Event of Default (as hereinafter defined) has occurred hereunder, may collect rent as it becomes due, but not more than one (1) month in advance thereof;

**TOGETHER WITH** all interest of Trustor in all leases now or hereafter of all or a portion of the Premises, whether written or oral (**"Leases"**), together with all security therefor and all monies payable thereunder, all of which Trustor hereby absolutely and unconditionally assigns to Beneficiary; subject, however, to the conditional permission hereinabove given to Trustor to collect the rentals under any such Lease;

**TOGETHER WITH** all fixtures and articles of personal property now or hereafter owned by Trustor and forming a part of or used in connection with the Real Estate or the Improvements, including, but without limitation, any and all air conditioners, antennae, appliances, apparatus, awnings, basins, bathtubs, bidets, boilers, bookcases, cabinets, carpets, coolers, curtains, dehumidifiers, disposals, doors, drapes, dryers, ducts, dynamos, elevators, engines, equipment, escalators, exercise equipment, fans, fittings, floor coverings, furnaces, furnishings, furniture, hardware, heaters, humidifiers, incinerators, lighting, machinery, motors, ovens, pipes, plumbing, pumps, radiators, ranges, recreational facilities, refrigerators, screens, security systems, shades, shelving, sinks, sprinklers, stokers, stoves, toilets, ventilators, wall coverings, washers, windows, window coverings, wiring, and all renewals or replacements thereof or articles in substitution therefor, whether or not the same are or shall be attached to the Real Estate or the Improvements in any manner; it being mutually agreed that all of the aforesaid property owned by Trustor and placed on the Real Estate or the Improvements, so far as permitted by law, shall be deemed to be fixtures, a part of the realty, and security for the Indebtedness (as hereinafter defined); notwithstanding the agreement hereinabove expressed that certain articles of property form a part of the realty covered by this Deed of Trust and be appropriated to its use and deemed to be realty, to the extent that such agreement and declaration may not be effective and that any of said articles may constitute goods (as said term is used in the Uniform Commercial Code as adopted in the District of Columbia in effect from time to time (**"Code"**), this instrument shall constitute a security agreement, creating a security interest in such goods, as collateral, in Beneficiary, as a secured party, and Trustor, as Debtor, all in accordance with the Code; and

**TOGETHER WITH** all of Trustor's interests in "general intangibles" including "payment intangibles" and "software" (each as defined in the Code) now owned or hereafter acquired and related to the Premises, including, without limitation, all of Trustor's right, title and interest in and to: (i) all agreements, licenses, permits and contracts to which Trustor is or may become a party and which relate to the Premises; (ii) all obligations and indebtedness owed to Trustor thereunder; (iii) all intellectual property related to the Premises; and (iv) all choses in action and causes of action relating to the Premises;

**TOGETHER WITH** all of Trustor's accounts now owned or hereafter created or acquired as they relate to the Premises, including, without limitation, all of the following now owned or hereafter created or acquired by Trustor: (i) accounts, contract rights, health-care-insurance receivables, book debts, notes, drafts, and other obligations or indebtedness owing to the Trustor arising from the sale, lease or exchange of goods or other property and/or the performance of services; (ii) the Trustor's rights in, to and under all purchase orders for goods, services or other property; (iii) the Trustor's rights to any goods, services or other property represented by any of the foregoing; (iv) monies due to become due to the Trustor under all contracts for the sale, lease or exchange of goods or other property and/or the performance of services including the right to payment of any interest or finance charges in respect thereto (whether or not yet earned by performance on the part of the Trustor); (v) "securities," "investment property," "financial assets," and "securities entitlements" (each as defined in the Code); (vi) proceeds of any of the foregoing and all collateral security and guaranties of any kind given by any person or entity with respect to any of the foregoing; and (vii) all warranties, guarantees, permits and licenses in favor of Trustor with respect to the Premises;

**TOGETHER WITH** all proceeds of the foregoing, including, without limitation, all judgments, awards of damages and settlements hereafter made resulting from condemnation proceeds or the taking of the Premises or any portion thereof under the power of eminent domain, any proceeds of any policies of insurance, maintained with respect to the Premises or proceeds of any sale, option or contract to sell the Premises or any portion thereof.

**TO HAVE AND TO HOLD** the Premises unto Trustee, and its successors and substitutes in this trust and to its and their successors and assigns, in trust, WITH POWER OF SALE AND THE RIGHT OF RE-ENTRY AND POSSESSION, for the benefit of Beneficiary and its successors and assigns, upon the terms, provisions and conditions herein set forth.

**FOR THE PURPOSE OF SECURING THE FOLLOWING (collectively referred to herein as the "Indebtedness"):** (i) the payment of the Loan and all interest, late charges, prepayment premium (if any), Prepayment Fee (if any), reimbursement obligations, fees and expenses for letters of credit issued by Beneficiary for the benefit of Trustor, if any, and other indebtedness evidenced by or owing under the Note, any of the other Loan Documents, any interest rate swap or hedge agreement now or hereafter entered into between Trustor and Beneficiary and any application for letters of credit and master letter of credit agreement, together

2

with any extensions, modifications, renewals or refinancings of any of the foregoing; (ii) the performance and observance of the covenants, conditions, agreements, representations, warranties and other liabilities and obligations of Trustor or any other obligor to or benefiting Beneficiary which are evidenced or secured by or otherwise provided in the Note, this Deed of Trust or any of the other Loan Documents, dated on or about the Effective Date which obligations, notwithstanding anything to the contrary in this Deed of Trust, shall not be secured by this Deed of Trust; and (iii) the reimbursement to Beneficiary of any and all sums incurred, expended or advanced by Beneficiary pursuant to any term or provision of or constituting additional indebtedness under or secured by this Deed of Trust, any of the other Loan Documents, any interest rate swap or hedge agreement or any application for letters of credit and master letter of credit agreement, with interest thereon as provided herein or therein.

**IT IS FURTHER UNDERSTOOD AND AGREED THAT:**

1.      **Title**.  Trustor represents, warrants and covenants that (a) Trustor is the holder of the fee simple title to the Premises, free and clear of all liens and encumbrances, except those liens and encumbrances in favor of Beneficiary and as otherwise described on the title insurance policy accepted by Beneficiary (**"Permitted Exceptions"**); and (b) Trustor has legal power and authority to mortgage and convey the Premises.

2.      **Maintenance, Repair, Restoration, Prior Liens, Parking**.  Trustor covenants that, so long as any portion of the Indebtedness remains unpaid, Trustor will:

(a)      promptly repair, restore or rebuild any Improvements now or hereafter on the Premises which may become damaged or be destroyed to a condition substantially similar to the condition immediately prior to such damage or destruction, whether or not proceeds of insurance are available or sufficient for the purpose;

(b)      keep the Premises in good condition and repair, without waste, and free from mechanics', materialmen's or like liens or claims or other liens or claims for lien (collectively, **"Mechanics' Liens"**);

(c)      pay when due the Indebtedness in accordance with the terms of the Note and the other Loan Documents and duly perform and observe all of the terms, covenants and conditions to be observed and performed by Trustor under the Note, this Deed of Trust and the other Loan Documents;

(d)      pay when due any indebtedness which may be secured by a permitted lien or charge on the Premises on a parity with, superior to or inferior to, the lien hereof, and upon request exhibit satisfactory evidence of the discharge of such lien to the Beneficiary;

(e)      complete within a reasonable time any Improvements now or at any time in the process of erection upon the Premises;

(f)      comply with all requirements of law, municipal ordinances or restrictions and covenants of record with respect to the Premises and the use thereof;

(g)      obtain and maintain in full force and effect, and abide by and satisfy the material terms and conditions of, all material permits, licenses, registrations and other authorizations with or granted by any governmental authorities that may be required from time to time with respect to the performance of its obligations under this Deed of Trust;

(h)      make no material alterations in the Premises or demolish any portion of the Premises without Beneficiary's prior written consent, except as required by law or municipal ordinance;

(i)      suffer or permit no change in the use or general nature of the occupancy of the Premises, without the Beneficiary's prior written consent;

(j)      pay when due all operating costs of the Premises;

(k)      not initiate or acquiesce in any zoning reclassification with respect to the Premises, without Beneficiary's prior written consent;

(l)      provide and thereafter maintain adequate parking areas within the Premises as may be required by law, ordinance or regulation (whichever may be greater), together with any sidewalks, aisles, streets, driveways and sidewalk cuts and sufficient paved areas for ingress, egress and right-of-way, to and from the adjacent public thoroughfares necessary or desirable for the use thereof; and

3

        (m)     cause the Premises at all times to be operated in compliance with all federal, state, local and municipal environmental, health and safety laws, statutes, ordinances, rules and regulations, including, without limitation, Trustor will (i) ensure, and cause each of its subsidiaries to ensure, that no person who owns twenty percent (20.00%) or more of the equity interests in the Trustor, or otherwise controls the Trustor or any of its subsidiaries is or shall be listed on the Specially Designated Nationals and Blocked Person List or other similar lists maintained by the Office of Foreign Assets Control (**"OFAC"**), the Department of the Treasury or included in any Executive Orders, (ii) not use or permit the use of the proceeds of the Loan to violate any of the foreign asset control regulations of OFAC or any enabling statute or Executive Order relating thereto, and (iii) comply, and cause each of its subsidiaries to comply, with all applicable Bank Secrecy Act laws and regulations, as amended.

    3.     **Payment of Taxes and Assessments; Removal of Mechanics' Liens**. Trustor will pay when due and before any penalty attaches, all general and special taxes, assessments, water charges, sewer charges, and other fees, taxes, charges and assessments of every kind and nature whatsoever (all herein generally called **"Taxes"**), whether or not assessed against Trustor, if applicable to the Premises or any interest therein, or the Indebtedness, or any obligation or agreement secured hereby, subject to Trustor's right to contest the same, as provided by the terms hereof; and Trustor will, upon written request, furnish to the Beneficiary duplicate receipts therefor within ten (10) days after Beneficiary's request.

    4.     **Insurance**.

        (a)     Trustor shall at all times keep all buildings, improvements, fixtures and articles of personal property now or hereafter situated on the Premises insured against loss or damage by fire and such other hazards as may reasonably be required by Beneficiary, in accordance with the terms, coverages and provisions reasonably acceptable to Beneficiary, and such other insurance as Beneficiary may from time to time reasonably require. Unless Trustor provides Beneficiary evidence of the insurance coverages required hereunder, Beneficiary may purchase insurance at Trustor's expense to cover Beneficiary's interest in the Premises. The insurance may, but need not, protect Trustor's interest. The coverages that Beneficiary purchases may not pay any claim that Trustor makes or any claim that is made against Trustor in connection with the Premises. Trustor may later cancel any insurance purchased by Beneficiary, but only after providing Beneficiary with evidence that Trustor has obtained insurance as required by this Deed of Trust. If Beneficiary purchases insurance for the Premises, Trustor will be responsible for the costs of such insurance, including, without limitation, interest and any other charges which Beneficiary may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to the Indebtedness. The cost of the insurance may be more than the cost of insurance Trustor may be able to obtain on its own.

        (b)     Trustor shall not take out separate insurance concurrent in form or contributing in the event of loss with that required to be maintained hereunder unless Beneficiary is included thereon as the loss payee or an additional insured as applicable, under a standard deed of trust clause acceptable to Beneficiary and such separate insurance is otherwise acceptable to Beneficiary.

        (c)     In the event of a loss, Trustor shall give prompt notice thereof to Beneficiary, who shall have the sole and absolute right to make proof of loss. Beneficiary, solely and directly, shall receive such payment for loss from each insurance company concerned. Beneficiary shall have the right, at its option and in its sole discretion, to apply any insurance proceeds received by Beneficiary pursuant to the terms of this section, after the payment of all of Beneficiary's expenses, either (i) on account of the Indebtedness, irrespective of whether such principal balance is then due and payable, whereupon Beneficiary may declare the whole of the balance of Indebtedness, plus the "Prepayment Fee" (as defined in the Note), to be due and payable, or (ii) to the restoration or repair of the property damaged as provided in subsection (d) below; provided, however, that Beneficiary hereby agrees to permit the application of such proceeds to the restoration or repair of the damaged property, subject to the provisions of subsection (d) below, if (i) Beneficiary has received satisfactory evidence that such restoration or repair shall be completed no later than the date that is two (2) months prior to the Maturity Date; (ii) that the insurance proceeds will cover all costs of restoration or repair; and (iii) no Event of Default, or event that with the passage of time, the giving of notice or both would constitute an Event of Default, then exists. If insurance proceeds are made available to Trustor by Beneficiary as hereinafter provided, Trustor shall repair, restore or rebuild the damaged or destroyed portion of the Premises so that the condition and value of the Premises are substantially the same as the condition and value of the Premises prior to being damaged or destroyed. Any insurance proceeds applied on account of the unpaid principal balance of the Note shall be subject to the Prepayment Fee. In the event of foreclosure of this Deed of Trust, all right, title and interest of Trustor in and to any insurance policies then in force shall pass to the purchaser at the foreclosure sale.

        (d)     If insurance proceeds are made available by Beneficiary to Trustor, Trustor shall comply with the following conditions:

4

(i)     Before commencing to repair, restore or rebuild following damage to, or destruction of, all or a portion of the Premises, whether by fire or other casualty, Trustor shall obtain from Beneficiary its approval of all site and building plans and specifications pertaining to such repair, restoration or rebuilding.

(ii)     Prior to each payment or application of any insurance proceeds to the repair or restoration of the improvements upon the Premises to the extent permitted in subsection (c) above (which payment or application may be made, at Beneficiary's option, through an escrow, the terms and conditions of which are satisfactory to Beneficiary and the cost of which is to be borne by Trustor), Beneficiary shall be satisfied as to the following:

(1)     no Event of Default or any event which, with the passage of time or giving of notice would constitute an Event of Default, has occurred;

(2)     either such Improvements have been fully restored, or the expenditure of money as may be received from such insurance proceeds will be sufficient to repair, restore or rebuild the Premises, free and clear of all liens, claims and encumbrances, except the lien of this Deed of Trust and the Permitted Exceptions, or, if such insurance proceeds shall be insufficient to repair, restore and rebuild the Premises, Trustor has deposited with Beneficiary such amount of money which, together with the insurance proceeds shall be sufficient to restore, repair and rebuild the Premises; and

(3)     prior to each disbursement of any such proceeds, Beneficiary shall be furnished with a statement of Beneficiary's architect (the cost of which shall be borne by Trustor), certifying the extent of the repair and restoration completed to the date thereof, and that such repairs, restoration, and rebuilding have been performed to date in conformity with the plans and specifications approved by Beneficiary and with all statutes, regulations or ordinances (including building and zoning ordinances) affecting the Premises; and Beneficiary shall be furnished with appropriate evidence of payment for labor or materials furnished to the Premises, and total or partial lien waivers substantiating such payments, and title insurance endorsements in form satisfactory to Beneficiary, insuring the continuing first priority of this Deed of Trust, subject only to the Permitted Exceptions.

(iii)     If Trustor shall fail to restore, repair or rebuild the Improvements within a time deemed reasonably satisfactory by Beneficiary, then Beneficiary, at its option, may (a) commence and perform all necessary acts to restore, repair or rebuild the said Improvements for or on behalf of Trustor, or (b) declare an Event of Default. If insurance proceeds shall exceed the amount necessary to complete the repair, restoration or rebuilding of the Improvements, such excess shall be applied on account of the Indebtedness irrespective of whether such Indebtedness is then due and payable without payment of any premium or penalty.

5.     **Condemnation**. If all or any part of the Premises are damaged, taken or acquired, either temporarily or permanently, in any condemnation proceeding, or by exercise of the right of eminent domain, the amount of any award or other payment for such taking or damages made in consideration thereof, to the extent of the full amount of the remaining unpaid Indebtedness, is hereby assigned to Beneficiary, who is empowered to collect and receive the same and to give proper receipts therefor in the name of Trustor and the same shall be paid forthwith to Beneficiary. Such award or monies shall be applied on account of the Indebtedness, irrespective of whether such Indebtedness is then due and payable and, at any time from and after the taking Beneficiary may declare the whole of the balance of the Indebtedness, plus the Prepayment Fee, to be due and payable. Notwithstanding the provisions of this section to the contrary, if any condemnation or taking of less than the entire Premises occurs and provided that no Event of Default and no event or circumstance which with the passage of time, the giving of notice or both would constitute an Event of Default then exists, and if such partial condemnation, in the reasonable discretion of Beneficiary, has no material adverse effect on the operation or value of the Premises, then the award or payment for such taking or consideration for damages resulting therefrom may be collected and received by Trustor, and Beneficiary hereby agrees that in such event it shall not declare the Indebtedness to be due and payable, if it is not otherwise then due and payable.

6.     **Stamp Tax**. If, by the laws of the United States of America, or of any state or political subdivision having jurisdiction over Trustor, any tax is due or becomes due in respect of the execution and delivery of this Deed of Trust, the Note or any of the other Loan Documents, Trustor shall pay such tax in the manner required by any such law. Trustor further agrees to reimburse Beneficiary for any sums which Beneficiary may expend by reason of the imposition of any such tax. Notwithstanding the foregoing, Trustor shall not be required to pay any income or franchise taxes of Beneficiary.

7.     **Effect of Extensions of Time and Other Changes**. If the payment of the Indebtedness or any part thereof is extended or varied, if any part of any security for the payment of the Indebtedness is released, if the rate of interest charged under the Note is changed or if the time for payment thereof is extended or varied, all persons now or at any time hereafter liable therefor, or

interested in the Premises or having an interest in Trustor, shall be held to assent to such extension, variation, release or change and their liability and the lien and all of the provisions hereof shall continue in full force, any right of recourse against all such persons being expressly reserved by Beneficiary, notwithstanding such extension, variation, release or change.

8.    **Effect of Changes in Laws Regarding Taxation**.  If any law is enacted after the Effective Date requiring (a) the deduction of any lien on the Premises from the value thereof for the purpose of taxation or (b) the imposition upon Beneficiary of the payment of the whole or any part of the Taxes, charges or liens herein required to be paid by Trustor, or (c) a change in the method of taxation of mortgages or debts secured by mortgages or Beneficiary's interest in the Premises, or the manner of collection of taxes, so as to affect this Deed of Trust or the Indebtedness of the holders thereof, then Trustor, upon demand by Beneficiary, shall pay such Taxes or charges, or reimburse Beneficiary therefor; provided, however, that Trustor shall not be deemed to be required to pay any income or franchise taxes of Beneficiary.  Notwithstanding the foregoing, if in the opinion of counsel for Beneficiary it is or may be unlawful to require Trustor to make such payment or the making of such payment might result in the imposition of interest beyond the maximum amount permitted by law, then Beneficiary may declare all of the Indebtedness to be immediately due and payable.

9.    **Beneficiary's Performance of Defaulted Acts and Expenses Incurred by Beneficiary**.  If an Event of Default has occurred, Beneficiary may, but need not, make any payment or perform any act herein required of Trustor in any form and manner deemed expedient by Beneficiary, and may, but need not, make full or partial payments of principal or interest on prior encumbrances, if any, and purchase, discharge, compromise or settle any tax lien or other prior lien or title or claim thereof, or redeem from any tax sale or forfeiture affecting the Premises or consent to any tax or assessment or cure any default of Trustor in any lease of the Premises. All monies paid for any of the purposes herein authorized and all expenses paid or incurred in connection therewith, including reasonable attorneys' fees, and any other monies advanced by Beneficiary in regard to any tax or to protect the Premises or the lien hereof, shall be so much additional Indebtedness, and shall become immediately due and payable by Trustor to Beneficiary, upon demand, and with interest thereon accruing from the date of such demand until paid at the Default Rate (as defined in the Note) then in effect.  In addition to the foregoing, any costs, expenses and fees, including reasonable attorneys' fees, incurred by Beneficiary in connection with (a) sustaining the lien of this Deed of Trust or its priority, (b) protecting or enforcing any of Beneficiary's rights hereunder, (c) recovering any Indebtedness, (d) any litigation or proceedings affecting the Note, this Deed of Trust, any of the other Loan Documents or the Premises, including without limitation, bankruptcy and probate proceedings, or (e) preparing for the commencement, defense or participation in any threatened litigation or proceedings affecting the Note, this Deed of Trust, any of the other Loan Documents or the Premises, shall be so much additional Indebtedness, and shall become immediately due and payable by Trustor to Beneficiary, upon demand, and with interest thereon accruing from the date of such demand until paid at the Default Rate. The interest accruing under this section shall be immediately due and payable by Trustor to Beneficiary, and shall be additional Indebtedness evidenced by the Note and secured by this Deed of Trust.  Beneficiary's failure to act shall never be considered as a waiver of any right accruing to Beneficiary on account of any Event of Default.  Should any amount paid out or advanced by Beneficiary hereunder, or pursuant to any agreement executed by Trustor in connection with the Loan, be used directly or indirectly to pay off, discharge or satisfy, in whole or in part, any lien or encumbrance upon the Premises or any part thereof, then Beneficiary shall be subrogated to any and all rights, equal or superior titles, liens and equities, owned or claimed by any owner or holder of said outstanding liens, charges and indebtedness, regardless of whether said liens, charges and indebtedness are acquired by assignment or have been released of record by the holder thereof upon payment.

10.    **Security Agreement**.  Trustor and Beneficiary agree that this Deed of Trust shall constitute a Security Agreement within the meaning of the Code with respect to (a) all sums at any time on deposit for the benefit of Trustor or held by the Beneficiary (whether deposited by or on behalf of Trustor or anyone else) pursuant to any of the provisions of this Deed of Trust or the other Loan Documents, and (b) any personal property included in the granting clauses of this Deed of Trust, which personal property may not be deemed to be affixed to the Premises or may not constitute a "fixture" (within the meaning of the Code) (which property is hereinafter referred to as **"Personal Property"**), and all replacements of, substitutions for, additions to, and the proceeds thereof, and the "supporting obligations" (as defined in the Code) (all of said Personal Property and the replacements, substitutions and additions thereto and the proceeds thereof being sometimes hereinafter collectively referred to as **"Collateral"**), and that a security interest in and to the Collateral is hereby granted to the Beneficiary, and the Collateral and all of Trustor's right, title and interest therein are hereby assigned to Beneficiary, all to secure payment of the Indebtedness.  All of the provisions contained in this Deed of Trust pertain and apply to the Collateral as fully and to the same extent as to any other property comprising the Premises; and the following provisions of this section shall not limit the applicability of any other provision of this Deed of Trust but shall be in addition thereto:

(a)    Trustor (being the Debtor as that term is used in the Code) is and will be the true and lawful owner of the Collateral and has rights in and the power to transfer the Collateral, subject to no liens, charges or encumbrances other than the lien hereof, other liens and encumbrances benefiting Beneficiary and no other party, and liens and encumbrances, if any, expressly permitted by the other Loan Documents.

(b)    The Collateral is to be used by Trustor solely for business purposes.

(c)     The Collateral will be kept at the Real Estate and, except for Obsolete Collateral (as hereinafter defined), will not be removed therefrom without the consent of Beneficiary (being the Secured Party as that term is used in the Code). The Collateral may be affixed to the Real Estate but will not be affixed to any other real estate.

(d)     The only persons having any interest in the Premises are Trustor, Beneficiary and holders of interests, if any, expressly permitted hereby.

(e)     No Financing Statement (other than Financing Statements showing Beneficiary as the sole secured party, or with respect to liens or encumbrances, if any, expressly permitted hereby) covering any of the Collateral or any proceeds thereof is on file in any public office except pursuant hereto; and Trustor, at its own cost and expense, upon demand, will furnish to Beneficiary such further information and will execute and deliver to Beneficiary such financing statements and other documents in form satisfactory to Beneficiary and will do all such acts as Beneficiary may request at any time or from time to time or as may be necessary or appropriate to establish and maintain a perfected security interest in the Collateral as security for the Indebtedness, subject to no other liens or encumbrances, other than liens or encumbrances benefiting Beneficiary and no other party and liens and encumbrances (if any) expressly permitted hereby; and Trustor will pay the cost of filing or recording such financing statements or other documents, and this instrument, in all public offices wherever filing or recording is deemed by Beneficiary to be desirable. Trustor hereby irrevocably authorizes Beneficiary at any time, and from time to time, to file in any jurisdiction any initial financing statements and amendments thereto that (i) indicate the Collateral as all assets of Trustor (or words of similar effect), regardless of whether any particular asset comprised in the Collateral falls within the scope of Article 9 of the Uniform Commercial Code of the jurisdiction wherein such financing statement or amendment is filed, or as being of an equal or lesser scope or within greater detail, and (ii) contain any other information required by Section 5 of Article 9 of the Uniform Commercial Code of the jurisdiction wherein such financing statement or amendment is filed regarding the sufficiency or filing office acceptance of any financing statement or amendment, including whether Trustor is an organization, the type of organization and any organizational identification number issued to Trustor, and in the case of a financing statement filed as a fixture filing or indicating Collateral as as-extracted collateral or timber to be cut, a sufficient description of real property to which the Collateral relates. Trustor agrees to furnish any such information to Beneficiary promptly upon request. Trustor further ratifies and affirms its authorization for any financing statements and/or amendments thereto, executed and filed by Beneficiary in any jurisdiction prior to the date of this Deed of Trust.

(f)     Upon an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Code, including, without limitation, the right to take immediate and exclusive possession of the Collateral, or any part thereof, and for that purpose, so far as Trustor can give authority therefor, with or without judicial process, may enter (if this can be done without breach of the peace) upon any place where the Collateral or any part thereof may be situated and remove the same therefrom (provided that if the Collateral is affixed to real estate, such removal shall be subject to the conditions stated in the Code); and Beneficiary shall be entitled to hold, maintain, preserve and prepare the Collateral for sale, until disposed of, or may propose to retain the Collateral subject to Trustor's right of redemption in satisfaction of Trustor's obligations, as provided in the Code. Beneficiary may render the Collateral unusable without removal and may dispose of the Collateral on the Premises. Beneficiary may require Trustor to assemble the Collateral and make it available to Beneficiary for its possession at a place to be designated by Beneficiary which is reasonably convenient to both parties. Beneficiary will give Trustor at least ten (10) days' notice of the time and place of any public sale of the Collateral or of the time after which any private sale or any other intended disposition thereof is made. The requirements of reasonable notice shall be met if such notice is mailed, by certified United States mail or equivalent, postage prepaid, to the address of Trustor hereinafter set forth at least ten (10) days before the time of the sale or disposition. Beneficiary may buy at any public sale. Beneficiary may buy at private sale if the Collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations. Any such sale may be held in conjunction with any foreclosure sale of the Premises. If Beneficiary so elects, the Premises and the Collateral may be sold as one lot. The net proceeds realized upon any such disposition, after deduction for the expenses of retaking, holding, preparing for sale, selling and the reasonable attorneys' fees and legal expenses incurred by Beneficiary, shall be applied against the Indebtedness in such order or manner as Beneficiary shall select. Beneficiary will account to Trustor for any surplus realized on such disposition.

(g)     The terms and provisions contained in this section, unless the context otherwise requires, shall have the meanings and be construed as provided in the Code.

(h)     This Deed of Trust is intended to be a financing statement within the purview of the Code with respect to the Collateral and the goods described herein, which goods are or may become fixtures relating to the Premises. The addresses of Trustor (Debtor) and Beneficiary (Secured Party) are hereinbelow set forth. This Deed of Trust is to be filed for recording at the Recorder of Deeds for the District of Columbia.

7

(i)    To the extent permitted by applicable law, the security interest created hereby is specifically intended to cover all Leases between Trustor or its agents as lessor, and various tenants named therein, as lessee, including all extended terms and all extensions and renewals of the terms thereof, as well as any amendments to or replacement of said Leases, together with all of the right, title and interest of Trustor, as lessor thereunder.

(j)    Trustor represents and warrants that:

    (i.)    Trustor is the record owner of the Premises;

    (ii.)    Trustor is qualified to do business in the District of Columbia; and

    (iii.)    The exact legal names of Trustor are as set forth in the first paragraph of this Deed of Trust.

(k)    Trustor agrees that:

    (i)    Where Collateral is in possession of a third party, Trustor will join with the Beneficiary in notifying the third party of the Beneficiary's interest and obtaining an acknowledgment from the third party that it is holding the Collateral for the benefit of Beneficiary;

    (ii)    Trustor will cooperate with the Beneficiary in obtaining control with respect to Collateral consisting of: deposit accounts, investment property, letter of credit rights and electronic chattel paper; and

    (iii)    Until the Indebtedness is paid in full, Trustor will not change the state where it is located or change its company name without giving the Beneficiary at least 30 days' prior written notice in each instance.

(l)    In addition to Beneficiary's rights under the Code, Beneficiary may, but shall not be obligated to, at any time and at the expense of Trustor (i) give notice to any person of Beneficiary's rights hereunder and enforce such rights; (ii) insure, protect, defend and preserve the Collateral and any rights or interests of Beneficiary therein; (iii) inspect such Collateral; and (iv) endorse, collect and receive any right to payment of money owing to Trustor under or from such Collateral. Beneficiary shall have no duty or obligation to make or give any presentments, demands for performance, notices of non-performance, notices of protest or notices of dishonor in connection with any of such Collateral.

(m)    Trustor and Beneficiary agree that the filing of a financing statement in the records normally having to do with personal property shall never be construed as in any way derogating from or impairing this Deed of Trust and the intention of the parties that everything used in connection with the production of income from the Premises or adapted for use therein or which is described or reflected in this Deed of Trust is, and at all times and for all purposes and in all proceedings both legal or equitable shall be regarded as part of the real estate subject to the lien hereof, irrespective of whether (i) any such item is physically attached to improvements located on such real property or (ii) any such item is referred to or reflected in any financing statement so filed at any time. Similarly, the mention in any such financing statement of (A) the rights in or the proceeds of any fire or hazard insurance policy or (B) any award in eminent domain proceedings for taking or for loss of value or for any cause of action or proceeds thereof in connection with any damage or injury to the Premises or any part thereof shall never be construed as in any way altering any of the rights of Beneficiary as determined by this instrument or impugning the priority of Beneficiary's lien granted hereby or by any other recorded document, but such mention in such financing statement is declared to be for the protection of Beneficiary in the event any court shall at any time hold with respect to matters (A) and (B) above that notice of Beneficiary's priority of interest, to be effective against a particular class of persons, including, without limitation, the Federal government and any subdivision or entity of the Federal government, must be filed in the personal property records or other commercial code records.

(n)    It is understood and agreed that, in order to protect Beneficiary from the effect of the Code, as amended from time to time, in the event that (i) Trustor intends to purchase any goods which may become fixtures to the Real Estate or Improvements, or any part thereof, and (ii) such goods would be subject to a security interest held by a seller or any other party, Trustor shall, before executing any security agreement or other document evidencing such security interest, obtain the prior written approval of Beneficiary, and all requests for such written approval shall be in writing and contain the following information:

    (A)    A description of the fixtures to be replaced, added to, installed or substituted;

    (B)    The address at which the fixtures will be replaced, added to, installed or substituted; and

8

(C)     The name and address of the proposed holder and proposed amount of the security interest;

and any failure of Trustor to obtain such approval shall be a material breach of Trustor's covenants under this Deed of Trust, and shall, at the option of Beneficiary, entitle Beneficiary to all rights and remedies provided for herein upon default. No consent by Beneficiary pursuant to this section shall be deemed to constitute an agreement to subordinate any right of Beneficiary in fixtures or other property covered by this Deed of Trust.

(o)     Beneficiary shall have the right to acquire by assignment from the holder of such security interest any and all contract rights, accounts receivable, negotiable or non-negotiable instruments or other evidence of Trustor's indebtedness for such personal property or fixtures and, upon acquiring such interest by assignment, shall have the right to enforce the security interest as assignee thereof in accordance with the terms and provisions of the Code then in effect and in accordance with any other provisions of law.

(p)     If at any time Trustor fails to make any payment on an obligation secured by a security interest in such personal property or fixtures, Beneficiary, at its option, may at any time pay the amount secured by such security interest and the amount so paid shall be (i) secured by this Deed of Trust and shall be a lien on the Premises having the same priorities as the liens and security interests created by this Deed of Trust, and (ii) payable on demand with interest at the rate specified in the Note from the time of such payment. If Trustor shall fail to make such payment to Beneficiary within ten (10) days after demand, the entire principal sum secured thereby with all unpaid accrued interest and late charges or other amounts owing thereunder, shall, at the option of Beneficiary, become due and payable immediately.

11.     **Restrictions on Transfer**.

(a)     Trustor, without the prior written consent of Beneficiary, shall not effect, suffer or permit any Prohibited Transfer (as defined herein). Any conveyance, sale, assignment, transfer, lien, pledge, partitioning, mortgage, security interest or other encumbrance or alienation or any agreement to do any of the foregoing, with respect to any of the following properties or interests shall constitute a **"Prohibited Transfer"**:

(i)     The Premises or any part thereof or interest therein, excepting only sales or other dispositions of Collateral (herein called **"Obsolete Collateral"**) no longer useful in connection with the operation of the Premises, provided that prior to the sale or other disposition thereof, such Obsolete Collateral has been replaced by Collateral of at least equal value and utility which is subject to the lien hereof with the same priority as with respect to the Obsolete Collateral;

(ii)    Any shares of capital stock of a corporate trustor, a corporation which is a general partner or managing member/manager in a partnership or limited liability company trustor, or a corporation which is the owner of substantially all of the capital stock of any corporation described in this subsection (other than the shares of capital stock of a corporate trustee or a corporation whose stock is publicly traded on a national securities exchange or on the National Association of Securities Dealers' Automated Quotation System);

(iii)   All or any part of the managing member or manager interest, as the case may be, in a limited liability company trustor or a limited liability company which is a general partner of a partnership Trustor;

(iv)    All or any part of the general partner or joint venture interest, as the case may be, of a partnership trustor or a partnership which is a manager of a limited liability company trustor or the conversion of a partnership trustor to a corporation or limited liability company; or

(v)     If there shall be any change in control (by way of transfers of stock, partnership or member interests or otherwise) of Trustor or in any partner, member, manager or shareholder, as applicable, which directly or indirectly controls the day to day operations and management of Trustor and/or owns a controlling interest in Trustor; or

in each case whether any such conveyance, sale, assignment, transfer, lien, pledge, mortgage, security interest, encumbrance or alienation is effected directly, indirectly (including the nominee agreement), voluntarily or involuntarily, by operation of law or otherwise; provided, however, that the foregoing provisions of this Section shall not apply (i) to liens securing the Indebtedness, (ii) to the lien of current taxes and assessments not in default, (iii) to any transfers of the Premises, or part thereof, or interest therein, or any beneficial interests, or shares of stock or partnership or joint venture interests, as the case may be, by or on behalf of an owner thereof, who is deceased or declared judicially incompetent, to such owner's heirs,

9

legatees, devisees, executors, administrators, estate or personal representatives, or (iv) to leases permitted by the terms of the Loan Documents, if any.

Notwithstanding the foregoing, as long as all of the Transfer Conditions (as defined below) are satisfied, a transfer of membership interests in Trustor (i) to a conservator pursuant to court order upon the legal disability of an individual member or (ii) to a Family Member (hereinafter defined) upon the death of an individual member shall not require the Beneficiary's consent. "Family Member" shall be defined as an individual member's spouse and any of his or her direct lineal descendants. The term "Transfer Conditions" shall mean that all of the following conditions are satisfied concurrently with each such transfer: (1) there shall be no change in the day to day operations and management of Trustor and (2) Beneficiary shall be provided with a diagram showing the structure of Trustor and all constituent entities after such transfer occurs and a list of the names, types of interests and percentages of ownership of all owners of interests in Trustor and any constituent entities after such transfer occurs.

      (b)    In determining whether or not to make the Loan, Beneficiary evaluated the background and experience of Trustor and its partners/members/officers in owning and operating property such as the Premises, found it acceptable and relied and continues to rely upon same as the means of maintaining the value of the Premises which is Beneficiary's security for the Note. Trustor and its partners/members/officers are well experienced in borrowing money and owning and operating property such as the Premises, were ably represented by a licensed attorney at law in the negotiation and documentation of the Loan and bargained at arm's length and without duress of any kind for all of the terms and conditions of the Loan, including this provision. Trustor recognizes that Beneficiary is entitled to keep its loan portfolio at current interest rates by either making new loans at such rates or collecting assumption fees and/or increasing the interest rate on a loan, if the security for which is purchased by a party other than the original Trustor. Trustor further recognizes that any secondary junior financing placed upon the Premises (a) may divert funds which would otherwise be used to pay the Note; (b) could result in acceleration and foreclosure by any such junior encumbrancer which would force Beneficiary to take measures and incur expenses to protect its security; (c) would detract from the value of the Premises should Beneficiary come into possession thereof with the intention of selling same; and (d) would impair Beneficiary's right to accept a deed in lieu of foreclosure, as a foreclosure by Beneficiary would be necessary to clear the title to the Premises. In accordance with the foregoing and for the purposes of (i) protecting Beneficiary's security, both of repayment and of value of the Premises; (ii) giving Beneficiary the full benefit of its bargain and contract with Trustor; (iii) allowing Beneficiary to raise the interest rate and collect assumption fees; and (iv) keeping the Premises free of subordinate financing liens, Trustor agrees that if this Section is deemed a restraint on alienation, that it is a reasonable one.

      12.    **Events of Default; Acceleration**.  Each of the following shall constitute an **"Event of Default"** for purposes of this Deed of Trust:

      (a)    Trustor fails to pay (i) any installment of principal or interest payable pursuant to the Note on the date when due, or (ii) any other amount payable to Beneficiary under the Note, this Deed of Trust or any of the other Loan Documents within five (5) days after the date when any such payment is due in accordance with the terms hereof or thereof;

      (b)    Trustor fails to perform or cause to be performed any other obligation or observe any other condition, covenant, term, agreement or provision required to be performed or observed by Trustor under the Note, this Deed of Trust or any of the other Loan Documents.

      (c)    the existence of any inaccuracy or untruth in any material respect in any representation or warranty contained in this Deed of Trust or any of the other Loan Documents or of any statement or certification as to facts delivered to Beneficiary by Trustor;

      (d)    Trustor files a voluntary petition in bankruptcy or is adjudicated a bankrupt or insolvent or files any petition or answer seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under the present or any future federal, state, or other statute or law, or seeks or consents to, or acquiesces in the appointment of any trustee, receiver or similar officer of Trustor or of all or any substantial part of the property of Trustor or any of the Premises or all or a substantial part of the assets of Trustor are attached, seized, subjected to a writ or distress warrant or are levied upon unless the same is released or located within thirty (30) days;

      (e)    the commencement of any involuntary petition in bankruptcy against Trustor or the institution against Trustor of any reorganization, arrangement, composition, readjustment, dissolution, liquidation or similar proceedings under any present or future federal, state or other statute or law, or the appointment of a receiver, trustee or similar officer for all or any substantial part of the property of Trustor which shall remain undismissed or undischarged for a period of sixty (60) days;

(f)     the occurrence of a Prohibited Transfer; or

(g)     the occurrence of an "Event of Default" under the Note or any of the other Loan Documents; or

(h)     the occurrence of any default or event of default, after the expiration of any applicable periods of notice or cure, under any document or agreement evidencing or securing any other obligation or indebtedness of Trustor to Beneficiary.

If an Event of Default occurs, Beneficiary may, at its option, declare the whole of the Indebtedness to be immediately due and payable without further notice to Trustor, with interest thereon accruing from the date of such Event of Default until paid at the Default Rate.

13.     **Remedies and Application of Proceeds**.

Upon the occurrence of an Event of Default, Beneficiary may at any time, at its option and in its sole discretion, declare all Indebtedness to be due and payable and the same shall thereupon become immediately due and payable, including the Prepayment Fee, under the terms of the Indebtedness, with interest accruing thereon from the date of the Event of Default until paid, at the Default Rate. In addition to exercising any other remedy available at law, in equity and/or under the other Loan Documents, Beneficiary may also do any or all of the following, concurrently or otherwise, at such time and in such order as Beneficiary may determine, in its sole discretion, although it shall have no obligation to do any of the following:

(a)     Either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court and without regard to the adequacy of Beneficiary's security, enter with or without process of law upon and take possession of the Premises, or any part thereof, and do any acts which Beneficiary deems necessary or desirable to preserve the value, marketability or rentability of the Premises, or to increase the income therefrom or to protect the security hereof and, with or without taking possession of any of the Premises, sue for or otherwise collect all rents and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees and expenses, upon the Indebtedness, all in such order as Beneficiary may determine. The collection of rents and profits and the application thereof shall not cure or waive any Event of Default or notice thereof or invalidate any act done in response thereto or pursuant to such notice. In furtherance of the foregoing, to the fullest extent permitted by applicable law, following the occurrence of an Event of Default and during the continuance thereof, Beneficiary shall have the right to apply to a court of competent jurisdiction for and obtain appointment of a receiver of the Premises as a matter of strict right and without regard to the value of the Premises or the adequacy of the security for the Indebtedness, the existence of a declaration that the Indebtedness is immediately due and payable, or the filing of a notice of default, and Trustor hereby consents to such appointment;

(b)     Bring an action in any court of competent jurisdiction to foreclose this instrument or to enforce any of the covenants hereof.

(c)     Elect to sell by power of sale the Premises and, upon such election, such notice of Event of Default and election to sell shall be given as may then be required by law. Thereafter, upon the expiration of such time and the giving of such notice of sale as may then be required by law, at the time and place specified in the notice of sale, Trustee shall sell such Premises, or any portion thereof specified by Beneficiary, at public auction to the highest bidder for cash in lawful money of the United States. Trustee may, and upon request of Beneficiary shall, from time to time, postpone the sale by public announcement thereof at the time and place noticed therefor. If the Premises consists of several lots, parcels or interests, Beneficiary may designate the order in which the same shall be offered for sale or sold. Trustor waives all rights to direct the order in which any of the Premises will be sold in the event of any sale under this Deed of Trust, and also any of right to have any of the Premises marshaled upon any sale. In the case of a sale under this Deed of Trust, the said property, real, personal and mixed, may be sold in one parcel or more than one parcel. Should Beneficiary desire that more than one such sale or other disposition be conducted, Beneficiary may, at its option, cause the same to be conducted simultaneously, or successively on the same day, or at such different days or times and in such order as Beneficiary may deem to be in its best interest. Any person, including Trustor, Trustee or Beneficiary, may purchase at the sale. Upon any sale, Trustee shall execute and deliver to the purchaser or purchasers a deed or deeds conveying the Premises so sold, but without any covenant or warranty whatsoever, express or implied, whereupon such purchaser or purchasers shall be let into immediate possession. Beneficiary, from time to time before the trustee's sale pursuant to this section, may rescind any notice of Event of Default and of election to cause to be sold the Premises by executing and delivering to Trustee a written notice of such rescission, which notice, shall also constitute a cancellation of any prior Event of Default and demand for sale. The exercise by

Beneficiary of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring or impair the right of Beneficiary to execute and deliver to Trustee, as above provided, other declarations of default and demand for sale, and notices of breach or default, nor otherwise affect any provision, covenant or condition of the Note and/or of this Deed of Trust or any of the rights, obligations or remedies of the parties thereunder or hereunder. In furtherance of the foregoing, the Beneficiary hereby directs and empowers the Trustee to take possession of any or all of the Premises and to sell the Premises, in whole or in part, and in the case of default of any purchaser or purchasers, resell all the Premises as an entirety, or in such parcels as Beneficiary shall in writing request, or, in the absence of such request, as the Trustee may determine, at public auction at some convenient place in the District of Columbia, at such time, in such manner and upon such terms as the Trustee may fix. The notice of sale shall state the time and place of the sale, shall contain a brief general description of the Premises to be sold, and shall be sufficiently given if published in either *The Washington Post* or other publications where such notices are customarily published or in the place(s) where such sale is to take place, such advertisement of sale to be published five (5) times every other day (excluding Sundays and holidays) over a ten business day period prior to the day of said sale, subject to compliance with Section 42-815(b) of the D.C. Code, and Beneficiary or Trustee shall cause further public advertisement to be made as they deem advisable. Any such sale may be adjourned by the Trustee by announcement at the time and place appointed for such sale or for such adjourned sale(s), and, without further notice or publication, such sale may be made at the time and place to which same shall be so adjourned. Upon the completion of any sale, the Trustee shall execute and deliver to the purchaser(s) a good and sufficient deed of conveyance, or assignment and transfer, lawfully conveying, assigning and transferring, without warranty, the property sold.

(d)     Apply any sums then held in escrow or otherwise by Beneficiary in accordance with the terms of this Deed of Trust or any other Loan Document to the payment of the Indebtedness.

(e)     Exercise all rights available to Trustor under the Code.

(f)     Exercise each of its other rights and remedies under this Deed of Trust or any other Loan Documents.

(g)     Except as otherwise required by law, apply the proceeds of any foreclosure or disposition hereunder to payment of the following: (i) the expenses of such foreclosure or disposition, including, without limitation, the fees of Trustee and the costs of the Tests and Studies (hereinafter defined), (ii) the cost of any search or other evidence of title procured in connection therewith and revenue stamps on any deed or conveyance, (iii) all sums expended under the terms hereof, not then repaid, with accrued interest in the amount provided herein, (iv) all other sums secured hereby, and (v) the remainder, if any, to the person or persons legally entitled thereto.

(h)     Upon any sale or sales made under or by virtue of this section, whether made under the power of sale or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Beneficiary may bid for and acquire the Premises or any part thereof. In lieu of paying cash for the Premises, Beneficiary may make settlement for the purchase price by crediting against the Indebtedness the sales price of the Premises, as adjusted for the expenses of sale and the costs of the action and any other sums for which Trustor is obligated to reimburse Trustee or Beneficiary under this Deed of Trust.

(i)     In the event that Trustor has an equity of redemption and the Premises is sold pursuant to the power of sale or otherwise under or by virtue of this section, the purchaser may, during any redemption period allowed, make such repairs or alterations (but not additions) on said Premises as may be reasonably necessary for the proper operation, care, preservation, protection and insuring thereof. Any sums so paid together with interest thereon from the time of such expenditures at the Default Rate (if not prohibited by law, otherwise at the highest lawful contract rate) shall be added to and become a part of the amount required to be paid for redemption from such sale.

14.     **Beneficiary's Right of Possession in Case of Default**. At any time after an Event of Default has occurred, Trustor shall, upon demand of Beneficiary, surrender to Beneficiary possession of the Premises. Beneficiary, in its discretion, may, with process of law, enter upon and take and maintain possession of all or any part of the Premises, together with all documents, books, records, papers and accounts relating thereto, and may exclude Trustor and its employees, agents or servants therefrom, and Beneficiary may then hold, operate, manage and control the Premises, either personally or by its agents. Beneficiary shall have full power to use such measures, legal or equitable, as in its discretion may be deemed proper or necessary to enforce the payment or security of the avails, rents, issues, and profits of the Premises, including actions for the recovery of rent, actions in forcible detainer and actions in distress for rent. Without limiting the generality of the foregoing, Beneficiary shall have full power to:

(a)     cancel or terminate any lease or sublease for any cause or on any ground which would entitle Trustor to cancel the same;

(b)     elect to disaffirm any lease or sublease   which is then subordinate to the lien hereof;

12

(c)    extend or modify any then-existing leases and to enter into new leases, which extensions, modifications and leases may provide for terms to expire, or for options to lessees to extend or renew terms to expire, beyond the Maturity Date and beyond the date of the issuance of a deed or deeds to a purchaser or purchasers at a foreclosure sale, it being understood and agreed that any such leases, and the options or other such provisions to be contained therein, shall be binding upon Trustor and all persons whose interests in the Premises are subject to the lien hereof and upon the purchaser or purchasers at any foreclosure sale, notwithstanding any redemption from sale, discharge of the Indebtedness, satisfaction of any foreclosure judgment, or issuance of any certificate of sale or deed to any purchaser;

(d)    make any repairs, renewals, replacements, alterations, additions, betterments and improvements to the Premises as Beneficiary deems are necessary;

(e)    insure and reinsure the Premises and all risks incidental to Beneficiary's possession, operation and management thereof; and

(f)    receive all of such avails, rents, issues and profits.

15.    **Application of Income Received by Beneficiary**.  To the extent permitted by applicable law, Beneficiary, in the exercise of the rights and powers hereinabove conferred upon it, shall have full power to use and apply the avails, rents, issues and profits of the Premises to the payment of or on account of the following, in such order as Beneficiary may determine:

(a)    to the payment of the operating expenses of the Premises, including cost of management and leasing thereof (which shall include compensation to Beneficiary and its agent or agents, if management be delegated to an agent or agents, and shall also include lease commissions and other compensation and expenses of seeking and procuring tenants and entering into leases), established claims for damages, if any, and premiums on insurance hereinabove authorized;

(b)    to the payment of taxes and special assessments now due or which may hereafter become due on the Premises; and

(c)    to the payment of any Indebtedness, including any deficiency which may result from any foreclosure sale.

16.    **Rights Cumulative**.  Each right, power and remedy herein conferred upon Beneficiary is cumulative and in addition to every other right, power or remedy, express or implied, given now or hereafter existing under any of the Loan Documents or at law or in equity, and each and every right, power and remedy herein set forth or otherwise so existing may be exercised from time to time as often and in such order as may be deemed expedient by Beneficiary, and the exercise or the beginning of the exercise of one right, power or remedy shall not be a waiver of the right to exercise at the same time or thereafter any other right, power or remedy, and no delay or omission of Beneficiary in the exercise of any right, power or remedy accruing hereunder or arising otherwise shall impair any such right, power or remedy, or be construed to be a waiver of any Event of Default or acquiescence therein.

17.    **Beneficiary's Right of Inspection**.  In addition to Beneficiary's other inspection rights under this Deed of Trust, Beneficiary and its representatives shall have the right to inspect the Premises and the books and records with respect thereto at all reasonable times, and access thereto, subject to the rights of tenants in possession, shall be permitted for that purpose.

18.    **Release Upon Payment and Discharge of Trustor's Obligations**.  Beneficiary shall release this Deed of Trust and the lien hereof by proper instrument upon payment and discharge of all Indebtedness, including payment of all reasonable expenses incurred by Beneficiary in connection with the execution of such release.

19.    **Notices**.  Any notices, demands, requests, communications and waivers under this Deed of Trust shall be in writing and shall be (i) delivered in person, (ii) mailed, postage prepaid, either by registered or certified mail, return receipt requested, (iii) by overnight express carrier, addressed in each case as follows, or (iv) by confirmed facsimile transmission, so long as a duplicate copy of such notice is also sent by one of the other permitted forms of delivery:

if to Lender:        Cornerstone Capital LLC
                     c/o Renaissance Realty Management, LLC
                     1801 Pennsylvania Avenue, N.W., Suite 700
                     Washington, D.C. 20006
                     Attn:  Mark D. Schuman, Esquire

if to Trustor:       Potomac Construction 1753 Willard, LLC
                     Potomac Construction Biltmore, LLC

13

Attn:  Matt Shkor

or to any other address as to any of the parties hereto, as such party shall designate in a written notice to the other party hereto.  All notices sent pursuant to the terms of this Section shall be deemed received (i) if personally delivered, then on the date of delivery or refusal to accept delivery, (ii) if sent by overnight, express carrier, then on the next federal banking day immediately following the day sent, (iii) if sent by registered or certified mail, then on the earlier of the third federal banking day following the day sent or when actually received or (iv) if sent by facsimile, then on the date of such transmission.

20.  **Waiver of Rights**.  The Trustor hereby covenants and agrees that it will not at any time insist upon or plead, or in any manner claim or take any advantage of, any stay, exemption or extension law or any so-called "Moratorium Law" now or at any time hereafter in force providing for the valuation or appraisement of the Premises, or any part thereof, prior to any sale or sales thereof to be made pursuant to any provisions herein contained, or to decree, judgment or order of any court of competent jurisdiction; or, after such sale or sales, claim or exercise any rights under any statute now or hereafter in force to redeem the property so sold, or any part thereof, or relating to the marshalling thereof, upon foreclosure sale or other enforcement hereof; and without limiting the foregoing:

(a)  To the extent permitted by law, the Trustor hereby expressly waives any and all rights of reinstatement and redemption, if any, under any order or decree of foreclosure of this Deed of Trust, on its own behalf and on behalf of each and every person, it being the intent hereof that any and all such rights of reinstatement and redemption of the Trustor and of all other persons are and shall be deemed to be hereby waived;

(b)  The Trustor will not invoke or utilize any such law or laws or otherwise hinder, delay or impede the execution of any right, power, or remedy herein or otherwise granted or delegated to the Beneficiary but will suffer and permit the execution of every such right, power and remedy as though no such law or laws had been made or enacted; and

(c)  If the Trustor is a trustee, Trustor represents that the provisions of this section (including the waiver of reinstatement and redemption rights) were made at the express direction of Trustor's beneficiaries and the persons having the power of direction over Trustor, and are made on behalf of the trust estate of Trustor and all beneficiaries of Trustor, as well as all other persons mentioned above.

(d)  To the full extent Trustor may do so, Trustor agrees that Trustor will not at any time insist upon, plead, claim or take the benefit or advantage of any law now or hereafter in force providing for any appraisement, valuation, stay, extension or redemption, and Trustor, for Trustor, Trustor's heirs, devisees, representatives, successors and assigns, and for any and all persons ever claiming any interest in the Premises, to the extent permitted by applicable law, hereby waives and releases all rights of redemption, valuation, appraisement, stay of execution, notice of intention to mature or declare due the whole of the secured indebtedness, notice of election to mature or declare due the whole of the secured indebtedness and all rights to a marshaling of assets of Trustor, including the Premises, or to a sale in inverse order of alienation in the event of foreclosure of the liens and/or security interests hereby created.  Trustor shall not have or assert any right under any statute or rule of law pertaining to the marshaling of assets, sale in inverse order of alienation, the exemption of homestead, the administration of estates of decedents, or other matters whatever to defeat, reduce or affect the right of Beneficiary under the terms of this Deed of Trust to a sale of the Premises for the collection of the secured indebtedness without any prior or different resort for collection, or the right of Beneficiary under the terms of this Deed of Trust to the payment of the secured indebtedness out of the proceeds of sale of the Premises in preference to every other claimant whatever.

21.  **Expenses Relating to Note and Deed of Trust**.

(a)  Trustor will pay all reasonable expenses, charges, costs and fees relating to the Loan or necessitated by the terms of the Note, this Deed of Trust or any of the other Loan Documents, including without limitation, Beneficiary's reasonable attorneys' fees in connection with the negotiation, documentation, administration, servicing and enforcement of the Note, this Deed of Trust and the other Loan Documents, all filing, registration and recording fees, all other expenses incident to the execution and acknowledgment of this Deed of Trust and all federal, state, county and municipal taxes, and other taxes (provided Trustor shall not be required to pay any income or franchise taxes of Beneficiary), duties, imposts, assessments and charges arising out of or in connection with, the execution and delivery of the Note, this Deed of Trust, and any of the other Loan Documents.  Trustor recognizes that, during the term of this Deed of Trust, Beneficiary:

(i)  May be involved in court or administrative proceedings, including, without restricting the foregoing, foreclosure, probate, bankruptcy, creditors' arrangements, insolvency, housing authority and pollution

14

control proceedings of any kind, to which Beneficiary shall be a party by reason of the Loan Documents or in which the Loan Documents or the Premises are involved directly or indirectly;

(ii)    May make preparations following the occurrence of an Event of Default hereunder for the commencement of any suit for the foreclosure hereof, which may or may not be actually commenced;

(iii)    May make preparations following the occurrence of an Event of Default hereunder for, and do work in connection with, Beneficiary's taking possession of and managing the Premises, which event may or may not actually occur;

(iv)    May make preparations for and commence other private or public actions to remedy an Event of Default hereunder, which other actions may or may not be actually commenced;

(v)    May enter into negotiations with Trustor or any of its agents, employees or attorneys in connection with the existence or curing of any Event of Default hereunder, the sale of the Premises, the assumption of liability for any of the Indebtedness or the transfer of the Premises in lieu of foreclosure; or

(vi)    May enter into negotiations with Trustor or any of its agents, employees or attorneys pertaining to Beneficiary's approval of actions taken or proposed to be taken by Trustor which approval is required by the terms of this Deed of Trust.

(b)    All expenses, charges, costs and fees described in this Section shall be so much additional Indebtedness, shall bear interest from the date so incurred until paid at the Default Rate and shall be paid, together with said interest, by Trustor forthwith upon demand.

22.    **Further Instruments**.  Upon request of Beneficiary, Trustor shall execute, acknowledge and deliver all such additional instruments and further assurances of title and shall do or cause to be done all such further acts and things as may reasonably be necessary fully to effectuate the intent of the Note, this Deed of Trust, and any of the other Loan Documents.

23.    **Indemnity**.  Trustor hereby covenants and agrees that no liability shall be asserted or enforced against Beneficiary in the exercise of the rights and powers granted to Beneficiary in this Deed of Trust, and Trustor hereby expressly waives and releases any such liability.  Trustor shall indemnify and save Beneficiary harmless from and against any and all liabilities, obligations, losses, damages, claims, costs and expenses (including reasonable attorneys' fees and court costs) (collectively, **"Claims"**) of whatever kind or nature which may be imposed on, incurred by, or asserted against Beneficiary at any time by any third party which relate to or arise from: (a) any suit or proceeding (including probate and bankruptcy proceedings), or the threat thereof, in, or to which Beneficiary may or does become a party, either as plaintiff or as a defendant, by reason of this Deed of Trust or for the purpose of protecting the lien of this Deed of Trust; (b) the offer for sale or sale of all or any portion of the Premises; and (c) the ownership, leasing, use, operation or maintenance of the Premises, if such Claims relate to or arise from actions taken prior to the surrender of possession of the Premises to Beneficiary in accordance with the terms of this Deed of Trust; provided, however, that Trustor shall not be obligated to indemnify or hold Beneficiary harmless from and against any Claims directly arising from the gross negligence or willful misconduct of Beneficiary.  All costs provided for herein and paid for by Beneficiary shall be so much additional Indebtedness and shall become immediately due and payable upon demand by Beneficiary and with interest thereon from the date incurred by Beneficiary until paid at the Default Rate.

24.    **Compliance with Environmental Laws**.

(a)    Trustor covenants and agrees, at Trustor's sole cost and expense, to indemnify, defend (at trial and appellate levels, and with attorneys, consultants and experts reasonably acceptable to Beneficiary), and hold Beneficiary harmless from and against any and all liens, damages (including, without limitation, consequential damages), losses, liabilities, obligations, settlement payments, penalties, claims, judgments, suits, proceedings, costs, disbursements or expenses of any kind or of any nature whatsoever (including reasonable attorneys', consultants' and experts' fees and disbursements actually incurred in investigating, defending, settling or prosecuting any claim, litigation or proceeding) which may at any time be imposed upon, incurred by or asserted against Beneficiary or the Premises, and arising directly or indirectly from or out of: (i) the past, present or future presence, release or threat of release of any hazardous substances on, in, under or affecting all or any portion of the Premises or any surrounding areas, regardless of whether or not caused by or within the control of any Trustor; or (ii) the past, present or future violation of any environmental laws, relating to or affecting the Premises, whether or not caused by or within the control of Trustor.

15

(b)     Trustor hereby authorizes Beneficiary, any prospective bidder at any foreclosure sale and their respective officers, directors, employees, agents and independent contractors to enter upon all or any portion of the Premises (including, without limitation, following the occurrence of a default hereunder) for the purpose of conducting such tests, inspections, inquiries, examinations, studies, analyses, samples, surveys, and other information gathering activities (collectively, the **"Tests and Studies"**) with respect to the Premises as any of them may from time to time deem necessary or appropriate, including, without limitation, Tests and Studies with respect to the presence of Hazardous Materials (as defined in the Indemnity) in or around the Premises and the occurrence of any actual, proposed or threatened storage, existence, release, removal, remediation, handling or transportation of any Hazardous Substances (as defined in the Indemnity) in or around the Premises.  Except in case of an emergency, or when the Trustor or any tenant has abandoned the Premises, or if it is impracticable to do so, Beneficiary shall give Trustor reasonable advance notice of Beneficiary's intent to enter the Premises and shall enter the Premises only during normal business hours.  Trustor hereby covenants and agrees to cooperate fully with such parties in their efforts to conduct the Tests and Studies, and further covenants and agrees to make available to such parties such portions of the Premises as any of them may designate.  If Beneficiary is refused the right of entry and inspection by the Trustor or any tenant of the Premises, or is otherwise unable to enter and conduct Tests and Studies on the Premises without a breach of peace, Beneficiary may obtain an order from a court of competent jurisdiction, the appointment of a receiver, or both, to enable Beneficiary to exercise its rights under this section.  The decision of Beneficiary as to whether there exists a release or threatened release of Hazardous Substances onto the Premises shall be deemed reasonable and conclusive as between the parties hereto.  The results of all Tests and Studies shall be and at all times remain the property of Beneficiary and under no circumstances shall Beneficiary have any obligation whatsoever to disclose or otherwise make available to Trustor or any other party such results or any other information obtained by them in connection with such Tests and Studies.

(c)     Notwithstanding the provisions of subsection (a) above, Beneficiary hereby reserves the right, and Trustor hereby expressly authorizes Beneficiary to make available to any party (including, without limitation, any governmental agency or authority and any prospective bidder at any foreclosure sale of the Premises), any and all information which Beneficiary may have with respect to the Premises, whether provided by Trustor or any third party or obtained as a result of Tests and Studies, including, without limitation, environmental reports, surveys and engineering reports.  Trustor consents to Beneficiary notifying any party (either as part of a notice of sale or otherwise) of the availability of any or all of the Tests and Studies and the information contained therein.  Trustor acknowledges that Beneficiary cannot control or otherwise assure the truthfulness or accuracy of the Tests and Studies, and that the release of Tests and Studies, or any information contained therein, to prospective bidders at any foreclosure sale of the Premises may have a material and adverse effect upon the amount which a party may bid at such sale.  Trustor agrees that Beneficiary shall have no liability whatsoever as a result of delivering any or all of the Tests and Studies or any information contained therein to any third party, and Trustor hereby releases, remises and forever discharges Beneficiary from any and all claims, damages, or causes of action, arising out of, connected with or incidental to the Tests and Studies or the delivery thereof.

(d)     All costs and expenses incurred by Beneficiary pursuant to this section, including, without limitation, costs of consultants and contractors, costs of repair of any physical injury to the Premises normal and customary to the Tests and Studies, court costs and reasonable attorneys' fees, whether incurred in litigation or not and whether before or after judgment, shall be payable by Trustor and, to the extent advanced or incurred by Beneficiary, shall be reimbursed to Beneficiary by Trustor upon demand.  Any and all costs and expenses incurred or advanced by Beneficiary pursuant to this section, together with interest thereon at the rate then applicable under the Note, shall be secured by this Deed of Trust and shall enjoy the same priority as the original principal amount of the Note.

25.     **Miscellaneous**.

(a)     **Successors and Assigns**.  This Deed of Trust and all provisions hereof shall be binding upon and enforceable against Trustor and its assigns and other successors.  This Deed of Trust and all provisions hereof shall inure to the benefit of Beneficiary, its successors and assigns and any holder or holders, from time to time, of the Note.

(b)     **Invalidity of Provisions; Governing Law**.  In the event that any provision of this Deed of Trust is deemed to be invalid by reason of the operation of law, or by reason of the interpretation placed thereon by any administrative agency or any court, Trustor and Beneficiary shall negotiate an equitable adjustment in the provisions of the same in order to effect, to the maximum extent permitted by law, the purpose of this Deed of Trust, and the validity and enforceability of the remaining provisions, or portions or applications thereof, shall not be affected thereby and shall remain in full force and effect.  This Deed of Trust is to be construed in accordance with and governed by the laws of the District of Columbia.

(c)  **Beneficiary in Possession**.  Nothing herein contained shall be construed as constituting Beneficiary a mortgagee in possession in the absence of the actual taking of possession of the Premises by Beneficiary pursuant to this Deed of Trust.

(d)  **Relationship of Beneficiary and Trustor**.  Beneficiary shall in no event be construed for any purpose to be a partner, joint venturer, agent or associate of Trustor or of any lessee, operator, concessionaire or licensee of Trustor in the conduct of their respective businesses, and, without limiting the foregoing, Beneficiary shall not be deemed to be such partner, joint venturer, agent or associate on account of Beneficiary becoming a mortgagee in possession or exercising any rights pursuant to this Deed of Trust, any of the other Loan Documents, or otherwise.  The relationship of Trustor and Beneficiary hereunder is solely that of debtor/creditor.

(e)  **Time of the Essence**.  Time is of the essence of the payment by Trustor of all amounts due and owing to Beneficiary under the Note and the other Loan Documents and the performance and observance by Trustor of all terms, conditions, obligations and agreements contained in the Note, this Deed of Trust, and the other Loan Documents.

(f)  **No Merger**.  The parties hereto intend that this Deed of Trust and the lien hereof shall not merge in fee simple title to the Premises, and if Beneficiary acquires any additional or other interest in, or to the Premises or the ownership thereof, then, unless a contrary intent is manifested by Beneficiary as evidenced by an express statement to that effect in an appropriate document duly recorded, this Deed of Trust and the lien hereof shall not merge in the fee simple title and this Deed of Trust may be foreclosed as if owned by a stranger to the fee simple title.

(g)  **Consent to Jurisdiction**  TO INDUCE BENEFICIARY TO ACCEPT THIS DEED OF TRUST, TRUSTOR IRREVOCABLY AGREES THAT, SUBJECT TO BENEFICIARY'S SOLE AND ABSOLUTE ELECTION, ALL ACTIONS OR PROCEEDINGS IN ANY WAY ARISING OUT OF OR RELATED TO THIS DEED OF TRUST WILL BE LITIGATED IN COURTS HAVING SITUS IN THE DISTRICT OF COLUMBIA. TRUSTOR HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY COURT LOCATED WITHIN THE DISTRICT OF COLUMBIA, WAIVES PERSONAL SERVICE OF PROCESS UPON TRUSTOR, AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY REGISTERED MAIL DIRECTED TO TRUSTOR AT THE ADDRESS STATED HEREIN AND SERVICE SO MADE WILL BE DEEMED TO BE COMPLETED UPON ACTUAL RECEIPT.

(h)  **Waiver of Jury Trial**.  TRUSTOR AND BENEFICIARY (BY ACCEPTANCE HEREOF), HAVING BEEN REPRESENTED BY COUNSEL EACH KNOWINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS (a) UNDER THIS DEED OF TRUST OR ANY OTHER LOAN DOCUMENT OR ANY RELATED AGREEMENT OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION WITH THIS DEED OF TRUST OR (b) ARISING FROM ANY BANKING RELATIONSHIP EXISTING IN CONNECTION WITH THIS DEED OF TRUST, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING WILL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. TRUSTOR AGREES THAT IT WILL NOT ASSERT ANY CLAIM AGAINST BENEFICIARY OR ANY OTHER PERSON INDEMNIFIED UNDER THIS DEED OF TRUST ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES.

(i)  **Complete Agreement**.  This Deed of Trust, the Note and the other Loan Documents constitute the complete agreement between the parties with respect to the subject matter hereof and the same may not be modified, altered or amended except by an agreement in writing signed by both Trustor and Beneficiary.

26.  **Additional Agreements**.

(a)  Beneficiary may substitute the trustee hereunder in any manner now or hereafter provided by law or, in lieu thereof, Beneficiary may from time to time, by an instrument in writing, substitute a successor or successors to any trustee named herein or acting hereunder, which instrument, executed and acknowledged by Beneficiary and recorded at the Recorder of Deeds for the District of Columbia, shall be conclusive proof of proper substitution of such successor trustee, who shall thereupon and without conveyance from the predecessor trustee, succeed to all its title, estate, rights, powers and duties.

(b)  It is expressly stipulated and agreed to be the intent of Beneficiary and Trustor, at all times to comply with applicable laws governing the highest lawful rate or amount of interest payable on the Loan (or applicable United States federal law to the extent that it permits Beneficiary to contract for, charge, take, reserve or receive a greater amount of

17

interest than under applicable law). If the applicable law is ever judicially interpreted so as to render usurious any amount called for under this Deed of Trust, the Note, or under any of the other Loan Documents, or contracted for, charged, taken, reserved or received with respect to the Loan, or if Beneficiary's exercise of the option to accelerate the maturity of the Note or if any prepayment by Trustor results in Trustor having paid any interest in excess of that permitted by applicable law, then it is Trustor's and Beneficiary's express intent that all excess amounts theretofore collected by Beneficiary be credited on the principal balance of the Note (or, if the Note and all other obligations have been or would thereby be paid in full, refunded to Trustor), and the provisions of this Deed of Trust, the Note and the other Loan Documents immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new documents, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder or thereunder. All sums paid or agreed to be paid to Beneficiary for the use, forbearance or detention of the Loan shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of the Loan until payment in full, so that the rate or amount of interest on account of the Loan does not exceed the usury ceiling from time to time in effect and applicable to the Loan for so long as the Loan is outstanding. Notwithstanding anything to the contrary contained herein, in the Note, or in any of the other Loan Documents, it is not the intention of Beneficiary to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.

27.    **Future Advances**. This Deed of Trust shall secure not only existing indebtedness, but also such future advances, whether such advances are obligatory or to be made at the option of Beneficiary, or otherwise, to the same extent as if such future advances were made on the date of the execution of this Deed of Trust. Any such future advances, whether obligatory or to be made at the option of the Beneficiary, or otherwise, may be made either prior to or after the due date of the Note or any other notes secured by this Deed of Trust. This Deed of Trust is given for the specific purpose of securing any and all indebtedness by the Trustor to Beneficiary (but in no event shall the secured indebtedness exceed at any time the maximum principal amount set forth in this section) in whatever manner this indebtedness may be evidenced or represented, until this Deed of Trust is satisfied of record. All covenants and agreements contained in this Deed of Trust shall be applicable to all further advances made by Beneficiary to Trustor under this future advance clause.

**IN WITNESS WHEREOF**, the Trustor has executed and delivered this Agreement as of the day and year first above written.

**TRUSTOR:**

_____ (SEAL)
Matthew E. Shkor, individually

District of Columbia

I HEREBY CERTIFY that on May 26, 2017, before me, the subscriber, a Notary Public, in and for the jurisdiction aforesaid, personally appeared Matthew E. Shkor, known to me (or satisfactorily proven) to be the person who executed the foregoing instrument, and he/she acknowledged that he/she executed the foregoing instrument for the purposes therein contained and that the same was delivered as such.

IN WITNESS WHEREOF I hereunto set my hand and official seal.

_____
Notary Public
My commission expires: _____

> KEVIN DALE ANDERSON
> Notary Public, District of Columbia
> My Commission Expires Jan. 31, 2020



18

**EXHIBIT A**

**LEGAL DESCRIPTION**

All that certain lot or parcel of land situate in the District of Columbia and being more particularly described as follows:

Lot Numbered 0152 in Square Numbered 0155 in a subdivision made by Fisher and Hillyer as per plat recorded in Liber 14 at Folio 18 among the Records in the Office of the Surveyor for the District of Columbia.

Property Address: 1738 R St, NW,
                  Washington, DC 20009

Tax ID#: Square 0155 Lot 0152

★ ★ ★

**Government of the**
**District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374

## SECURITY AFFIDAVIT — CLASS 1

|  |  |  |
|---|---|---|
| **0155** |  | **0152** |
| **Square** | **Suffix** | **Lot** |

I, (We)  **MATTHEW E. SHKOR**                     the owner(s) of the real property
described within certify, subject to criminal penalties for making false statements pursuant to
section 22-2405 of the District of Columbia Official Code, that the real property described
within is Class 1 Property, as that class of property was established pursuant to section
47-813(c-4), with 5 or fewer units:

_____
*Signature*

_____
*Signature*

Subscribed and sworn to me before this _24th_ day of _May_ , 20 _17_ .

_____
*Notary Public*

My Commission Expires: _____
mmddyyyy

KEVIN DALE ANDERSON
Notary Public, District of Columbia
My Commission Expires Jan. 31, 2020



```
Doc #: 2017068787
Filed & Recorded
06/23/2017 07:25 AM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
  RECORDING FEES        $150.00
  SURCHARGE             $6.50
TOTAL:                  $156.50
```



**Government of the District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374

## Real Property Recordation and Transfer Tax Form FP 7/C

### PART A- Type of Instrument
☐ Deed  ☐ Tax Deed  ☒ Deed of Trust  ☐ Trustee Deed
☐ Easement  ☐ Modification  ☐ Lease  ☐ Other _____

### PART B - Property Description/Data/Property Being Conveyed
| 0155 | | 0152 | | | | |
|---|---|---|---|---|---|---|
| Square | Suffix | Lot | | Square | Suffix | Lot |

If more than one lot, list Square/Suffix/Lots below or attach addendum:

**Square and/or Parcel** _____  **Lot(s)** _____

**Property Address** | 1738 | R Street | NW | Unit No. ___
Street Number | Street Name | Quadrant

**Property Use** ☒ Residential ☐ Commercial ☐ Condominium ☐ Apartment
In addition to the use above, is this property being rented? ☐ Yes ☒ No

**Interest Transferred** ☐ Fee ☐ Leasehold ☐ Leasehold Improvement
☐ Easement ☒ Other **Security Interest**

**Interest Conveyed** ___% Does this transfer include Condo Parking? ☐ Yes ☒ No

If YES, what is the parking account? ___ ___ ___
Square  Suffix  Lot

**Sale Type** ☒ Single/Parcel Improved - Arms Length
☐ Single/Parcel Vacant - Arms Length
☐ Multiple Parcels ☐ Arms Length ☐ Not Arms Length

**Date of Deed** _____ **Consideration $** _____ (Part H, Line #1)

Was personal property included in this transfer? ☐ Yes ☒ No

If YES, what type? _____ Estimated Value $ _____

### PART C - Instrument Submitted by or Contact Person
Name **Kevin D. Anderson, Esq.** Firm **Standard Title Group LLC**
Address **1734 20th Street, NW**
City **Washington** State **DC** Zip **20009**

### PART D - Return Instrument To
Name **Kevin D. Anderson, Esq.** Firm **Standard Title Group LLC**
Address **1734 20th Street, NW** Phone ___
City **Washington** State **DC** Zip **20009**

### PART E - Grantor(s) Information
Grantor **MATTHEW E. SHKOR** Grantor ___
Grantor ___ Grantor ___
Address **1734 20th Street, NW, Lower** Phone ___
City **Washington** State **DC** Zip **20009**

modified format    ROD 1 revised 11/2014

★ ★ ★

**Government of the
District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374

| | | |
|---|---|---|
| **0155** | | **0152** |
| Square | Suffix | Lot |

**Grantor Tenancy**  ☐ Tenants in Common    ☐ Joint Tenants    ☐ Trustee
☐ Tenants by Entireties    ☒ Sole

## PART F - Grantee(s) Information

| Grantee | **CORNERSTONE CAPITAL,** | Grantee | |
|---|---|---|---|
| Grantee | **c/o Renaissance Realty** | Grantee | |
| Address | **1801 Pennsylvania Avenue,** | Phone | |
| City | **Washington** | State **DC** | Zip **20006** |

**Grantee Tenancy**    ☐ Tenants in Common    ☐ Joint Tenants   ☐ Trustee

**Interest Acquired** [        ]    ☐ Tenants by Entireties    ☒ Sole

## PART G - Mailing Address for Grantee (If different from Part F)

| | | |
|---|---|---|
| Last Name | First Name | Middle Name |

| Unit # | | Address | | Phone | |
|---|---|---|---|---|---|
| City | | | State | | Zip | |

## PART H - Consideration and Financing
"complete all items; insert zero if no amount"

Tax Exemption Application
Recordation Tax/Transfer Tax
(Cite to Specific DC Code Provision)

**I. Deed**

| | | |
|---|---|---|
| 1. Acquisition Price | 0 | / |
| Cash | 0 | / |
| Amount of 1st Deed of Trust | 0 | |
| Exempt Amount(s) Purchase Money Amount | 0 | |
| Other Exempt Amount | 0 | |
| Nonexempt Amount(s) | 0 | |
| Amount of 2nd Deed of Trust | 0 | |
| Exempt Amount(s) Purchase Money Amount | 0 | |
| Other Exempt Amount | 0 | |
| Nonexempt Amount(s) | 0 | |
| Assumed | 0 | |
| Exempt Amount(s) Purchase Money Amount | 0 | |
| Other Exempt Amount | 0 | |
| Nonexempt Amount(s) | 0 | |
| 2. Latest Assessed Value if No or Nominal Consideration (less than 30% of assessed value) | 0 | / |

modified format

ROD 1 revised 11/2014

| 0155 | | 0152 |
|---|---|---|
| Square | Suffix | Lot |

**Government of the District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374

Tax Exemption Application
Recordation Tax/Transfer Tax
(Cite to Specific DC Code Provision)

## II. Deeds of Trust (no transfer of title)

| | | |
|---|---|---|
| Amount of 1st Deed of Trust | 1,262,500.00 | |
| Exempt Amount(s) | 1,262,500.00 | 21 |
| Nonexempt Amount(s) | 0 | |

**3. Total of all Nonexempt Deeds of Trust (I & II)** _____0_____

---

### PART I - Computation of Tax

If the residential deed transfer is for a total consideration of less than $400,000 use Lines 1 and 2.
All other deed transfers, security instruments and commercial transactions use Lines 3, 4, 5 and 6.

| | | | |
|---|---|---|---|
| 1. Recordation Tax | 1.1% of Line 1 or Line 2, Part H | $ | |
| 2. Transfer Tax | 1.1% of Line 1 or Line 2, Part H | $ | |
| 3. Recordation Tax | 1.45% of Line 1 or Line 2, Part H | $ | |
| 4. Transfer Tax | 1.45% of Line 1 or Line 2, Part H | $ | |
| 5. Recordation Tax | 1.45% of Line 3, Part H | $ | **EXEMPT** |
| 6. Transfer Surtax | 5% of Line 1 or Line 2, Part H (retail service sta.) | $ | |
| 7. Total of Lines 1 & 2 OR 3, 4, 5 and 6 | | $ | |

---

### PART J - Affidavit (Part A to J)

I/We hereby swear or affirm under penalty of perjury that this return, including any accompanying schedules/documents/and statements, has been examined by me/us and to the best of my/our knowledge and belief, the statements and representations are correct and true, I/We hereby acknowledge that any false statement or misrepresentations I/We made on this return is punishable by criminal penalties under the laws of the District of Columbia.

| Grantor(s) | Grantee(s) |
|---|---|
| **MATTHEW E. SHKOR** | **CORNERSTONE CAPITAL, LLC, a Maryland limited liability company by** |
| Typed Name | Typed Name |
| Signature | Signature |
| Date  **5/26/2017** | Date  **5/26/2017** |
| Subscribed to and sworn to before me by Grantor(s) this ___26th___ day of ___May___, 201 7 . | Subscribed to and sworn to before me by Grantee(s) this ___26th___ day of ___May___, 201 7 . |
| Notary Public | Notary Public |
| My Commission Expires: _____ mm/dd/yyyy | My Commission Expires: _____ mm/dd/yyyy |



KEVIN DALE ANDERSON
Notary Public, District of Columbia
My Commission Expires Jan. 31, 2020

KEVIN DALE ANDERSON
Notary Public, District of Columbia
My Commission Expires Jan. 31, 2020

This information is subject to audit within three years of filing.
Please keep all supporting documentation.



modified format

ROD 1 revised 1/2015

# EXHIBIT D

EXHIBIT
**11**

## SECOND MODIFICATION OF PROMISSORY NOTE

This Third Modification of Promissory Note ("<u>Agreement</u>") is made as of the 2 7th day of August, 2018 ("<u>Effective Date</u>"), by and among **POTOMAC CONSTRUCTION 1753 WILLARD, LLC and POTOMAC CONSTRUCTION BILTMORE, LLC** and **CORNERSTONE CAPITAL LLC**.

As used herein, the following terms shall have the following meanings:

"<u>Borrower</u>" shall mean POTOMAC CONSTRUCTION 1753 WILLARD, LLC and POTOMAC CONSTRUCTION BILTMORE, LLC.

"<u>Lender</u>" shall mean CORNERSTONE CAPITAL LLC.

All capitalized terms herein shall have the meaning assigned to them in the Loan Documents (defined below), unless defined herein.

## RECITALS

A.    On May 26, 2017, Lender made a commercial loan to Borrower in the original principal amount of $1,262,500 ("<u>Loan</u>").

B.    The Loan is memorialized by that certain Promissory Note dated May 26, 2017 in the original principal amount of $1,262,500 made by Borrower and payable to the order of Lender ("<u>Note</u>").

C.    The Note currently is secured by the following: (i) that certain Deed of Trust dated May 26, 2017 and recorded among the land records of District of Columbia from Borrower to the benefit of the Lender against the real property and improvements located at 1738 R Street, N.W., Washington, D.C.; and (ii) that certain Deed of Trust dated May 26, 2017 and recorded among the land records of District of Columbia from Borrower to the benefit of the Lender against the real property and improvements located at 1753 Willard Street, N.W., Washington, D.C.; (collectively "<u>Deed of Trust</u>") (1738 R Street, N.W., 1753 Willard Street, N.W., collectively referred to as the "Property).

D.    All documents and instruments evidencing, securing, and relating to the Loan, including, but not limited to, the Note and Deed of Trust, hereinafter are collectively referred to as the "<u>Loan Documents</u>."

E.    The Loan is a lawful, valid, and fully-enforceable debt of Borrower, and the Loan Documents are lawful, valid, and fully-enforceable in accordance with their terms.

F.    As of the Effective Date, the principal balance of the Note is $408,884.89.

G.    The Loan currently has a Maturity Date of October 19, 2018.

H.    Borrower now requests the following: (i) an increase in the Loan in the amount of $756,000 ("Loan Increase"); and (ii) an extension of the Maturity Date through February 28, 2019.

I.    Lender is willing to provide Loan Increase and extend the Maturity Date, but only upon the terms and conditions set forth herein.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and the foregoing recitals being expressly incorporated herein by reference, and notwithstanding anything to the contrary in the Loan Documents, the parties hereto agree as follows:

1.    Borrower represents and warrants to Lender and Trustee that the foregoing recitals, which are incorporated herein by reference, are true, correct, and complete.

2.    Upon the execution of this Agreement by all of the parties hereto, Borrower agrees to pay to Lender the following amounts in consideration of Lender and Trustee entering into this Agreement:  (i) Loan extension fee in the amount of $56,000; (ii) Lender's legal fees and expenses in the amount of $3,750; (iii) Lender's internal and external accounting fees in the amount of $2,000.00; and (iv) $5,281.43, which amount represents interest due under Note through August 31, 2018.  The above amounts shall be deducted from the Loan Increase with the balance to be delivered to Borrower.

3.    The Lender and Borrower agree that following receipt of payments as provided for in Paragraph 2, the Loan balance shall be $1,164,884.89.

4.    Borrower waives and releases all claims against Lender and Trustee, and their agents, employees, and affiliates in connection with the Loan, the Loan Documents, and the Property.

5.    Upon the execution of this Agreement by all of the parties hereto and the payment of the amounts referenced in Paragraph 2, the Maturity Date shall be extended through February 28, 2019.

6.    Notwithstanding the extended Maturity Date, should Borrower satisfy and pay all amounts due and owing on the Note on or before December 31, 2018, and subject to the provisions of Paragraphs 8 and 9 of this Agreement, Borrower shall be entitled to a payoff credit in the amount of $21,000.

7.    The interest rate on the Note shall remain at 15% per annum.

- 2 -

8.    BORROWER SHALL BE REQUIRED TO PAY INTEREST CURRENT ON A MONTHLY BASIS, WHICH PAYMENTS SHALL BE DUE TO LENDER NO LATER THAN THE 3rd DAY OF EACH MONTH. THE FIRST PAYMENT SHALL BE DUE ON OR BEFORE OCTOBER 3, 2018.

Initials

9.    THE FAILURE OF BORROWER TO MAKE ANY INTEREST PAYMENT ON A TIMELY BASIS AS PROVIDED IN PARAGRAPH 8 SHALL AUTOMATICALLY RESULT IN BORROWER FORFEITNG THE $21,000 CREDIT PROVIDED IN PARAGRAPH 6.

Initials

10.    As further consideration for entering into this Agreement, in addition to the Deed of Trust, the Note shall be further secured by Assignment of Proceeds Agreements with (i) Potomac Construction Biltmore, LLC; (ii) 1311 R Street NW LLC.

11.    Except as set forth herein, all terms and conditions of the Loan and the Loan Documents shall remain in full force and effect, and unchanged, except as necessary to be consistent herewith.

**REMAINDER OF THIS PAGE LEFT BLANK INTENTIONALLY
SIGNATURE PAGE TO FOLLOW**

- 3 -

IN WITNESS WHEREOF, the parties hereto have executed this Agreement under seal as of the date first written above.

BORROWER:

POTOMAC CONSTRUCTION
1753 WILLARD, LLC

By: _____ (SEAL)
      Matthew E. Shkor

POTOMAC CONSTRUCTION
BILTMORE, LLC

By: _____ (SEAL)
      Matthew E. Shkor

SEEN AND AGREED:
GUARANTOR

_____ (SEAL)
Matthew E. Shkor

COUNTY OF _____ ) SS:
STATE OF _____ )

    I hereby certify on this 24th day of August, 2018, before me in the jurisdiction aforesaid, did personally appear Matthew E. Shkor, known or satisfactorily proven to be the person whose name is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

My commission expires: _2/14/22_

- 4 -

# EXHIBIT E

# MODIFICATION OF PROMISSORY NOTE

This Modification of Promissory Note ("Agreement") is made as of the 26 day of February, 2019 ("Effective Date"), by and among **POTOMAC CONSTRUCTION 1753 WILLARD, LLC, POTOMAC CONSTRUCTION BILTMORE, LLC** and **CORNERSTONE CAPITAL LLC**.

As used herein, the following terms shall have the following meanings:

"Borrower" shall mean POTOMAC CONSTRUCTION 1753 WILLARD, LLC and POTOMAC CONSTRUCTION BILTMORE, LLC.

"Lender" shall mean CORNERSTONE CAPITAL LLC.

All capitalized terms herein shall have the meaning assigned to them in the Loan Documents (defined below), unless defined herein.

## RECITALS

A.    On May 26, 2017, Lender made a commercial loan to Borrower in the original principal amount of $1,262,500 ("Loan").

B.    The Loan is memorialized by that certain Promissory Note dated May 26, 2017 in the original principal amount of $1,262,500 made by Borrower and payable to the order of Lender ("Note").

C.    The Note currently is secured by the following: (i) that certain Deed of Trust dated May 26, 2017 and recorded among the land records of District of Columbia from Matthew Shkor to the benefit of the Lender against the real property and improvements located at 1738 R Street, N.W., Washington, D.C. ("Deed of Trust") ("Property).

D.    All documents and instruments evidencing, securing, and relating to the Loan, including, but not limited to, the Note and Deed of Trust, hereinafter are collectively referred to as the "Loan Documents."

E.    The Loan is a lawful, valid, and fully-enforceable debt of Borrower, and the Loan Documents are lawful, valid, and fully-enforceable in accordance with their terms.

F.    As of the Effective Date, the principal balance of the Note is $2,193,882.88, which amount includes the prior principal balance of $1,164,884.89 plus all outstanding interest and fees which are being recapitalized as principal as of the Effective Date.

G.    The Loan currently has a Maturity Date of February 28, 2019.

H.    Borrower now requests the following: (i) an increase in the Loan in the amount of

$1,000,000 ("Loan Increase"); and (ii) an extension of the Maturity Date through August 31, 2019.

      I.      Lender is willing to provide Loan Increase and extend the Maturity Date, but only upon the terms and conditions set forth herein.

      **NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and the foregoing recitals being expressly incorporated herein by reference, and notwithstanding anything to the contrary in the Loan Documents, the parties hereto agree as follows:

1. Borrower represents and warrants to Lender and Trustee that the foregoing recitals, which are incorporated herein by reference, are true, correct, and complete.

2. Borrower waives and releases all claims against Lender and Trustee, and their agents, employees, and affiliates in connection with the Loan, the Loan Documents, and the Property.

3. Borrower agrees to pay to Lender the following amounts in consideration of Lender entering into this Agreement: (i) Loan Extension Fee in the amount of $70,000 (retained from Loan Increase); (ii) Lender's legal fees and expenses in the amount of $4,500 (retained from Initial Distribution); (iii) Lender's internal and external accounting fees in the amount of $2,500.00 (retained from Initial Distribution). Following payments of the above amounts, the balance of the Loan Increase shall be delivered to Borrower.

4. The Loan Increase shall be disbursed as follows: (i) $200,000 disbursed upon execution of this Agreement and all related modification documents prepared by Lender ("Initial Distribution"); (ii) $800,000 disbursed in a future draw following Lender's receipt and acceptance (in Lender's sole discretion) of a title commitment confirming the refinance of Lender's loan to Potomac Construction Lowell LLC, which loan is secured by 4537 Lowell Street, N.W., Washington, D.C.

5. The Lender and Borrower agree that upon receipt of payments as provided for in Paragraph 3, the Loan balance shall be $2,193,882.88.

6. The total Loan Extension Fee is $70,000, which shall be withheld from the Loan Increase on the following schedule: (i) $10,000 from the Initial Distribution; and (ii) $60,000 from remaining Loan Increase draw.

7. Upon the execution of this Agreement by all of the parties hereto and the payment of the amounts referenced in Paragraph 3, the Maturity Date shall be extended through August 31, 2019 ("Extended Loan Term").

CSC-00006

8. Borrower may elect to further extend the Maturity Date (the "Extension Option") for one (1) period of three (3) months (the "Option Term"); provided that: (i) neither Borrower nor Guarantor is in default under any of the documents evidencing, securing or implementing the Loan and no event or omission has occurred which with the passage of time or the giving of notice would constitute a default thereunder, (ii) there shall have been no material adverse change in Guarantor's financial condition, as determined by Lender in good faith in its sole discretion, and (iii) Borrower notifies Lender in writing not less than forty-five (45) days (but not more than ninety (90) days) prior to the Maturity Date of Borrower's intention to exercise the Option Term and delivers with such notice, an extension fee equal to 1.5% of the principal balance of the Note.

9. The interest rate on Loan Increase shall increase to 17% percent per annum. The interest on the remaining principal balance of the Note shall remain at 15% per annum.

10. **BORROWER SHALL BE REQUIRED TO PAY INTEREST CURRENT ON A MONTHLY BASIS, WHICH PAYMENTS SHALL BE DUE TO LENDER NO LATER THAN THE 3rd DAY OF EACH MONTH. THE FIRST PAYMENT SHALL BE DUE ON OR BEFORE MARCH 3, 2019.**

<u>Initials</u>

11. Should Borrower satisfy and pay all amounts due and owing on the Note during the first sixty five (65) days of the Extended Loan Term, then Borrower shall be entitled to a Loan Extension Fee Credit in the amount of $10,000 on the interest payment due immediately thereafter.

12. Should Borrower satisfy and pay all amounts due and owing on the Note during the second sixty five (65) days of the Extended Loan Term, then Borrower shall be entitled to an additional Loan Extension Fee Credit in the amount of $10,000 on the interest payment due immediately thereafter.

13. **THE FAILURE OF BORROWER TO MAKE ANY INTEREST PAYMENT ON A TIMELY BASIS AS PROVIDED IN PARAGRAPHS 10, 11 and 12 SHALL AUTOMATICALLY RESULT IN BORROWER FORFEITNG THE LOAN EXTENSION FEE CREDITS PROVIDED IN PARAGRAPHS 11 and 12.**

<u>Initials</u>

14. As further consideration for entering into this Agreement, in addition to the Deed of Trust, the Note shall be further secured by Assignment of Proceeds Agreements with (i) Potomac Construction Biltmore, LLC; (ii) 1311 R Street NW LLC; (iii) Potomac Construction Lowell LLC and (iv) Potomac Construction Shaw LLC.

- 3 -

15. Except as set forth herein, all terms and conditions of the Loan and the Loan Documents shall remain in full force and effect, and unchanged, except as necessary to be consistent herewith.

**REMAINDER OF THIS PAGE LEFT BLANK INTENTIONALLY
SIGNATURE PAGE TO FOLLOW**

- 4 -

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement under seal as of the date first written above.

**BORROWER:**

**POTOMAC CONSTRUCTION
1753 WILLARD, LLC**

By: _____(SEAL)
     Matthew E. Shkor

**POTOMAC CONSTRUCTION
BILTMORE, LLC**

By: _____(SEAL)
     Matthew E. Shkor

**SEEN AND AGREED:
GUARANTOR**

_____(SEAL)
Matthew E. Shkor

COUNTY OF _____) SS:
STATE OF    _____)

    I hereby certify on this _____ day of February, 2019, before me in the jurisdiction aforesaid, did personally appear Matthew E. Shkor, known or satisfactorily proven to be the person whose name is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

My commission expires: _____

KEVIN DALE ANDERSON
Notary Public, District of Columbia
My Commission Expires Jan. 31, 2020

- 5 -

# EXHIBIT F

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

CORNERSTONE CAPITAL, LLC                    *

        Plaintiff,                      *

v.                                          *        Case No. 482916V

MATTHEW SHKOR, *et al.*                     *

        Defendant                       *

*   *   *   *   *   *   *   *   *   *   *   *   *

## JUDGMENT BY CONFESSION

Upon consideration of Plaintiff's Complaint for Judgment by Confession, the supporting affidavits and documentation, and the record herein, it is this _31_ day of _July_, 2020, by the Circuit Court for Montgomery County, Maryland, hereby,

**ORDERED**, that the Clerk is directed to enter a judgment by confession in favor of the Plaintiff and against the Defendants, Matthew Shkor, Potomac Construction 1753 Willard LLC, and Potomac Construction Biltmore, LLC, jointly and severally, in the sum of Two Million Five Hundred Seventeen Thousand Seventy-Seven and 83/100 Dollars ($2,517,077.83), comprised of Principal, Interest, Extension Fee, Interest on Extension Fee, Attorney Fees of $1,500.00 and Costs; and it is further

**ORDERED**, that in accordance with Maryland Rule 2-611(c) the Clerk shall issue a Notice to be served by Plaintiff on the Defendants, in accordance with Maryland Rule 2-121(a), informing the Defendants of the entry of judgment and of the latest time for filing a motion to open, modify or vacate the judgment.

_____
Judge, Circuit Court for Montgomery County, Maryland

Jeannie E. Cho
Judge

**ENTERED**

AUG 0 3 2020 AH

Clerk of the Circuit Court
Montgomery County, Md.

THIS IS A PROPER ORDER
TO BE SIGNED

SARAH I. MALIK
SPECIAL MAGISTRATE

5

# STATE OF MARYLAND

# COUNTY OF MONTGOMERY, to wit:

I HEREBY CERTIFY that the foregoing is a full, true and correct copy of
NOTICE OF JUDGMENT ENTERED ON 08/03/2020 IN

No. 482916-V, truly taken and copied from the record of proceedings
in the Circuit Court for Montgomery County, Maryland, in the foregoing case.

NOTE: A raised seal authenticates each document herein.



In Testimony Whereof, I have hereunto subscribed my name
and affixed the seal of the Circuit Court for Montgomery
County this 15th day of October, A.D. 2020.

Barbara H. Meiklejohn
*Clerk of the Circuit Court for Montgomery County*

CIV00002 20091208

## STATE OF MARYLAND, MONTGOMERY COUNTY, To-wit:

I, *Robert A. Greenberg*, Presiding Judge of the Circuit Court for Montgomery County, State of Maryland, do hereby certify that the foregoing attestation is in due form and by the proper officer.

Given under my hand this 15th day of October, A.D., 2020.



*Robert A. Greenberg*
_____

*Presiding Judge of the Circuit Court for*
*Montgomery County, Maryland*

## STATE OF MARYLAND, MONTGOMERY COUNTY, To-wit:

I hereby certify that the Honorable *Robert A. Greenberg*, whose signature is subscribed to the aforegoing certificate, was at the time of signing the same Presiding Judge of the Circuit Court for Montgomery County, Maryland, duly commissioned and qualified.

In Testimony Whereof I hereunto subscribe my name and affix the Seal of the Circuit Court for Montgomery County, Maryland, this 15th day of October, A.D., 2020.

*Benn TTT*
_____

*Clerk of the Circuit Court for Montgomery*
*County, Maryland*

CIV4 20091208

# EXHIBIT G

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Matthew Edward Shkor |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | District of Columbia |
| Case number | 21-00041-ELG |

## Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Cornerstone Capital LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Catherine Keller Hopkin, Esquire
Name

185 Admiral Cochrane Drive, Suite 130
Number    Street

Annapolis          MD          21401
City                State        ZIP Code

Contact phone  (443) 569-0788

Contact email  chopkin@yvslaw.com

**Where should payments to the creditor be sent?** (if different)

_____
Name

_____
Number    Street

_____
City          State          ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____      Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

---

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

6. **Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

---

7. **How much is the claim?** $_____3,577,790.46_____ **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Judgment/Guaranty of Indebtedness and Money Loaned

---

9. **Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☑ Other. Describe:    1738 R Street NW, Washington, DC 20009

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____2,646,034.90[1]

**Amount of the claim that is unsecured:** $_____931,755.56 (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed) 10.00 %

☑ Fixed

☐ Variable

---

10. **Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

---

11. **Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

---

[1] Amount secured reflects secured claim with respect to collateral owned by this Debtor; Cornerstone Capital LLC reserves all rights with respect to any lien it has on collateral owned by other debtors and/or non-debtor parties, securing any claim(s) of Capital Cornerstone LLC.

| 12. | **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | | |
|---|---|---|---|
| | A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No | |
| | | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| | | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

| **Part 3:** | **Sign Below** |
|---|---|

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    05/21/2021
               MM / DD / YYYY

_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Mark | D | Schuman |
|---|---|---|---|
| | First name | Middle name | Last name |

| Title | Manager |
|---|---|

| Company | Cornerstone Capital LLC |
|---|---|
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |

| Address | c/o Catherine Keller Hopkin, Esquire |
|---|---|
| | 185 Admiral Cochrane Drive, Suite 130 |
| | Number      Street |
| | Annapolis, Maryland  21401 |
| | City                        State      ZIP Code |

| Contact phone | (443) 569-0788 | Email | chopkin@yvslaw.com |
|---|---|---|---|

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re:                                    *

MATTHEW EDWARD SHKOR                       *        Case No: 21-00041-ELG
                                                    (Chapter 7)
    Debtor                                 *

*    *    *    *    *    *    *    *    *    *    *    *

<u>RIDER TO PROOF OF CLAIM OF CORNERSTONE CAPITAL LLC</u>

| | |
|---|---|
| Judgment entered August 3, 2020 | $2,517,077.83 |
| Interest (statutory rate of 10% per annum) - $689.61 per diem for 187 days (8/3/20 to 2/5/21) | 128,957.07 |
| Amount due pursuant to guaranty of Commercial Loan Agreement by and between Potomac Construction Shaw LLC and Matthew E. Shkor in favor of Cornerstone Capital LLC dated May 7, 2018 | 931,755.56 |
| **TOTAL CLAIM** | **$3,577,790.46** |

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION–CIVIL ACTIONS BRANCH
### ROOM 5000 - 500 INDIANA AVENUE, NW
### WASHINGTON DC 20001

CASE NO. _____

Cornerstone Capital LLC                     vs. Matthew Shkor, and Potomac Construction 1753 Willard LLC,

c/o Law Offices of John E. Reid, PLLC          Potomac Construction Biltmore, LLC
_____          _____
**Plaintiff (s)  (Judgment Creditor)**          **Defendant  (s) (Judgment Debtor)**

5335 Wisconsin Ave. NW, #700                 1310 Kingman Alley NW
_____          _____
**Address**                                   **Address**

Washington, DC 20015                         Washington, DC 20005
_____          _____
**City, State, Zip Code**                     **City, State, Zip Code**

### REQUEST TO FILE FOREIGN JUDGMENT

To the Clerk:

A ☒ Judgment, ☐ Decree, or ☐ Order of a Court was entered in the case of

Potomac Construction 1753 Willard LLC;

Cornerstone Capital LLC _____  vs. Matthew Shkor ; Potomac Construction Biltmore, LLC
_____
**Plaintiff(s)**                                      **Defendant(s)**

Matthew Shkor; Potomac Construction 1753 Willard LLC; Potomac

**Against** Construction Biltmore, LLC _____  **Judgment Debtor(s)**

in the amount of $ 2,517,077.83 , plus $  0  accrued interest, plus interest at  10  %

per annum from  8/3/2020 ; $  0  costs, $  0  attorney fees.

In the Court of  Circuit Court of Montgomery County, MD _____
**NAME**

50 Maryland Ave.          Rockville               MD                 20850
**Address**              **City**               **State**            **Zip Code**

on  August 3, 2020 _____

A copy of the judgment authenticated in accordance with the laws of the District of Columbia is submitted.

☒ The Judgment Creditor gave notice by mail, to the Judgment Debtor(s), of the filing of the Foreign Judgment.
   Proof of mailing is attached.

**CONTINUE ON REVERSE SIDE**

CV-1950/ Nov. 2009

I solemnly affirm under the penalties of perjury that the contents of the foregoing Papers are true to the best of my knowledge, information and belief, and the addresses given for the Creditor(s) and for the Debtor(s) are the most recent addresses.

| 11/27/2020 | |
|---|---|
| DATE | Signature – Attorney/Judgment Creditor |
| | John E. Reid, Esq.       473541 |
| | Print Name     Bar No. |
| | 5335 Wisconsin Ave. NW, Ste. 700 |
| | Address |
| | Washington, DC 20015 |

## NOTICE TO JUDGMENT DEBTOR OF FILING OF FOREIGN JUDGMENT

The Judgment indicated on the reverse side of this form has been filed in this Court.  A filed foreign judgment has the same effect as a judgment of this Court and is subject to the same procedures.

If the Judgment Debtor shows to the Court that an appeal from the foreign judgment is pending or will be taken, or that a stay of execution has been granted and proves that the Judgment Debtor has furnished the security for the satisfaction of the judgment required by the state in which it was rendered, the Court shall stay enforcement of the foreign judgment until the appeal is concluded, the time for appeal expires, or the stay of execution expires or is vacated.

If the Judgment Debtor shows to the Court any basis in which enforcement of the Court of this jurisdiction would be stayed, the Court shall stay the enforcement of the foreign for an appropriate period, and required the same security for satisfaction of the judgment that is required in this jurisdiction.

Clerk of the Court

By _____

| | |
|---|---|
| Date | Deputy Clerk |

| | |
|---|---|
| | Potomac Construction 1753 Willard LLC |
| | c/o CT Corporation System, Registered Agent |
| | 1015 15TH Street, NW Suite #1000 |
| Matthew Shkor     and | Washington, DC 20005 |
| 1310 Kingman Alley NW | |
| | and |
| Washington , DC 20005 | |
| Please Type the Name and Address | Potomac Construction Biltmore LLC |
| of the Judgment Debtor on the above lines. | c/o CT Corporation System, Registered Agent |
| | 1015 15TH Street, NW Suite #1000 |
| | Washington, DC 20005 |

## CERTIFICATE OF SERVICE

I DO HEREBY CERTIFY that on this __4th__ day of __December__ 20 _20_, a copy of the foregoing Request to File a Foreign Judgment, in the District of Columbia, was mailed, postage prepaid by U.S. Mail to __Matthew Shkor_____ at the last known address of: _____

1310 Kingman Alley NW, Washington, DC 20005 _____

    and
Potomac Construction 1753 Willard LLC
c/o CT Corporation System, Registered Agent
1015 15TH Street, NW Suite #1000
Washington, DC 20005

    and
Potomac Construction Biltmore LLC
c/o CT Corporation System, Registered Agent
1015 15TH Street, NW Suite #1000
Washington, DC 20005

John E. Reid, Esq. _____
Name
  5335 Wisconsin Ave. NW, Ste. 700
Address
    Washington, DC 20015

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

## CIVIL DIVISION

Cornerstone Capital LLC
_____

Plaintiff(s)

vs.

Matthew Shkor; Potomac Construction 1753 Willard LLC; Potomac Construction Biltmore LLC

Defendant(s)

Case Number: _____

### CERTIFICATION REGARDING INTEREST RATES

_____John E. Reid, Esq._____ hereby certifies that she/he is the plaintiff/counsel for the plaintiff and that she/he has investigated and determined that __10__% per annum was the legal rate if interest on this judgment from the State of ____Maryland_____ during the period from __August 3, 2020 to present date.__ .

_____ Bar No. 473541
Signature/Attorney for Plaintiff

**If you are representing yourself, this certification must be notarized.**

I, _____, plaintiff in this action, have appeared before a Notary Public/Deputy Clerk and sworn or affirmed that the above is true and correct based on my personal knowledge.

_____
Signature/Pro Se Plaintiff

Subscribed and sworn to before me on

_____

_____
Notary Public/Deputy Clerk

IN THE RECORDS OF THE CIRCUIT COURT
FOR MONTGOMERY COUNTY, STATE OF MARYLAND,
AMONG OTHER PROCEEDINGS
IS THE FOLLOWING, TO WIT:

08/03/2020 12:45:29  Addressee Check Sheet - 482916-V    DOCKET 7      Page 01

CORNERSTONE CAPITAL LLC
C/O JOHN E REID ESQ
5335 WISCONSIN AVE NW #700
WASHINGTON DC 20015

MATTHEW SHKOR
1738 R ST NW
WASHINGTON DC 20008

POTOMAC CONTRUCTION 1753 WILLARD LLC
1738 R ST NW
WASHINGTON DC 20008

POTOMAC CONSTRUCTION BILTMORE LLC
1738 R ST NW
WASHINGTON DC 20008

JOHN E REID, ESQ
LAW OFFICES OF JOHN E. REID, PLLC
5335 WISCONSIN AVE NW STE 700
WASHINGTON DC 20015

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

CORNERSTONE CAPITAL LLC
   Plaintiff

            vs.                        Case No. 482916-V

MATTHEW SHKOR, ET AL
   Defendant

### NOTICE OF JUDGMENT
(817)

**I HEREBY CERTIFY** that the following Judgment was entered in the above

entitled case on August 3rd, 2020:

CASE DOCKETED AND JUDGMENT BY CONFESSION IS ENTERED IN FAVOR OF THE
PLAINTIFF AND AGAINST THE DEFENDANTS, MATTHEW SHKOR, POTOMAC
CONSTRUCTION 1753 WILLARD LLC, AND POTOMAC CONSTRUCTION BILTMORE, LLC,
JOINTLY AND SEVERALLY, IN THE SUM OF TWO MILLION FIVE HUNDRED
SEVENTEEN THOUSAND SEVENTY-SEVEN AND 83/100 DOLLARS ($2,517,077.83)
COMPRISED OF PRINCIPAL, INTEREST, EXTENSION FEE, INTEREST ON EXTENSION
FEE, ATTORNEY FEES OF $1,500.00 AND COSTS.

**IN TESTIMONY WHEREOF,** I hereunto set my hand and affix the seal of

this Court.

_____
Clerk of the Circuit Court for
Montgomery County, Maryland

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

CORNERSTONE CAPITAL, LLC                    *

                    Plaintiff,              *

v.                                          *        Case No. 482916V

MATTHEW SHKOR, *et al.*                     *

                    Defendant               *

*      *      *      *      *      *      *      *      *      *      *      *      *

## JUDGMENT BY CONFESSION

Upon consideration of Plaintiff's Complaint for Judgment by Confession, the supporting

affidavits and documentation, and the record herein, it is this 3/ day of _____ July _____,

2020, by the Circuit Court for Montgomery County, Maryland, hereby,

**ORDERED**, that the Clerk is directed to enter a judgment by confession in favor of the

Plaintiff and against the Defendants, Matthew Shkor, Potomac Construction 1753 Willard LLC,

and Potomac Construction Biltmore, LLC, jointly and severally, in the sum of Two Million Five

Hundred Seventeen Thousand Seventy-Seven and 83/100 Dollars ($2,517,077.83), comprised of

Principal, Interest, Extension Fee, Interest on Extension Fee, Attorney Fees of $1,500.00 and

Costs; and it is further

**ORDERED**, that in accordance with Maryland Rule 2-611(c) the Clerk shall issue a

Notice to be served by Plaintiff on the Defendants, in accordance with Maryland Rule 2-121(a),

informing the Defendants of the entry of judgment and of the latest time for filing a motion to

open, modify or vacate the judgment.

_____
Judge, Circuit Court for Montgomery County, Maryland
**Jeannie E. Cho**
**Judge**

**ENTERED**

AUG 0 3 2020 AH

Clerk of the Circuit Court
Montgomery County, Md.

THIS IS A PROPER ORDER
TO BE SIGNED

**SARAH I. MALIK**
SPECIAL MAGISTRATE

5

# STATE OF MARYLAND

# COUNTY OF MONTGOMERY, to wit:

I HEREBY CERTIFY that the foregoing is a full, true and correct copy of
NOTICE OF JUDGMENT ENTERED ON 08/03/2020 IN

No. 482916-V, truly taken and copied from the record of proceedings
in the Circuit Court for Montgomery County, Maryland, in the foregoing case.

NOTE: A raised seal authenticates each document herein.



In Testimony Whereof, I have hereunto subscribed my name
and affixed the seal of the Circuit Court for Montgomery
County this 15th day of October, A.D. 2020.

Barbara H. Meiklejohn
*Clerk of the Circuit Court for Montgomery County*

Case 1:20-cv-00404-ELG-GC Claim Doc 22-8 Filed 05/24/21 Desc Main Doc 04/18/24 13:36:04 Page 14 of 10

Exhibits A-K   Page 69 of 191

# STATE OF MARYLAND, MONTGOMERY COUNTY, To-wit:

I, *Robert A. Greenberg*, Presiding Judge of the Circuit Court for Montgomery County, State of Maryland, do hereby certify that the foregoing attestation is in due form and by the proper officer.

Given under my hand this 15th day of October, A.D., 2020.



*Robert A. Greenberg*

*Presiding Judge of the Circuit Court for*
*Montgomery County, Maryland*

# STATE OF MARYLAND, MONTGOMERY COUNTY, To-wit:

I hereby certify that the Honorable *Robert A. Greenberg*, whose signature is subscribed to the aforegoing certificate, was at the time of signing the same Presiding Judge of the Circuit Court for Montgomery County, Maryland, duly commissioned and qualified.

In Testimony Whereof I hereunto subscribe my name and affix the Seal of the Circuit Court for Montgomery County, Maryland, this 15th day of October, A.D., 2020.

*Clerk of the Circuit Court for Montgomery*
*County, Maryland*

footer CIV4 20091208

Doc #: 2017068787

**RETURN TO:**
Standard Title Group, LLC
1734 20th Street, NW
Washington, DC 20009

Tax Parcel I.D. No.   SSL: 0155 0152
**Title Insurer:**
STG File No.: DC17-0384

<div align="center">

**DEED OF TRUST, SECURITY AGREEMENT,**
**ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FILING**

</div>

      **THIS DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FILING** (**"Deed of Trust"**) is made as of **May 26, 2017**, (the **"Effective Date"**) by **Matthew E. Shkor** (**"Trustor"**) to **Jacob A. Ginsberg, Esquire**, and **Benjamin Smith, Esquire**, trustees, either of whom may act alone (collectively, **"Trustee"**), whose address is 12505 Park Potomac Avenue, Potomac, MD 20854, for the use and benefit of **Cornerstone Capital LLC,** a Maryland limited liability company (**"Lender"**), with an address of care of Renaissance Realty Management, LLC, 1801 Pennsylvania Avenue, N.W., Suite 700, Washington, D.C. 20006, and any successor holder of the Note secured by this Deed of Trust (**"Beneficiary"**):

<div align="center">

**R E C I T A L S:**

</div>

      (A)     Beneficiary has agreed to loan to Potomac Construction 1753 Willard, LLC and Potomac Construction Biltmore, LLC, District of Columbia limited liability companies, the principal amount of **One Million Two Hundred Sixty-Two Thousand Five Hundred and No/100 Dollars ($1,262,500.00)** (**"Loan"**). The Loan shall be evidenced by a certain Promissory Note of even date herewith (as amended, restated or replaced from time to time, **"Note"**) made by Trustor payable to Beneficiary in the original principal amount of the Loan and due on the Maturity Date (as defined in the Note), except as may be accelerated pursuant to the terms hereof or of the Note or any other Loan Document (as defined in the Note). The Loan has been Guaranteed by Matthew E. Shkor purusant ot the that certain Guaranty of Payment and Performance of even date herewith.

      (B)     A condition precedent to Beneficiary's extension of the Loan to Trustor is, among other things, the execution and delivery by Trustor of this Deed of Trust.

      **NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Trustor agrees as follows:

      In order to secure the payment of the indebtedness hereinafter referred to and the performance of the obligations, covenants, agreements, warranties and undertakings of Trustor hereinafter described, Trustor hereby GRANTS, BARGAINS, SELLS, CONVEYS, TRANSFERS, ASSIGNS, MORTGAGES, WARRANTS AND SETS OVER to Trustee for the benefit of Beneficiary, its successors and assigns, and grants to Beneficiary a security interest in, the following described property, rights and interest (referred collectively herein as **"Premises"**) all of which property, rights and interest are hereby granted and pledged primarily and on parity with the real estate (as defined below) and not secondarily:

      **THE REAL ESTATE** located at **1738 R Street NW, Washington DC 20009** and legally described on Exhibit A attached hereto and made a part hereof (**"Real Estate"**);

      **TOGETHER WITH** all improvements of every nature whatsoever now or hereafter situated on the Real Estate, and all fixtures and personal property of every nature whatsoever now or hereafter owned by Trustor and located on, or used in connection with the Real Estate or the improvements thereon, or in connection with any construction thereon, including all extensions, additions, improvements, betterments, renewals, substitutions and replacements to any of the foregoing and all of the right, title and interest of Trustor in and to any such personal property or fixtures together with the benefit of any deposits or payments now or hereafter made on such personal property or fixtures by Trustor or on its behalf (**"Improvements"**);

      **TOGETHER WITH** all easements, rights of way, gores of real estate, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, mineral rights, air rights, development rights and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances whatsoever, in any way now or hereafter belonging, relating or appertaining to the Real Estate, and the reversions, remainders, rents, issues and profits thereof, and all the estate, right, title, interest, property, possession, claim and demand whatsoever, at law as well as in equity, of Trustor of, in and to the same;

      **TOGETHER WITH** all rents, revenues, issues, profits, proceeds, income, royalties, "accounts," including "health-care-insurance receivables," escrows, letter-of-credit rights (each as defined in the Code hereinafter defined), security deposits, impounds,

<div align="center">1</div>

Case 1:21-cv-00404-ELG-LGG Doc 22-8 Filed 05/24/21 Desk Material Doc 10/8/21 13:36:04 10 of 10
Case 1:21-cv-00404-ELG-LGG Doc 22-8 Filed 05/24/21 Desk Material Doc 10/8/21 13:36:04 Page 16 of 10
Exhibits A-K    Page 71 of 191

reserves, tax refunds and other rights to monies from the Premises and/or the businesses and operations conducted by Trustor thereon, to be applied against the Indebtedness (hereinafter defined), all of which Trustor hereby absolutely and unconditionally assigns to Beneficiary; provided, however, that Trustor, so long as no Event of Default (as hereinafter defined) has occurred hereunder, may collect rent as it becomes due, but not more than one (1) month in advance thereof;

**TOGETHER WITH** all interest of Trustor in all leases now or hereafter of all or a portion of the Premises, whether written or oral (**"Leases"**), together with all security therefor and all monies payable thereunder, all of which Trustor hereby absolutely and unconditionally assigns to Beneficiary; subject, however, to the conditional permission hereinabove given to Trustor to collect the rentals under any such Lease;

**TOGETHER WITH** all fixtures and articles of personal property now or hereafter owned by Trustor and forming a part of or used in connection with the Real Estate or the Improvements, including, but without limitation, any and all air conditioners, antennae, appliances, apparatus, awnings, basins, bathtubs, bidets, boilers, bookcases, cabinets, carpets, coolers, curtains, dehumidifiers, disposals, doors, drapes, dryers, ducts, dynamos, elevators, engines, equipment, escalators, exercise equipment, fans, fittings, floor coverings, furnaces, furnishings, furniture, hardware, heaters, humidifiers, incinerators, lighting, machinery, motors, ovens, pipes, plumbing, pumps, radiators, ranges, recreational facilities, refrigerators, screens, security systems, shades, shelving, sinks, sprinklers, stokers, stoves, toilets, ventilators, wall coverings, washers, windows, window coverings, wiring, and all renewals or replacements thereof or articles in substitution therefor, whether or not the same are or shall be attached to the Real Estate or the Improvements in any manner; it being mutually agreed that all of the aforesaid property owned by Trustor and placed on the Real Estate or the Improvements, so far as permitted by law, shall be deemed to be fixtures, a part of the realty, and security for the Indebtedness (as hereinafter defined); notwithstanding the agreement hereinabove expressed that certain articles of property form a part of the realty covered by this Deed of Trust and be appropriated to its use and deemed to be realty, to the extent that such agreement and declaration may not be effective and that any of said articles may constitute goods (as said term is used in the Uniform Commercial Code as adopted in the District of Columbia in effect from time to time (**"Code"**), this instrument shall constitute a security agreement, creating a security interest in such goods, as collateral, in Beneficiary, as a secured party, and Trustor, as Debtor, all in accordance with the Code; and

**TOGETHER WITH** all of Trustor's interests in "general intangibles" including "payment intangibles" and "software" (each as defined in the Code) now owned or hereafter acquired and related to the Premises, including, without limitation, all of Trustor's right, title and interest in and to: (i) all agreements, licenses, permits and contracts to which Trustor is or may become a party and which relate to the Premises; (ii) all obligations and indebtedness owed to Trustor thereunder; (iii) all intellectual property related to the Premises; and (iv) all choses in action and causes of action relating to the Premises;

**TOGETHER WITH** all of Trustor's accounts now owned or hereafter created or acquired as they relate to the Premises, including, without limitation, all of the following now owned or hereafter created or acquired by Trustor: (i) accounts, contract rights, health-care-insurance receivables, book debts, notes, drafts, and other obligations or indebtedness owing to the Trustor arising from the sale, lease or exchange of goods or other property and/or the performance of services; (ii) the Trustor's rights in, to and under all purchase orders for goods, services or other property; (iii) the Trustor's rights to any goods, services or other property represented by any of the foregoing; (iv) monies due to become due to the Trustor under all contracts for the sale, lease or exchange of goods or other property and/or the performance of services including the right to payment of any interest or finance charges in respect thereto (whether or not yet earned by performance on the part of the Trustor); (v) "securities," "investment property," "financial assets," and "securities entitlements" (each as defined in the Code); (vi) proceeds of any of the foregoing and all collateral security and guaranties of any kind given by any person or entity with respect to any of the foregoing; and (vii) all warranties, guarantees, permits and licenses in favor of Trustor with respect to the Premises;

**TOGETHER WITH** all proceeds of the foregoing, including, without limitation, all judgments, awards of damages and settlements hereafter made resulting from condemnation proceeds or the taking of the Premises or any portion thereof under the power of eminent domain, any proceeds of any policies of insurance, maintained with respect to the Premises or proceeds of any sale, option or contract to sell the Premises or any portion thereof.

**TO HAVE AND TO HOLD** the Premises unto Trustee, and its successors and substitutes in this trust and to its and their successors and assigns, in trust, WITH POWER OF SALE AND THE RIGHT OF RE-ENTRY AND POSSESSION, for the benefit of Beneficiary and its successors and assigns, upon the terms, provisions and conditions herein set forth.

**FOR THE PURPOSE OF SECURING THE FOLLOWING (collectively referred to herein as the "Indebtedness"):** (i) the payment of the Loan and all interest, late charges, prepayment premium (if any), Prepayment Fee (if any) and other indebtedness obligations, fees and expenses for letters of credit issued by Beneficiary for the benefit of Trustor, if any, and other indebtedness evidenced by or owing under the Note, any of the other Loan Documents, any interest rate swap or hedge agreement now or hereafter entered into between Trustor and Beneficiary and any application for letters of credit and master letter of credit agreement, together

with any extensions, modifications, renewals or refinancings of any of the foregoing; (ii) the performance and observance of the covenants, conditions, agreements, representations, warranties and other liabilities and obligations of Trustor or any other obligor to or benefiting Beneficiary which are evidenced or secured by or otherwise provided in the Note, this Deed of Trust or any of the other Loan Documents, dated on or about the Effective Date which obligations, notwithstanding anything to the contrary in this Deed of Trust, shall not be secured by this Deed of Trust; and (iii) the reimbursement to Beneficiary of any and all sums incurred, expended or advanced by Beneficiary pursuant to any term or provision of or constituting additional indebtedness under or secured by this Deed of Trust, any of the other Loan Documents, any interest rate swap or hedge agreement or any application for letters of credit and master letter of credit agreement, with interest thereon as provided herein or therein.

**IT IS FURTHER UNDERSTOOD AND AGREED THAT:**

1.     **Title**.  Trustor represents, warrants and covenants that (a) Trustor is the holder of the fee simple title to the Premises, free and clear of all liens and encumbrances, except those liens and encumbrances in favor of Beneficiary and as otherwise described on the title insurance policy accepted by Beneficiary (**"Permitted Exceptions"**); and (b) Trustor has legal power and authority to mortgage and convey the Premises.

2.     **Maintenance, Repair, Restoration, Prior Liens, Parking**.  Trustor covenants that, so long as any portion of the Indebtedness remains unpaid, Trustor will:

(a)     promptly repair, restore or rebuild any Improvements now or hereafter on the Premises which may become damaged or be destroyed to a condition substantially similar to the condition immediately prior to such damage or destruction, whether or not proceeds of insurance are available or sufficient for the purpose;

(b)     keep the Premises in good condition and repair, without waste, and free from mechanics', materialmen's or like liens or claims or other liens or claims for lien (collectively, **"Mechanics' Liens"**);

(c)     pay when due the Indebtedness in accordance with the terms of the Note and the other Loan Documents and duly perform and observe all of the terms, covenants and conditions to be observed and performed by Trustor under the Note, this Deed of Trust and the other Loan Documents;

(d)     pay when due any indebtedness which may be secured by a permitted lien or charge on the Premises on a parity with, superior to or inferior to, the lien hereof, and upon request exhibit satisfactory evidence of the discharge of such lien to the Beneficiary;

(e)     complete within a reasonable time any Improvements now or at any time in the process of erection upon the Premises;

(f)     comply with all requirements of law, municipal ordinances or restrictions and covenants of record with respect to the Premises and the use thereof;

(g)     obtain and maintain in full force and effect, and abide by and satisfy the material terms and conditions of, all material permits, licenses, registrations and other authorizations with or granted by any governmental authorities that may be required from time to time with respect to the performance of its obligations under this Deed of Trust;

(h)     make no material alterations in the Premises or demolish any portion of the Premises without Beneficiary's prior written consent, except as required by law or municipal ordinance;

(i)     suffer or permit no change in the use or general nature of the occupancy of the Premises, without the Beneficiary's prior written consent;

(j)     pay when due all operating costs of the Premises;

(k)     not initiate or acquiesce in any zoning reclassification with respect to the Premises, without Beneficiary's prior written consent;

(l)     provide and thereafter maintain adequate parking areas within the Premises as may be required by law, ordinance or regulation (whichever may be greater), together with any sidewalks, aisles, streets, driveways and sidewalk cuts and sufficient paved areas for ingress, egress and right-of-way, to and from the adjacent public thoroughfares necessary or desirable for the use thereof; and

3

(m)    cause the Premises at all times to be operated in compliance with all federal, state, local and municipal environmental, health and safety laws, statutes, ordinances, rules and regulations, including, without limitation, Trustor will (i) ensure, and cause each of its subsidiaries to ensure, that no person who owns twenty percent (20.00%) or more of the equity interests in the Trustor, or otherwise controls the Trustor or any of its subsidiaries is or shall be listed on the Specially Designated Nationals and Blocked Person List or other similar lists maintained by the Office of Foreign Assets Control (**"OFAC"**), the Department of the Treasury or included in any Executive Orders, (ii) not use or permit the use of the proceeds of the Loan to violate any of the foreign asset control regulations of OFAC or any enabling statute or Executive Order relating thereto, and (iii) comply, and cause each of its subsidiaries to comply, with all applicable Bank Secrecy Act laws and regulations, as amended.

3.    **Payment of Taxes and Assessments; Removal of Mechanics' Liens**. Trustor will pay when due and before any penalty attaches, all general and special taxes, assessments, water charges, sewer charges, and other fees, taxes, charges and assessments of every kind and nature whatsoever (all herein generally called **"Taxes"**), whether or not assessed against Trustor, if applicable to the Premises or any interest therein, or the Indebtedness, or any obligation or agreement secured hereby, subject to Trustor's right to contest the same, as provided by the terms hereof; and Trustor will, upon written request, furnish to the Beneficiary duplicate receipts therefor within ten (10) days after Beneficiary's request.

4.    **Insurance**.

(a)    Trustor shall at all times keep all buildings, improvements, fixtures and articles of personal property now or hereafter situated on the Premises insured against loss or damage by fire and such other hazards as may reasonably be required by Beneficiary, in accordance with the terms, coverages and provisions reasonably acceptable to Beneficiary, and such other insurance as Beneficiary may from time to time reasonably require. Unless Trustor provides Beneficiary evidence of the insurance coverages required hereunder, Beneficiary may purchase insurance at Trustor's expense to cover Beneficiary's interest in the Premises. The insurance may, but need not, protect Trustor's interest. The coverages that Beneficiary purchases may not pay any claim that Trustor makes or any claim that is made against Trustor in connection with the Premises. Trustor may later cancel any insurance purchased by Beneficiary, but only after providing Beneficiary with evidence that Trustor has obtained insurance as required by this Deed of Trust. If Beneficiary purchases insurance for the Premises, Trustor will be responsible for the costs of such insurance, including, without limitation, interest and any other charges which Beneficiary may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to the Indebtedness. The cost of the insurance may be more than the cost of insurance Trustor may be able to obtain on its own.

(b)    Trustor shall not take out separate insurance concurrent in form or contributing in the event of loss with that required to be maintained hereunder unless Beneficiary is included thereon as the loss payee or an additional insured as applicable, under a standard deed of trust clause acceptable to Beneficiary and such separate insurance is otherwise acceptable to Beneficiary.

(c)    In the event of a loss, Trustor shall give prompt notice thereof to Beneficiary, who shall have the sole and absolute right to make proof of loss. Beneficiary, solely and directly, shall receive such payment for loss from each insurance company concerned. Beneficiary shall have the right, at its option and in its sole discretion, to apply any insurance proceeds received by Beneficiary pursuant to the terms of this section, after the payment of all of Beneficiary's expenses, either (i) on account of the Indebtedness, irrespective of whether such principal balance is then due and payable, whereupon Beneficiary may declare the whole of the balance of Indebtedness, plus the "Prepayment Fee" (as defined in the Note), to be due and payable, or (ii) to the restoration or repair of the property damaged as provided in subsection (d) below; provided, however, that Beneficiary hereby agrees to permit the application of such proceeds to the restoration or repair of the damaged property, subject to the provisions of subsection (d) below, if (i) Beneficiary has received satisfactory evidence that such restoration or repair shall be completed no later than the date that is two (2) months prior to the Maturity Date; (ii) that the insurance proceeds will cover all costs of restoration or repair; and (iii) no Event of Default, or event that with the passage of time, the giving of notice or both would constitute an Event of Default, then exists. If insurance proceeds are made available to Trustor by Beneficiary as hereinafter provided, Trustor shall repair, restore or rebuild the damaged or destroyed portion of the Premises so that the condition and value of the Premises are substantially the same as the condition and value of the Premises prior to being damaged or destroyed. Any insurance proceeds applied on account of the unpaid principal balance of the Note shall be subject to the Prepayment Fee. In the event of foreclosure of this Deed of Trust, all right, title and interest of Trustor in and to any insurance policies then in force shall pass to the purchaser at the foreclosure sale.

(d)    If insurance proceeds are made available by Beneficiary to Trustor, Trustor shall comply with the following conditions:

4

(i)     Before commencing to repair, restore or rebuild following damage to, or destruction of, all or a portion of the Premises, whether by fire or other casualty, Trustor shall obtain from Beneficiary its approval of all site and building plans and specifications pertaining to such repair, restoration or rebuilding.

(ii)     Prior to each payment or application of any insurance proceeds to the repair or restoration of the improvements upon the Premises to the extent permitted in subsection (c) above (which payment or application may be made, at Beneficiary's option, through an escrow, the terms and conditions of which are satisfactory to Beneficiary and the cost of which is to be borne by Trustor), Beneficiary shall be satisfied as to the following:

(1)     no Event of Default or any event which, with the passage of time or giving of notice would constitute an Event of Default, has occurred;

(2)     either such Improvements have been fully restored, or the expenditure of money as may be received from such insurance proceeds will be sufficient to repair, restore or rebuild the Premises, free and clear of all liens, claims and encumbrances, except the lien of this Deed of Trust and the Permitted Exceptions, or, if such insurance proceeds shall be insufficient to repair, restore and rebuild the Premises, Trustor has deposited with Beneficiary such amount of money which, together with the insurance proceeds shall be sufficient to restore, repair and rebuild the Premises; and

(3)     prior to each disbursement of any such proceeds, Beneficiary shall be furnished with a statement of Beneficiary's architect (the cost of which shall be borne by Trustor), certifying the extent of the repair and restoration completed to the date thereof, and that such repairs, restoration, and rebuilding have been performed to date in conformity with the plans and specifications approved by Beneficiary and with all statutes, regulations or ordinances (including building and zoning ordinances) affecting the Premises; and Beneficiary shall be furnished with appropriate evidence of payment for labor or materials furnished to the Premises, and total or partial lien waivers substantiating such payments, and title insurance endorsements in form satisfactory to Beneficiary, insuring the continuing first priority of this Deed of Trust, subject only to the Permitted Exceptions.

(iii)     If Trustor shall fail to restore, repair or rebuild the Improvements within a time deemed reasonably satisfactory by Beneficiary, then Beneficiary, at its option, may (a) commence and perform all necessary acts to restore, repair or rebuild the said Improvements for or on behalf of Trustor, or (b) declare an Event of Default. If insurance proceeds shall exceed the amount necessary to complete the repair, restoration or rebuilding of the Improvements, such excess shall be applied on account of the Indebtedness irrespective of whether such Indebtedness is then due and payable without payment of any premium or penalty.

5.     **Condemnation**. If all or any part of the Premises are damaged, taken or acquired, either temporarily or permanently, in any condemnation proceeding, or by exercise of the right of eminent domain, the amount of any award or other payment for such taking or damages made in consideration thereof, to the extent of the full amount of the remaining unpaid Indebtedness, is hereby assigned to Beneficiary, who is empowered to collect and receive the same and to give proper receipts therefor in the name of Trustor and the same shall be paid forthwith to Beneficiary. Such award or monies shall be applied on account of the Indebtedness, irrespective of whether such Indebtedness is then due and payable and, at any time from and after the taking Beneficiary may declare the whole of the balance of the Indebtedness, plus the Prepayment Fee, to be due and payable. Notwithstanding the provisions of this section to the contrary, if any condemnation or taking of less than the entire Premises occurs and provided that no Event of Default and no event or circumstance which with the passage of time, the giving of notice or both would constitute an Event of Default then exists, and if such partial condemnation, in the reasonable discretion of Beneficiary, has no material adverse effect on the operation or value of the Premises, then the award or payment for such taking or consideration for damages resulting therefrom may be collected and received by Trustor, and Beneficiary hereby agrees that in such event it shall not declare the Indebtedness to be due and payable, if it is not otherwise then due and payable.

6.     **Stamp Tax**. If, by the laws of the United States of America, or of any state or political subdivision having jurisdiction over Trustor, any tax is due or becomes due in respect of the execution and delivery of this Deed of Trust, the Note or any of the other Loan Documents, Trustor shall pay such tax in the manner required by any such law. Trustor further agrees to reimburse Beneficiary for any sums which Beneficiary may expend by reason of the imposition of any such tax. Notwithstanding the foregoing, Trustor shall not be required to pay any income or franchise taxes of Beneficiary.

7.     **Effect of Extensions of Time and Other Changes**. If the payment of the Indebtedness or any part thereof is extended or varied, if any part of any security for the payment of the Indebtedness is released, if the rate of interest charged under the Note is changed or if the time for payment thereof is extended or varied, all persons now or at any time hereafter liable therefor, or

interested in the Premises or having an interest in Trustor, shall be held to assent to such extension, variation, release or change and their liability and the lien and all of the provisions hereof shall continue in full force, any right of recourse against all such persons being expressly reserved by Beneficiary, notwithstanding such extension, variation, release or change.

8.     **Effect of Changes in Laws Regarding Taxation**.  If any law is enacted after the Effective Date requiring (a) the deduction of any lien on the Premises from the value thereof for the purpose of taxation or (b) the imposition upon Beneficiary of the payment of the whole or any part of the Taxes, charges or liens herein required to be paid by Trustor, or (c) a change in the method of taxation of mortgages or debts secured by mortgages or Beneficiary's interest in the Premises, or the manner of collection of taxes, so as to affect this Deed of Trust or the Indebtedness of the holders thereof, then Trustor, upon demand by Beneficiary, shall pay such Taxes or charges, or reimburse Beneficiary therefor; provided, however, that Trustor shall not be deemed to be required to pay any income or franchise taxes of Beneficiary.  Notwithstanding the foregoing, if in the opinion of counsel for Beneficiary it is or may be unlawful to require Trustor to make such payment or the making of such payment might result in the imposition of interest beyond the maximum amount permitted by law, then Beneficiary may declare all of the Indebtedness to be immediately due and payable.

9.     **Beneficiary's Performance of Defaulted Acts and Expenses Incurred by Beneficiary**.  If an Event of Default has occurred, Beneficiary may, but need not, make any payment or perform any act herein required of Trustor in any form and manner deemed expedient by Beneficiary, and may, but need not, make full or partial payments of principal or interest on prior encumbrances, if any, and purchase, discharge, compromise or settle any tax lien or other prior lien or title or claim thereof, or redeem from any tax sale or forfeiture affecting the Premises or consent to any tax or assessment or cure any default of Trustor in any lease of the Premises. All monies paid for any of the purposes herein authorized and all expenses paid or incurred in connection therewith, including reasonable attorneys' fees, and any other monies advanced by Beneficiary in regard to any tax or to protect the Premises or the lien hereof, shall be so much additional Indebtedness, and shall become immediately due and payable by Trustor to Beneficiary, upon demand, and with interest thereon accruing from the date of such demand until paid at the Default Rate (as defined in the Note) then in effect.  In addition to the foregoing, any costs, expenses and fees, including reasonable attorneys' fees, incurred by Beneficiary in connection with (a) sustaining the lien of this Deed of Trust or its priority, (b) protecting or enforcing any of Beneficiary's rights hereunder, (c) recovering any Indebtedness, (d) any litigation or proceedings affecting the Note, this Deed of Trust, any of the other Loan Documents or the Premises, including without limitation, bankruptcy and probate proceedings, or (e) preparing for the commencement, defense or participation in any threatened litigation or proceedings affecting the Note, this Deed of Trust, any of the other Loan Documents or the Premises, shall be so much additional Indebtedness, and shall become immediately due and payable by Trustor to Beneficiary, upon demand, and with interest thereon accruing from the date of such demand until paid at the Default Rate. The interest accruing under this section shall be immediately due and payable by Trustor to Beneficiary, and shall be additional Indebtedness evidenced by the Note and secured by this Deed of Trust.  Beneficiary's failure to act shall never be considered as a waiver of any right accruing to Beneficiary on account of any Event of Default.  Should any amount paid out or advanced by Beneficiary hereunder, or pursuant to any agreement executed by Trustor in connection with the Loan, be used directly or indirectly to pay off, discharge or satisfy, in whole or in part, any lien or encumbrance upon the Premises or any part thereof, then Beneficiary shall be subrogated to any and all rights, equal or superior titles, liens and equities, owned or claimed by any owner or holder of said outstanding liens, charges and indebtedness, regardless of whether said liens, charges and indebtedness are acquired by assignment or have been released of record by the holder thereof upon payment.

10.     **Security Agreement**.  Trustor and Beneficiary agree that this Deed of Trust shall constitute a Security Agreement within the meaning of the Code with respect to (a) all sums at any time on deposit for the benefit of Trustor or held by the Beneficiary (whether deposited by or on behalf of Trustor or anyone else) pursuant to any of the provisions of this Deed of Trust or the other Loan Documents, and (b) any personal property included in the granting clauses of this Deed of Trust, which personal property may not be deemed to be affixed to the Premises or may not constitute a "fixture" (within the meaning of the Code) (which property is hereinafter referred to as **"Personal Property"**), and all replacements of, substitutions for, additions to, and the proceeds thereof, and the "supporting obligations" (as defined in the Code) (all of said Personal Property and the replacements, substitutions and additions thereto and the proceeds thereof being sometimes hereinafter collectively referred to as **"Collateral"**), and that a security interest in and to the Collateral is hereby granted to the Beneficiary, and the Collateral and all of Trustor's right, title and interest therein are hereby assigned to Beneficiary, all to secure payment of the Indebtedness.  All of the provisions contained in this Deed of Trust pertain and apply to the Collateral as fully and to the same extent as to any other property comprising the Premises; and the following provisions of this section shall not limit the applicability of any other provision of this Deed of Trust but shall be in addition thereto:

(a)     Trustor (being the Debtor as that term is used in the Code) is and will be the true and lawful owner of the Collateral and has rights in and the power to transfer the Collateral, subject to no liens, charges or encumbrances other than the lien hereof, other liens and encumbrances benefiting Beneficiary and no other party, and liens and encumbrances, if any, expressly permitted by the other Loan Documents.

(b)     The Collateral is to be used by Trustor solely for business purposes.

6

(c)    The Collateral will be kept at the Real Estate and, except for Obsolete Collateral (as hereinafter defined), will not be removed therefrom without the consent of Beneficiary (being the Secured Party as that term is used in the Code). The Collateral may be affixed to the Real Estate but will not be affixed to any other real estate.

(d)    The only persons having any interest in the Premises are Trustor, Beneficiary and holders of interests, if any, expressly permitted hereby.

(e)    No Financing Statement (other than Financing Statements showing Beneficiary as the sole secured party, or with respect to liens or encumbrances, if any, expressly permitted hereby) covering any of the Collateral or any proceeds thereof is on file in any public office except pursuant hereto; and Trustor, at its own cost and expense, upon demand, will furnish to Beneficiary such further information and will execute and deliver to Beneficiary such financing statements and other documents in form satisfactory to Beneficiary and will do all such acts as Beneficiary may request at any time or from time to time or as may be necessary or appropriate to establish and maintain a perfected security interest in the Collateral as security for the Indebtedness, subject to no other liens or encumbrances, other than liens or encumbrances benefiting Beneficiary and no other party and liens and encumbrances (if any) expressly permitted hereby; and Trustor will pay the cost of filing or recording such financing statements or other documents, and this instrument, in all public offices wherever filing or recording is deemed by Beneficiary to be desirable. Trustor hereby irrevocably authorizes Beneficiary at any time, and from time to time, to file in any jurisdiction any initial financing statements and amendments thereto that (i) indicate the Collateral as all assets of Trustor (or words of similar effect), regardless of whether any particular asset comprised in the Collateral falls within the scope of Article 9 of the Uniform Commercial Code of the jurisdiction wherein such financing statement or amendment is filed, or as being of an equal or lesser scope or within greater detail, and (ii) contain any other information required by Section 5 of Article 9 of the Uniform Commercial Code of the jurisdiction wherein such financing statement or amendment is filed regarding the sufficiency or filing office acceptance of any financing statement or amendment, including whether Trustor is an organization, the type of organization and any organizational identification number issued to Trustor, and in the case of a financing statement filed as a fixture filing or indicating Collateral as as-extracted collateral or timber to be cut, a sufficient description of real property to which the Collateral relates. Trustor agrees to furnish any such information to Beneficiary promptly upon request. Trustor further ratifies and affirms its authorization for any financing statements and/or amendments thereto, executed and filed by Beneficiary in any jurisdiction prior to the date of this Deed of Trust.

(f)    Upon an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Code, including, without limitation, the right to take immediate and exclusive possession of the Collateral, or any part thereof, and for that purpose, so far as Trustor can give authority therefor, with or without judicial process, may enter (if this can be done without breach of the peace) upon any place where the Collateral or any part thereof may be situated and remove the same therefrom (provided that if the Collateral is affixed to real estate, such removal shall be subject to the conditions stated in the Code); and Beneficiary shall be entitled to hold, maintain, preserve and prepare the Collateral for sale, until disposed of, or may propose to retain the Collateral subject to Trustor's right of redemption in satisfaction of Trustor's obligations, as provided in the Code. Beneficiary may render the Collateral unusable without removal and may dispose of the Collateral on the Premises. Beneficiary may require Trustor to assemble the Collateral and make it available to Beneficiary for its possession at a place to be designated by Beneficiary which is reasonably convenient to both parties. Beneficiary will give Trustor at least ten (10) days' notice of the time and place of any public sale of the Collateral or of the time after which any private sale or any other intended disposition thereof is made. The requirements of reasonable notice shall be met if such notice is mailed, by certified United States mail or equivalent, postage prepaid, to the address of Trustor hereinafter set forth at least ten (10) days before the time of the sale or disposition. Beneficiary may buy at any public sale. Beneficiary may buy at private sale if the Collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations. Any such sale may be held in conjunction with any foreclosure sale of the Premises. If Beneficiary so elects, the Premises and the Collateral may be sold as one lot. The net proceeds realized upon any such disposition, after deduction for the expenses of retaking, holding, preparing for sale, selling and the reasonable attorneys' fees and legal expenses incurred by Beneficiary, shall be applied against the Indebtedness in such order or manner as Beneficiary shall select. Beneficiary will account to Trustor for any surplus realized on such disposition.

(g)    The terms and provisions contained in this section, unless the context otherwise requires, shall have the meanings and be construed as provided in the Code.

(h)    This Deed of Trust is intended to be a financing statement within the purview of the Code with respect to the Collateral and the goods described herein, which goods are or may become fixtures relating to the Premises. The addresses of Trustor (Debtor) and Beneficiary (Secured Party) are hereinbelow set forth. This Deed of Trust is to be filed for recording at the Recorder of Deeds for the District of Columbia.

7

(i)    To the extent permitted by applicable law, the security interest created hereby is specifically intended to cover all Leases between Trustor or its agents as lessor, and various tenants named therein, as lessee, including all extended terms and all extensions and renewals of the terms thereof, as well as any amendments to or replacement of said Leases, together with all of the right, title and interest of Trustor, as lessor thereunder.

(j)    Trustor represents and warrants that:

(i.)    Trustor is the record owner of the Premises;

(ii.)    Trustor is qualified to do business in the District of Columbia; and

(iii.)    The exact legal names of Trustor are as set forth in the first paragraph of this Deed of Trust.

(k)    Trustor agrees that:

(i)    Where Collateral is in possession of a third party, Trustor will join with the Beneficiary in notifying the third party of the Beneficiary's interest and obtaining an acknowledgment from the third party that it is holding the Collateral for the benefit of Beneficiary;

(ii)    Trustor will cooperate with the Beneficiary in obtaining control with respect to Collateral consisting of:  deposit accounts, investment property, letter of credit rights and electronic chattel paper; and

(iii)    Until the Indebtedness is paid in full, Trustor will not change the state where it is located or change its company name without giving the Beneficiary at least 30 days' prior written notice in each instance.

(l)    In addition to Beneficiary's rights under the Code, Beneficiary may, but shall not be obligated to, at any time and at the expense of Trustor (i) give notice to any person of Beneficiary's rights hereunder and enforce such rights; (ii) insure, protect, defend and preserve the Collateral and any rights or interests of Beneficiary therein; (iii) inspect such Collateral; and (iv) endorse, collect and receive any right to payment of money owing to Trustor under or from such Collateral.  Beneficiary shall have no duty or obligation to make or give any presentments, demands for performance, notices of non-performance, notices of protest or notices of dishonor in connection with any of such Collateral.

(m)    Trustor and Beneficiary agree that the filing of a financing statement in the records normally having to do with personal property shall never be construed as in any way derogating from or impairing this Deed of Trust and the intention of the parties that everything used in connection with the production of income from the Premises or adapted for use therein or which is described or reflected in this Deed of Trust is, and at all times and for all purposes and in all proceedings both legal or equitable shall be regarded as part of the real estate subject to the lien hereof, irrespective of whether (i) any such item is physically attached to improvements located on such real property or (ii) any such item is referred to or reflected in any financing statement so filed at any time.  Similarly, the mention in any such financing statement of (A) the rights in or the proceeds of any fire or hazard insurance policy or (B) any award in eminent domain proceedings for taking or for loss of value or for any cause of action or proceeds thereof in connection with any damage or injury to the Premises or any part thereof shall never be construed as in any way altering any of the rights of Beneficiary as determined by this instrument or impugning the priority of Beneficiary's lien granted hereby or by any other recorded document, but such mention in such financing statement is declared to be for the protection of Beneficiary in the event any court shall at any time hold with respect to matters (A) and (B) above that notice of Beneficiary's priority of interest, to be effective against a particular class of persons, including, without limitation, the Federal government and any subdivision or entity of the Federal government, must be filed in the personal property records or other commercial code records.

(n)    It is understood and agreed that, in order to protect Beneficiary from the effect of the Code, as amended from time to time, in the event that (i) Trustor intends to purchase any goods which may become fixtures to the Real Estate or Improvements, or any part thereof, and (ii) such goods would be subject to a security interest held by a seller or any other party, Trustor shall, before executing any security agreement or other document evidencing such security interest, obtain the prior written approval of Beneficiary, and all requests for such written approval shall be in writing and contain the following information:

(A)    A description of the fixtures to be replaced, added to, installed or substituted;

(B)    The address at which the fixtures will be replaced, added to, installed or substituted; and

8

(C)    The name and address of the proposed holder and proposed amount of the security interest;

and any failure of Trustor to obtain such approval shall be a material breach of Trustor's covenants under this Deed of Trust, and shall, at the option of Beneficiary, entitle Beneficiary to all rights and remedies provided for herein upon default. No consent by Beneficiary pursuant to this section shall be deemed to constitute an agreement to subordinate any right of Beneficiary in fixtures or other property covered by this Deed of Trust.

(o)    Beneficiary shall have the right to acquire by assignment from the holder of such security interest any and all contract rights, accounts receivable, negotiable or non-negotiable instruments or other evidence of Trustor's indebtedness for such personal property or fixtures and, upon acquiring such interest by assignment, shall have the right to enforce the security interest as assignee thereof in accordance with the terms and provisions of the Code then in effect and in accordance with any other provisions of law.

(p)    If at any time Trustor fails to make any payment on an obligation secured by a security interest in such personal property or fixtures, Beneficiary, at its option, may at any time pay the amount secured by such security interest and the amount so paid shall be (i) secured by this Deed of Trust and shall be a lien on the Premises having the same priorities as the liens and security interests created by this Deed of Trust, and (ii) payable on demand with interest at the rate specified in the Note from the time of such payment. If Trustor shall fail to make such payment to Beneficiary within ten (10) days after demand, the entire principal sum secured thereby with all unpaid accrued interest and late charges or other amounts owing thereunder, shall, at the option of Beneficiary, become due and payable immediately.

11.    **Restrictions on Transfer**.

(a)    Trustor, without the prior written consent of Beneficiary, shall not effect, suffer or permit any Prohibited Transfer (as defined herein). Any conveyance, sale, assignment, transfer, lien, pledge, partitioning, mortgage, security interest or other encumbrance or alienation or any agreement to do any of the foregoing, with respect to any of the following properties or interests shall constitute a **"Prohibited Transfer"**:

(i)    The Premises or any part thereof or interest therein, excepting only sales or other dispositions of Collateral (herein called **"Obsolete Collateral"**) no longer useful in connection with the operation of the Premises, provided that prior to the sale or other disposition thereof, such Obsolete Collateral has been replaced by Collateral of at least equal value and utility which is subject to the lien hereof with the same priority as with respect to the Obsolete Collateral;

(ii)    Any shares of capital stock of a corporate trustor, a corporation which is a general partner or managing member/manager in a partnership or limited liability company trustor, or a corporation which is the owner of substantially all of the capital stock of any corporation described in this subsection (other than the shares of capital stock of a corporate trustee or a corporation whose stock is publicly traded on a national securities exchange or on the National Association of Securities Dealers' Automated Quotation System);

(iii)    All or any part of the managing member or manager interest, as the case may be, in a limited liability company trustor or a limited liability company which is a general partner of a partnership Trustor;

(iv)    All or any part of the general partner or joint venture interest, as the case may be, of a partnership trustor or a partnership which is a manager of a limited liability company trustor or the conversion of a partnership trustor to a corporation or limited liability company; or

(v)    If there shall be any change in control (by way of transfers of stock, partnership or member interests or otherwise) of Trustor or in any partner, member, manager or shareholder, as applicable, which directly or indirectly controls the day to day operations and management of Trustor and/or owns a controlling interest in Trustor; or

in each case whether any such conveyance, sale, assignment, transfer, lien, pledge, mortgage, security interest, encumbrance or alienation is effected directly, indirectly (including the nominee agreement), voluntarily or involuntarily, by operation of law or otherwise; provided, however, that the foregoing provisions of this Section shall not apply (i) to liens securing the Indebtedness, (ii) to the lien of current taxes and assessments not in default, (iii) to any transfers of the Premises, or part thereof, or interest therein, or any beneficial interests, or shares of stock or partnership or joint venture interests, as the case may be, by or on behalf of an owner thereof, who is deceased or declared judicially incompetent, to such owner's heirs,

9

legatees, devisees, executors, administrators, estate or personal representatives, or (iv) to leases permitted by the terms of the Loan Documents, if any.

Notwithstanding the foregoing, as long as all of the Transfer Conditions (as defined below) are satisfied, a transfer of membership interests in Trustor (i) to a conservator pursuant to court order upon the legal disability of an individual member or (ii) to a Family Member (hereinafter defined) upon the death of an individual member shall not require the Beneficiary's consent. "Family Member" shall be defined as an individual member's spouse and any of his or her direct lineal descendants. The term "Transfer Conditions" shall mean that all of the following conditions are satisfied concurrently with each such transfer: (1) there shall be no change in the day to day operations and management of Trustor and (2) Beneficiary shall be provided with a diagram showing the structure of Trustor and all constituent entities after such transfer occurs and a list of the names, types of interests and percentages of ownership of all owners of interests in Trustor and any constituent entities after such transfer occurs.

(b)    In determining whether or not to make the Loan, Beneficiary evaluated the background and experience of Trustor and its partners/members/officers in owning and operating property such as the Premises, found it acceptable and relied and continues to rely upon same as the means of maintaining the value of the Premises which is Beneficiary's security for the Note. Trustor and its partners/members/officers are well experienced in borrowing money and owning and operating property such as the Premises, were ably represented by a licensed attorney at law in the negotiation and documentation of the Loan and bargained at arm's length and without duress of any kind for all of the terms and conditions of the Loan, including this provision. Trustor recognizes that Beneficiary is entitled to keep its loan portfolio at current interest rates by either making new loans at such rates or collecting assumption fees and/or increasing the interest rate on a loan, if the security for which is purchased by a party other than the original Trustor. Trustor further recognizes that any secondary junior financing placed upon the Premises (a) may divert funds which would otherwise be used to pay the Note; (b) could result in acceleration and foreclosure by any such junior encumbrancer which would force Beneficiary to take measures and incur expenses to protect its security; (c) would detract from the value of the Premises should Beneficiary come into possession thereof with the intention of selling same; and (d) would impair Beneficiary's right to accept a deed in lieu of foreclosure, as a foreclosure by Beneficiary would be necessary to clear the title to the Premises. In accordance with the foregoing and for the purposes of (i) protecting Beneficiary's security, both of repayment and of value of the Premises; (ii) giving Beneficiary the full benefit of its bargain and contract with Trustor; (iii) allowing Beneficiary to raise the interest rate and collect assumption fees; and (iv) keeping the Premises free of subordinate financing liens, Trustor agrees that if this Section is deemed a restraint on alienation, that it is a reasonable one.

12.    **Events of Default; Acceleration**.  Each of the following shall constitute an **"Event of Default"** for purposes of this Deed of Trust:

(a)    Trustor fails to pay (i) any installment of principal or interest payable pursuant to the Note on the date when due, or (ii) any other amount payable to Beneficiary under the Note, this Deed of Trust or any of the other Loan Documents within five (5) days after the date when any such payment is due in accordance with the terms hereof or thereof;

(b)    Trustor fails to perform or cause to be performed any other obligation or observe any other condition, covenant, term, agreement or provision required to be performed or observed by Trustor under the Note, this Deed of Trust or any of the other Loan Documents.

(c)    the existence of any inaccuracy or untruth in any material respect in any representation or warranty contained in this Deed of Trust or any of the other Loan Documents or of any statement or certification as to facts delivered to Beneficiary by Trustor;

(d)    Trustor files a voluntary petition in bankruptcy or is adjudicated a bankrupt or insolvent or files any petition or answer seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under the present or any future federal, state, or other statute or law, or seeks or consents to, or acquiesces in the appointment of any trustee, receiver or similar officer of Trustor or of all or any substantial part of the property of Trustor or any of the Premises or all or a substantial part of the assets of Trustor are attached, seized, subjected to a writ or distress warrant or are levied upon unless the same is released or located within thirty (30) days;

(e)    the commencement of any involuntary petition in bankruptcy against Trustor or the institution against Trustor of any reorganization, arrangement, composition, readjustment, dissolution, liquidation or similar proceedings under any present or future federal, state or other statute or law, or the appointment of a receiver, trustee or similar officer for all or any substantial part of the property of Trustor which shall remain undismissed or undischarged for a period of sixty (60) days;

10

        (f)      the occurrence of a Prohibited Transfer; or

        (g)      the occurrence of an "Event of Default" under the Note or any of the other Loan Documents; or

        (h)      the occurrence of any default or event of default, after the expiration of any applicable periods of notice or cure, under any document or agreement evidencing or securing any other obligation or indebtedness of Trustor to Beneficiary.

If an Event of Default occurs, Beneficiary may, at its option, declare the whole of the Indebtedness to be immediately due and payable without further notice to Trustor, with interest thereon accruing from the date of such Event of Default until paid at the Default Rate.

13.     **Remedies and Application of Proceeds**.

Upon the occurrence of an Event of Default, Beneficiary may at any time, at its option and in its sole discretion, declare all Indebtedness to be due and payable and the same shall thereupon become immediately due and payable, including the Prepayment Fee, under the terms of the Indebtedness, with interest accruing thereon from the date of the Event of Default until paid, at the Default Rate. In addition to exercising any other remedy available at law, in equity and/or under the other Loan Documents, Beneficiary may also do any or all of the following, concurrently or otherwise, at such time and in such order as Beneficiary may determine, in its sole discretion, although it shall have no obligation to do any of the following:

        (a)      Either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court and without regard to the adequacy of Beneficiary's security, enter with or without process of law upon and take possession of the Premises, or any part thereof, and do any acts which Beneficiary deems necessary or desirable to preserve the value, marketability or rentability of the Premises, or to increase the income therefrom or to protect the security hereof and, with or without taking possession of any of the Premises, sue for or otherwise collect all rents and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees and expenses, upon the Indebtedness, all in such order as Beneficiary may determine. The collection of rents and profits and the application thereof shall not cure or waive any Event of Default or notice thereof or invalidate any act done in response thereto or pursuant to such notice. In furtherance of the foregoing, to the fullest extent permitted by applicable law, following the occurrence of an Event of Default and during the continuance thereof, Beneficiary shall have the right to apply to a court of competent jurisdiction for and obtain appointment of a receiver of the Premises as a matter of strict right and without regard to the value of the Premises or the adequacy of the security for the Indebtedness, the existence of a declaration that the Indebtedness is immediately due and payable, or the filing of a notice of default, and Trustor hereby consents to such appointment;

        (b)      Bring an action in any court of competent jurisdiction to foreclose this instrument or to enforce any of the covenants hereof.

        (c)      Elect to sell by power of sale the Premises and, upon such election, such notice of Event of Default and election to sell shall be given as may then be required by law. Thereafter, upon the expiration of such time and the giving of such notice of sale as may then be required by law, at the time and place specified in the notice of sale, Trustee shall sell such Premises, or any portion thereof specified by Beneficiary, at public auction to the highest bidder for cash in lawful money of the United States. Trustee may, and upon request of Beneficiary shall, from time to time, postpone the sale by public announcement thereof at the time and place noticed therefor. If the Premises consists of several lots, parcels or interests, Beneficiary may designate the order in which the same shall be offered for sale or sold. Trustor waives all rights to direct the order in which any of the Premises will be sold in the event of any sale under this Deed of Trust, and also any of right to have any of the Premises marshaled upon any sale. In the case of a sale under this Deed of Trust, the said property, real, personal and mixed, may be sold in one parcel or more than one parcel. Should Beneficiary desire that more than one such sale or other disposition be conducted, Beneficiary may, at its option, cause the same to be conducted simultaneously, or successively on the same day, or at such different days or times and in such order as Beneficiary may deem to be in its best interest. Any person, including Trustor, Trustee or Beneficiary, may purchase at the sale. Upon any sale, Trustee shall execute and deliver to the purchaser or purchasers a deed or deeds conveying the Premises so sold, but without any covenant or warranty whatsoever, express or implied, whereupon such purchaser or purchasers shall be let into immediate possession. Beneficiary, from time to time before the trustee's sale pursuant to this section, may rescind any notice of Event of Default and of election to cause to be sold the Premises by executing and delivering to Trustee a written notice of such rescission, which notice, shall also constitute a cancellation of any prior Event of Default and demand for sale. The exercise by

11

Beneficiary of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring or impair the right of Beneficiary to execute and deliver to Trustee, as above provided, other declarations of default and demand for sale, and notices of breach or default, nor otherwise affect any provision, covenant or condition of the Note and/or of this Deed of Trust or any of the rights, obligations or remedies of the parties thereunder or hereunder. In furtherance of the foregoing, the Beneficiary hereby directs and empowers the Trustee to take possession of any or all of the Premises and to sell the Premises, in whole or in part, and in the case of default of any purchaser or purchasers, resell all the Premises as an entirety, or in such parcels as Beneficiary shall in writing request, or, in the absence of such request, as the Trustee may determine, at public auction at some convenient place in the District of Columbia, at such time, in such manner and upon such terms as the Trustee may fix. The notice of sale shall state the time and place of the sale, shall contain a brief general description of the Premises to be sold, and shall be sufficiently given if published in either *The Washington Post* or other publications where such notices are customarily published or in the place(s) where such sale is to take place, such advertisement of sale to be published five (5) times every other day (excluding Sundays and holidays) over a ten business day period prior to the day of said sale, subject to compliance with Section 42-815(b) of the D.C. Code, and Beneficiary or Trustee shall cause further public advertisement to be made as they deem advisable. Any such sale may be adjourned by the Trustee by announcement at the time and place appointed for such sale or for such adjourned sale(s), and, without further notice or publication, such sale may be made at the time and place to which same shall be so adjourned. Upon the completion of any sale, the Trustee shall execute and deliver to the purchaser(s) a good and sufficient deed of conveyance, or assignment and transfer, lawfully conveying, assigning and transferring, without warranty, the property sold.

(d)     Apply any sums then held in escrow or otherwise by Beneficiary in accordance with the terms of this Deed of Trust or any other Loan Document to the payment of the Indebtedness.

(e)     Exercise all rights available to Trustor under the Code.

(f)     Exercise each of its other rights and remedies under this Deed of Trust or any other Loan Documents.

(g)     Except as otherwise required by law, apply the proceeds of any foreclosure or disposition hereunder to payment of the following: (i) the expenses of such foreclosure or disposition, including, without limitation, the fees of Trustee and the costs of the Tests and Studies (hereinafter defined), (ii) the cost of any search or other evidence of title procured in connection therewith and revenue stamps on any deed or conveyance, (iii) all sums expended under the terms hereof, not then repaid, with accrued interest in the amount provided herein, (iv) all other sums secured hereby, and (v) the remainder, if any, to the person or persons legally entitled thereto.

(h)     Upon any sale or sales made under or by virtue of this section, whether made under the power of sale or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Beneficiary may bid for and acquire the Premises or any part thereof. In lieu of paying cash for the Premises, Beneficiary may make settlement for the purchase price by crediting against the Indebtedness the sales price of the Premises, as adjusted for the expenses of sale and the costs of the action and any other sums for which Trustor is obligated to reimburse Trustee or Beneficiary under this Deed of Trust.

(i)     In the event that Trustor has an equity of redemption and the Premises is sold pursuant to the power of sale or otherwise under or by virtue of this section, the purchaser may, during any redemption period allowed, make such repairs or alterations (but not additions) on said Premises as may be reasonably necessary for the proper operation, care, preservation, protection and insuring thereof. Any sums so paid together with interest thereon from the time of such expenditures at the Default Rate (if not prohibited by law, otherwise at the highest lawful contract rate) shall be added to and become a part of the amount required to be paid for redemption from such sale.

14.     **Beneficiary's Right of Possession in Case of Default**. At any time after an Event of Default has occurred, Trustor shall, upon demand of Beneficiary, surrender to Beneficiary possession of the Premises. Beneficiary, in its discretion, may, with process of law, enter upon and take and maintain possession of all or any part of the Premises, together with all documents, books, records, papers and accounts relating thereto, and may exclude Trustor and its employees, agents or servants therefrom, and Beneficiary may then hold, operate, manage and control the Premises, either personally or by its agents. Beneficiary shall have full power to use such measures, legal or equitable, as in its discretion may be deemed proper or necessary to enforce the payment or security of the avails, rents, issues, and profits of the Premises, including actions for the recovery of rent, actions in forcible detainer and actions in distress for rent. Without limiting the generality of the foregoing, Beneficiary shall have full power to:

(a)     cancel or terminate any lease or sublease for any cause or on any ground which would entitle Trustor to cancel the same;

(b)     elect to disaffirm any lease or sublease   which is then subordinate to the lien hereof;

12

(c)      extend or modify any then-existing leases and to enter into new leases, which extensions, modifications and leases may provide for terms to expire, or for options to lessees to extend or renew terms to expire, beyond the Maturity Date and beyond the date of the issuance of a deed or deeds to a purchaser or purchasers at a foreclosure sale, it being understood and agreed that any such leases, and the options or other such provisions to be contained therein, shall be binding upon Trustor and all persons whose interests in the Premises are subject to the lien hereof and upon the purchaser or purchasers at any foreclosure sale, notwithstanding any redemption from sale, discharge of the Indebtedness, satisfaction of any foreclosure judgment, or issuance of any certificate of sale or deed to any purchaser;

(d)      make any repairs, renewals, replacements, alterations, additions, betterments and improvements to the Premises as Beneficiary deems are necessary;

(e)      insure and reinsure the Premises and all risks incidental to Beneficiary's possession, operation and management thereof; and

(f)      receive all of such avails, rents, issues and profits.

15.      **Application of Income Received by Beneficiary**.  To the extent permitted by applicable law, Beneficiary, in the exercise of the rights and powers hereinabove conferred upon it, shall have full power to use and apply the avails, rents, issues and profits of the Premises to the payment of or on account of the following, in such order as Beneficiary may determine:

(a)      to the payment of the operating expenses of the Premises, including cost of management and leasing thereof (which shall include compensation to Beneficiary and its agent or agents, if management be delegated to an agent or agents, and shall also include lease commissions and other compensation and expenses of seeking and procuring tenants and entering into leases), established claims for damages, if any, and premiums on insurance hereinabove authorized;

(b)      to the payment of taxes and special assessments now due or which may hereafter become due on the Premises; and

(c)      to the payment of any Indebtedness, including any deficiency which may result from any foreclosure sale.

16.      **Rights Cumulative**.  Each right, power and remedy herein conferred upon Beneficiary is cumulative and in addition to every other right, power or remedy, express or implied, given now or hereafter existing under any of the Loan Documents or at law or in equity, and each and every right, power and remedy herein set forth or otherwise so existing may be exercised from time to time as often and in such order as may be deemed expedient by Beneficiary, and the exercise or the beginning of the exercise of one right, power or remedy shall not be a waiver of the right to exercise at the same time or thereafter any other right, power or remedy, and no delay or omission of Beneficiary in the exercise of any right, power or remedy accruing hereunder or arising otherwise shall impair any such right, power or remedy, or be construed to be a waiver of any Event of Default or acquiescence therein.

17.      **Beneficiary's Right of Inspection**.  In addition to Beneficiary's other inspection rights under this Deed of Trust, Beneficiary and its representatives shall have the right to inspect the Premises and the books and records with respect thereto at all reasonable times, and access thereto, subject to the rights of tenants in possession, shall be permitted for that purpose.

18.      **Release Upon Payment and Discharge of Trustor's Obligations**.  Beneficiary shall release this Deed of Trust and the lien hereof by proper instrument upon payment and discharge of all Indebtedness, including payment of all reasonable expenses incurred by Beneficiary in connection with the execution of such release.

19.      **Notices**.  Any notices, demands, requests, communications and waivers under this Deed of Trust shall be in writing and shall be (i) delivered in person, (ii) mailed, postage prepaid, either by registered or certified mail, return receipt requested, (iii) by overnight express carrier, addressed in each case as follows, or (iv) by confirmed facsimile transmission, so long as a duplicate copy of such notice is also sent by one of the other permitted forms of delivery:

| | |
|---|---|
| if to Lender: | Cornerstone Capital LLC |
| | c/o Renaissance Realty Management, LLC |
| | 1801 Pennsylvania Avenue, N.W., Suite 700 |
| | Washington, D.C. 20006 |
| | Attn:  Mark D. Schuman, Esquire |
| | |
| if to Trustor: | Potomac Construction 1753 Willard, LLC |
| | Potomac Construction Biltmore, LLC |

Attn: Matt Shkor

or to any other address as to any of the parties hereto, as such party shall designate in a written notice to the other party hereto. All notices sent pursuant to the terms of this Section shall be deemed received (i) if personally delivered, then on the date of delivery or refusal to accept delivery, (ii) if sent by overnight, express carrier, then on the next federal banking day immediately following the day sent, (iii) if sent by registered or certified mail, then on the earlier of the third federal banking day following the day sent or when actually received or (iv) if sent by facsimile, then on the date of such transmission.

20.      **Waiver of Rights**.  The Trustor hereby covenants and agrees that it will not at any time insist upon or plead, or in any manner claim or take any advantage of, any stay, exemption or extension law or any so-called "Moratorium Law" now or at any time hereafter in force providing for the valuation or appraisement of the Premises, or any part thereof, prior to any sale or sales thereof to be made pursuant to any provisions herein contained, or to decree, judgment or order of any court of competent jurisdiction; or, after such sale or sales, claim or exercise any rights under any statute now or hereafter in force to redeem the property so sold, or any part thereof, or relating to the marshalling thereof, upon foreclosure sale or other enforcement hereof; and without limiting the foregoing:

(a)      To the extent permitted by law, the Trustor hereby expressly waives any and all rights of reinstatement and redemption, if any, under any order or decree of foreclosure of this Deed of Trust, on its own behalf and on behalf of each and every person, it being the intent hereof that any and all such rights of reinstatement and redemption of the Trustor and of all other persons are and shall be deemed to be hereby waived;

(b)      The Trustor will not invoke or utilize any such law or laws or otherwise hinder, delay or impede the execution of any right, power, or remedy herein or otherwise granted or delegated to the Beneficiary but will suffer and permit the execution of every such right, power and remedy as though no such law or laws had been made or enacted; and

(c)      If the Trustor is a trustee, Trustor represents that the provisions of this section (including the waiver of reinstatement and redemption rights) were made at the express direction of Trustor's beneficiaries and the persons having the power of direction over Trustor, and are made on behalf of the trust estate of Trustor and all beneficiaries of Trustor, as well as all other persons mentioned above.

(d)      To the full extent Trustor may do so, Trustor agrees that Trustor will not at any time insist upon, plead, claim or take the benefit or advantage of any law now or hereafter in force providing for any appraisement, valuation, stay, extension or redemption, and Trustor, for Trustor, Trustor's heirs, devisees, representatives, successors and assigns, and for any and all persons ever claiming any interest in the Premises, to the extent permitted by applicable law, hereby waives and releases all rights of redemption, valuation, appraisement, stay of execution, notice of intention to mature or declare due the whole of the secured indebtedness, notice of election to mature or declare due the whole of the secured indebtedness and all rights to a marshaling of assets of Trustor, including the Premises, or to a sale in inverse order of alienation in the event of foreclosure of the liens and/or security interests hereby created.  Trustor shall not have or assert any right under any statute or rule of law pertaining to the marshaling of assets, sale in inverse order of alienation, the exemption of homestead, the administration of estates of decedents, or other matters whatever to defeat, reduce or affect the right of Beneficiary under the terms of this Deed of Trust to a sale of the Premises for the collection of the secured indebtedness without any prior or different resort for collection, or the right of Beneficiary under the terms of this Deed of Trust to the payment of the secured indebtedness out of the proceeds of sale of the Premises in preference to every other claimant whatever.

21.      **Expenses Relating to Note and Deed of Trust**.

(a)      Trustor will pay all reasonable expenses, charges, costs and fees relating to the Loan or necessitated by the terms of the Note, this Deed of Trust or any of the other Loan Documents, including without limitation, Beneficiary's reasonable attorneys' fees in connection with the negotiation, documentation, administration, servicing and enforcement of the Note, this Deed of Trust and the other Loan Documents, all filing, registration and recording fees, all other expenses incident to the execution and acknowledgment of this Deed of Trust and all federal, state, county and municipal taxes, and other taxes (provided Trustor shall not be required to pay any income or franchise taxes of Beneficiary), duties, imposts, assessments and charges arising out of or in connection with, the execution and delivery of the Note, this Deed of Trust, and any of the other Loan Documents.  Trustor recognizes that, during the term of this Deed of Trust, Beneficiary:

(i)      May be involved in court or administrative proceedings, including, without restricting the foregoing, foreclosure, probate, bankruptcy, creditors' arrangements, insolvency, housing authority and pollution

control proceedings of any kind, to which Beneficiary shall be a party by reason of the Loan Documents or in which the Loan Documents or the Premises are involved directly or indirectly;

(ii)    May make preparations following the occurrence of an Event of Default hereunder for the commencement of any suit for the foreclosure hereof, which may or may not be actually commenced;

(iii)    May make preparations following the occurrence of an Event of Default hereunder for, and do work in connection with, Beneficiary's taking possession of and managing the Premises, which event may or may not actually occur;

(iv)    May make preparations for and commence other private or public actions to remedy an Event of Default hereunder, which other actions may or may not be actually commenced;

(v)    May enter into negotiations with Trustor or any of its agents, employees or attorneys in connection with the existence or curing of any Event of Default hereunder, the sale of the Premises, the assumption of liability for any of the Indebtedness or the transfer of the Premises in lieu of foreclosure; or

(vi)    May enter into negotiations with Trustor or any of its agents, employees or attorneys pertaining to Beneficiary's approval of actions taken or proposed to be taken by Trustor which approval is required by the terms of this Deed of Trust.

(b)    All expenses, charges, costs and fees described in this Section shall be so much additional Indebtedness, shall bear interest from the date so incurred until paid at the Default Rate and shall be paid, together with said interest, by Trustor forthwith upon demand.

22.    **Further Instruments**.  Upon request of Beneficiary, Trustor shall execute, acknowledge and deliver all such additional instruments and further assurances of title and shall do or cause to be done all such further acts and things as may reasonably be necessary fully to effectuate the intent of the Note, this Deed of Trust, and any of the other Loan Documents.

23.    **Indemnity**.  Trustor hereby covenants and agrees that no liability shall be asserted or enforced against Beneficiary in the exercise of the rights and powers granted to Beneficiary in this Deed of Trust, and Trustor hereby expressly waives and releases any such liability.  Trustor shall indemnify and save Beneficiary harmless from and against any and all liabilities, obligations, losses, damages, claims, costs and expenses (including reasonable attorneys' fees and court costs) (collectively, **"Claims"**) of whatever kind or nature which may be imposed on, incurred  by, or asserted against Beneficiary at any time by any third party which relate to or arise from: (a) any suit or proceeding (including probate and bankruptcy proceedings), or the threat thereof, in, or to which Beneficiary may or does become a party, either as plaintiff or as a defendant, by reason of this Deed of Trust or for the purpose of protecting the lien of this Deed of Trust; (b) the offer for sale or sale of all or any portion of the Premises; and (c) the ownership, leasing, use, operation or maintenance of the Premises, if such Claims relate to or arise from actions taken prior to the surrender of possession of the Premises to Beneficiary in accordance with the terms of this Deed of Trust; provided, however, that Trustor shall not be obligated to indemnify or hold Beneficiary harmless from and against any Claims directly arising from the gross negligence or willful misconduct of Beneficiary.  All costs provided for herein and paid for by Beneficiary shall be so much additional Indebtedness and shall become immediately due and payable upon demand by Beneficiary and with interest thereon from the date incurred by Beneficiary until paid at the Default Rate.

24.    **Compliance with Environmental Laws**.

(a)    Trustor covenants and agrees, at Trustor's sole cost and expense, to indemnify, defend (at trial and appellate levels, and with attorneys, consultants and experts reasonably acceptable to Beneficiary), and hold Beneficiary harmless from and against any and all liens, damages (including, without limitation, consequential damages), losses, liabilities, obligations, settlement payments, penalties, claims, judgments, suits, proceedings, costs, disbursements or expenses of any kind or of any nature whatsoever (including reasonable attorneys', consultants' and experts' fees and disbursements actually incurred in investigating, defending, settling or prosecuting any claim, litigation or proceeding) which may at any time be imposed upon, incurred by or asserted against Beneficiary or the Premises, and arising directly or indirectly from or out of: (i) the past, present or future presence, release or threat of release of any hazardous substances on, in, under or affecting all or any portion of the Premises or any surrounding areas, regardless of whether or not caused by or within the control of any Trustor; or (ii) the past, present or future violation of any environmental laws, relating to or affecting the Premises, whether or not caused by or within the control of Trustor.

(b)     Trustor hereby authorizes Beneficiary, any prospective bidder at any foreclosure sale and their respective officers, directors, employees, agents and independent contractors to enter upon all or any portion of the Premises (including, without limitation, following the occurrence of a default hereunder) for the purpose of conducting such tests, inspections, inquiries, examinations, studies, analyses, samples, surveys, and other information gathering activities (collectively, the **"Tests and Studies"**) with respect to the Premises as any of them may from time to time deem necessary or appropriate, including, without limitation, Tests and Studies with respect to the presence of Hazardous Materials (as defined in the Indemnity) in or around the Premises and the occurrence of any actual, proposed or threatened storage, existence, release, removal, remediation, handling or transportation of any Hazardous Substances (as defined in the Indemnity) in or around the Premises. Except in case of an emergency, or when the Trustor or any tenant has abandoned the Premises, or if it is impracticable to do so, Beneficiary shall give Trustor reasonable advance notice of Beneficiary's intent to enter the Premises and shall enter the Premises only during normal business hours. Trustor hereby covenants and agrees to cooperate fully with such parties in their efforts to conduct the Tests and Studies, and further covenants and agrees to make available to such parties such portions of the Premises as any of them may designate. If Beneficiary is refused the right of entry and inspection by the Trustor or any tenant of the Premises, or is otherwise unable to enter and conduct Tests and Studies on the Premises without a breach of peace, Beneficiary may obtain an order from a court of competent jurisdiction, the appointment of a receiver, or both, to enable Beneficiary to exercise its rights under this section. The decision of Beneficiary as to whether there exists a release or threatened release of Hazardous Substances onto the Premises shall be deemed reasonable and conclusive as between the parties hereto. The results of all Tests and Studies shall be and at all times remain the property of Beneficiary and under no circumstances shall Beneficiary have any obligation whatsoever to disclose or otherwise make available to Trustor or any other party such results or any other information obtained by them in connection with such Tests and Studies.

(c)     Notwithstanding the provisions of subsection (a) above, Beneficiary hereby reserves the right, and Trustor hereby expressly authorizes Beneficiary to make available to any party (including, without limitation, any governmental agency or authority and any prospective bidder at any foreclosure sale of the Premises), any and all information which Beneficiary may have with respect to the Premises, whether provided by Trustor or any third party or obtained as a result of Tests and Studies, including, without limitation, environmental reports, surveys and engineering reports. Trustor consents to Beneficiary notifying any party (either as part of a notice of sale or otherwise) of the availability of any or all of the Tests and Studies and the information contained therein. Trustor acknowledges that Beneficiary cannot control or otherwise assure the truthfulness or accuracy of the Tests and Studies, and that the release of Tests and Studies, or any information contained therein, to prospective bidders at any foreclosure sale of the Premises may have a material and adverse effect upon the amount which a party may bid at such sale. Trustor agrees that Beneficiary shall have no liability whatsoever as a result of delivering any or all of the Tests and Studies or any information contained therein to any third party, and Trustor hereby releases, remises and forever discharges Beneficiary from any and all claims, damages, or causes of action, arising out of, connected with or incidental to the Tests and Studies or the delivery thereof.

(d)     All costs and expenses incurred by Beneficiary pursuant to this section, including, without limitation, costs of consultants and contractors, costs of repair of any physical injury to the Premises normal and customary to the Tests and Studies, court costs and reasonable attorneys' fees, whether incurred in litigation or not and whether before or after judgment, shall be payable by Trustor and, to the extent advanced or incurred by Beneficiary, shall be reimbursed to Beneficiary by Trustor upon demand. Any and all costs and expenses incurred or advanced by Beneficiary pursuant to this section, together with interest thereon at the rate then applicable under the Note, shall be secured by this Deed of Trust and shall enjoy the same priority as the original principal amount of the Note.

25.     **Miscellaneous**.

(a)     **Successors and Assigns**. This Deed of Trust and all provisions hereof shall be binding upon and enforceable against Trustor and its assigns and other successors. This Deed of Trust and all provisions hereof shall inure to the benefit of Beneficiary, its successors and assigns and any holder or holders, from time to time, of the Note.

(b)     **Invalidity of Provisions; Governing Law**. In the event that any provision of this Deed of Trust is deemed to be invalid by reason of the operation of law, or by reason of the interpretation placed thereon by any administrative agency or any court, Trustor and Beneficiary shall negotiate an equitable adjustment in the provisions of the same in order to effect, to the maximum extent permitted by law, the purpose of this Deed of Trust, and the validity and enforceability of the remaining provisions, or portions or applications thereof, shall not be affected thereby and shall remain in full force and effect. This Deed of Trust is to be construed in accordance with and governed by the laws of the District of Columbia.

(c) **Beneficiary in Possession**. Nothing herein contained shall be construed as constituting Beneficiary a mortgagee in possession in the absence of the actual taking of possession of the Premises by Beneficiary pursuant to this Deed of Trust.

(d) **Relationship of Beneficiary and Trustor**. Beneficiary shall in no event be construed for any purpose to be a partner, joint venturer, agent or associate of Trustor or of any lessee, operator, concessionaire or licensee of Trustor in the conduct of their respective businesses, and, without limiting the foregoing, Beneficiary shall not be deemed to be such partner, joint venturer, agent or associate on account of Beneficiary becoming a mortgagee in possession or exercising any rights pursuant to this Deed of Trust, any of the other Loan Documents, or otherwise. The relationship of Trustor and Beneficiary hereunder is solely that of debtor/creditor.

(e) **Time of the Essence**. Time is of the essence of the payment by Trustor of all amounts due and owing to Beneficiary under the Note and the other Loan Documents and the performance and observance by Trustor of all terms, conditions, obligations and agreements contained in the Note, this Deed of Trust, and the other Loan Documents.

(f) **No Merger**. The parties hereto intend that this Deed of Trust and the lien hereof shall not merge in fee simple title to the Premises, and if Beneficiary acquires any additional or other interest in, or to the Premises or the ownership thereof, then, unless a contrary intent is manifested by Beneficiary as evidenced by an express statement to that effect in an appropriate document duly recorded, this Deed of Trust and the lien hereof shall not merge in the fee simple title and this Deed of Trust may be foreclosed as if owned by a stranger to the fee simple title.

(g) **Consent to Jurisdiction** TO INDUCE BENEFICIARY TO ACCEPT THIS DEED OF TRUST, TRUSTOR IRREVOCABLY AGREES THAT, SUBJECT TO BENEFICIARY'S SOLE AND ABSOLUTE ELECTION, ALL ACTIONS OR PROCEEDINGS IN ANY WAY ARISING OUT OF OR RELATED TO THIS DEED OF TRUST WILL BE LITIGATED IN COURTS HAVING SITUS IN THE DISTRICT OF COLUMBIA. TRUSTOR HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY COURT LOCATED WITHIN THE DISTRICT OF COLUMBIA, WAIVES PERSONAL SERVICE OF PROCESS UPON TRUSTOR, AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY REGISTERED MAIL DIRECTED TO TRUSTOR AT THE ADDRESS STATED HEREIN AND SERVICE SO MADE WILL BE DEEMED TO BE COMPLETED UPON ACTUAL RECEIPT.

(h) **Waiver of Jury Trial**. TRUSTOR AND BENEFICIARY (BY ACCEPTANCE HEREOF), HAVING BEEN REPRESENTED BY COUNSEL EACH KNOWINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS (a) UNDER THIS DEED OF TRUST OR ANY OTHER LOAN DOCUMENT OR ANY RELATED AGREEMENT OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION WITH THIS DEED OF TRUST OR (b) ARISING FROM ANY BANKING RELATIONSHIP EXISTING IN CONNECTION WITH THIS DEED OF TRUST, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING WILL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. TRUSTOR AGREES THAT IT WILL NOT ASSERT ANY CLAIM AGAINST BENEFICIARY OR ANY OTHER PERSON INDEMNIFIED UNDER THIS DEED OF TRUST ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES.

(i) **Complete Agreement**. This Deed of Trust, the Note and the other Loan Documents constitute the complete agreement between the parties with respect to the subject matter hereof and the same may not be modified, altered or amended except by an agreement in writing signed by both Trustor and Beneficiary.

26. **Additional Agreements**.

(a) Beneficiary may substitute the trustee hereunder in any manner now or hereafter provided by law or, in lieu thereof, Beneficiary may from time to time, by an instrument in writing, substitute a successor or successors to any trustee named herein or acting hereunder, which instrument, executed and acknowledged by Beneficiary and recorded at the Recorder of Deeds for the District of Columbia, shall be conclusive proof of proper substitution of such successor trustee, who shall thereupon and without conveyance from the predecessor trustee, succeed to all its title, estate, rights, powers and duties.

(b) It is expressly stipulated and agreed to be the intent of Beneficiary and Trustor, at all times to comply with applicable laws governing the highest lawful rate or amount of interest payable on the Loan (or applicable United States federal law to the extent that it permits Beneficiary to contract for, charge, take, reserve or receive a greater amount of

17

interest than under applicable law). If the applicable law is ever judicially interpreted so as to render usurious any amount called for under this Deed of Trust, the Note, or under any of the other Loan Documents, or contracted for, charged, taken, reserved or received with respect to the Loan, or if Beneficiary's exercise of the option to accelerate the maturity of the Note or if any prepayment by Trustor results in Trustor having paid any interest in excess of that permitted by applicable law, then it is Trustor's and Beneficiary's express intent that all excess amounts theretofore collected by Beneficiary be credited on the principal balance of the Note (or, if the Note and all other obligations have been or would thereby be paid in full, refunded to Trustor), and the provisions of this Deed of Trust, the Note and the other Loan Documents immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new documents, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder or thereunder. All sums paid or agreed to be paid to Beneficiary for the use, forbearance or detention of the Loan shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of the Loan until payment in full, so that the rate or amount of interest on account of the Loan does not exceed the usury ceiling from time to time in effect and applicable to the Loan for so long as the Loan is outstanding. Notwithstanding anything to the contrary contained herein, in the Note, or in any of the other Loan Documents, it is not the intention of Beneficiary to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.

27.     **Future Advances**. This Deed of Trust shall secure not only existing indebtedness, but also such future advances, whether such advances are obligatory or to be made at the option of Beneficiary, or otherwise, to the same extent as if such future advances were made on the date of the execution of this Deed of Trust. Any such future advances, whether obligatory or to be made at the option of the Beneficiary, or otherwise, may be made either prior to or after the due date of the Note or any other notes secured by this Deed of Trust. This Deed of Trust is given for the specific purpose of securing any and all indebtedness by the Trustor to Beneficiary (but in no event shall the secured indebtedness exceed at any time the maximum principal amount set forth in this section) in whatever manner this indebtedness may be evidenced or represented, until this Deed of Trust is satisfied of record. All covenants and agreements contained in this Deed of Trust shall be applicable to all further advances made by Beneficiary to Trustor under this future advance clause.

**IN WITNESS WHEREOF**, the Trustor has executed and delivered this Agreement as of the day and year first above written.

**TRUSTOR:**

_____ (SEAL)
Matthew E. Shkor, individually

District of Columbia

I HEREBY CERTIFY that on May 26, 2017, before me, the subscriber, a Notary Public, in and for the jurisdiction aforesaid, personally appeared Matthew E. Shkor, known to me (or satisfactorily proven) to be the person who executed the foregoing instrument, and he/she acknowledged that he/she executed the foregoing instrument for the purposes therein contained and that the same was delivered as such.

IN WITNESS WHEREOF I hereunto set my hand and official seal.

_____
Notary Public
My commission expires: _____

```
KEVIN DALE ANDERSON
Notary Public, District of Columbia
My Commission Expires Jan. 31, 2020
```



18

**EXHIBIT A**

**LEGAL DESCRIPTION**

All that certain lot or parcel of land situate in the District of Columbia and being more particularly described as follows:

Lot Numbered 0152 in Square Numbered 0155 in a subdivision made by Fisher and Hillyer as per plat recorded in Liber 14 at Folio 18 among the Records in the Office of the Surveyor for the District of Columbia.

Property Address: 1738 R St, NW,
                  Washington, DC 20009

Tax ID#: Square 0155 Lot 0152

★ ★ ★

**Government of the
District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
**1101 4th Street, SW
Washington, DC 20024**
Phone (202)727-5374

## SECURITY AFFIDAVIT — CLASS 1

| **0155** | | **0152** |
|---|---|---|
| **Square** | **Suffix** | **Lot** |

I, (We) **MATTHEW E. SHKOR** _____ the owner(s) of the real property
described within certify, subject to criminal penalties for making false statements pursuant to
section 22-2405 of the District of Columbia Official Code, that the real property described
within is Class 1 Property, as that class of property was established pursuant to section
47-813(c-4), with 5 or fewer units:

_____
*Signature*

_____
*Signature*

Subscribed and sworn to me before this _24th_ day of _May_ , 20 _17_ .

_____
*Notary Public*

My Commission Expires: _____
                mmddyyyy

KEVIN DALE ANDERSON
Notary Public, District of Columbia
My Commission Expires Jan. 31, 2020



Doc #: 2017068787
Filed & Recorded
06/23/2017 07:25 AM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
  RECORDING FEES      $150.00

  SURCHARGE        $6.50

TOTAL:           $156.50



**Government of the
District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374

## Real Property Recordation and Transfer Tax Form FP 7/C

### PART A- Type of Instrument

☐ Deed   ☐ Tax Deed   ☒ Deed of Trust   ☐ Trustee Deed
☐ Easement   ☐ Modification   ☐ Lease   ☐ Other _____

### PART B - Property Description/Data/Property Being Conveyed

| 0155 | | 0152 | | | | |
|------|--------|------|-----|--------|--------|-----|
| Square | Suffix | Lot | | Square | Suffix | Lot |

If more than one lot, list Square/Suffix/Lots below or attach addendum:

**Square and/or Parcel** _____   **Lot(s)** _____

**Property Address** | 1738 | R Street | NW | **Unit No.** _____
| | Street Number | Street Name | Quadrant | |

**Property Use** ☒ Residential   ☐ Commercial   ☐ Condominium   ☐ Apartment
In addition to the use above, is this property being rented?   ☐ Yes   ☒ No

**Interest Transferred**   ☐ Fee   ☐ Leasehold   ☐ Leasehold Improvement
☐ Easement   ☒ Other   **Security Interest**

**Interest Conveyed** _____ %   Does this transfer include Condo Parking?   ☐ Yes   ☒ No

If YES, what is the parking account? | | | |
| | Square | Suffix | Lot |

**Sale Type**   ☒ Single/Parcel Improved - Arms Length
☐ Single/Parcel Vacant - Arms Length
☐ Multiple Parcels   ☐ Arms Length   ☐ Not Arms Length

**Date of Deed** _____   **Consideration $** _____   (Part H, Line #1)

Was personal property included in this transfer?   ☐ Yes   ☒ No

If YES, what type? _____   Estimated Value $ _____

### PART C - Instrument Submitted by or Contact Person

Name | **Kevin D. Anderson, Esq.**   Firm | **Standard Title Group LLC**
Address | **1734 20th Street, NW**
City | **Washington**   State | **DC**   Zip | **20009**

### PART D - Return Instrument To

Name | **Kevin D. Anderson, Esq.**   Firm | **Standard Title Group LLC**
Address | **1734 20th Street, NW**   Phone
City | **Washington**   State | **DC**   Zip | **20009**

### PART E - Grantor(s) Information

Grantor | **MATTHEW E. SHKOR**   Grantor
Grantor | | Grantor
Address | **1734 20th Street, NW, Lower**   Phone
City | **Washington**   State | **DC**   Zip | **20009**

modified format

ROD 1 revised 11/2014

| | 0155 | | | 0152 |
|---|---|---|---|---|
| | Square | | Suffix | Lot |

**Government of the**
**District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374

**Grantor Tenancy**   ☐ Tenants in Common   ☐ Joint Tenants   ☐ Trustee
☐ Tenants by Entireties   ☒ Sole

## PART F - Grantee(s) Information

| Grantee | **CORNERSTONE CAPITAL,** | Grantee | |
| Grantee | **c/o Renaissance Realty** | Grantee | |
| Address | **1801 Pennsylvania Avenue,** | Phone | |
| City | **Washington** | State | **DC** | Zip | **20006** |

**Grantee Tenancy**   ☐ Tenants in Common   ☐ Joint Tenants   ☐ Trustee
**Interest Acquired** [    ]   ☐ Tenants by Entireties   ☒ Sole

## PART G - Mailing Address for Grantee (If different from Part F)

| | | |
|---|---|---|
| Last Name | First Name | Middle Name |

Unit # [    ]   Address [          ]   Phone [          ]
City [          ]   State [          ]   Zip [          ]

## PART H - Consideration and Financing
*complete all items: insert zero if no amount*

Tax Exemption Application
Recordation Tax/Transfer Tax
(Cite to Specific DC Code Provision)

**I. Deed**

| | |
|---|---|
| 1. Acquisition Price | 0 |
| Cash | 0 |
| Amount of 1st Deed of Trust | 0 |
| Exempt Amount(s) Purchase Money Amount | 0 |
| Other Exempt Amount | 0 |
| Nonexempt Amount(s) | 0 |
| Amount of 2nd Deed of Trust | 0 |
| Exempt Amount(s) Purchase Money Amount | 0 |
| Other Exempt Amount | 0 |
| Nonexempt Amount(s) | 0 |
| Assumed | 0 |
| Exempt Amount(s) Purchase Money Amount | 0 |
| Other Exempt Amount | 0 |
| Nonexempt Amount(s) | 0 |
| 2. Latest Assessed Value if No or Nominal Consideration (less than 30% of assessed value) | 0 |

modified format

| | 0155 | | 0152 |
|---|---|---|---|
| | Square | Suffix | Lot |

**Government of the
District of Columbia**

Office of Tax
and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374

Tax Exemption Application
Recordation Tax/Transfer Tax
(Cite to Specific DC Code Provision)

## II. Deeds of Trust (no transfer of title)

| | | |
|---|---|---|
| Amount of 1st Deed of Trust | 1,262,500.00 | |
| Exempt Amount(s) | 1,262,500.00 | 21 |
| Nonexempt Amount(s) | 0 | |

**3. Total of all Nonexempt Deeds of Trust (I & II)**     0

---

### PART I - Computation of Tax

If the residential deed transfer is for a total consideration of less than $400,000 use Lines 1 and 2.
All other deed transfers, security instruments and commercial transactions use Lines 3, 4, 5 and 6.

| | | | |
|---|---|---|---|
| 1. Recordation Tax | 1.1% of Line 1 or Line 2, Part H | $ | |
| 2. Transfer Tax | 1.1% of Line 1 or Line 2, Part H | $ | |
| 3. Recordation Tax | 1.45% of Line 1 or Line 2, Part H | $ | |
| 4. Transfer Tax | 1.45% of Line 1 or Line 2, Part H | $ | |
| 5. Recordation Tax | 1.45% of Line 3, Part H | $ | **EXEMPT** |
| 6. Transfer Surtax | 5% of Line 1 or Line 2, Part H (retail service sta.) | $ | |
| 7. Total of Lines 1 & 2 OR 3, 4, 5 and 6 | | $ | |

---

### PART J - Affidavit (Part A to J)

I/We hereby swear or affirm under penalty of perjury that this return, including any accompanying schedules/documents/and statements, has been examined by me/us and to the best of my/our knowledge and belief, the statements and representations are correct and true, I/We hereby acknowledge that any false statement or misrepresentations I/We made on this return is punishable by criminal penalties under the laws of the District of Columbia.

| **Grantor(s)** | **Grantee(s)** |
|---|---|
| **MATTHEW E. SHKOR** | **CORNERSTONE CAPITAL, LLC, a Maryland limited liability company by** |
| Typed Name | Typed Name |
| _Signature_ | _Signature_ |
| Date   **5/26/2017** | Date   **5/26/2017** |
| Subscribed to and sworn to before me by Grantor(s) this **26th** day of **May** , 201 **7** . | Subscribed to and sworn to before me by Grantee(s) this **26th** day of **May** , 201 **7** . |
| Notary Public | Notary Public |
| My Commission Expires: _____ mm/dd/yyyy | My Commission Expires: _____ mm/dd/yyyy |



KEVIN DALE ANDERSON
Notary Public, District of Columbia
My Commission Expires Jan. 31, 2020

KEVIN DALE ANDERSON
Notary Public, District of Columbia
My Commission Expires Jan. 31, 2020

This information is subject to audit within three years of filing.
Please keep all supporting documentation.

modified format

ROD (revised 1/2015)

**DEED OF TRUST, SECURITY AGREEMENT,**
**ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FILING**

THIS DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FILING (**"Deed of Trust"**) is made as of the ___ day of October, 2019, (the **"Effective Date"**) by **1311 R STREET NW LLC, a District of Columbia limited liability company ("Trustor")** to **Jason A. Pardo, Esquire** and **Russell S. Drazin, Esquire**, trustees, either of whom may act alone (collectively, **"Trustee"**), for the use and benefit of **Cornerstone Capital LLC**, a Maryland limited liability company ("**Lender**"), with an address of 7101 Wisconsin Avenue, Suite 620, Bethesda, MD 20814**,** and any successor holder of the Note secured by this Deed of Trust  (**"Beneficiary"**):

R E C I T A L S**:**

(A)     Beneficiary has an existing loan to **Potomac Construction 1753 Willard, LLC** and **Potomac Construction Biltmore, LLC** (collectively, **"Borrower"**) in the current amount of **$2,316,697.45** (**"Loan"**).

(B)     Trustor has an existing loan with Beneficiary and has requested a modification of loan terms ("Modification").

(C)     A condition precedent to Beneficiary's entering into the Modification was the execution of a Guaranty by Trustor whereby Trustor agreed to guaranty the Loan and secure said guaranty by, among other things, the execution and delivery by Trustor of this Deed of Trust.

(D)     The security of this Deed of Trust against the Real Estate (herein defined) shall be limited to principal amount of **One Million Five Hundred Thousand and No/100 Dollars ($1,500,000.00)** plus all associated interest, fees and expenses as provided by the Loan documents.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Trustor agrees as follows:

In order to secure the payment of the indebtedness hereinafter referred to and the performance of the obligations, covenants, agreements, warranties and undertakings of Trustor hereinafter described, Trustor hereby GRANTS, BARGAINS, SELLS, CONVEYS, TRANSFERS, ASSIGNS, MORTGAGES, WARRANTS AND SETS OVER to Trustee for the benefit of Beneficiary, its successors and assigns, and grants to Beneficiary a security interest in, the following described property, rights and interest (referred collectively herein as **"Premises"**) all of which property, rights and interest are hereby granted and pledged primarily and on parity with the real estate (as defined below) and not secondarily:

**THE REAL ESTATE** located at (i) 1309 R Street, N.W., Unit 1, Washington, D.C. (Lot 2090 in Square 239); (ii) 1311 R Street, N.W., Washington, D.C. (Lot 135 in Square 239); and (iii) 1313 R Street, N.W., Unit 2, Washington, D.C. (Lot 2087 in Square 239) and legally described on Exhibit A attached hereto and made a part hereof (**"Real Estate"**);

**TOGETHER WITH** all improvements of every nature whatsoever now or hereafter situated on the Real Estate, and all fixtures and personal property of every nature whatsoever now or hereafter owned by Trustor and located on, or used in connection with the Real Estate or the improvements thereon, or in connection with any construction thereon, including all extensions, additions, improvements, betterments, renewals, substitutions and replacements to any of the foregoing and all of the right, title and interest of Trustor in and to any such personal property or fixtures together with the benefit of any deposits or payments now or hereafter made on such personal property or fixtures by Trustor or on its behalf (**"Improvements"**);

**TOGETHER WITH** all easements, rights of way, gores of real estate, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, mineral rights, air rights, development rights and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances whatsoever, in any way now or hereafter belonging, relating or appertaining to the Real Estate, and the reversions, remainders, rents, issues and profits thereof, and all the estate, right, title, interest, property, possession, claim and demand whatsoever, at law as well as in equity, of Trustor of, in and to the same;

**TOGETHER WITH** all rents, revenues, issues, profits, proceeds, income, royalties, "accounts," including "health-care-insurance receivables," escrows, letter-of-credit rights (each as defined in the Code hereinafter defined), security deposits, impounds, reserves, tax refunds and other rights to monies from the Premises and/or the businesses and operations conducted by Trustor thereon, to be applied against the Indebtedness (hereinafter defined), all of which Trustor hereby absolutely and unconditionally assigns to

Beneficiary; provided, however, that Trustor, so long as no Event of Default (as hereinafter defined) has occurred hereunder, may collect rent as it becomes due, but not more than one (1) month in advance thereof;

TOGETHER WITH all interest of Trustor in all leases now or hereafter of all or a portion of the Premises, whether written or oral ("**Leases**"), together with all security therefor and all monies payable thereunder, all of which Trustor hereby absolutely and unconditionally assigns to Beneficiary; subject, however, to the conditional permission hereinabove given to Trustor to collect the rentals under any such Lease;

TOGETHER WITH all fixtures and articles of personal property now or hereafter owned by Trustor and forming a part of or used in connection with the Real Estate or the Improvements, including, but without limitation, any and all air conditioners, antennae, appliances, apparatus, awnings, basins, bathtubs, bidets, boilers, bookcases, cabinets, carpets, coolers, curtains, dehumidifiers, disposals, doors, drapes, dryers, ducts, dynamos, elevators, engines, equipment, escalators, exercise equipment, fans, fittings, floor coverings, furnaces, furnishings, furniture, hardware, heaters, humidifiers, incinerators, lighting, machinery, motors, ovens, pipes, plumbing, pumps, radiators, ranges, recreational facilities, refrigerators, screens, security systems, shades, shelving, sinks, sprinklers, stokers, stoves, toilets, ventilators, wall coverings, washers, windows, window coverings, wiring, and all renewals or replacements thereof or articles in substitution therefor, whether or not the same are or shall be attached to the Real Estate or the Improvements in any manner; it being mutually agreed that all of the aforesaid property owned by Trustor and placed on the Real Estate or the Improvements, so far as permitted by law, shall be deemed to be fixtures, a part of the realty, and security for the Indebtedness (as hereinafter defined); notwithstanding the agreement hereinabove expressed that certain articles of property form a part of the realty covered by this Deed of Trust and be appropriated to its use and deemed to be realty, to the extent that such agreement and declaration may not be effective and that any of said articles may constitute goods (as said term is used in the Uniform Commercial Code as adopted in Maryland in effect from time to time ("**Code**"), this instrument shall constitute a security agreement, creating a security interest in such goods, as collateral, in Beneficiary, as a secured party, and Trustor, as Debtor, all in accordance with the Code; and

TOGETHER WITH all of Trustor's interests in "general intangibles" including "payment intangibles" and "software" (each as defined in the Code) now owned or hereafter acquired and related to the Premises, including, without limitation, all of Trustor's right, title and interest in and to: (i) all agreements, licenses, permits and contracts to which Trustor is or may become a party and which relate to the Premises; (ii) all obligations and indebtedness owed to Trustor thereunder; (iii) all intellectual property related to the Premises; and (iv) all choses in action and causes of action relating to the Premises;

TOGETHER WITH all of Trustor's accounts now owned or hereafter created or acquired as they relate to the Premises, including, without limitation, all of the following now owned or hereafter created or acquired by Trustor: (i) accounts, contract rights, health-care-insurance receivables, book debts, notes, drafts, and other obligations or indebtedness owing to the Trustor arising from the sale, lease or exchange of goods or other property and/or the performance of services; (ii) the Trustor's rights in, to and under all purchase orders for goods, services or other property; (iii) the Trustor's rights to any goods, services or other property represented by any of the foregoing; (iv) monies due to become due to the Trustor under all contracts for the sale, lease or exchange of goods or other property and/or the performance of services including the right to payment of any interest or finance charges in respect thereto (whether or not yet earned by performance on the part of the Trustor); (v) "securities," "investment property," "financial assets," and "securities entitlements" (each as defined in the Code); (vi) proceeds of any of the foregoing and all collateral security and guaranties of any kind given by any person or entity with respect to any of the foregoing; and (vii) all warranties, guarantees, permits and licenses in favor of Trustor with respect to the Premises;

TOGETHER WITH all proceeds of the foregoing, including, without limitation, all judgments, awards of damages and settlements hereafter made resulting from condemnation proceeds or the taking of the Premises or any portion thereof under the power of eminent domain, any proceeds of any policies of insurance, maintained with respect to the Premises or proceeds of any sale, option or contract to sell the Premises or any portion thereof.

TO HAVE AND TO HOLD the Premises unto Trustee, and its successors and substitutes in this trust and to its and their successors and assigns, in trust, WITH POWER OF SALE AND THE RIGHT OF RE-ENTRY AND POSSESSION, for the benefit of Beneficiary and its successors and assigns, upon the terms, provisions and conditions herein set forth.

FOR THE PURPOSE OF SECURING THE FOLLOWING (collectively referred to herein as the "Indebtedness"): (i) the payment of the Loan and all interest, late charges, prepayment premium (if any), Prepayment Fee (if any), reimbursement obligations, fees and expenses for letters of credit issued by Beneficiary for the benefit of Trustor, if any, and other indebtedness evidenced by or owing under the Note, any of the other Loan Documents, any interest rate swap or hedge agreement now or hereafter entered into between Trustor and Beneficiary and any application for letters of credit and master letter of credit agreement, together with any extensions, modifications, renewals or refinancings of any of the foregoing; (ii) the performance and observance of the

covenants, conditions, agreements, representations, warranties and other liabilities and obligations of Trustor or any other obligor to or benefiting Beneficiary which are evidenced or secured by or otherwise provided in the Note, this Deed of Trust or any of the other Loan Documents, dated on or about the Effective Date which obligations, notwithstanding anything to the contrary in this Deed of Trust, shall not be secured by this Deed of Trust; and (iii) the reimbursement to Beneficiary of any and all sums incurred, expended or advanced by Beneficiary pursuant to any term or provision of or constituting additional indebtedness under or secured by this Deed of Trust, any of the other Loan Documents, any interest rate swap or hedge agreement or any application for letters of credit and master letter of credit agreement, with interest thereon as provided herein or therein.

**IT IS FURTHER UNDERSTOOD AND AGREED THAT:**

1.     **Title**.  Trustor represents, warrants and covenants that (a) Trustor is the holder of the fee simple title to the Premises, free and clear of all liens and encumbrances, except those liens and encumbrances in favor of Beneficiary and as otherwise described on the title insurance policy accepted by Beneficiary ("**Permitted Exceptions**"); and (b) Trustor has legal power and authority to mortgage and convey the Premises.

2.     **Maintenance, Repair, Restoration, Prior Liens, Parking**.  Trustor covenants that, so long as any portion of the Indebtedness remains unpaid, Trustor will:

(a)     promptly repair, restore or rebuild any Improvements now or hereafter on the Premises which may become damaged or be destroyed to a condition substantially similar to the condition immediately prior to such damage or destruction, whether or not proceeds of insurance are available or sufficient for the purpose;

(b)     keep the Premises in good condition and repair, without waste, and free from mechanics', materialmen's or like liens or claims or other liens or claims for lien (collectively, "**Mechanics' Liens**");

(c)     pay when due the Indebtedness in accordance with the terms of the Note and the other Loan Documents and duly perform and observe all of the terms, covenants and conditions to be observed and performed by Trustor under the Note, this Deed of Trust and the other Loan Documents;

(d)     pay when due any indebtedness which may be secured by a permitted lien or charge on the Premises on a parity with, superior to or inferior to, the lien hereof, and upon request exhibit satisfactory evidence of the discharge of such lien to the Beneficiary;

(e)     complete within a reasonable time any Improvements now or at any time in the process of erection upon the Premises;

(f)     comply with all requirements of law, municipal ordinances or restrictions and covenants of record with respect to the Premises and the use thereof;

(g)     obtain and maintain in full force and effect, and abide by and satisfy the material terms and conditions of, all material permits, licenses, registrations and other authorizations with or granted by any governmental authorities that may be required from time to time with respect to the performance of its obligations under this Deed of Trust;

(h)     make no material alterations in the Premises or demolish any portion of the Premises without Beneficiary's prior written consent, except as required by law or municipal ordinance;

(i)     suffer or permit no change in the use or general nature of the occupancy of the Premises, without the Beneficiary's prior written consent;

(j)     pay when due all operating costs of the Premises;

(k)     not initiate or acquiesce in any zoning reclassification with respect to the Premises, without Beneficiary's prior written consent;

(l)     provide and thereafter maintain adequate parking areas within the Premises as may be required by law, ordinance or regulation (whichever may be greater), together with any sidewalks, aisles, streets, driveways and sidewalk cuts and sufficient paved areas for ingress, egress and right-of-way, to and from the adjacent public thoroughfares necessary or desirable for the use thereof; and

(m)      cause the Premises at all times to be operated in compliance with all federal, state, local and municipal environmental, health and safety laws, statutes, ordinances, rules and regulations, including, without limitation, Trustor will (i) ensure, and cause each of its subsidiaries to ensure, that no person who owns twenty percent (20.00%) or more of the equity interests in the Trustor, or otherwise controls the Trustor or any of its subsidiaries is or shall be listed on the Specially Designated Nationals and Blocked Person List or other similar lists maintained by the Office of Foreign Assets Control (**"OFAC"**), the Department of the Treasury or included in any Executive Orders, (ii) not use or permit the use of the proceeds of the Loan to violate any of the foreign asset control regulations of OFAC or any enabling statute or Executive Order relating thereto, and (iii) comply, and cause each of its subsidiaries to comply, with all applicable Bank Secrecy Act laws and regulations, as amended.

3.      **Payment of Taxes and Assessments; Removal of Mechanics' Liens**.  Trustor will pay when due and before any penalty attaches, all general and special taxes, assessments, water charges, sewer charges, and other fees, taxes, charges and assessments of every kind and nature whatsoever (all herein generally called **"Taxes"**), whether or not assessed against Trustor, if applicable to the Premises or any interest therein, or the Indebtedness, or any obligation or agreement secured hereby, subject to Trustor's right to contest the same, as provided by the terms hereof; and Trustor will, upon written request, furnish to the Beneficiary duplicate receipts therefor within ten (10) days after Beneficiary's request.

4.      **Insurance**.

(a)      Trustor shall at all times keep all buildings, improvements, fixtures and articles of personal property now or hereafter situated on the Premises insured against loss or damage by fire and such other hazards as may reasonably be required by Beneficiary, in accordance with the terms, coverages and provisions reasonably acceptable to Beneficiary, and such other insurance as Beneficiary may from time to time reasonably require.  Unless Trustor provides Beneficiary evidence of the insurance coverages required hereunder, Beneficiary may purchase insurance at Trustor's expense to cover Beneficiary's interest in the Premises.  The insurance may, but need not, protect Trustor's interest.  The coverages that Beneficiary purchases may not pay any claim that Trustor makes or any claim that is made against Trustor in connection with the Premises.  Trustor may later cancel any insurance purchased by Beneficiary, but only after providing Beneficiary with evidence that Trustor has obtained insurance as required by this Deed of Trust.  If Beneficiary purchases insurance for the Premises, Trustor will be responsible for the costs of such insurance, including, without limitation, interest and any other charges which Beneficiary may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance.  The costs of the insurance may be added to the Indebtedness.  The cost of the insurance may be more than the cost of insurance Trustor may be able to obtain on its own.

(b)      Trustor shall not take out separate insurance concurrent in form or contributing in the event of loss with that required to be maintained hereunder unless Beneficiary is included thereon as the loss payee or an additional insured as applicable, under a standard deed of trust clause acceptable to Beneficiary and such separate insurance is otherwise acceptable to Beneficiary.

(c)      In the event of a loss, Trustor shall give prompt notice thereof to Beneficiary, who shall have the sole and absolute right to make proof of loss.  Beneficiary, solely and directly, shall receive such payment for loss from each insurance company concerned.  Beneficiary shall have the right, at its option and in its sole discretion, to apply any insurance proceeds received by Beneficiary pursuant to the terms of this section, after the payment of all of Beneficiary's expenses, either (i) on account of the Indebtedness, irrespective of whether such principal balance is then due and payable, whereupon Beneficiary may declare the whole of the balance of Indebtedness, plus the "Prepayment Fee" (as defined in the Note), to be due and payable, or (ii) to the restoration or repair of the property damaged as provided in subsection (d) below; provided, however, that Beneficiary hereby agrees to permit the application of such proceeds to the restoration or repair of the damaged property, subject to the provisions of subsection (d) below, if  (i) Beneficiary has received satisfactory evidence that such restoration or repair shall be completed no later than the date that is two (2) months prior to the Maturity Date; (ii) that the insurance proceeds will cover all costs of restoration or repair; and (iii) no Event of Default, or event that with the passage of time, the giving of notice or both would constitute an Event of Default, then exists.  If insurance proceeds are made available to Trustor by Beneficiary as hereinafter provided, Trustor shall repair, restore or rebuild the damaged or destroyed portion of the Premises so that the condition and value of the Premises are substantially the same as the condition and value of the Premises prior to being damaged or destroyed.  Any insurance proceeds applied on account of the unpaid principal balance of the Note shall be subject to the Prepayment Fee.  In the event of foreclosure of this Deed of Trust, all right, title and interest of Trustor in and to any insurance policies then in force shall pass to the purchaser at the foreclosure sale.

(d)      If insurance proceeds are made available by Beneficiary to Trustor, Trustor shall comply with the following conditions:

(i)    Before commencing to repair, restore or rebuild following damage to, or destruction of, all or a portion of the Premises, whether by fire or other casualty, Trustor shall obtain from Beneficiary its approval of all site and building plans and specifications pertaining to such repair, restoration or rebuilding.

(ii)    Prior to each payment or application of any insurance proceeds to the repair or restoration of the improvements upon the Premises to the extent permitted in subsection (c) above (which payment or application may be made, at Beneficiary's option, through an escrow, the terms and conditions of which are satisfactory to Beneficiary and the cost of which is to be borne by Trustor), Beneficiary shall be satisfied as to the following:

(1)    no Event of Default or any event which, with the passage of time or giving of notice would constitute an Event of Default, has occurred;

(2)    either such Improvements have been fully restored, or the expenditure of money as may be received from such insurance proceeds will be sufficient to repair, restore or rebuild the Premises, free and clear of all liens, claims and encumbrances, except the lien of this Deed of Trust and the Permitted Exceptions, or, if such insurance proceeds shall be insufficient to repair, restore and rebuild the Premises, Trustor has deposited with Beneficiary such amount of money which, together with the insurance proceeds shall be sufficient to restore, repair and rebuild the Premises; and

(3)    prior to each disbursement of any such proceeds, Beneficiary shall be furnished with a statement of Beneficiary's architect (the cost of which shall be borne by Trustor), certifying the extent of the repair and restoration completed to the date thereof, and that such repairs, restoration, and rebuilding have been performed to date in conformity with the plans and specifications approved by Beneficiary and with all statutes, regulations or ordinances (including building and zoning ordinances) affecting the Premises; and Beneficiary shall be furnished with appropriate evidence of payment for labor or materials furnished to the Premises, and total or partial lien waivers substantiating such payments, and title insurance endorsements in form satisfactory to Beneficiary, insuring the priority of this Deed of Trust, subject only to the Permitted Exceptions.

(iii)    If Trustor shall fail to restore, repair or rebuild the Improvements within a time deemed reasonably satisfactory by Beneficiary, then Beneficiary, at its option, may after providing Trustor with written notice of such failure and a fifteen (15) day period within which to cure such failure  (a) commence and perform all necessary acts to restore, repair or rebuild the said Improvements for or on behalf of Trustor, or (b) declare an Event of Default.  If insurance proceeds shall exceed the amount necessary to complete the repair, restoration or rebuilding of the Improvements, such excess shall be applied on account of the Indebtedness irrespective of whether such Indebtedness is then due and payable without payment of any premium or penalty.

5.    **Condemnation**.  If all or any part of the Premises are damaged, taken or acquired, either temporarily or permanently, in any condemnation proceeding, or by exercise of the right of eminent domain, the amount of any award or other payment for such taking or damages made in consideration thereof, to the extent of the full amount of the remaining unpaid Indebtedness, is hereby assigned to Beneficiary, who is empowered to collect and receive the same and to give proper receipts therefor in the name of Trustor and the same shall be paid forthwith to Beneficiary.  Such award or monies shall be applied on account of the Indebtedness, irrespective of whether such Indebtedness is then due and payable and, at any time from and after the taking Beneficiary may declare the whole of the balance of the Indebtedness, plus the Prepayment Fee, to be due and payable. Notwithstanding the provisions of this section to the contrary, if any condemnation or taking of less than the entire Premises occurs and provided that no Event of Default and no event or circumstance which with the passage of time, the giving of notice or both would constitute an Event of Default then exists, and if such partial condemnation, in the reasonable discretion of Beneficiary, has no material adverse effect on the operation or value of the Premises, then the award or payment for such taking or consideration for damages resulting therefrom may be collected and received by Trustor, and Beneficiary hereby agrees that in such event it shall not declare the Indebtedness to be due and payable, if it is not otherwise then due and payable.

6.    **Stamp Tax**.  If, by the laws of the United States of America, or of any state or political subdivision having jurisdiction over Trustor, any tax is due or becomes due in respect of the execution and delivery of this Deed of Trust, the Note or any of the other Loan Documents, Trustor shall pay such tax in the manner required by any such law.  Trustor further agrees to reimburse Beneficiary for any sums which Beneficiary may expend by reason of the imposition of any such tax.  Notwithstanding the foregoing, Trustor shall not be required to pay any income or franchise taxes of Beneficiary.

7.    **Effect of Extensions of Time and Other Changes**.  If the payment of the Indebtedness or any part thereof is extended or varied, if any part of any security for the payment of the Indebtedness is released, if the rate of interest charged under the Note is changed or if the time for payment thereof is extended or varied, all persons now or at any time hereafter liable therefor, or

interested in the Premises or having an interest in Trustor, shall be held to assent to such extension, variation, release or change and their liability and the lien and all of the provisions hereof shall continue in full force, any right of recourse against all such persons being expressly reserved by Beneficiary, notwithstanding such extension, variation, release or change.

8.    **Effect of Changes in Laws Regarding Taxation**.  If any law is enacted after the Effective Date requiring (a) the deduction of any lien on the Premises from the value thereof for the purpose of taxation or (b) the imposition upon Beneficiary of the payment of the whole or any part of the Taxes, charges or liens herein required to be paid by Trustor, or (c) a change in the method of taxation of mortgages or debts secured by mortgages or Beneficiary's interest in the Premises, or the manner of collection of taxes, so as to affect this Deed of Trust or the Indebtedness of the holders thereof, then Trustor, upon demand by Beneficiary, shall pay such Taxes or charges, or reimburse Beneficiary therefor; provided, however, that Trustor shall not be deemed to be required to pay any income or franchise taxes of Beneficiary.  Notwithstanding the foregoing, if in the opinion of counsel for Beneficiary it is or may be unlawful to require Trustor to make such payment or the making of such payment might result in the imposition of interest beyond the maximum amount permitted by law, then Beneficiary may declare all of the Indebtedness to be immediately due and payable.

9.    **Beneficiary's Performance of Defaulted Acts and Expenses Incurred by Beneficiary**.  If an Event of Default has occurred, Beneficiary may, but need not, make any payment or perform any act herein required of Trustor in any form and manner deemed expedient by Beneficiary, and may, but need not, make full or partial payments of principal or interest on prior encumbrances, if any, and purchase, discharge, compromise or settle any tax lien or other prior lien or title or claim thereof, or redeem from any tax sale or forfeiture affecting the Premises or consent to any tax or assessment or cure any default of Trustor in any lease of the Premises. All monies paid for any of the purposes herein authorized and all expenses paid or incurred in connection therewith, including reasonable attorneys' fees, and any other monies advanced by Beneficiary in regard to any tax or to protect the Premises or the lien hereof, shall be so much additional Indebtedness, and shall become immediately due and payable by Trustor to Beneficiary, upon demand, and with interest thereon accruing from the date of such demand until paid at the Default Rate (as defined in the Note) then in effect.  In addition to the foregoing, any costs, expenses and fees, including reasonable attorneys' fees, incurred by Beneficiary in connection with (a) sustaining the lien of this Deed of Trust or its priority, (b) protecting or enforcing any of Beneficiary's rights hereunder, (c) recovering any Indebtedness, (d) any litigation or proceedings affecting the Note, this Deed of Trust, any of the other Loan Documents or the Premises, including without limitation, bankruptcy and probate proceedings, or (e)  preparing for the commencement, defense or participation in any threatened litigation or proceedings affecting the Note, this Deed of Trust, any of the other Loan Documents or the Premises, shall be so much additional Indebtedness, and shall become immediately due and payable by Trustor to Beneficiary, upon demand, and with interest thereon accruing from the date of such demand until paid at the Default Rate. The interest accruing under this section shall be immediately due and payable by Trustor to Beneficiary, and shall be additional Indebtedness evidenced by the Note and secured by this Deed of Trust.  Beneficiary's failure to act shall never be considered as a waiver of any right accruing to Beneficiary on account of any Event of Default.  Should any amount paid out or advanced by Beneficiary hereunder, or pursuant to any agreement executed by Trustor in connection with the Loan, be used directly or indirectly to pay off, discharge or satisfy, in whole or in part, any lien or encumbrance upon the Premises or any part thereof, then Beneficiary shall be subrogated to any and all rights, equal or superior titles, liens and equities, owned or claimed by any owner or holder of said outstanding liens, charges and indebtedness, regardless of whether said liens, charges and indebtedness are acquired by assignment or have been released of record by the holder thereof upon payment.

10.    **Security Agreement**.  Trustor and Beneficiary agree that this Deed of Trust shall constitute a Security Agreement within the meaning of the Code with respect to (a) all sums at any time on deposit for the benefit of Trustor or held by the Beneficiary (whether deposited  by or on behalf of Trustor or anyone else) pursuant to any of the provisions of this Deed of Trust or the other Loan Documents, and (b) any personal property included in the granting clauses of this Deed of Trust, which personal property may not be deemed to be affixed to the Premises or may not constitute a "fixture" (within the meaning of the Code) (which property is hereinafter referred to as **"Personal Property"**), and all replacements of, substitutions for, additions to, and the proceeds thereof, and the "supporting obligations" (as defined in the Code) (all of said Personal Property and the replacements, substitutions and additions thereto and the proceeds thereof being sometimes hereinafter collectively referred to as **"Collateral"**), and that a security interest in and to the Collateral is hereby granted to the Beneficiary, and the Collateral and all of Trustor's right, title and interest therein are hereby assigned to Beneficiary, all to secure payment of the Indebtedness.  All of the provisions contained in this Deed of Trust pertain and apply to the Collateral as fully and to the same extent as to any other property comprising the Premises; and the following provisions of this section shall not limit the applicability of any other provision of this Deed of Trust but shall be in addition thereto:

(a)    Trustor (being the Debtor as that term is used in the Code) is and will be the true and lawful owner of the Collateral and has rights in and the power to transfer the Collateral, subject to no liens, charges or encumbrances other than the lien hereof, other liens and encumbrances benefiting Beneficiary and no other party, and liens and encumbrances, if any, expressly permitted by the other Loan Documents.

(b)    The Collateral is to be used by Trustor solely for business purposes.

(c)        The Collateral will be kept at the Real Estate and, except for Obsolete Collateral (as hereinafter defined), will not be removed therefrom without the consent of Beneficiary (being the Secured Party as that term is used in the Code). The Collateral may be affixed to the Real Estate but will not be affixed to any other real estate.

(d)        The only persons having any interest in the Premises are Trustor, Beneficiary and holders of interests, if any, expressly permitted hereby.

(e)        No Financing Statement (other than Financing Statements showing Beneficiary as the sole secured party, or with respect to liens or encumbrances, if any, expressly permitted hereby) covering any of the Collateral or any proceeds thereof is on file in any public office except pursuant hereto; and Trustor, at its own cost and expense, upon demand, will furnish to Beneficiary such further information and will execute and deliver to Beneficiary such financing statements and other documents in form satisfactory to Beneficiary and will do all such acts as Beneficiary may request at any time or from time to time or as may be necessary or appropriate to establish and maintain a perfected security interest in the Collateral as security for the Indebtedness, subject to no other liens or encumbrances, other than liens or encumbrances benefiting Beneficiary and no other party and liens and encumbrances (if any) expressly permitted hereby; and Trustor will pay the cost of filing or recording such financing statements or other documents, and this instrument, in all public offices wherever filing or recording is deemed by Beneficiary to be desirable.  Trustor hereby irrevocably authorizes Beneficiary at any time, and from time to time, to file in any jurisdiction any initial financing statements and amendments thereto that (i) indicate the Collateral as all assets of Trustor (or words of similar effect), regardless of whether any particular asset comprised in the Collateral falls within the scope of Article 9 of the Uniform Commercial Code of the jurisdiction wherein such financing statement or amendment is filed, or as being of an equal or lesser scope or within greater detail, and (ii) contain any other information required by Section 5 of Article 9 of the Uniform Commercial Code of the jurisdiction wherein such financing statement or amendment is filed regarding the sufficiency or filing office acceptance of any financing statement or amendment, including whether Trustor is an organization, the type of organization and any organizational identification number issued to Trustor, and in the case of a financing statement filed as a fixture filing or indicating Collateral as as-extracted collateral or timber to be cut, a sufficient description of real property to which the Collateral relates.  Trustor agrees to furnish any such information to Beneficiary promptly upon request.  Trustor further ratifies and affirms its authorization for any financing statements and/or amendments thereto, executed and filed by Beneficiary in any jurisdiction prior to the date of this Deed of Trust.

(f)        Upon an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Code, including, without limitation, the right to take immediate and exclusive possession of the Collateral, or any part thereof, and for that purpose, so far as Trustor can give authority therefor, with or without judicial process, may enter (if this can be done without breach of the peace) upon any place where the Collateral or any part thereof may be situated and remove the same therefrom (provided that if the Collateral is affixed to real estate, such removal shall be subject to the conditions stated in the Code); and Beneficiary shall be entitled to hold, maintain, preserve and prepare the Collateral for sale, until disposed of, or may propose to retain the Collateral subject to Trustor's right of redemption in satisfaction of Trustor's obligations, as provided in the Code.  Beneficiary may render the Collateral unusable without removal and may dispose of the Collateral on the Premises.  Beneficiary may require Trustor to assemble the Collateral and make it available to Beneficiary for its possession at a place to be designated by Beneficiary which is reasonably convenient to both parties.  Beneficiary will give Trustor at least ten (10) days' notice of the time and place of any public sale of the Collateral or of the time after which any private sale or any other intended disposition thereof is made.  The requirements of reasonable notice shall be met if such notice is mailed, by certified United States mail or equivalent, postage prepaid, to the address of Trustor hereinafter set forth at least ten (10) days before the time of the sale or disposition.  Beneficiary may buy at any public sale. Beneficiary may buy at private sale if the Collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations.  Any such sale may be held in conjunction with any foreclosure sale of the Premises.  If Beneficiary so elects, the Premises and the Collateral may be sold as one lot.  The net proceeds realized upon any such disposition, after deduction for the expenses of retaking, holding, preparing for sale, selling and the reasonable attorneys' fees and legal expenses incurred by Beneficiary, shall be applied against the Indebtedness in such order or manner as Beneficiary shall select.  Beneficiary will account to Trustor for any surplus realized on such disposition.

(g)        The terms and provisions contained in this section, unless the context otherwise requires, shall have the meanings and be construed as provided in the Code.

(h)        This Deed of Trust is intended to be a financing statement within the purview of the Code with respect to the Collateral and the goods described herein, which goods are or may become fixtures relating to the Premises.  The addresses of Trustor (Debtor) and Beneficiary (Secured Party) are hereinbelow set forth.  This Deed of Trust is to be filed for recording among the land records for Montgomery County, Maryland.

(i)      To the extent permitted by applicable law, the security interest created hereby is specifically intended to cover all Leases between Trustor or its agents as lessor, and various tenants named therein, as lessee, including all extended terms and all extensions and renewals of the terms thereof, as well as any amendments to or replacement of said Leases, together with all of the right, title and interest of Trustor, as lessor thereunder.

(j)      Trustor represents and warrants that:

(i.)      Trustor is the record owner of the Premises;

(ii.)      Trustor is qualified to do business in Maryland; and

(iii.)      The exact legal names of Trustor are as set forth in the first paragraph of this Deed of Trust.

(k)      Trustor agrees that:

(i)      Where Collateral is in possession of a third party, Trustor will join with the Beneficiary in notifying the third party of the Beneficiary's interest and obtaining an acknowledgment from the third party that it is holding the Collateral for the benefit of Beneficiary;

(ii)      Trustor will cooperate with the Beneficiary in obtaining control with respect to Collateral consisting of:  deposit accounts, investment property, letter of credit rights and electronic chattel paper; and

(iii)      Until the Indebtedness is paid in full, Trustor will not change the state where it is located or change its company name without giving the Beneficiary at least 30 days' prior written notice in each instance.

(l)      In addition to Beneficiary's rights under the Code, Beneficiary may, but shall not be obligated to, at any time and at the expense of Trustor (i) give notice to any person of Beneficiary's rights hereunder and enforce such rights; (ii) insure, protect, defend and preserve the Collateral and any rights or interests of Beneficiary therein; (iii) inspect such Collateral; and (iv) endorse, collect and receive any right to payment of money owing to Trustor under or from such Collateral.  Beneficiary shall have no duty or obligation to make or give any presentments, demands for performance, notices of non-performance, notices of protest or notices of dishonor in connection with any of such Collateral.

(m)      Trustor and Beneficiary agree that the filing of a financing statement in the records normally having to do with personal property shall never be construed as in any way derogating from or impairing this Deed of Trust and the intention of the parties that everything used in connection with the production of income from the Premises or adapted for use therein or which is described or reflected in this Deed of Trust is, and at all times and for all purposes and in all proceedings both legal or equitable shall be regarded as part of the real estate subject to the lien hereof, irrespective of whether (i) any such item is physically attached to improvements located on such real property or (ii) any such item is referred to or reflected in any financing statement so filed at any time.  Similarly, the mention in any such financing statement of (A) the rights in or the proceeds of any fire or hazard insurance policy or (B) any award in eminent domain proceedings for taking or for loss of value or for any cause of action or proceeds thereof in connection with any damage or injury to the Premises or any part thereof shall never be construed as in any way altering any of the rights of Beneficiary as determined by this instrument or impugning the priority of Beneficiary's lien granted hereby or by any other recorded document, but such mention in such financing statement is declared to be for the protection of Beneficiary in the event any court shall at any time hold with respect to matters (A) and (B) above that notice of Beneficiary's priority of interest, to be effective against a particular class of persons, including, without limitation, the Federal government and any subdivision or entity of the Federal government, must be filed in the personal property records or other commercial code records.

(n)      It is understood and agreed that, in order to protect Beneficiary from the effect of the Code, as amended from time to time, in the event that (i) Trustor intends to purchase any goods which may become fixtures to the Real Estate or Improvements, or any part thereof, and (ii) such goods would be subject to a security interest held by a seller or any other party, Trustor shall, before executing any security agreement or other document evidencing such security interest, obtain the prior written approval of Beneficiary, and all requests for such written approval shall be in writing and contain the following information:

(A)      A description of the fixtures to be replaced, added to, installed or substituted;

(B)      The address at which the fixtures will be replaced, added to, installed or substituted; and

(C)      The name and address of the proposed holder and proposed amount of the security interest;

8

and any failure of Trustor to obtain such approval shall be a material breach of Trustor's covenants under this Deed of Trust, and shall, at the option of Beneficiary, entitle Beneficiary to all rights and remedies provided for herein upon default.  No consent by Beneficiary pursuant to this section shall be deemed to constitute an agreement to subordinate any right of Beneficiary in fixtures or other property covered by this Deed of Trust.

(o)     Beneficiary shall have the right to acquire by assignment from the holder of such security interest any and all contract rights, accounts receivable, negotiable or non-negotiable instruments or other evidence of Trustor's indebtedness for such personal property or fixtures and, upon acquiring such interest by assignment, shall have the right to enforce the security interest as assignee thereof in accordance with the terms and provisions of the Code then in effect and in accordance with any other provisions of law.

(p)     If at any time Trustor fails to make any payment on an obligation secured by a security interest in such personal property or fixtures, Beneficiary, at its option, may at any time pay the amount secured by such security interest and the amount so paid shall be (i) secured by this Deed of Trust and shall be a lien on the Premises having the same priorities as the liens and security interests created by this Deed of Trust, and (ii) payable on demand with interest at the rate specified in the Note from the time of such payment.  If Trustor shall fail to make such payment to Beneficiary within ten (10) days after demand, the entire principal sum secured thereby with all unpaid accrued interest and late charges or other amounts owing thereunder, shall, at the option of Beneficiary, become due and payable immediately.

11.     **Restrictions on Transfer**.

(a)     Trustor, without the prior written consent of Beneficiary, shall not effect, suffer or permit any Prohibited Transfer (as defined herein).  Any conveyance, sale, assignment, transfer, lien, pledge, partitioning, mortgage, security interest or other encumbrance or alienation or any agreement to do any of the foregoing, with respect to any of the following properties or interests shall constitute a **"Prohibited Transfer"**:

(i)     The Premises or any part thereof or interest therein, excepting only sales or other dispositions of condominium units in the ordinary course of business and excepting only sales or other dispositions of Collateral (herein called **"Obsolete Collateral"**) no longer useful in connection with the operation of the Premises, provided that prior to the sale or other disposition thereof, such Obsolete Collateral has been replaced by Collateral of at least equal value and utility which is subject to the lien hereof with the same priority as with respect to the Obsolete Collateral;

(ii)     Any shares of capital stock of a corporate trustor, a corporation which is a general partner or managing member/manager in a partnership or limited liability company trustor, or a corporation which is the owner of substantially all of the capital stock of any corporation described in this subsection (other than the shares of capital stock of a corporate trustee or a corporation whose stock is publicly traded on a national securities exchange or on the National Association of Securities Dealers' Automated Quotation System);

(iii)     All or any part of the managing member or manager interest, as the case may be, in a limited liability company trustor or a limited liability company which is a general partner of a partnership Trustor;

(iv)     All or any part of the general partner or joint venture interest, as the case may be, of a partnership trustor or a partnership which is a manager of a limited liability company trustor or the conversion of a partnership trustor to a corporation or limited liability company; or

(v)     If there shall be any change in control (by way of transfers of stock, partnership or member interests or otherwise) of Trustor or in any partner, member, manager or shareholder, as applicable, which directly or indirectly controls the day to day operations and management of Trustor and/or owns a controlling interest in Trustor; or

in each case whether any such conveyance, sale, assignment, transfer, lien, pledge, mortgage, security interest, encumbrance or alienation is effected directly, indirectly (including the nominee agreement), voluntarily or involuntarily, by operation of law or otherwise; provided, however, that the foregoing provisions of this Section shall not apply (i) to liens securing the Indebtedness, (ii) to the lien of current taxes and assessments not in default, (iii) to any transfers of the Premises, or part thereof, or interest therein, or any beneficial interests, or shares of stock or partnership or joint venture interests, as the case may be, by or on behalf of an owner thereof, who is deceased or declared judicially incompetent, to such owner's heirs, legatees, devisees, executors, administrators, estate or personal representatives, or (iv) to leases permitted by the terms of the Loan Documents, if any.

Notwithstanding the foregoing, as long as all of the Transfer Conditions (as defined below) are satisfied, a transfer of membership interests in Trustor (i) to a conservator pursuant to court order upon the legal disability of an individual member or (ii) to a Family Member (hereinafter defined) upon the death of an individual member shall not require the Beneficiary's consent.  "Family Member" shall be defined as an individual member's spouse and any of his or her direct lineal descendants.  The term "Transfer Conditions" shall mean that all of the following conditions are satisfied concurrently with each such transfer: (1) there shall be no change in the day to day operations and management of Trustor and (2) Beneficiary shall be provided with a diagram showing the structure of Trustor and all constituent entities after such transfer occurs and a list of the names, types of interests and percentages of ownership of all owners of interests in Trustor and any constituent entities after such transfer occurs.

(b)       In determining whether or not to make the Loan, Beneficiary evaluated the background and experience of Trustor and its partners/members/officers in owning and operating property such as the Premises, found it acceptable and relied and continues to rely upon same as the means of maintaining the value of the Premises which is Beneficiary's security for the Note.  Trustor and its partners/members/officers are well experienced in borrowing money and owning and operating property such as the Premises, were ably represented by a licensed attorney at law in the negotiation and documentation of the Loan and bargained at arm's length and without duress of any kind for all of the terms and conditions of the Loan, including this provision.  Trustor recognizes that Beneficiary is entitled to keep its loan portfolio at current interest rates by either making new loans at such rates or collecting assumption fees and/or increasing the interest rate on a loan, if the security for which is purchased by a party other than the original Trustor.  Trustor further recognizes that any secondary junior financing placed upon the Premises (a) may divert funds which would otherwise be used to pay the Note; (b) could result in acceleration and foreclosure by any such junior encumbrancer which would force Beneficiary to take measures and incur expenses to protect its security; (c) would detract from the value of the Premises should Beneficiary come into possession thereof with the intention of selling same; and (d) would impair Beneficiary's right to accept a deed in lieu of foreclosure, as a foreclosure by Beneficiary would be necessary to clear the title to the Premises.  In accordance with the foregoing and for the purposes of (i) protecting Beneficiary's security, both of repayment and of value of the Premises; (ii) giving Beneficiary the full benefit of its bargain and contract with Trustor; (iii) allowing Beneficiary to raise the interest rate and collect assumption fees; and (iv) keeping the Premises free of subordinate financing liens, Trustor agrees that if this Section is deemed a restraint on alienation, that it is a reasonable one.

12.       **Events of Default; Acceleration**.  Each of the following shall constitute an **"Event of Default"** for purposes of this Deed of Trust:

(a)       Trustor fails to pay (i) any installment of principal or interest payable pursuant to the Note on the date when due, or (ii) any other amount payable to Beneficiary under the Note, this Deed of Trust or any of the other Loan Documents within five (5) days after the date when any such payment is due in accordance with the terms hereof or thereof;

(b)       Trustor fails to perform or cause to be performed any other obligation or observe any other condition, covenant, term, agreement or provision required to be performed or observed by Trustor under the Note, this Deed of Trust or any of the other Loan Documents; provided, however, that if such failure by its nature can be cured, then so long as the continued operation and safety of the Premises, and the priority, validity and enforceability of the liens created by this Deed of Trust or any of the other Loan Documents and the value of the Premises are not impaired, threatened or jeopardized, then Trustor shall have a period (**"Cure Period"**) of fifteen (15) days after Trustor obtains actual knowledge of such failure or receives written notice of such failure to cure the same and an Event of Default shall not be deemed to exist during the Cure Period;

(c)       the existence of any inaccuracy or untruth in any material respect in any representation or warranty contained in this Deed of Trust or any of the other Loan Documents or of any statement or certification as to facts delivered to Beneficiary by Trustor;

(d)       Trustor files a voluntary petition in bankruptcy or is adjudicated a bankrupt or insolvent or files any petition or answer seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under the present or any future federal, state, or other statute or law, or seeks or consents to, or acquiesces in the appointment of any trustee, receiver or similar officer of Trustor or of all or any substantial part of the property of Trustor or any of the Premises or all or a substantial part of the assets of Trustor are attached, seized, subjected to a writ or distress warrant or are levied upon unless the same is released or located within thirty (30) days;

(e)       the commencement of any involuntary petition in bankruptcy against Trustor or the institution against Trustor of any reorganization, arrangement, composition, readjustment, dissolution, liquidation or similar proceedings under any present or future federal, state or other statute or law, or the appointment of a receiver, trustee or similar officer for all or

10

any substantial part of the property of Trustor which shall remain undismissed or undischarged for a period of sixty (60) days;

(f)       the occurrence of a Prohibited Transfer;

(g)       the occurrence of an "Event of Default" under the Note or any of the other Loan Documents; or

(h)       the occurrence of any default or event of default, after the expiration of any applicable periods of notice or cure, under any document or agreement evidencing or securing any other obligation or indebtedness of Trustor to Beneficiary.

If an Event of Default occurs, Beneficiary may, at its option, declare the whole of the Indebtedness to be immediately due and payable without further notice to Trustor, with interest thereon accruing from the date of such Event of Default until paid at the Default Rate.

13.    **Remedies and Application of Proceeds**.

Upon the occurrence of an Event of Default, Beneficiary may at any time, at its option and in its sole discretion, declare all Indebtedness to be due and payable and the same shall thereupon become immediately due and payable, including the Prepayment Fee, under the terms of the Indebtedness, with interest accruing thereon from the date of the Event of Default until paid, at the Default Rate.  In addition to exercising any other remedy available at law, in equity and/or under the other Loan Documents, Beneficiary may also do any or all of the following, concurrently or otherwise, at such time and in such order as Beneficiary may determine, in its sole discretion, although it shall have no obligation to do any of the following:

(a)       Either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court and without regard to the adequacy of Beneficiary's security, enter with or without process of law upon and take possession of the Premises, or any part thereof, and do any acts which Beneficiary deems necessary or desirable to preserve the value, marketability or rentability of the Premises, or to increase the income therefrom or to protect the security hereof and, with or without taking possession of any of the Premises, sue for or otherwise collect all rents and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees and expenses, upon the Indebtedness, all in such order as Beneficiary may determine.  The collection of rents and profits and the application thereof shall not cure or waive any Event of Default or notice thereof or invalidate any act done in response thereto or pursuant to such notice.  In furtherance of the foregoing, to the fullest extent permitted by applicable law, following the occurrence of an Event of Default and during the continuance thereof, Beneficiary shall have the right to apply to a court of competent jurisdiction for and obtain appointment of a receiver of the Premises as a matter of strict right and without regard to the value of the Premises or the adequacy of the security for the Indebtedness, the existence of a declaration that the Indebtedness is immediately due and payable, or the filing of a notice of default, and Trustor hereby consents to such appointment;

(b)       Bring an action in any court of competent jurisdiction to foreclose this instrument or to enforce any of the covenants hereof.

(c)       Elect to sell by power of sale the Premises and, upon such election, such notice of Event of Default and election to sell shall be given as may then be required by law.  Thereafter, upon the expiration of such time and the giving of such notice of sale as may then be required by law, at the time and place specified in the notice of sale, Trustee shall sell such Premises, or any portion thereof specified by Beneficiary, at public auction to the highest bidder for cash in lawful money of the United States.  Trustee may, and upon request of Beneficiary shall, from time to time, postpone the sale by public announcement thereof at the time and place noticed therefor.  If the Premises consists of several lots, parcels or interests, Beneficiary may designate the order in which the same shall be offered for sale or sold.  Trustor waives all rights to direct the order in which any of the Premises will be sold in the event of any sale under this Deed of Trust, and also any of right to have any of the Premises marshaled upon any sale.  In the case of a sale under this Deed of Trust, the said property, real, personal and mixed, may be sold in one parcel or more than one parcel.  Should Beneficiary desire that more than one such sale or other disposition be conducted, Beneficiary may, at its option, cause the same to be conducted simultaneously, or successively on the same day, or at such different days or times and in such order as Beneficiary may deem to be in its best interest.  Any person, including Trustor, Trustee or Beneficiary, may purchase at the sale.  Upon any sale, Trustee shall execute and deliver to the purchaser or purchasers a deed or deeds conveying the Premises so sold, but without any covenant or warranty whatsoever, express or implied, whereupon such purchaser or purchasers shall be let into immediate possession.  Beneficiary, from time to time before the trustee's sale pursuant to this section, may rescind any notice of Event of Default and of election to cause to be sold the Premises by executing and delivering to Trustee a written notice of such rescission, which notice, shall also constitute a cancellation of any prior Event of Default and demand for sale.  The exercise by

Beneficiary of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring or impair the right of Beneficiary to execute and deliver to Trustee, as above provided, other declarations of default and demand for sale, and notices of breach or default, nor otherwise affect any provision, covenant or condition of the Note and/or of this Deed of Trust or any of the rights, obligations or remedies of the parties thereunder or hereunder.  In furtherance of the foregoing, the Beneficiary hereby directs and empowers the Trustee to take possession of any or all of the Premises and to sell the Premises, in whole or in part, and in the case of default of any purchaser or purchasers, resell all the Premises as an entirety, or in such parcels as Beneficiary shall in writing request, or, in the absence of such request, as the Trustee may determine, at public auction at some convenient place in Montgomery County, Maryland, at such time, in such manner and upon such terms as the Trustee may fix.  The notice of sale shall state the time and place of the sale, shall contain a brief general description of the Premises to be sold, and shall be sufficiently given if published in either *The Washington Post* or other publications where such notices are customarily published or in the place(s) where such sale is to take place, such advertisement of sale to be published five (5) times every other day (excluding Sundays and holidays) over a ten business day period prior to the day of said sale, subject to compliance with Section 42-815(b) of the D.C. Code, and Beneficiary or Trustee shall cause further public advertisement to be made as they deem advisable.  Any such sale may be adjourned by the Trustee by announcement at the time and place appointed for such sale or for such adjourned sale(s), and, without further notice or publication, such sale may be made at the time and place to which same shall be so adjourned. Upon the completion of any sale, the Trustee shall execute and deliver to the purchaser(s) a good and sufficient deed of conveyance, or assignment and transfer, lawfully conveying, assigning and transferring, without warranty, the property sold.

(d)      Apply any sums then held in escrow or otherwise by Beneficiary in accordance with the terms of this Deed of Trust or any other Loan Document to the payment of the Indebtedness.

(e)      Exercise all rights available to Trustor under the Code.

(f)      Exercise each of its other rights and remedies under this Deed of Trust or any other Loan Documents.

(g)      Except as otherwise required by law, apply the proceeds of any foreclosure or disposition hereunder to payment of the following: (i) the expenses of such foreclosure or disposition, including, without limitation, the fees of Trustee and the costs of the Tests and Studies (hereinafter defined), (ii) the cost of any search or other evidence of title procured in connection therewith and revenue stamps on any deed or conveyance, (iii) all sums expended under the terms hereof, not then repaid, with accrued interest in the amount provided herein, (iv) all other sums secured hereby, and (v) the remainder, if any, to the person or persons legally entitled thereto.

(h)      Upon any sale or sales made under or by virtue of this section, whether made under the power of sale or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Beneficiary may bid for and acquire the Premises or any part thereof.  In lieu of paying cash for the Premises, Beneficiary may make settlement for the purchase price by crediting against the Indebtedness the sales price of the Premises, as adjusted for the expenses of sale and the costs of the action and any other sums for which Trustor is obligated to reimburse Trustee or Beneficiary under this Deed of Trust.

(i)      In the event that Trustor has an equity of redemption and the Premises is sold pursuant to the power of sale or otherwise under or by virtue of this section, the purchaser may, during any redemption period allowed, make such repairs or alterations (but not additions) on said Premises as may be reasonably necessary for the proper operation, care, preservation, protection and insuring thereof.  Any sums so paid together with interest thereon from the time of such expenditures at the Default Rate (if not prohibited by law, otherwise at the highest lawful contract rate) shall be added to and become a part of the amount required to be paid for redemption from such sale.

14.      **Beneficiary's Right of Possession in Case of Default**.  At any time after an Event of Default has occurred, Trustor shall, upon demand of Beneficiary, surrender to Beneficiary possession of the Premises.  Beneficiary, in its discretion, may, with process of law, enter upon and take and maintain possession of all or any part of the Premises, together with all documents, books, records, papers and accounts relating thereto, and may exclude Trustor and its employees, agents or servants therefrom, and Beneficiary may then hold, operate, manage and control the Premises, either personally or by its agents.  Beneficiary shall have full power to use such measures, legal or equitable, as in its discretion may be deemed proper or necessary to enforce the payment or security of the avails, rents, issues, and profits of the Premises, including actions for the recovery of rent, actions in forcible detainer and actions in distress for rent.  Without limiting the generality of the foregoing, Beneficiary shall have full power to:

(a)      cancel or terminate any lease or sublease for any cause or on any ground which would entitle Trustor to cancel the same;

(b)      elect to disaffirm any lease or sublease which is then subordinate to the lien hereof;

(c)     extend or modify any then-existing leases and to enter into new leases, which extensions, modifications and leases may provide for terms to expire, or for options to lessees to extend or renew terms to expire, beyond the Maturity Date and beyond the date of the issuance of a deed or deeds to a purchaser or purchasers at a foreclosure sale, it being understood and agreed that any such leases, and the options or other such provisions to be contained therein, shall be binding upon Trustor and all persons whose interests in the Premises are subject to the lien hereof and upon the purchaser or purchasers at any foreclosure sale, notwithstanding any redemption from sale, discharge of the Indebtedness, satisfaction of any foreclosure judgment, or issuance of any certificate of sale or deed to any purchaser;

(d)     make any repairs, renewals, replacements, alterations, additions, betterments and improvements to the Premises as Beneficiary deems are necessary;

(e)     insure and reinsure the Premises and all risks incidental to Beneficiary's possession, operation and management thereof; and

(f)     receive all of such avails, rents, issues and profits.

15.     **Application of Income Received by Beneficiary**.  To the extent permitted by applicable law, Beneficiary, in the exercise of the rights and powers hereinabove conferred upon it, shall have full power to use and apply the avails, rents, issues and profits of the Premises to the payment of or on account of the following, in such order as Beneficiary may determine:

(a)     to the payment of the operating expenses of the Premises, including cost of management and leasing thereof (which shall include compensation to Beneficiary and its agent or agents, if management be delegated to an agent or agents, and shall also include lease commissions and other compensation and expenses of seeking and procuring tenants and entering into leases), established claims for damages, if any, and premiums on insurance hereinabove authorized;

(b)     to the payment of taxes and special assessments now due or which may hereafter become due on the Premises; and

(c)     to the payment of any Indebtedness, including any deficiency which may result from any foreclosure sale.

16.     **Rights Cumulative**.  Each right, power and remedy herein conferred upon Beneficiary is cumulative and in addition to every other right, power or remedy, express or implied, given now or hereafter existing under any of the Loan Documents or at law or in equity, and each and every right, power and remedy herein set forth or otherwise so existing may be exercised from time to time as often and in such order as may be deemed expedient by Beneficiary, and the exercise or the beginning of the exercise of one right, power or remedy shall not be a waiver of the right to exercise at the same time or thereafter any other right, power or remedy, and no delay or omission of Beneficiary in the exercise of any right, power or remedy accruing hereunder or arising otherwise shall impair any such right, power or remedy, or be construed to be a waiver of any Event of Default or acquiescence therein.

17.     **Beneficiary's Right of Inspection**.  In addition to Beneficiary's other inspection rights under this Deed of Trust, Beneficiary and its representatives shall have the right to inspect the Premises and the books and records with respect thereto at all reasonable times, and access thereto, subject to the rights of tenants in possession, shall be permitted for that purpose.

18.     **Release Upon Payment and Discharge of Trustor's Obligations**.  Beneficiary shall release this Deed of Trust and the lien hereof by proper instrument upon payment and discharge of all Indebtedness, including payment of all reasonable expenses incurred by Beneficiary in connection with the execution of such release.

19.     **Notices**.  Any notices, demands, requests, communications and waivers under this Deed of Trust shall be in writing and shall be (i) delivered in person, (ii) mailed, postage prepaid, either by registered or certified mail, return receipt requested, (iii) by overnight express carrier, addressed in each case as follows, or (iv) by confirmed facsimile transmission, so long as a duplicate copy of such notice is also sent by one of the other permitted forms of delivery:

if to Lender:          Cornerstone Capital LLC
                       c/o Broadwater Capital
                       1801 Pennsylvania Avenue, N.W., Suite 700
                       Washington, D.C.  20006
                       Attn:  Mark D. Schuman, Esquire

if to Trustor:         1734 20th Street, N.W., Suite B
                       Washington, D.C. 20009
                       Attn:  Matthew E. Shkor

or to any other address as to any of the parties hereto, as such party shall designate in a written notice to the other party hereto. All notices sent pursuant to the terms of this Section shall be deemed received (i) if personally delivered, then on the date of delivery or refusal to accept delivery, (ii) if sent by overnight, express carrier, then on the next federal banking day immediately following the day sent, (iii) if sent by registered or certified mail, then on the earlier of the third federal banking day following the day sent or when actually received or (iv) if sent by facsimile, then on the date of such transmission.

20. **Waiver of Rights**. The Trustor hereby covenants and agrees that it will not at any time insist upon or plead, or in any manner claim or take any advantage of, any stay, exemption or extension law or any so-called "Moratorium Law" now or at any time hereafter in force providing for the valuation or appraisement of the Premises, or any part thereof, prior to any sale or sales thereof to be made pursuant to any provisions herein contained, or to decree, judgment or order of any court of competent jurisdiction; or, after such sale or sales, claim or exercise any rights under any statute now or hereafter in force to redeem the property so sold, or any part thereof, or relating to the marshalling thereof, upon foreclosure sale or other enforcement hereof; and without limiting the foregoing:

(a) To the extent permitted by law, the Trustor hereby expressly waives any and all rights of reinstatement and redemption, if any, under any order or decree of foreclosure of this Deed of Trust, on its own behalf and on behalf of each and every person, it being the intent hereof that any and all such rights of reinstatement and redemption of the Trustor and of all other persons are and shall be deemed to be hereby waived;

(b) The Trustor will not invoke or utilize any such law or laws or otherwise hinder, delay or impede the execution of any right, power, or remedy herein or otherwise granted or delegated to the Beneficiary but will suffer and permit the execution of every such right, power and remedy as though no such law or laws had been made or enacted; and

(c) If the Trustor is a trustee, Trustor represents that the provisions of this section (including the waiver of reinstatement and redemption rights) were made at the express direction of Trustor's beneficiaries and the persons having the power of direction over Trustor, and are made on behalf of the trust estate of Trustor and all beneficiaries of Trustor, as well as all other persons mentioned above.

(d) To the full extent Trustor may do so, Trustor agrees that Trustor will not at any time insist upon, plead, claim or take the benefit or advantage of any law now or hereafter in force providing for any appraisement, valuation, stay, extension or redemption, and Trustor, for Trustor, Trustor's heirs, devisees, representatives, successors and assigns, and for any and all persons ever claiming any interest in the Premises, to the extent permitted by applicable law, hereby waives and releases all rights of redemption, valuation, appraisement, stay of execution, notice of intention to mature or declare due the whole of the secured indebtedness, notice of election to mature or declare due the whole of the secured indebtedness and all rights to a marshaling of assets of Trustor, including the Premises, or to a sale in inverse order of alienation in the event of foreclosure of the liens and/or security interests hereby created. Trustor shall not have or assert any right under any statute or rule of law pertaining to the marshaling of assets, sale in inverse order of alienation, the exemption of homestead, the administration of estates of decedents, or other matters whatever to defeat, reduce or affect the right of Beneficiary under the terms of this Deed of Trust to a sale of the Premises for the collection of the secured indebtedness without any prior or different resort for collection, or the right of Beneficiary under the terms of this Deed of Trust to the payment of the secured indebtedness out of the proceeds of sale of the Premises in preference to every other claimant whatever.

21. **Expenses Relating to Note and Deed of Trust**.

(a) Trustor will pay all reasonable expenses, charges, costs and fees relating to the Loan or necessitated by the terms of the Note, this Deed of Trust or any of the other Loan Documents, including without limitation, Beneficiary's reasonable attorneys' fees in connection with the negotiation, documentation, administration, servicing and enforcement of the Note, this Deed of Trust and the other Loan Documents, all filing, registration and recording fees, all other expenses incident to the execution and acknowledgment of this Deed of Trust and all federal, state, county and municipal taxes, and other taxes (provided Trustor shall not be required to pay any income or franchise taxes of Beneficiary), duties, imposts, assessments and charges arising out of or in connection with, the execution and delivery of the Note, this Deed of Trust, and any of the other Loan Documents. Trustor recognizes that, during the term of this Deed of Trust, Beneficiary:

(i) May be involved in court or administrative proceedings, including, without restricting the foregoing, foreclosure, probate, bankruptcy, creditors' arrangements, insolvency, housing authority and pollution control proceedings of any kind, to which Beneficiary shall be a party by reason of the Loan Documents or in which the Loan Documents or the Premises are involved directly or indirectly;

(ii)        May make preparations following the occurrence of an Event of Default hereunder for the commencement of any suit for the foreclosure hereof, which may or may not be actually commenced;

(iii)        May make preparations following the occurrence of an Event of Default hereunder for, and do work in connection with, Beneficiary's taking possession of and managing the Premises, which event may or may not actually occur;

(iv)        May make preparations for and commence other private or public actions to remedy an Event of Default hereunder, which other actions may or may not be actually commenced;

(v)        May enter into negotiations with Trustor or any of its agents, employees or attorneys in connection with the existence or curing of any Event of Default hereunder, the sale of the Premises, the assumption of liability for any of the Indebtedness or the transfer of the Premises in lieu of foreclosure; or

(vi)        May enter into negotiations with Trustor or any of its agents, employees or attorneys pertaining to Beneficiary's approval of actions taken or proposed to be taken by Trustor which approval is required by the terms of this Deed of Trust.

(b)        All expenses, charges, costs and fees described in this Section shall be so much additional Indebtedness, shall bear interest from the date so incurred until paid at the Default Rate and shall be paid, together with said interest, by Trustor forthwith upon demand.

22.        **Further Instruments**.  Upon request of Beneficiary, Trustor shall execute, acknowledge and deliver all such additional instruments and further assurances of title and shall do or cause to be done all such further acts and things as may reasonably be necessary fully to effectuate the intent of the Note, this Deed of Trust, and any of the other Loan Documents.

23.        **Indemnity**.  Trustor hereby covenants and agrees that no liability shall be asserted or enforced against Beneficiary in the exercise of the rights and powers granted to Beneficiary in this Deed of Trust, and Trustor hereby expressly waives and releases any such liability.  Trustor shall indemnify and save Beneficiary harmless from and against any and all liabilities, obligations, losses, damages, claims, costs and expenses (including reasonable attorneys' fees and court costs) (collectively, **"Claims"**) of whatever kind or nature which may be imposed on, incurred  by, or asserted against Beneficiary at any time by any third party which relate to or arise from: (a) any suit or proceeding (including probate and bankruptcy proceedings), or the threat thereof, in, or to which Beneficiary may or does become a party, either as plaintiff or as a defendant, by reason of this Deed of Trust or for the purpose of protecting the lien of this Deed of Trust; (b) the offer for sale or sale of all or any portion of the Premises; and (c) the ownership, leasing, use, operation or maintenance of the Premises, if such Claims relate to or arise from actions taken prior to the surrender of possession of the Premises to Beneficiary in accordance with the terms of this Deed of Trust; provided, however, that Trustor shall not be obligated to indemnify or hold Beneficiary harmless from and against any Claims directly arising from the gross negligence or willful misconduct of Beneficiary.  All costs provided for herein and paid for by Beneficiary shall be so much additional Indebtedness and shall become immediately due and payable upon demand by Beneficiary and with interest thereon from the date incurred by Beneficiary until paid at the Default Rate.

24.        **Compliance with Environmental Laws**.

(a)        Trustor covenants and agrees, at Trustor's sole cost and expense, to indemnify, defend (at trial and appellate levels, and with attorneys, consultants and experts reasonably acceptable to Beneficiary), and hold Beneficiary harmless from and against any and all liens, damages (including, without limitation, consequential damages), losses, liabilities, obligations, settlement payments, penalties, claims, judgments, suits, proceedings, costs, disbursements or expenses of any kind or of any nature whatsoever (including reasonable attorneys', consultants' and experts' fees and disbursements actually incurred in investigating, defending, settling or prosecuting any claim, litigation or proceeding) which may at any time be imposed upon, incurred by or asserted against Beneficiary or the Premises, and arising directly or indirectly from or out of: (i) the past, present or future presence, release or threat of release of any hazardous substances on, in, under or affecting all or any portion of the Premises or any surrounding areas, regardless of whether or not caused by or within the control of any Trustor; or (ii) the past, present or future violation of any environmental laws, relating to or affecting the Premises, whether or not caused by or within the control of Trustor.

(b)        Trustor hereby authorizes Beneficiary, any prospective bidder at any foreclosure sale and their respective officers, directors, employees, agents and independent contractors to enter upon all or any portion of the Premises (including, without limitation, following the occurrence of a default hereunder) for the purpose of conducting such tests, inspections, inquiries, examinations, studies, analyses, samples, surveys, and other information gathering activities (collectively, the **"Tests and Studies"**) with respect to the Premises as any of them may from time to time deem necessary or appropriate,

15

including, without limitation, Tests and Studies with respect to the presence of Hazardous Materials (as defined in the Indemnity) in or around the Premises and the occurrence of any actual, proposed or threatened storage, existence, release, removal, remediation, handling or transportation of any Hazardous Substances (as defined in the Indemnity) in or around the Premises.  Except in case of an emergency, or when the Trustor or any tenant has abandoned the Premises, or if it is impracticable to do so, Beneficiary shall give Trustor reasonable advance notice of Beneficiary's intent to enter the Premises and shall enter the Premises only during normal business hours.  Trustor hereby covenants and agrees to cooperate fully with such parties in their efforts to conduct the Tests and Studies, and further covenants and agrees to make available to such parties such portions of the Premises as any of them may designate.  If Beneficiary is refused the right of entry and inspection by the Trustor or any tenant of the Premises, or is otherwise unable to enter and conduct Tests and Studies on the Premises without a breach of peace, Beneficiary may obtain an order from a court of competent jurisdiction, the appointment of a receiver, or both, to enable Beneficiary to exercise its rights under this section.  The decision of Beneficiary as to whether there exists a release or threatened release of Hazardous Substances onto the Premises shall be deemed reasonable and conclusive as between the parties hereto.  The results of all Tests and Studies shall be and at all times remain the property of Beneficiary and under no circumstances shall Beneficiary have any obligation whatsoever to disclose or otherwise make available to Trustor or any other party such results or any other information obtained by them in connection with such Tests and Studies.

(c)    Notwithstanding the provisions of subsection (a) above, Beneficiary hereby reserves the right, and Trustor hereby expressly authorizes Beneficiary to make available to any party (including, without limitation, any governmental agency or authority and any prospective bidder at any foreclosure sale of the Premises), any and all information which Beneficiary may have with respect to the Premises, whether provided by Trustor or any third party or obtained as a result of Tests and Studies, including, without limitation, environmental reports, surveys and engineering reports.  Trustor consents to Beneficiary notifying any party (either as part of a notice of sale or otherwise) of the availability of any or all of the Tests and Studies and the information contained therein.  Trustor acknowledges that Beneficiary cannot control or otherwise assure the truthfulness or accuracy of the Tests and Studies, and that the release of Tests and Studies, or any information contained therein, to prospective bidders at any foreclosure sale of the Premises may have a material and adverse effect upon the amount which a party may bid at such sale.  Trustor agrees that Beneficiary shall have no liability whatsoever as a result of delivering any or all of the Tests and Studies or any information contained therein to any third party, and Trustor hereby releases, remises and forever discharges Beneficiary from any and all claims, damages, or causes of action, arising out of, connected with or incidental to the Tests and Studies or the delivery thereof.

(d)    All costs and expenses incurred by Beneficiary pursuant to this section, including, without limitation, costs of consultants and contractors, costs of repair of any physical injury to the Premises normal and customary to the Tests and Studies, court costs and reasonable attorneys' fees, whether incurred in litigation or not and whether before or after judgment, shall be payable by Trustor and, to the extent advanced or incurred by Beneficiary, shall be reimbursed to Beneficiary by Trustor upon demand.  Any and all costs and expenses incurred or advanced by Beneficiary pursuant to this section, together with interest thereon at the rate then applicable under the Note, shall be secured by this Deed of Trust and shall enjoy the same priority as the original principal amount of the Note.

25.    **Miscellaneous**.

(a)    **Successors and Assigns**.  This Deed of Trust and all provisions hereof shall be binding upon and enforceable against Trustor and its assigns and other successors.  This Deed of Trust and all provisions hereof shall inure to the benefit of Beneficiary, its successors and assigns and any holder or holders, from time to time, of the Note.

(b)    **Invalidity of Provisions; Governing Law**.  In the event that any provision of this Deed of Trust is deemed to be invalid by reason of the operation of law, or by reason of the interpretation placed thereon by any administrative agency or any court, Trustor and Beneficiary shall negotiate an equitable adjustment in the provisions of the same in order to effect, to the maximum extent permitted by law, the purpose of this Deed of Trust, and the validity and enforceability of the remaining provisions, or portions or applications thereof, shall not be affected thereby and shall remain in full force and effect.  This Deed of Trust is to be construed in accordance with and governed by the laws of Maryland.

(c)    **Beneficiary in Possession**.  Nothing herein contained shall be construed as constituting Beneficiary a mortgagee in possession in the absence of the actual taking of possession of the Premises by Beneficiary pursuant to this Deed of Trust.

(d)    **Relationship of Beneficiary and Trustor**.  Beneficiary shall in no event be construed for any purpose to be a partner, joint venturer, agent or associate of Trustor or of any lessee, operator, concessionaire or licensee of Trustor in the conduct of their respective businesses, and, without limiting the foregoing, Beneficiary shall not be deemed to be such partner, joint venturer, agent or associate on account of Beneficiary becoming a mortgagee in possession or exercising any

rights pursuant to this Deed of Trust, any of the other Loan Documents, or otherwise.  The relationship of Trustor and Beneficiary hereunder is solely that of debtor/creditor.

(e)     **Time of the Essence**.  Time is of the essence of the payment by Trustor of all amounts due and owing to Beneficiary under the Note and the other Loan Documents and the performance and observance by Trustor of all terms, conditions, obligations and agreements contained in the Note, this Deed of Trust, and the other Loan Documents.

(f)     **No Merger**.  The parties hereto intend that this Deed of Trust and the lien hereof shall not merge in fee simple title to the Premises, and if Beneficiary acquires any additional or other interest in, or to the Premises or the ownership thereof, then, unless a contrary intent is manifested by Beneficiary as evidenced by an express statement to that effect in an appropriate document duly recorded, this Deed of Trust and the lien hereof shall not merge in the fee simple title and this Deed of Trust may be foreclosed as if owned by a stranger to the fee simple title.

(g)     **Consent to Jurisdiction**   **TO INDUCE BENEFICIARY TO ACCEPT THIS DEED OF TRUST, TRUSTOR IRREVOCABLY AGREES THAT, SUBJECT TO BENEFICIARY'S SOLE AND ABSOLUTE ELECTION, ALL ACTIONS OR PROCEEDINGS IN ANY WAY ARISING OUT OF OR RELATED TO THIS DEED OF TRUST WILL BE LITIGATED IN COURTS HAVING SITUS IN THE CIRCUIT COURT FOR MONTGOMERTY COUNTY, MARYLAND.  TRUSTOR HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF CIRCUIT COURT FOR MONTGOMERTY COUNTY, MARYLAND, WAIVES PERSONAL SERVICE OF PROCESS UPON TRUSTOR, AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY REGISTERED MAIL DIRECTED TO TRUSTOR AT THE ADDRESS STATED HEREIN AND SERVICE SO MADE WILL BE DEEMED TO BE COMPLETED UPON ACTUAL RECEIPT.**

(h)     **Waiver of Jury Trial**.  **TRUSTOR AND BENEFICIARY (BY ACCEPTANCE HEREOF), HAVING BEEN REPRESENTED BY COUNSEL EACH KNOWINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS (a) UNDER THIS DEED OF TRUST OR ANY OTHER LOAN DOCUMENT OR ANY RELATED AGREEMENT OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION WITH THIS DEED OF TRUST OR (b) ARISING FROM ANY BANKING RELATIONSHIP EXISTING IN CONNECTION WITH THIS DEED OF TRUST, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING WILL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. TRUSTOR AGREES THAT IT WILL NOT ASSERT ANY CLAIM AGAINST BENEFICIARY OR ANY OTHER PERSON INDEMNIFIED UNDER THIS DEED OF TRUST ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES.**

(i)     **Complete Agreement**.  This Deed of Trust, the Note and the other Loan Documents constitute the complete agreement between the parties with respect to the subject matter hereof and the same may not be modified, altered or amended except by an agreement in writing signed by both Trustor and Beneficiary.

26.     **Additional Agreements**.

(a)     Beneficiary may substitute the trustee hereunder in any manner now or hereafter provided by law or, in lieu thereof, Beneficiary may from time to time, by an instrument in writing, substitute a successor or successors to any trustee named herein or acting hereunder, which instrument, executed and acknowledged by Beneficiary and recorded among the land records for Montgomery County, Maryland, shall be conclusive proof of proper substitution of such successor trustee, who shall thereupon and without conveyance from the predecessor trustee, succeed to all its title, estate, rights, powers and duties.

(b)     It is expressly stipulated and agreed to be the intent of Beneficiary and Trustor, at all times to comply with applicable laws governing the highest lawful rate or amount of interest payable on the Loan (or applicable United States federal law to the extent that it permits Beneficiary to contract for, charge, take, reserve or receive a greater amount of interest than under applicable law).  If the applicable law is ever judicially interpreted so as to render usurious any amount called for under this Deed of Trust, the Note, or under any of the other Loan Documents, or contracted for, charged, taken, reserved or received with respect to the Loan, or if Beneficiary's exercise of the option to accelerate the maturity of the Note or if any prepayment by Trustor results in Trustor having paid any interest in excess of that permitted by applicable law, then it is Trustor's and Beneficiary's express intent that all excess amounts theretofore collected by Beneficiary be credited on the principal balance of the Note (or, if the Note and all other obligations have been or would thereby be paid in full, refunded to Trustor), and the provisions of this Deed of Trust, the Note and the other Loan Documents immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new documents, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called

for hereunder or thereunder.  All sums paid or agreed to be paid to Beneficiary for the use, forbearance or detention of the Loan shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of the Loan until payment in full, so that the rate or amount of interest on account of the Loan does not exceed the usury ceiling from time to time in effect and applicable to the Loan for so long as the Loan is outstanding.  Notwithstanding anything to the contrary contained herein, in the Note, or in any of the other Loan Documents, it is not the intention of Beneficiary to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.

27.    **Future Advances**.  This Deed of Trust shall secure not only existing indebtedness, but also such future advances, whether such advances are obligatory or to be made at the option of Beneficiary, or otherwise, to the same extent as if such future advances were made on the date of the execution of this Deed of Trust.  Any such future advances, whether obligatory or to be made at the option of the Beneficiary, or otherwise, may be made either prior to or after the due date of the Note or any other notes secured by this Deed of Trust.  This Deed of Trust is given for the specific purpose of securing any and all indebtedness by the Trustor to Beneficiary (but in no event shall the secured indebtedness exceed at any time the maximum principal amount set forth in this section) in whatever manner this indebtedness may be evidenced or represented, until this Deed of Trust is satisfied of record.  All covenants and agreements contained in this Deed of Trust shall be applicable to all further advances made by Beneficiary to Trustor under this future advance clause.

**[REMAINDER OF THIS PAGE LEFT BLANK INTENTIONALLY]**

**[SIGNATURE PAGE TO FOLLOW]**

**IN WITNESS WHEREOF**, the Trustor  has executed and delivered this Agreement as of the day and year first above written.

**TRUSTOR:**

**1311 R STREET NW LLC**

**By: POTOMAC DEVELOPMENT**
      **HOLDINGS, LLC, it Managing Member**

By:_____(SEAL)
      Matthew E. Shkor


District of Columbia

I HEREBY CERTIFY that on ____ day of October, 2019, before me, the subscriber, a Notary Public, in and for the jurisdiction aforesaid, personally appeared Matthew E. Shkor, personally well known to me (or satisfactorily proven) to be the person who acknowledged and executed the foregoing instrument, on behalf of Trustor, and, being authorized so to do, executed the foregoing instrument for the purposes therein contained and that the same was delivered as such.

IN WITNESS WHEREOF I hereunto set my hand and official seal.


_____
Notary Public
My commission expires: _____

**EXHIBIT A**

**LEGAL DESCRIPTION**

1309 R Street, N.W., Unit 1, Washington, D.C.


1311 R Street, N.W., Washington, D.C.


1313 R Street, N.W., Unit 2, Washington, D.C.

## COMMERCIAL PROMISSORY NOTE
### (this "Note")

**$3,820,000.00**                                                              **May 7, 2018**

     **FOR VALUE RECEIVED, POTOMAC CONSTRUCTION SHAW LLC, a District of Columbia limited liability company ("Borrower"),** hereby promises to pay to the order of **CORNERSTONE CAPITAL LLC, a Maryland limited liability company ("Lender"),** the principal sum of **Three Million Eight Hundred Twenty Thousand and No/100 Dollars ($3,820,000.00)** ("Loan") at the place and in the manner hereinafter provided, together with interest thereon at the rate or rates described below, and any and all other amounts which may be due and payable hereunder from time to time.

     11. Interest.

          A.     From and after the date hereof and continuing to the Maturity Date (as hereinafter defined), interest shall be charged on the outstanding principal balance of this Note at the fixed rate of **Eleven percent (11%) per annum**.

          B.     All interest due under this Note shall be calculated based on a 360/365 calculation method (e.g., 360 days per year factor applied to the actual days on which there exists an outstanding principal balance). Interest shall be charged on a per diem basis.

     2. Payments and Maturity Date.

          A.     Interest through May 31, 2018 will be collected at closing. Commencing on **July 1, 2018,** and continuing on the same day of each calendar month thereafter, monthly payments of interest only on the principal balance outstanding shall be due and payable.

          B.     If not sooner paid, the entire principal balance of the Note, together with all accrued and unpaid interest, shall be due and payable on the date that is 12 months following the date hereof (the "**Maturity Date**"); provided, however, Borrower may elect to extend the Maturity Date (the "**Extension Option**") for one (1) period of six (6) months (the "**Option Term**"); provided that: (i) neither Borrower nor Guarantor is in default under any of the documents evidencing, securing or implementing the Loan and no event or omission has occurred which with the passage of time or the giving of notice would constitute a default thereunder, (ii) there shall have been no material adverse change in Guarantor's financial condition, as determined by Lender in good faith in its sole discretion, and (iii) Borrower notifies Lender in writing not less than forty-five (45) days (but not more than ninety (90) days) prior to the Maturity Date of Borrower's intention to exercise the Option Term and delivers with such notice, an extension fee equal to $57,300.00.

          C.     Borrower shall continue to make monthly interest payments during the Option Term.

          D.     All payments of principal and/or interest hereon shall be payable in lawful money of the United States and in immediately available funds. All payments received hereon shall be applied, at the Lender's option, first to late charges, if any, then to cost and expenses, if any, then to accrued but unpaid interest and then to principal. All payments hereunder shall be made without offset, demand, counterclaim, deduction, abatement, defense, or recoupment, each of which Borrower hereby waives.

     3. Voluntary and Involuntary Prepayments.

          A.     There shall be no prepayment premium in connection with this Note.

     4. Late Charges. In the event that any payment of principal and/or interest is not actually received by the holder hereof by the fifth day after such payment is due, the Borrower agrees to pay a late charge of the greater of: (i) 10% of the amount of the late payment; or (ii) Fifty Dollars ($50.00).

     5. Events of Default. Any one or more of the following shall constitute an "Event of Default" hereunder: (i) if default be made in the payment of any installment due hereunder; or (ii) if a default shall occur in the performance or observance beyond any applicable grace period (if any) of any other term, covenant or agreement set forth in this Note; or (iii) if a default shall occur in the performance or observance beyond any applicable grace period (if any) of any other term, covenant or agreement in any other of the

Loan Documents (hereinafter defined); or (iv) if a default shall occur in the payment or performance of any other indebtedness, obligation and liability of any kind and nature of the Borrower to the Lender, whether now existing or hereafter created or arising, direct or indirect, matured or unmatured, and whether absolute or contingent, joint, several or joint and several and howsoever owned, held or acquired, and such default shall continue beyond any applicable grace or cure period; (v) default shall occur in the payment or performance of any other indebtedness, obligation and liability of any kind and nature of the Borrower to any other lender; or (vi) if a default shall occur in the payment or performance of any other indebtedness, obligation and liability of any kind and nature of any guarantor (or any affiliate of such guarantors) of this Note to the Lender, whether now existing or hereafter created or arising, direct or indirect, matured or unmatured, and whether absolute or contingent, joint, several or joint and several and howsoever owned, held or acquired, and such default shall continue beyond any applicable grace or cure period. Upon any such Event of Default, the entire principal balance hereof, all accrued and unpaid interest thereon, and all other applicable fees, costs and charges, if any, shall at once become due and payable at the option of the Lender. Failure to exercise this option shall not constitute a waiver of the right to the later exercise thereof or to exercise the same in the event of any subsequent Event of Default.

6. <u>Default Interest</u>. Notwithstanding the entry of any decree, order, judgment or other judicial action under, pursuant to, in connection with, or otherwise concerning this Note or any of the Loan Documents, upon the occurrence of an Event of Default hereunder, or under any of the Loan Documents and continuance thereof beyond any applicable grace periods and/or after the maturity of this Note (whether by acceleration, declaration, extension or otherwise), the Borrower promises to pay to the Lender whenever demanded by the Lender interest on this Note and all other amounts then and thereafter due and payable hereunder or otherwise under any of the Loan Documents at a rate of interest (the **"Default Rate"**) equal at all times to the lesser of (i) Twenty-four percent (24%) per annum, or (ii) the highest rate allowable by law from the date of such Event of Default for so long as such Event of Default continues, from the date of such maturity until payment in full of the unpaid principal balance of this Note, all accrued and unpaid interest thereon and any and all other amounts due or payable hereunder or under any of the Loan Documents.

7. <u>Waiver of Notice</u>. Each party liable hereon in any capacity, whether as maker, endorser, surety, guarantor or otherwise, (i) waives presentment, demand, protest and notice of presentment, notice of protest and notice of dishonor of this debt and each and every other notice of any kind respecting this Note (except as otherwise expressly provided for herein), (ii) agrees that the holder hereof, at any time or times, without notice to it or its consent, may grant extensions of time, without limit as to the number or the aggregate period of such extensions, for the payment of any principal and/or interest due hereon, and (iii) to the extent not prohibited by law, waives the benefit of any law or rule of law intended for its advantage or protection as an obligor hereunder or providing for its release or discharge from liability hereon, in whole or in part, on account of any facts or circumstances other than full and complete payment of all amounts due hereunder.

8. <u>Waiver of Jury Trial</u>. **THE LENDER, THE BORROWER AND ANY OTHER PARTY LIABLE HEREON IN ANY CAPACITY, WHETHER AS ENDORSER, SURETY, GUARANTOR, OR OTHERWISE, EACH WAIVES TRIAL BY JURY WITH RESPECT TO ANY ACTION, CLAIM, SUIT OR PROCEEDING IN RESPECT OF OR ARISING OUT OF THE LOAN EVIDENCED HEREBY AND/OR THE CONDUCT OF THE RELATIONSHIP BETWEEN THE LENDER, BORROWER AND/OR ANY OTHER PARTY LIABLE HEREON IN ANY CAPACITY, WHETHER AS ENDORSER, SURETY, GUARANTOR, OR OTHERWISE. THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY BORROWER, AND BORROWER HEREBY REPRESENTS THAT NO ORAL OR WRITTEN STATEMENTS HAVE BEEN MADE BY ANY PARTY TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS STATED EFFECT. BORROWER FURTHER REPRESENTS THAT IT HAS BEEN REPRESENTED BY INDEPENDENT COUNSEL OF ITS CHOICE IN THE SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH SUCH COUNSEL.**

9. <u>Cost of Collection</u>. The Borrower promises to pay all reasonable costs and expenses incurred in connection with collection hereof or in the protection or realization of any collateral now or hereafter given as security for the repayment hereof, including attorneys' fees, upon the occurrence of an Event of Default in the payment of the principal of this Note or interest hereon when due, whether at maturity, as herein provided, or by reason of acceleration of maturity under the terms hereof or under the terms of any other of the Loan Documents, whether suit be brought or not.

10. <u>Lender's Rights and Remedies</u>. The failure of the Lender to exercise the option for acceleration of maturity, foreclosing, or either, following any Event of Default as aforesaid or to exercise any other option granted to it hereunder, under the Deed of Trust (as hereinafter defined) or under any other Loan Documents in any one or more instances, or the acceptance by the Lender of partial payments or partial performance, shall not constitute a waiver of any such Event of Default, but such options shall remain continuously in force. Acceleration of maturity, once claimed hereunder by the Lender, may at its option be rescinded by written

2

acknowledgment to that effect but the tender and acceptance of partial payment or partial performance alone shall not in any way affect or rescind such acceleration of maturity. The rights, remedies and powers of the Lender, as provided in this Note, in the Deed of Trust and in all other Loan Documents, are cumulative and concurrent, and may be pursued singly, successively, or together against the Borrower, the Property, and/or any other security given at any time to secure the payment hereof, all at the sole discretion of the Lender.

11. Lawful Interest. Notwithstanding anything to the contrary contained herein or in any of the Loan Documents, the effective rate of interest on the obligation evidenced by this Note shall not exceed the lawful maximum rate of interest permitted to be paid. Without limiting the generality of the foregoing, in the event the interest charged hereunder results in an effective rate of interest higher than that lawfully permitted to be paid, then such charges shall be reduced by the sum sufficient to result in an effective rate of interest permitted by law and any amount which would exceed the highest lawful rate already received and held by the Lender shall be applied to a reduction of principal and not to the payment of interest.

12. Setoff. In addition to all liens upon, and rights of set-off against the money, credit, stocks, bonds and/or securities or other property of any nature whatsoever of the Borrower given to the Lender by law, the Lender shall have a lien upon and a right of set-off against all money, credit, stocks, bonds and/or securities and other property of any nature whatsoever of the Borrower now or hereafter on deposit with, or held by, or in the possession of, or on account with the Lender, whether held in a general or special account or deposit, or for safe-keeping or otherwise; and every such lien and right of set-off may be exercised without demand upon or notice to the Borrower, upon an Event of Default under this Note or any of the Loan Documents. No lien or right of set-off shall be deemed to have been waived by any act or conduct on the part of the Lender, or by any neglect to exercise such right of set-off or to enforce such lien, or by any delay in so doing, and every right of set-off and lien shall continue in full force and effect until such right of set-off or lien is specifically waived or released by an instrument in writing executed by the Lender.

13. Partial Invalidity. In the event any one or more of the provisions contained in this Note or in any other of the Loan Documents shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Note or of any other of the Loan Documents, but this Note and all other of the Loan Documents shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein or therein.

14. Entire Agreement. This Note may not be changed orally, but only by an agreement in writing signed by the parties against whom enforcement of any waiver, change, modification or discharge is sought.

15. Security. This Note is made pursuant to the Loan Agreement of even date herewith executed by Borrower and Lender ("**Loan Agreement**") and is secured by, among other things, (i) a Deed of Trust (as the same may be amended, restated or modified from time to time, referred to herein as the **"Deed of Trust"**) from Borrower, conveying to Jason A. Pardo, Esquire and Russell S. Drazin, Esquire, Trustee(s) (collectively, the **"Trustee"**), for the benefit of Lender, certain real property located at **1225 11th Street, N.W., Washington, D.C. 20001**, as more particularly described therein, together with all improvements now or hereafter located thereon (collectively, the **"Property"**); (ii) a Deed of Trust against 1738 R Street, N.W., Washington, D.C. ("R Street DOT"). The R Street DOT shall be limited to $500,000.00. This Note, the Loan Agreement, the Deed of Trust, R Street DOT and all other documents now and/or hereafter issued, executed and/or delivered in connection with the loan evidenced hereby, together with all amendments, modifications, renewals or extensions thereof, are herein collectively referred to as the **"Loan Documents."**

16. Incorporation of Loan Documents. All of the terms, covenants, provisions, conditions, stipulations, promises and agreements contained in the Loan Documents to be kept, observed and performed by the Borrower and/or by any other parties to any one or more of the Loan Documents (except for the Lender and/or any trustees thereunder for the benefit of the Lender) are hereby made a part of this Note and incorporated herein by reference to the same extent and with the same force and effect as if they were fully set forth herein, and the Borrower promises and agrees to keep, observe and perform them or cause them to be kept, observed and performed, strictly in accordance with the terms and provisions thereof.

17. Financial Reporting. During the entire term of the Loan, Borrower shall provide, or caused to be provided, to Lender certain financial information as more particularly set forth in the Loan Agreement.

18. Business Purpose. The Borrower warrants and represents that the loan evidenced hereby is being made for business or commercial purposes only, and expressly is **NOT** for personal, family or household purposes.

3

19. <u>Governing Law</u>. This Note shall be governed in all respects by the laws of the State of Maryland and shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, personal representatives, successors and assigns. The Borrower hereby consents to be sued in an appropriate court in the State of Maryland in any action to enforce the provisions of this Note. The Borrower waives any objection to the venue of any action filed by Lender against Borrower in any state or federal court in the State of Maryland and waives any claim of <u>forum non conveniens</u> or for transfer of any such action to any other court.

20. <u>Cross-Default</u>. A default in any other agreement between the Borrower and the Lender, whether previously, simultaneously or hereafter entered into, and whether or not related to this Note, which default continues beyond any applicable grace or cure period, if any, shall constitute a default hereunder.

21. <u>Notice</u>. Any notices, demands, requests, communications and waivers under this Note shall be in writing and shall be (i) delivered in person, (ii) mailed, postage prepaid, either by registered or certified mail, return receipt requested, (iii) by overnight express carrier, addressed in each case as follows, or (iv) by confirmed facsimile transmission, so long as a duplicate copy of such notice is also sent by one of the other permitted forms of delivery:

if to Lender:     Cornerstone Capital LLC
                  c/o Broadwater Capital
                  1801 Pennsylvania Avenue, N.W., Suite 700
                  Washington, D.C. 20006
                  Attn: Mark D. Schuman, Esquire

if to Borrower:   1734 20th Street, N.W., Suite B
                  Washington, D.C. 20009
                  Attn: Matthew E. Shkor

or to any other address as to any of the parties hereto, as such party shall designate in a written notice to the other party hereto. All notices sent pursuant to the terms of this Section shall be deemed received (i) if personally delivered, then on the date of delivery or refusal to accept delivery, (ii) if sent by overnight, express carrier, then on the next federal banking day immediately following the day sent, (iii) if sent by registered or certified mail, then on the earlier of the third federal banking day following the day sent or when actually received or (iv) if sent by facsimile, then on the date of such transmission.

22. **<u>Confession of Judgment</u>. UPON THE OCCURRENCE OF ANY DEFAULT BY BORROWER ON ANY OF ITS OBLIGATIONS TO LENDER, THE BORROWER AUTHORIZES ANY ATTORNEY ADMITTED TO PRACTICE BEFORE ANY COURT OF RECORD IN THE UNITED STATES TO APPEAR ON BEHALF OF THE BORROWER IN ANY COURT HAVING JURISDICTION IN ONE OR MORE PROCEEDINGS, OR BEFORE ANY CLERK THEREOF OR PROTHONOTARY OR OTHER COURT OFFICIAL, AND TO CONFESS JUDGMENT AGAINST THE BORROWER, WITHOUT PRIOR NOTICE OR OPPORTUNITY OF THE BORROWER FOR PRIOR HEARING, IN FAVOR OF LENDER FOR THE FULL AMOUNT DUE UNDER THIS PROMISSORY NOTE PLUS COURT COSTS AND ATTORNEYS' FEES OF FIFTEEN PERCENT OF THE TOTAL AMOUNT THEN DUE HEREUNDER; PROVIDED, HOWEVER, THAT NOTWITHSTANDING THE AMOUNT OF ATTORNEYS FEES IN ANY SUCH JUDGMENT, THE LENDER MAY NOT COLLECT FROM THE GUARANTOR ATTORNEYS FEES IN EXCESS OF THE ACTUAL, REASONABLE ATTORNEYS FEES INCURRED BY LENDER. THE BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE OF EXEMPTION, HOMESTEAD RIGHTS, APPEAL, STAY OF EXECUTION OR SUPPLEMENTARY PROCEEDINGS, INQUISITION, EXTENSION UPON ANY LEVY ON REAL ESTATE OR PERSONAL PROPERTY, AND ANY OTHER RELIEF FROM THE ENFORCEMENT OR IMMEDIATE ENFORCEMENT OF A JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST THE BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS, AS OFTEN AS LENDER SHALL DEEM NECESSARY OR ADVISABLE, FOR ALL OF WHICH THIS PROMISSORY NOTE SHALL BE SUFFICIENT AUTHORITY.**

**IN WITNESS WHEREOF**, the Borrower has executed and delivered this Note as of the day and year first above written.

<u>**BORROWER:**</u>

**POTOMAC CONSTRUCTION SHAW LLC**
**a District of Columbia limited liability company**

By:

Name:  Matthew E. Shkor
Title:  Manager

District of Columbia

I HEREBY CERTIFY that on this ___ day of May, 2018, before me, the subscriber, a Notary Public, in and for the jurisdiction aforesaid, personally appeared Matthew E. Shkor, personally well known to me (or satisfactorily proven) to be the person who acknowledged and executed the foregoing instrument, on behalf of Borrower, and, being authorized so to do, executed the foregoing instrument for the purposes therein contained and that the same was delivered as such.

IN WITNESS WHEREOF I hereunto set my hand and official seal.

Notary Public
My commission expires: _____

KEVIN  DALE  ANDERSON
Notary Public, District of Columbia
My Commission Expires Jan. 31, 2020

5

## GUARANTY OF PAYMENT AND PERFORMANCE

THIS GUARANTY OF PAYMENT AND PERFORMANCE ("Guaranty") is dated as of **May 7, 2018** (the "**Effective Date**") by **Matthew E. Shkor**, an individual ("**Guarantor**"), for the benefit of **Cornerstone Capital LLC, a Maryland limited liability company** ("Lender").

### R E C I T A L S:

A.    Lender has agreed to loan the principal amount of **$3,820,000** ("**Loan**") to **POTOMAC CONSTRUCTION SHAW LLC, a District of Columbia limited liability company** ("**Borrower**"), which is evidenced by a promissory note.

B.    As a condition precedent to Lender's extension of the Loan to Borrower and in consideration therefor, Lender has required the execution and delivery of (i) this Guaranty by Guarantor, (ii) that certain Promissory Note of even date herewith (as amended from time to time, the "**Note**") made by Borrower payable to Lender to evidence the Loan, (iii) that certain Deed of Trust of even date herewith (as amended from time to time, "**Deed of Trust**") from Borrower to **Jason A. Pardo, Esquire and Russell S. Drazin, Esquire**, as trustee(s) for the benefit of Lender encumbering the real property, improvements and personalty described therein (collectively, the "**Premises**"), and (iv) the other Loan Documents (as defined in the Note). All terms not otherwise defined herein shall have the meanings set forth in the Loan Documents.

C.    Guarantor is affiliated with Borrower and, having an ownership and financial interest in the Premises, has agreed to execute and deliver this Guaranty to Lender.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the Guarantor hereby agrees as follows:

**1.    Guaranty of Payment.** Guarantor hereby unconditionally, absolutely and irrevocably guaranties to Lender, the punctual payment and performance when due, whether at stated maturity or by acceleration or otherwise, of the indebtedness and other obligations of Borrower to Lender evidenced by the Note and any other amounts that may become owing by Borrower under the Loan Documents (such indebtedness, obligations and other amounts are hereinafter referred to as "**Payment Obligations**"). This Guaranty is a present and continuing guaranty of payment and not of collectability, and Lender shall not be required to prosecute collection, enforcement or other remedies against Borrower or any other guarantor of the Payment Obligations, or to enforce or resort to any collateral for the repayment of the Payment Obligations or other rights or remedies pertaining thereto, before calling on the Guarantor for payment. If for any reason Borrower shall fail or be unable to pay, punctually and fully, any of the Payment Obligations, Guarantor shall pay such obligations to Lender in full, immediately upon demand. One or more successive actions may be brought against the Guarantor, as often as Lender deems advisable, until all of the Payment Obligations are paid and performed in full. The Payment Obligations, the Performance Obligations (defined below) together with all other payment and performance obligations of Guarantor hereunder, are referred to herein as the "**Obligations.**"

**2.    Performance Guaranty.** Guarantor absolutely, unconditionally and irrevocably undertakes and guarantees, for the benefit of Lender and each and every present and future holder or holders of the Note or assignee or assignees of the Loan Documents, that all performance obligations of Borrower under the Loan Documents (referred to herein as "**Performance Obligations**") shall be performed in accordance with the terms and conditions contained in the Loan Documents, free and clear of any and all liens, charges, security interests and claims of any kind and nature whatsoever. Guarantor shall cause the Performance Obligations to be performed and paid for in the manner and at the applicable times required to be so performed and paid for by Borrower under the Loan Documents, to the extent that Borrower fails to do so at any and all applicable times. Upon the occurrence of an Event of Default by Borrower under the Loan Documents, Guarantor agrees, on not more than fifteen (15) days' written demand by Lender (a "**Demand Notice**") to commence performance of the Performance Obligations and to diligently pursue performance thereof to completion, as described below. Guarantor shall indemnify, defend and hold Lender harmless from and against any and all loss, damage, cost, expense, injury or liability Lender may suffer or incur in connection with third party claims brought as a result of Guarantor's performance of the Performance Obligations. If Guarantor fails to commence and pursue diligently the performance of the Performance Obligations within fifteen (15) days after their receipt of a Demand Notice, then, either before or after pursuing any other remedy of Lender, and regardless of whether Lender shall ever pursue any such other remedy, Lender shall have the right to perform the Performance Obligations, or call upon any other reputable parties to perform the Performance Obligations, in accordance with the Loan Documents and shall have the right to expend such sums as Lender in its discretion deems proper in order so to perform the Performance Obligations. During the course of any construction undertaken by Lender or by any other party on behalf of Lender, Guarantor shall pay on demand any amounts due to any contractors or material suppliers and for permits and licenses necessary to perform the Performance Obligations, without regard to any limitation on liability set forth herein. Lender at any time may require Guarantor to perform or supervise the performance of such work in lieu of Lender or any party engaged by Lender. Guarantor's obligations in connection with such work shall not be affected by any errors or omissions of Borrower, any contractor, architect, or

1

any agent or employee of any of them in design, supervision or performance of the work, it being understood that such risk is assumed by Guarantor. Neither the performance of the Performance Obligations nor failure of said parties to perform the Performance Obligations shall relieve Guarantor of any liabilities hereunder; rather, such liability shall be continuing, except as otherwise provided herein, and may be enforced by Lender to the end that the Performance Obligations shall be completed timely as contemplated by the Loan Documents, free of any liens, without loss, expense, injury or liability of any kind to Lender.

3.    **Representations and Warranties**. The following shall constitute representations and warranties of Guarantor and Guarantor hereby acknowledges that Lender intends to make the Loan in reliance thereon:

(i)    Guarantor is not in default and no event has occurred which, with the passage of time and/or the giving of notice, would constitute a default under any agreement to which Guarantor is a party, the effect of which will impair performance by such Guarantor of his, her or its obligations under this Guaranty. Neither the execution and delivery of this Guaranty nor compliance with the terms and provisions hereof will, to the best of Guarantor's knowledge, violate any applicable law, rule, regulation, judgment, decree or order, or will conflict with or result in any breach of any of the terms, covenants, conditions or provisions of any indenture, deed of trust, instrument, document, agreement or contract of any kind that creates, represents, evidences or provides for any lien, charge or encumbrance upon any of the property or assets of the Guarantor, or any other indenture, deed of trust, instrument, document, agreement or contract of any kind to which Guarantor is a party or to which Guarantor or the property of Guarantor may be subject.

(ii)    There are no litigation, arbitration, governmental or administrative proceedings, actions, examinations, claims or demands pending, or to Guarantor's knowledge, threatened that could adversely affect performance by Guarantor of his, her or its obligations under this Guaranty.

(iii)    Neither this Guaranty nor any statement or certification as to facts previously furnished or required herein to be furnished to Lender by Guarantor, contains any material inaccuracy or untruth in any representation, covenant or warranty or omits to state a fact material to this Guaranty.

(iv)    As a member of Borrower, Guarantor will derive substantial benefit, directly or indirectly, from the making of the Loan to Borrower and from making this Guaranty by Guarantor.

(v)    This Guaranty is executed at the request of Borrower, Lender has made no representation to Guarantor as to the creditworthiness of Borrower and Guarantor assumes the responsibility for keeping informed of the financial condition of Borrower and all other circumstances with respect to the risk of nonpayment or nonperformance of the Payment Obligations and the Performance Obligations, and Guarantor agrees that Lender shall have no duty to advise Guarantor of any information known to Lender regarding any such financial conditions or circumstances.

4.    **Continuing Guaranty**. Guarantor agrees that performance of the Obligations by Guarantor shall be a primary obligation, shall not be subject to any counterclaim, set-off, abatement, deferment or defense (except the defense of prior payment) based upon any claim that Guarantor may have against Lender, Borrower, any other guarantor of the Obligations or any other person or entity, and shall remain in full force and effect without regard to, and shall not be released, discharged or affected in any way by, any circumstance or condition (whether or not Guarantor shall have any knowledge thereof), including without limitation:

(i)    any lack of validity or enforceability of any of the Loan Documents;

(ii)    any termination, amendment, modification or other change in any of the Loan Documents, including, without limitation, any modification of the interest rate(s) described therein;

(iii)    any furnishing, exchange, substitution or release of any collateral securing repayment of the Loan, or any failure to perfect any lien in such collateral;

(iv)    any failure, omission or delay on the part of Borrower, Guarantor, any other guarantor of the Obligations or Lender to conform or comply with any term of any of the Loan Documents or any failure of Lender to give notice of any Event of Default (as defined in the Note);

(v)    any waiver, compromise, release, settlement or extension of time of payment or performance or observance of any of the obligations or agreements contained in any of the Loan Documents;

(vi)    any action or inaction by Lender under or in respect of any of the Loan Documents, any failure, lack of diligence, omission or delay on the part of Lender to perfect, enforce, assert or exercise any lien, security

2

interest, right, power or remedy conferred on it in any of the Loan Documents, or any other action or inaction on the part of Lender;

(vii)    any voluntary or involuntary bankruptcy, insolvency, reorganization, arrangement, readjustment, assignment for the benefit of creditors, composition, receivership, liquidation, marshalling of assets and liabilities or similar events or proceedings with respect to Borrower, Guarantor or any other guarantor of the Obligations, as applicable, or any of their respective property or creditors, or any action taken by any trustee or receiver or by any court in any such proceeding;

(viii)    any merger or consolidation of Borrower into or with any entity, or any sale, lease or transfer of any of the assets of Borrower, Guarantor or any other guarantor of the Obligations to any other person or entity;

(ix)    any change in the ownership of Borrower or any change in the relationship between Borrower, Guarantor or any other guarantor of the Obligations, or any termination of any such relationship;

(x)    any release or discharge by operation of law of Borrower, any Guarantor or any other guarantor of the Obligations from any obligation or agreement contained in any of the Loan Documents;

(xi)    any defense arising out of any disability of Borrower; any defense arising out of the application by Borrower of proceeds of the Loan for purposes other than the  purposes represented by Borrower to Lender; or

(xii)    any other occurrence, circumstance, happening or event, whether similar or dissimilar to the foregoing and whether foreseen or unforeseen, which otherwise might constitute a legal or equitable defense or discharge of the liabilities of a guarantor or surety or which otherwise might limit recourse against Borrower or any Guarantor to the fullest extent permitted by law.

**5.**    **Waivers**.  Guarantor expressly and unconditionally waives, to the extent permitted by applicable law, (i) notice of any of the matters referred to in Section 4 above, (ii) all notices which may be required by statute, rule of law or otherwise, now or hereafter in effect, to preserve intact any rights against Guarantor, including, without limitation, notice of acceptance of this Guaranty, any demand, presentment and protest, notice of protest, notice of dishonor, proof of notice of non-payment under any of the Loan Documents and notice of any Event of Default or any failure on the part of Borrower, Guarantor or any other guarantor of the Obligations to perform or comply with any covenant, agreement, term or condition of any of the Loan Documents, (iii) any right to the enforcement, assertion or exercise against Borrower, Guarantor or any other guarantor of the Obligations of any right or remedy conferred under any of the Loan Documents, (iv) any requirement of diligence on the part of any person or entity, (v) to the fullest extent permitted by law and except as otherwise expressly provided in this Guaranty or the other Loan Documents, any claims based on allegations that Lender has failed to act in a commercially reasonable manner or failed to exercise Lender's so-called obligation of good faith and fair dealing, (vi) any requirement to exhaust any remedies or to mitigate the damages resulting from any default under any of the Loan Documents, (vii) any notice of any sale, transfer or other disposition of any right, title or interest of Lender under any of the Loan Documents; (viii) any right to require Lender to proceed against Borrower, to proceed against any other person, or to proceed against or exhaust any security held by Borrower or any other person; (ix) any right to have the property of Borrower first applied to discharge the Obligations, allowing Lender, at its option, to exercise any right or remedy it may have against Borrower or any security held by Lender; (x) any defense based upon Lender's failure to disclose to Guarantor any information concerning Borrower's financial condition or any other circumstances bearing on Borrower's ability to pay and perform its obligations under any of the Loan Documents; (xi) any defense based upon any statute or rule of law which provides that the obligations of a surety may be neither larger in amount nor in any other respects more burdensome than that of a principal; and (xii) the benefit of or right to assert any statute of limitations affecting the liability of Guarantor hereunder or the enforcement thereof, to the extent permitted by law, and any part payment by Borrower or other circumstance which operates to toll any statute of limitations as to Borrower shall also serve to toll the statute of limitations as to  Guarantor.

**6.**    **Subordination**.  Guarantor agrees that any and all present and future debts and obligations of Borrower to Guarantor hereby are subordinated to the claims of Lender and hereby are assigned by Guarantor to Lender as security for the Obligations and Guarantor's obligations under this Guaranty.

**7.**    **Subrogation Waiver**.  Until the Obligations are paid in full and all periods under applicable bankruptcy law for the contest of any payment by Guarantor or Borrower as a preferential or fraudulent payment have expired, Guarantor knowingly, and with advice of counsel, waives, relinquishes, releases and abandons all rights and claims to indemnification, contribution, reimbursement, subrogation and payment which Guarantor may now or hereafter have by and from Borrower and the successors and assigns of Borrower, for any payments made by Guarantor to Lender, including, without limitation, any rights which might allow

3

Borrower, Borrower's successors, a creditor of Borrower, or a trustee in bankruptcy of Borrower to claim in bankruptcy or any other similar proceedings that any payment made by Borrower or Borrower's successors and assigns to Lender was on behalf of, or for the benefit of Guarantor and that such payment is recoverable by Borrower, a creditor or trustee in bankruptcy of Borrower as a preferential payment, fraudulent conveyance, payment of an insider or any other classification of payment which may otherwise be recoverable from Lender.

        **8.**    **Reinstatement**. The obligations of Guarantor pursuant to this Guaranty shall continue to be effective or automatically be reinstated, as the case may be, if at any time payment of any of the Obligations or Guarantor's obligations under this Guaranty are rescinded or otherwise must be restored or returned by Lender upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of Guarantor or Borrower or otherwise, all as though such payment had not been made.

        **9.**    **Financial Information**. Guarantor represents and warrants to Lender that (a) the financial information of Guarantor previously submitted to Lender is true, complete and correct in all material respects, disclose all actual and contingent liabilities, and fairly present the financial condition of Guarantor, and does not contain any untrue statement of a material fact or omit to state a fact material to the financial information submitted or this Guaranty and (b) no material adverse change has occurred in the financial information from the dates thereof until the Effective Date.

        **10.**    **Transfers, Sales, Etc.** Guarantor shall not sell, lease, transfer, convey or assign (collectively, a **"Transfer"**) any of his assets, unless: (i) such Transfer is not done with the intent to defraud or hinder creditors and (ii) Guarantor's net worth and liquidity after the Transfer is not substantially less than it was as of the Effective Date, as determined by Lender in its reasonable discretion.

        **11.**    **Enforcement Costs**. If: (a) this Guaranty, is placed in the hands of one or more attorneys for collection or is collected through any legal proceeding; (b) one or more attorneys is retained to represent Lender in any bankruptcy, reorganization, receivership or other proceedings affecting creditors' rights and involving a claim under this Guaranty, or (c) one or more attorneys is retained to represent Lender in any other proceedings whatsoever in connection with this Guaranty, then Guarantor shall pay to Lender upon demand all reasonable fees, costs and expenses incurred by Lender in connection therewith, including, without limitation, reasonable attorney's fees, court costs and filing fees (all of which are referred to herein as **"Enforcement Costs"**), in addition to all other amounts due hereunder.

        **12.**    **Successors and Assigns; Joint and Several Liability**. This Guaranty shall inure to the benefit of Lender and its successors and assigns. This Guaranty shall be the joint and several undertaking of the Guarantor, and shall be binding on Guarantor and the respective heirs, legatees, successors and assigns of Guarantor. Regardless of whether this Guaranty is executed by more than one person, it is agreed that the Guarantor's liability hereunder is several and independent of any other guarantees or other obligations at any time in effect with respect to the Obligations or any part thereof and that Guarantor's liability hereunder may be enforced regardless of the existence, validity, enforcement or non-enforcement of any such other guarantees or other obligations.

        **13.**    **No Waiver of Rights**. No delay or failure on the part of Lender to exercise any right, power or privilege under this Guaranty or any of the other Loan Documents shall operate as a waiver thereof, and no single or partial exercise of any right, power or privilege shall preclude any other or further exercise thereof or the exercise of any other power or right, or be deemed to establish a custom or course of dealing or performance between the parties hereto. The rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law. No notice to or demand on Guarantor in any case shall entitle Guarantor to any other or further notice or demand in the same, similar or other circumstance.

        **14.**    **Modification**. The terms of this Guaranty may be waived, discharged, or terminated only by an instrument in writing signed by the party against which enforcement of the change, waiver, discharge or termination is sought. No amendment, modification, waiver or other change of any of the terms of this Guaranty shall be effective without the prior written consent of Lender.

        **15.**    **Joinder**. Any action to enforce this Guaranty may be brought against any Guarantor without any reimbursement or joinder of Borrower, or any other guarantor of the Obligations in such action.

        **16.**    **Severability**. If any provision of this Guaranty is deemed to be invalid by reason of the operation of law, or by reason of the interpretation placed thereon by any administrative agency or any court, Guarantor and Lender shall negotiate an equitable adjustment of such provision in order to effect, to the maximum extent permitted by law, the purpose of this Guaranty, and the validity and enforceability of the remaining provisions, or portions or applications thereof, shall not be affected thereby and shall remain in full force and effect.

17.    **Applicable Law**. This Guaranty is governed as to validity, interpretation, effect and in all other respects by laws and decisions of the State of Maryland.

18.    **Notice**. Any notices, demands, requests, communications and waivers under this Guaranty shall be in writing and shall be (i) delivered in person, (ii) mailed, postage prepaid, either by registered or certified mail, return receipt requested, (iii) by overnight express carrier, addressed in each case as follows, or (iv) by confirmed facsimile transmission, so long as a duplicate copy of such notice is also sent by one of the other permitted forms of delivery::

| | |
|---|---|
| To Lender: | Cornerstone Capital LLC |
| | c/o Broadwater Capital |
| | 1801 Pennsylvania Avenue, N.W., Suite 700 |
| | Washington, D.C.  20006 |
| | Attn:  Mark D. Schuman, Esquire |
| | |
| To Guarantor: | 1734 20th Street, N.W., Suite B |
| | Washington, D.C. 20009 |
| | Attn:  Matthew E. Shkor |

or to any other address as to any of the parties hereto, as such party shall designate in a written notice to the other parties hereto.  All notices sent pursuant to the terms of this Section shall be deemed received (i) if personally delivered, then on the date of delivery, (ii) if sent by overnight, express carrier, then on the next federal banking day immediately following the day sent, or (iii) if sent by registered or certified mail, then on the earlier of the third federal banking day following the day sent or when actually received.

19.    **CONFESSION OF JUDGMENT**. UPON THE OCCURRENCE OF ANY DEFAULT BY GUARANTOR ON ANY OF HIS OBLIGATIONS TO LENDER, THE GUARANTOR AUTHORIZES ANY ATTORNEY ADMITTED TO PRACTICE BEFORE ANY COURT OF RECORD IN THE UNITED STATES TO APPEAR ON BEHALF OF THE GUARANTOR IN ANY COURT HAVING JURISDICTION IN ONE OR MORE PROCEEDINGS, OR BEFORE ANY CLERK THEREOF OR PROTHONOTARY OR OTHER COURT OFFICIAL, AND TO CONFESS JUDGMENT AGAINST THE GUARANTOR, WITHOUT PRIOR NOTICE OR OPPORTUNITY OF THE GUARANTOR FOR PRIOR HEARING, IN FAVOR OF LENDER FOR THE FULL AMOUNT DUE UNDER THIS GUARANTY PLUS COURT COSTS AND ATTORNEYS' FEES OF 15% OF THE TOTAL AMOUNT THEN DUE HEREUNDER; PROVIDED, HOWEVER, THAT NOTWITHSTANDING THE AMOUNT OF ATTORNEYS FEES IN ANY SUCH JUDGMENT, THE LENDER MAY NOT COLLECT FROM THE GUARANTOR ATTORNEYS FEES IN EXCESS OF THE ACTUAL, REASONABLE ATTORNEYS FEES INCURRED BY LENDER . THE GUARANTOR WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE GUARANTOR ANY RIGHT OR PRIVILEGE OF EXEMPTION, HOMESTEAD RIGHTS, APPEAL, STAY OF EXECUTION OR SUPPLEMENTARY PROCEEDINGS, INQUISITION, EXTENSION UPON ANY LEVY ON REAL ESTATE OR PERSONAL PROPERTY, AND ANY OTHER RELIEF FROM THE ENFORCEMENT OR IMMEDIATE ENFORCEMENT OF A JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT.  THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST THE GUARANTOR SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS, AS OFTEN AS LENDER SHALL DEEM NECESSARY OR ADVISABLE, FOR ALL OF WHICH THIS GUARANTY SHALL BE SUFFICIENT AUTHORITY.

20.    **CONSENT TO JURISDICTION**.  TO INDUCE LENDER TO ACCEPT THIS GUARANTY, GUARANTOR IRREVOCABLY AGREES THAT, SUBJECT TO LENDER'S SOLE AND ABSOLUTE ELECTION, ALL ACTIONS OR PROCEEDINGS IN ANY WAY ARISING OUT OF OR RELATED TO THIS GUARANTY WILL BE LITIGATED IN COURTS HAVING SITUS IN THE STATE OF MARYLAND.  GUARANTOR HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY COURT LOCATED WITHIN THE STATE OF MARYLAND, WAIVES PERSONAL SERVICE OF PROCESS AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY CERTIFIED MAIL, RETURN RECEIPT REQUESTEDMAIL DIRECTED TO GUARANTOR AT THE ADDRESS STATED HEREIN AND SERVICE SO MADE WILL BE DEEMED TO BE COMPLETED UPON ACTUAL RECEIPT.

21.    WAIVER OF JURY TRIAL. GUARANTOR AND LENDER (BY ACCEPTANCE HEREOF), HAVING BEEN REPRESENTED BY COUNSEL, KNOWINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THIS GUARANTY OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH AND AGREES THAT ANY SUCH ACTION OR PROCEEDING WILL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. GUARANTOR AGREES THAT IT WILL NOT ASSERT ANY CLAIM AGAINST LENDER ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES.

22.    **Entire Agreement**. This Guaranty embodies the entire agreement between Lender and Guarantor with respect to the guaranty by Guarantor of the Payment Obligations and the Performance Obligations. This Guaranty supersedes all prior agreements and understandings, if any, with respect to the guaranty by Guarantor of the Payment Obligations and the Performance Obligations. No condition or conditions precedent to the effectiveness of this Guaranty exist. This Guaranty shall be effective upon execution by Guarantor and delivery to Lender.

THE WRITTEN LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

IN WITNESS WHEREOF, Guarantor has executed this Guaranty of Payment and Performance under seal as of the Effective Date.

GUARANTOR:

_____ (SEAL)
Matthew E. Shkor, individually

District of Columbia

Before me, the undersigned, a Notary Public in and for the aforesaid jurisdiction, on May __7__, 2018, personally appeared Matthew E. Shkor, to me known personally, and who, being by me duly sworn, deposes and says that said instrument was signed by him, and he has acknowledged said instrument to be his free act and deed.

IN WITNESS WHEREOF I hereunto set my hand and official seal.

_____
Notary Public
My commission expires: _____

KEVIN DALE ANDERSON
Notary Public, District of Columbia
My Commission Expires Jan. 31, 2020

6

## COMMERCIAL LOAN AGREEMENT

**THIS COMMERCIAL LOAN AGREEMENT** (this "**Agreement**") is dated as of the 7th day of May, 2018, by and between **POTOMAC CONSTRUCTION SHAW LLC, a District of Columbia limited liability company ("Borrower") and MATTHEW E. SHKOR,** an individual (**"Guarantor"**) in favor of **CORNERSTONE CAPITAL LLC**, a Maryland limited liability company ("**Lender**").

## RECITALS

**R-1.**    Lender has agreed to lend to Borrower the principal sum of **Three Million Eight Hundred Twenty Thousand and No/100 Dollars ($3,820,000.00)** (the "**Loan**") to be used by Borrower for acquisition and development of **1225 11th Street, N.W., Washington, D.C. 20001** (the "**Property**") purposes and secured by the "**Property**.

**R-2.**    Borrower shall be obligated to repay the Loan as evidenced by that certain promissory note of even date herewith (the "**Note**").

**R-3.**    Lender is willing to make the Loan to Borrower subject to the terms and conditions hereinafter set forth.

## AGREEMENTS

**NOW, THEREFORE**, in consideration of the premises, the mutual agreements herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower and Guarantor hereby agree as follows:

## ARTICLE I.
## DEFINITIONS

As used in this Agreement and the attached exhibits, the following terms shall have the meanings herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

"Borrower" has the meaning set forth in the introductory paragraph of this Agreement.

"Closing Date" means the date upon which the Loan Documents are fully executed and the Loan Proceeds are transferred from Lender to Borrower, which such date shall be May 7, 2018.

"Deed of Trust" means that certain Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing of even date herewith, as the same may be amended, restated, supplemented or otherwise modified from time to time.

"Event of Default" has the meaning set forth in Section 9 of this Agreement.

"Guarantor" has the meaning set forth in the introductory paragraph of this Agreement.

"Indebtedness" means any and all indebtedness to Lender evidenced, governed or secured by, or arising under, any of the Loan Documents, including the Loan and the Note.

"Lender" has the meaning set forth in the introductory paragraph of this Agreement, its successors and assigns.

"Loan Documents" has the meaning set forth in Section 2.3 below.

"Note" means the promissory note described in Recital R-2.

"Obligations" means (i) payment of all amounts due under the Indebtedness, and (ii) the performance of all other covenants, obligations, indemnities, and agreements of Borrower pursuant to the Note, this Agreement or any of the other Loan Documents.

"Property" means that certain real property and improvements thereon located at **1225 11th Street, N.W., Washington, D.C. 20001.**

"Person" means and includes an individual, a corporation, a partnership, a joint venture, a limited liability company or partnership, a trust, an unincorporated association, a governmental authority, or any other organization or entity.

## ARTICLE II.
## THE LOAN

**Section 2.01    The Loan**.  Lender agrees to lend to Borrower and Borrower agrees to borrow from Lender the aggregate principal sum of **Three Million Eight Hundred Twenty Thousand and No/100 Dollars ($3,820,000.00)**. The obligation of Borrower to repay the Loan shall be evidenced by the Note. The Note shall bear interest and shall be repaid by Borrower in the manner and at the times set forth in the Note.

**Section 2.02    Use of Proceeds**. The proceeds of the Loan shall be used by Borrower for **business purposes only**, more specifically the purposes set forth in Recital R-1 above and, unless prior written consent of Lender is obtained, for no other purpose.

**Section 2.03    The Loan Documents**. This Agreement, the Note, the Deed of Trust, the Indemnity Deed of Trust, a Guaranty of Payment and Performance entered into by the Guarantor, and any other instrument, agreement or document previously, simultaneously or hereafter executed and delivered by Borrower and/or any other person, singularly or jointly with any other person, evidencing or securing the Obligations (as hereinafter defined), are sometimes referred to herein collectively as the "**Loan Documents.**" The Loan Documents are incorporated herein by reference as if fully set forth herein anew.

2

## ARTICLE III.
## COLLATERAL

As security for the payment of all of the obligations evidenced by the Loan Documents and for Borrower's performance of, and compliance with, all of the terms, covenants, conditions, stipulations and agreements contained in the Loan Documents (collectively the "**Obligations**"), Borrower hereby grants to Lender and agrees that Lender shall have a perfected, continuing first lien deed of trust in the Property to secure the repayment of the Loan (the "**Collateral**").

Borrower further agrees that, in respect to any of the Collateral which is personalty, fixtures or otherwise subject to the provisions of the applicable Uniform Commercial Code, Lender shall have all of the rights and remedies of a secured party thereunder as well as the rights and remedies provided in this Agreement.

## ARTICLE IV.
## UNCONDITIONAL OBLIGATIONS

The payment and performance by Borrower of the Obligations shall be absolute and unconditional, irrespective of any defense or any rights of set-off, recoupment or counterclaim it might otherwise have against Lender, and Borrower shall pay absolutely all of the Obligations, free of any deductions and without abatement, diminution or set-off; and until payment in full of all of the Obligations, Borrower: (a) will not suspend or discontinue any payments provided for in the Note and (b) will perform and observe all of its other agreements contained in this Agreement, including (without limitation) all payments required to be made to Lender.

## ARTICLE V.
## REPRESENTATIONS AND WARRANTIES

To induce Lender to make the Loan, Borrower and Guarantor represent and warrant to Lender that:

**Section 5.01    Power and Authority**. Borrower and Guarantor have all necessary power and authority to own their properties and to conduct their business as presently conducted or proposed to be conducted and to execute and deliver this Agreement and each of the other Loan Documents executed and delivered by it, to make the borrowing hereunder, and to incur the Obligations. This Agreement and each of the other Loan Documents executed and delivered by Borrower and Guarantor have been duly executed and delivered by Borrower and Guarantor.

**Section 5.02    Binding Agreements.**  This Agreement and each of the other Loan Documents executed and delivered by Borrower and/or Guarantor constitute valid and legally binding obligations of Borrower and/or Guarantor, and are fully enforceable against Borrower and/or Guarantor in accordance with their respective terms.

**Section 5.03    Adverse Actions**. There is (a) no litigation, action, suit, proceeding, inquiry or investigation, at law or in equity, before, or by any court, regulatory agency, public board or body, pending or threatened, against or affecting Borrower, Guarantor, or the Collateral, nor, is there any basis therefore; and (b) no unfavorable ruling or finding which would adversely

3

affect the validity or enforceability of either the Loan Documents or any of the transactions contemplated by the Loan.

Section 5.04   **No Violation**.   The execution, delivery and performance by Borrower and/or Guarantor of their obligations under this Loan Agreement and any of the other Loan Documents executed and delivered by Borrower and/or Guarantor (a) have been duly authorized by all necessary action, (b) do not and will not violate any law, regulation, order, writ, injunction or decree of any court or governmental body, agency or other instrumentality applicable to Borrower and/or Guarantor, or result in a breach of any of the terms, conditions or provisions of, or constitute a default under, or result in the creation or imposition of any mortgage, lien, charge or encumbrance of any nature whatsoever upon any of the assets of Borrower and Guarantor, or any mortgage, indenture, contract, agreement or instrument to which Borrower or Guarantor are a party or by which they or any of their properties are bound.

Section 5.05   **Financial Condition**.   Any financial statements of Borrower and/or any Guarantor (hereinafter collectively called in this Section 5.5 the "**party shown**") delivered to Lender are complete and correct and, in the opinion of Borrower, fairly present the current financial condition of the party shown thereon and have been prepared in accordance with generally accepted accounting principles applied on a consistent basis throughout the period involved.   There are no material liabilities, direct or indirect, fixed or contingent, of the party shown (or any one of them, if more than one) as of the date of such financial statements which are not reflected therein or in the notes thereto.   There has been no adverse change in the financial condition or operations of the party shown (or any one of them, if more than one) since the date of such financial statements (and to Borrower's and Guarantor's knowledge, no such adverse change is pending or threatened), and the party shown (or any one of them, if more than one) has not guaranteed the obligations of, or made any investments in, or advances to, any company, individual or other entity except as either disclosed in such financial statements or entered into in connection with the Loan.

Section 5.06   **Taxes**.   Borrower and Guarantor have filed or have caused to have been filed all federal, state and local tax returns which, to the knowledge of Borrower and Guarantor, are required to be filed, and has paid or caused to have been paid all taxes as shown on such returns or on any assessment received by it, to the extent that such taxes have become due, unless and to the extent only, that such taxes, assessments and governmental charges are currently contested in good faith and by appropriate proceedings by Borrower and Guarantor and adequate reserves therefore have been established as required under generally accepted accounting principles.   To the extent Borrower and/or Guarantor believe it advisable to do so, Borrower and/or Guarantor have set up reserves which are believed by Borrower and/or Guarantor to be adequate for the payment of additional taxes for years which have not been audited by the respective tax authorities.

Section 5.07   **Compliance with Law**.   Neither Borrower, Guarantor nor the Property is in violation of any law, ordinance, governmental rule or regulation to which it is subject and the violation of which would have a material adverse effect on the Property or the conduct of Borrower's or Guarantor's business, and Borrower and Guarantor have obtained any and all licenses, permits, certificates, franchises or other governmental authorizations necessary for the ownership and operation of the Property and all of its other properties, if any, and the conduct of

4

its business. No governmental action or proceeding is pending or threatened with respect to the revocation or suspension of any permits or authorizations for the use or operation, as now existing or hereafter contemplated, of the Property. The condition and operation of the Property complies with all federal, state and/or local laws, rules, regulations and ordinances.

Section 5.08  **Governmental Consent**.  Neither the nature of Borrower or of its business or properties, nor any relationship between Borrower and any other entity or person, nor any circumstance in connection with the making of the Loan, or the offer, issue, sale or delivery of the Note is such as to require a consent, approval or authorization of, or filing, registration or qualification with, any governmental authority, on the part of Borrower, as a condition to the execution and delivery of this Agreement or any of the other Loan Documents, the borrowing of the principal amount of the Loan or the offer, issue, sale or delivery of the Note.

Section 5.09  **No Default**.  There is no Event of Default and no event has occurred and no condition exists which with the giving of notice or the passage of time or both would constitute an Event of Default.  Borrower is not in default under the terms of any other agreement or instrument to which it may be a party or by which the Collateral or any of its properties may be bound or subject.

Section 5.10  **Borrower's Own Review and Analysis**.  Borrower has on Borrower's own initiative applied to Lender for the Loan and has not relied upon any representation, either oral or written from Lender, or any of Lender's officers, employees or counsel, regarding Borrower's need for the Loan monies or Borrower's future financial wherewithal to repay the Loan monies to Lender.  In this regard, Borrower has conducted its own financial analysis and review of the Property, including, as Borrower has deemed necessary, Borrower's independent review and analysis of the Supporting Documentation (defined below).

Section 5.11  **Economic Benefit**.  Each individual or entity comprising Borrower is satisfied that he, she or it is receiving significant and adequate financial benefit from the Loan in consideration for Borrower's, and each of them if more than one, (i) undertaking of the Obligations and (ii) pledge of the Collateral to Lender as security for the Loan.

Section 5.12  **Lien Priority**.  Unless otherwise previously disclosed to Lender in writing, neither Borrower nor Guarantor has entered into or granted any security agreements, or permitted the filing or attachment of any security interests on or affecting any of the Collateral directly or indirectly securing the Guaranty or repayment of the Loan and Note, that would be prior or that may in any way be superior to Lender's security interests and rights in and to such Collateral.

Section 5.13  **Business Purposes Only**.  The proceeds of the Loan will be used solely for business or commercial purposes and expressly **NOT** for personal, family or household purposes, and specifically for the purposes described in Recital R-1 above.

## ARTICLE VI.
## LOAN ADVANCES

Section 6.01  **Origination Fee**.  At Closing Borrower shall pay an Origination Fee in the amount of $152,800, which amount shall be paid from the Loan proceeds.

**Section 6.02    Acquisition Segment**.  The Loan proceeds in the amount of **One Million Seven Hundred Forty Five Thousand and No/100 Dollars ($1,745,000.00) Dollars** (the "**Acquisition Segment**") shall be used solely to acquire the Property and pay closing costs and loan fees, in accordance and subject to the terms and conditions set forth in this Agreement.

**Section 6.03    Renovation Segment**.  The Loan proceeds in the amount of **One Million Five Hundred Thousand and No/100 Dollars ($1,500,000.00)** (the "**Renovation Segment**") shall be deposited with Lender by Borrower and used solely to finance a portion of the costs of developing the Property and related improvements, in accordance with the Draw Schedule, and shall be advanced from time to time in response to requisitions submitted by the Borrower, in accordance with the Draw Schedule, and subject to the terms and conditions set forth in this Agreement.

**Section 6.04    Procedure for Advances of the Renovation Segment**.  The Borrower shall make applications for advances of Loan proceeds under the Loan from the Lender on the forms that the Lender approves.  Such applications shall be made not more frequently than once per month.  The Borrower shall make each such application at least ten (10) business days before the advance shall be called for, in order to permit the Lender to make or cause such inspections as it shall from time to time consider appropriate, if any.  Each application for an advance of the Renovation Segment shall be in such form and include such detail as the Lender may require and shall conform to the Draw Schedule.  The Renovation Segment shall be paid out upon receipt of invoices as work progresses on the Renovation following an inspection by Lender or Lender's representatives.  Borrower shall be responsible for an inspection fee not to exceed **$250.00** for each site visit by Lender or Lender's representatives to the Property.  All advances shall be made by direct payment to contractors and vendors, or by reimbursement to Borrower with receipts provided and marked paid in full, or in such other manner as the Lender may from time to time determine.

**Section 6.05    Conditions Precedent to Loan Advance**.  The Lender shall not be obligated to make the Loan Advance unless the following conditions have been satisfied:

(a)    The Note, the Deed of Trust and the other Loan Documents shall have been properly executed and delivered to the Lender, the Deed of Trust shall be executed, acknowledged and recorded in the appropriate land records and payment shall have been made for all recording costs in connection with the Deed of Trust and other recorded Loan Documents, and for any transfer or recordation taxes due under any federal, state or county law.

(b)    The Lender shall have received a paid policy of title insurance (American Land Title Association Standard Form "B" Loan Policy - Current Edition) or a valid and enforceable commitment to issue the same, together with such reinsurance agreements and direct access agreements as may be required by the Lender, from a company or companies satisfactory to the Lender in the amount of the Loan and which may be endorsed or assigned to the successors and assigns of the Lender without additional cost, insuring the lien of the Deed of Trust to be a valid second lien on the Property, free and clear of all defects, exceptions and encumbrances except such as the Lender and its counsel shall have approved.

6

        (c)    The Lender shall have received a current survey of the Property, showing no encroachments or other matters adversely affecting title.

        **Section 6.06**   **Conditions Precedent to All Advances of the Renovation Segment**. The Lender shall not be obligated to make any advance requested from the Renovation Segment unless the following conditions are met at the time of such advance:

        (a)    In the reasonable judgment of the Lender, all work completed at the time of the application for advance has been performed in a good and workmanlike manner and all materials and fixtures usually furnished and installed at that stage of construction have been furnished and installed.

        (b)    No Event of Default which has not been cured has occurred under the Note or any of the Loan Documents and no act has occurred which, with the passage of time after due notice, would become an Event of Default.

        (c)    The Residence and related improvements have not been materially damaged by fire or other casualty.

        (d)    The Lender has received written evidence, in form and substance satisfactory to the Lender, to the effect that all work requiring inspection by governmental or regulatory authorities having or claiming jurisdiction has been duly inspected and approved by such authorities and by any rating or inspection organization, bureau, association or office having or claiming jurisdiction.

        (e)    The Lender shall be satisfied that the Renovation can be completed by a date no later than the Maturity Date (as defined in the Note).

        (f)    At the request of the Lender, the Lender shall have received a notice of title continuation or an endorsement to the title insurance policy heretofore delivered, indicating that since the last preceding advance, there has been no change in the status of title and no other exceptions not theretofore approved by the Lender which endorsement shall have the effect of advancing the effective date of the policy to the date of the advance then being made and increasing the coverage of the policy by an amount equal to the advance then being made if the policy does not by its terms provide for such an increase.

        (g)    To the extent any such certificate is a condition to the lawful use and occupancy of any improvements, the Lender has received evidence satisfactory to it that requisite certificates of occupancy for permanent occupancy of the Residence have been validly issued;

        (h)    The representations and warranties made in Article V of this Loan Agreement shall be true and correct, in all material respects, on and as of the date of the advance with the same effect as if made on such date.

        (i)    The Lender shall have received, if requested, acknowledgments of payment and releases of liens and rights to claim liens for work performed or materials delivered through the date of the last preceding advance and concurrently with the final advance. All such

acknowledgments and releases shall be in form and substance satisfactory to the Lender and the title insurance company, which has insured the title to the Property.

(j)    All other terms and conditions of the Loan Documents required to be met as of the date of this particular advance of loan proceeds shall have been met to the satisfaction of the Lender.

Section 6.07    **Advances to Others for Account of Borrower**.  At the option of the Lender, the Lender may apply amounts due hereunder to the satisfaction of the conditions of the Note or the Loan Documents and any amounts so applied shall be part of the Loan and shall be secured by the Deed of Trust.  At the option of the Lender, and without limiting the generality of the foregoing, the Lender may make advances directly to the title insurance company or any subcontractor or materialman, or to any of them jointly, and the execution hereof by the Borrower shall, and hereby does, constitute an irrevocable authorization to so advance the proceeds of the Loan.  No further direction or authorization from the Borrower shall be necessary to warrant such direct advances and all such advances shall satisfy pro tanto the obligations of the Lender hereunder and shall be secured by the Deed of Trust as fully as if made to Borrower, regardless of the disposition thereof by the party or parties to whom such advance is made.

Section 6.08    **Assignments**.  The Borrower agrees not to transfer, assign, pledge or hypothecate any right or interest in any payment or advance due pursuant to this Loan Agreement, or any of the other benefits of this Loan Agreement, without the prior written consent of the Lender.  Any assignment made or attempted by the Borrower without the prior written consent of the Lender shall be void.  No consent by the Lender to an assignment by the Borrower shall release the Borrower as the party primarily obligated and liable under the terms of this Loan Agreement unless the Borrower shall be released specifically by the Lender in writing.  No consent by the Lender to an assignment shall be deemed to be a waiver of the requirement of prior written consent by the Lender with respect to each and every further assignment and as a condition precedent to the effectiveness of such assignment.

Section 6.09    **Liability of the Lender**.  The Lender shall in no event be responsible or liable to any person other than the Borrower for the disbursement of or failure to disburse the proceeds of the Loan or any part thereof and no subcontractor, laborer or material supplier shall have any right or claim against the Lender under this Agreement or the administration thereof.

### ARTICLE VII.
### AFFIRMATIVE COVENANTS OF BORROWER

Until payment in full and the performance of all of the Obligations hereunder, Borrower shall:

Section 7.01    **Financial Documentation**.  Borrower shall keep and maintain accurate books of record and account in which full and correct entries will be made of all dealings or transactions of or in relation to the business and affairs of Borrower and the Property, will permit such books to be inspected and copied, and the Property to be inspected and photographed by Lender (or its representatives) during normal business hours and at any other reasonable times.  Upon request by Lender, Borrower shall deliver to Lender any and all financial information

8

regarding the Borrower, Guarantor or the Property. Borrower shall promptly notify Lender of any material adverse change in the financial condition of Borrower or the Property. All information required under this Section shall be certified with an original signature as true, correct and complete, and to fairly represent the financial condition of Borrower or Guarantor, as applicable.

**Section 7.02    Taxes and Claims**.    Pay and discharge all taxes, assessments and governmental charges or levies imposed upon it or any of its income or properties prior to the date on which penalties attach thereto, and all lawful claims which, if unpaid, might become a lien or charge upon any of its properties; provided, however, Borrower shall not be required to pay any such tax, assessment, charge, levy or claim, the payment of which is being contested in good faith and by proper proceedings.

**Section 7.03    Compliance with Laws**.    Comply with all applicable federal, state and local laws, rules and regulations to which it is subject and the violation of which would have a material adverse effect on the conduct of its business.

**Section 7.04    Governmental Regulation**.    Promptly notify Lender in the event that Borrower receives any notice, claim or demand from any governmental agency which alleges that Borrower is in violation of any of the terms of, or has failed to comply with any applicable order issued pursuant to, any federal, state or local statute regulating the Property, including, but not limited to, the Occupational Safety and Health Act and the Environmental Protection Act.

**Section 7.05    Litigation**.    Give prompt notice in writing with a full description to Lender, of all litigation and of all proceedings before any court or any governmental or regulatory agency affecting either Borrower or the Collateral which, if adversely decided, would materially affect the conduct of Borrower's business, the financial condition of Borrower or in any manner affect the Collateral.

**Section 7.06    Insurance**.    The original policy or policies of insurance described below, a certified true copy thereof or a binder shall be deposited with Lender, together with a paid receipt for the premiums thereunder for a one (1) year period. All policies of insurance shall be written with a company or companies licensed to do business in the jurisdiction where the Property is located and with a company or companies satisfactory to Lender. Each policy of insurance shall name Lender as mortgagee and shall provide that such policy may not be surrendered, canceled or substantially modified, without at least thirty (30) days prior written notice to all parties named as insured therein, including Lender. The deductible amount under such policy or policies should not exceed Five Thousand and No/100 Dollars ($5,000.00).

At no cost to Lender, Borrower shall provide and maintain:

(a)    FIRE/HAZARD INSURANCE WITH EXTENDED COVERAGE – An "all-risk" policy insuring against any act or occurrence of any kind or nature that results in damage, loss or destruction to the Property, covering such risks as are ordinarily insured against by similar businesses, but in any event including fire, lightning, windstorm, hail, explosion, riot, riot attending a strike, civil commotion, damage from aircraft, smoke, vandalism and malicious mischief. Unless otherwise agreed in writing by Lender, such insurance shall be for the full

insurable value of the Property.  The term "full insurable value" means the actual replacement cost of the Property (excluding foundation and excavation costs and costs of underground flues, pipes, drains and other uninsurable items).  The deductible amount under such policy or policies shall not exceed Five Thousand and No/100 Dollars ($5,000.00).  No policy of insurance shall be written such that the proceeds thereof will produce less than the minimum coverage required by this Section by reason of coinsurance provisions or otherwise.  The "full insurable value" shall be determined from time to time if deemed necessary by the Beneficiary, by an appraiser or appraisal company or one of the insurers, who shall be selected and paid for by Borrower but subject to Lender's approval. Such insurance policy shall name Lender as mortgagee.

       (b)    LIABILITY INSURANCE – At all times, comprehensive general public liability and indemnity insurance in such forms and in such amounts as Lender may require, but in any event not less than One Million and No/100 Dollars ($1,000,000.00) covering claims for bodily injury or death and property damage arising out of a single occurrence and Two Million and No/100 Dollars ($2,000,000.00) for the aggregate of all occurrences during any given annual policy period. Such insurance policy shall name Lender as an additional insured.

       **Section 7.07  Books and Records**.  Keep and maintain accurate books and records relating to the Property and Borrower shall permit any representatives authorized by Lender (i) to visit and inspect the Property, (ii) to inspect all books and records relating to the Property (and to make copies or extracts therefrom), and (iii) following an Event of Default to cause such books and records to be audited, at the expense of Borrower, by any independent certified public accountant selected by Lender, all as often as may reasonably be requested.

       **Section 7.08  Reserve Account**.   Prior to Closing, the following account (the "Account") shall be established by Borrower:

       A.    Interest Reserve Account.  An interest reserve account with a financial institution of Lender's choice in the amount of **Four Hundred Twenty Two Thousand Two Hundred and No/100 Dollars ($422,200.00)** from the proceeds of the Loan, which shall be title in the Lender's name and controlled by Lender and used by Lender to pay itself for any interest payment not made by Borrower as required under the Loan Documents; for clarity purposes, it is agreed that Lender shall pay itself for all interest payments due under the Loan from the proceeds of the Interest Reserve Account unless and until an Event of Default occurs.  Lender is hereby authorized to apply these funds monthly to interest only payments required under the Note without further notice to, or approval from, the Borrower.  Upon depletion of the Interest Reserve Account, Borrower shall be responsible for paying monthly interest payments to Lender.

       B.    Provisions Applicable to the Account:   The following applies to the Account:

       (i)    The Borrower assigns the Account to the Lender as additional security for all of the Borrower's obligations under the Note and the other Loan Documents; provided, however, that the Lender agrees to make

withdrawals from the Account in accordance with the terms and conditions of this Section 7.08.

(ii)     The Borrower hereby grants to the Lender a security interest in and a pledge of the Account and all monies, checks, notes, bonds, money orders, letters of credit and other instruments deposited therein (collectively, the "Collateral"), to secure the payment and performance of its obligations to the Lender.  The security interest hereby granted and conveyed covers and will cover all forms of accounts or investments in which funds in the Account is placed, as well as all income and proceeds from the disposition of such account and investments.  The parties hereby agree that the Lender May file of record a financing statement with respect to the pledges and security interests granted under this Agreement if the Lender deems such filing to be necessary or advisable.

(iii)     The Lender has, and at all times shall have, sole possession and control of the Account. The Borrower hereby acknowledges that it does not have any access whatsoever to the Account, including, without limitation, any power or authority to withdraw or obtain wire transfer of funds or to direct the withdrawal or wire transfer of funds from the Account, and hereby covenants and agrees that it shall not now or in the future claim or seek access to the Account, including, without limitation, the power to exercise any of the foregoing rights.  Funds in the Account constitute cash collateral for the Borrower's obligations and are hereby assigned to the Lender.  This assignment of the Account funds are absolute, unconditional and immediate and is intended to transfer and convey to the Lender the present right to such funds immediately upon deposit of such funds into the Account from time to time.  The assignment of such funds is neither collateral to, nor for additional, security.  The funds in the Account constitute cash collateral for purposes of 11 United States Code § 363.

(iv)     The insufficiency of any balance in the Account shall not abrogate the Borrower's obligation to fulfill all preservation and maintenance covenants in the Loan Documents.  In the event that the balance of the Account is less than the amount required, the Lender May require that the Borrower deposit the shortage in the applicable Account or fund the difference.

(v)     Borrower agrees that all Account can be held in a single bank account, controlled by Lender, provided that proper accounting of all activity is kept.

## ARTICLE VIII.
## NEGATIVE COVENANTS OF BORROWER

Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Section 8.01   Indebtedness and Liens**.  (i) Except for trade debt incurred in the normal course of business and indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases, (ii) sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets, or (iii) sell with recourse any of Borrower's accounts, except to Lender.

**Section 8.02   Continuity of Operations**.   (a) Engage in any business activities substantially different than those in which Borrower is presently engaged, or (b) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change ownership, dissolve or transfer or sell Collateral out of the ordinary course of business.

**Section 8.03   Loans, Acquisitions and Guaranties**.  (i) Loan, invest in, or advance money or assets, (ii) purchase, create or acquire any interest in any other enterprise or entity, or (iii) incur any obligation as surety or guarantor other than in the ordinary course of business.

**Section 8.04   Prohibited Transfers**.   Except for intra-family transfers for estate planning purposes, permit without the written consent of Lender (which will not be unreasonably withheld), any interest in Borrower to be sold, transferred, conveyed, encumbered or assigned to any parties nor permit Borrower to convert, whether by operation of law or otherwise, to any other form of business entity.

**Section 8.05   Other Liens; Transfers; "Due-On-Sale", etc**.   Borrower shall not, without the prior written consent of Lender, create or permit to be created or remain with respect to the Property, or any part thereof or income therefrom, any mortgage, pledge, lien, encumbrance, charge, security interest, conditional sale or other title retention agreement, whether prior or subordinate to the lien of the Loan Documents, other than in connection with the Loan Documents or as otherwise provided for or permitted therein. Borrower shall not, without the prior written consent of Lender, make, create, permit or consent to any conveyance, sale, assignment or transfer of the Property, or any part thereof, other than in connection with the Loan Documents. **In the event Borrower or Guarantor places additional junior liens on the Property without Lender's consent, in addition to creating an event of default, the Borrower and any Guarantor shall owe Lender a Fifty Thousand and No/100 Dollars ($50,000.00) Junior Lien Fee, which shall be secured against the Property and added to the payoff of the Note.**

**Section 8.06   Impairment of Security**.  Borrower shall take no action which will in any manner impair the value of the Property, or the validity, priority or security of the Deed of Trust.

## ARTICLE IX.
## EVENTS OF DEFAULT

Each of the following shall constitute an **"Event of Default"** under this Agreement:

12

**Section 9.01   Payment Default**.  Failure of Borrower to pay (i) on or before the due date any principal, interest or other sum owing on the Loan (, or (ii) within five (5) days after the giving of written notice, any sum otherwise owing to Lender.

**Section 9.02   Other Defaults**.  Failure of Borrower to comply with or perform when due any other term, obligation, covenant or condition contained in this Agreement, the Note, the Deed of Trust or in any of the Loan Documents,  beyond any applicable cure period, or failure of Borrower to comply with or to perform any other term, obligation, covenant or condition contained in any other agreement between Lender and Borrower beyond any applicable cure period.

**Section 9.03   Default in Favor of Third Parties**.  Should Borrower default beyond any applicable cure period under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay the Loan or perform Borrower's obligations under this Agreement or any of the Loan Documents.

**Section 9.04   False Statements**.  Any warranty, representation or statement made or furnished to Lender by or on behalf of Borrower or any Guarantor is false or misleading in any material respect at the time made or furnished, or becomes false or misleading at any time thereafter.

**Section 9.05   Defective Collateralization**.   This Agreement or any of the Loan Documents ceases to be in full force and effect (including failure of any security agreement to create a valid and perfected security interest) at any time and for any reason.

**Section 9.06   Death or Insolvency**.   The death of Guarantor, the dissolution of Borrower, or a trustee or receiver is appointed for Borrower or Guarantor or for all or a substantial portion of the assets of Borrower or Guarantor, or Borrower or Guarantor makes a general assignment for the benefit of Borrower's creditors, or Borrower or Guarantor files for bankruptcy, or an involuntary bankruptcy petition is filed against Borrower or Guarantor and such involuntary petition remains undismissed for sixty (60) days.

**Section 9.07   Creditor or Forfeiture Proceedings**.  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower, any creditor of any collateral securing the Loan, or by any governmental agency.

**Section 9.08   Adverse Change**.  A material adverse change occurs in Borrower's or Guarantor's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired, both as determined in good faith by Lender.

**Section 9.09   Change in Ownership**.  Any change in the ownership of the Borrower.

**Section 9.10   Judgment**.  Unless adequately insured in the opinion of Lender, the entry of a final judgment for the payment of money against Borrower and the failure by Borrower to discharge the same, or cause it to be discharged, within thirty (30) days from the date of the

order, decree or process under which or pursuant to which such judgment was entered, or to secure a stay of execution pending appeal of such judgment.

**Section 9.11    Occupancy.**    If the Borrower or its principals *EVER* move into the property or convert it to personal use.

**Section 9.12    Execution; Attachment.**    Any execution or attachment shall be levied against the Collateral, or any part thereof, and such execution or attachment shall not be set aside, discharged or stayed within thirty (30) days after the same shall have been levied.

## ARTICLE X.
## RIGHTS AND REMEDIES UPON DEFAULT

The occurrence or non-occurrence of an Event of Default under this Agreement shall in no way affect or condition the right of the Lender to demand payment at any time of any of the Obligations which are payable on demand regardless of whether or not such an Event of Default has occurred.  Upon the occurrence of an Event of Default, and in each and every such case, Lender at its option may at any time thereafter exercise and/or enforce any or all of the following rights and remedies:

**Section 10.01    Acceleration.**    Declare all of the Obligations to be immediately due and payable, whereupon the same shall become due and payable, together with accrued and unpaid interest thereon, without presentment, demand, protest, or notice, all of which Borrower hereby waives.

**Section 10.02    Performance by Lender.**    If Borrower shall fail to pay the Obligations or otherwise fail to perform, observe or comply with any of the conditions, covenants, terms, stipulations or agreements contained in this Agreement or any of the other Loan Documents, Lender without notice to, or demand upon Borrower and without waiving or releasing any of the Obligations or any Event of Default, may (but shall be under no obligation to) at any time thereafter, make such payment or perform such act for the account and at the expense of Borrower, and may enter upon the Property for that purpose and take all such action thereon as Lender may consider necessary or appropriate for such purpose.  All sums so paid or advanced by Lender and all costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) incurred in connection therewith (the "**Expense Payments**") together with interest thereon from the date of payment, advance or incurring until paid in full at the Default Rate defined in and payable under the Note, shall be paid by Borrower to Lender on demand and shall constitute and become a part of the Obligations.

**Section 10.03    No Advance of Loan Proceeds.**    Lender shall have no obligation to advance or to disburse any Loan Proceeds to Borrower.

**Section 10.04    Exercise of Rights and Remedies.**    Exercise any rights and remedies available to the Lender under this Agreement, the Note, the other Loan Documents, and under applicable laws, including, without limitation, all rights and remedies of a secured party under the Uniform Commercial Code of the jurisdiction in which any of the Collateral may be located.

**Section 10.05 <u>Cross Default/Cross Collateralization</u>**.  Lender, at its sole election, shall have the right to consider an Event of Default hereunder to also constitute a default under any promissory note or other evidence of indebtedness or liability for borrowed money, whether now existing or entered into in the future, between either Borrower and/or Guarantor (or any one of them if more than one), as maker, guarantor or obligor, and Lender, as lender, noteholder and/or obligee (hereinafter collectively called **"Other Indebtedness"**).  The Collateral hereunder shall also be deemed to constitute collateral for any such Other Indebtedness and any collateral given as collateral for said Other Indebtedness shall also be deemed to be part of the Collateral hereunder.  The terms of this Section 10.05 shall be considered self-operative without any need for Borrower and/or Guarantor (or any one of them if more than one) to execute any further document as evidence of the cross collateralization described herein; provided, however, Borrower and/or Guarantor shall, if requested by Lender, at the expense of Borrower and/or Guarantor, execute any further document or undertaking submitted by Lender in order to further evidence and/or publicize Lender's collateral position as herein described.

**Section 10.06 <u>Appraisal</u>**.  Lender may engage an appraisal of the Property at the sole cost of Borrower and/or Guarantor.

<div align="center">

**ARTICLE XI.**
**CESSATION OF ADVANCES**
</div>

Lender shall have no obligation to advance or to disburse Loan Proceeds if: (a) Borrower is in default under the terms of this Agreement or any of the Loan Documents or any other agreement that Borrower has with Lender; (b) Borrower becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (c) there occurs a material adverse change in Borrower's financial condition, or in the value of any Collateral securing the Loan; or (d) Lender in good faith deems itself insecure even though no Event of Default shall have occurred.

<div align="center">

**ARTICLE XII.**
**MISCELLANEOUS**
</div>

**Section 12.01 <u>Notices</u>**.  Any notices, demands, requests, communications and waivers under this Agreement shall be in writing and shall be (i) delivered in person, (ii) mailed, postage prepaid, either by registered or certified mail, return receipt requested, (iii) by overnight express carrier, addressed in each case as follows, or (iv) by confirmed facsimile transmission, so long as a duplicate copy of such notice is also sent by one of the other permitted forms of delivery:

if to Lender:

Cornerstone Capital LLC
c/o Renaissance Realty Management, LLC
1801 Pennsylvania Avenue, N.W., Suite 700
Washington, D.C.  20006
Attn:  Mark D. Schuman, Esquire

<div align="center">15</div>

if to Borrower or Guarantor:

1734 20th Street, N.W., Suite B
Washington, D.C. 20009
Attn:  Matthew E. Shkor

or to any other address as to any of the parties hereto, as such party shall designate in a written notice to the other parties hereto.  All notices sent pursuant to the terms of this Section shall be deemed received (i) if personally delivered, then on the date of delivery, (ii) if sent by overnight, express carrier, then on the next federal banking day immediately following the day sent, or (iii) if sent by registered or certified mail, then on the earlier of the third federal banking day following the day sent or when actually received.

**Section 12.02  Consent and Approvals**.  If any consent, approval, or authorization of any state, municipal or other governmental department, agency or authority or of any person, or any person, corporation, partnership or other entity having any interest therein, should be necessary to effectuate any sale or other disposition of the Collateral, Borrower agrees to execute all such applications and other instruments, and to take all other action, as may be required in connection with securing any such consent, approval or authorization.

**Section 12.03  Remedies, etc.; Cumulative**.  Each right, power and remedy of Lender as provided for in this Agreement or in any of the other Loan Documents or now or hereafter existing at law or in equity or by statute or otherwise shall be cumulative and concurrent and shall be in addition to every other right, power or remedy provided for in this Agreement or in any of the other Loan Documents or now or hereafter existing at law or in equity, by statute or otherwise, and the exercise or beginning of the exercise by Lender of any one or more of such rights, powers or remedies shall not preclude the simultaneous or later exercise by Lender of any or all such other rights, powers or remedies.  In order to entitle Lender to exercise any remedy reserved to it herein, it shall not be necessary to give any notice, other than such notice as may be expressly required in this Agreement.

**Section 12.04  No Waiver of Rights by Lender**.  No failure or delay by Lender to insist upon the strict performance of any term, condition, covenant or agreement of this Agreement or of any of the other Loan Documents, or to exercise any right, power or remedy consequent upon a breach thereof, shall constitute a waiver of any such term, condition, covenant or agreement or of any such breach or preclude Lender from exercising any such right, power or remedy at any later time or times.  By accepting payment after the due date of any amount payable under this Agreement or under any of the other Loan Documents, Lender shall not be deemed to waive the right either to require prompt payment when due of all other amounts payable under this Agreement or under any of the other Loan Documents, or to declare a default for failure to effect such prompt payment of any such other amount.

**Section 12.05  Survival of Agreement; Successors and Assigns**.  All covenants, agreements, representations and warranties made by Borrower and Guarantor herein and in any of the other Loan Documents and in any other instruments or documents delivered pursuant hereto shall survive the making by Lender of the Loan and the execution and delivery of the

Note, and shall continue in full force and effect so long as any of the Obligations are outstanding and unpaid. Whenever in this Agreement any of the parties hereto is referred to, such reference shall be deemed to include the successors and assigns of such party; and all covenants, promises and agreements by or on behalf of Borrower or Guarantor, which are contained in this Agreement shall inure to the benefit of Lender and the successors and assigns of Lender and all covenants, promises and agreements by or on behalf of Lender which are contained in this Agreement shall inure to the benefit of the permitted successors and assigns of Borrower, but this Agreement may not be assigned by Borrower without the prior written consent of Lender.

**Section 12.06 <u>Expenses</u>**.  Borrower agrees to pay for all of the following ("**Expenses**"): (i) all reasonable out-of- pocket expenses of Lender (including the reasonable fees and expenses of its legal counsel) in connection with the preparation of this Agreement and all other Loan Documents (ii) the recordation of all deeds of trust and financing statements and such other instruments, as may be required by Lender at the time of, or subsequent to, the execution of this Agreement, to secure the Obligations (including any and all recordation tax and other costs and taxes incident to recording), and (iii) any costs incurred by Lender in the enforcement of any provision of this Agreement or any other Loan Documents and the collection of the Obligations. If the Borrower fails to pay for any of the said Expenses, Lender may, but shall not be obligated to, pay for the same and in such event any sums expended by Lender shall both (i) become additional debt of Borrower secured by the Deed of Trust and (ii) bear interest from the date of disbursement at the rate due after a default under the Note and shall be payable by Borrower with interest, upon demand by Lender.

**Section 12.07 <u>Governing Law</u>**.  This Agreement and all of the Loan Documents shall be governed by, construed and enforced in accordance with the laws of the State of Maryland.

**Section 12.08 <u>Modifications</u>**.  No modification or waiver of any provision of this Agreement or of any of the other Loan Documents, nor consent to any departure by Borrower therefrom, shall in any event be effective unless the same shall be in writing, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given. No notice to or demand on Borrower in any case shall entitle Borrower to any other or further notice or demand in the same, similar or other circumstance.

**Section 12.09 <u>Illegality</u>**.  If fulfillment of any provision hereof or any transaction related hereto or to any of the other Loan Documents, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law, then *ipso facto*, the obligation to be fulfilled shall be reduced to the limit of such validity; and if any clause or provisions herein contained other than the provisions hereof pertaining to repayment of the Obligations operates or would prospectively operate to invalidate this Agreement in whole or in part, then such clause or provision only shall be void, as though not herein contained, and the remainder of this Agreement shall remain operative and in full force and effect; and if such provision pertains to repayment of the Obligations, then, at the option of Lender, all of the Obligations of Borrower to Lender shall become immediately due and payable.

**Section 12.10 <u>Waiver of Trial by Jury</u>.  The parties hereto hereby waive trial by jury in any action or proceeding arising out of or in any way pertaining to (a) this Agreement, (b) the Loan, Obligations, Collateral or any of the Loan Documents which are**

the subject of this Agreement, and (c) any and all notes, guaranties, assignments or agreements of any kind relating to the Loan. It is agreed and understood that this waiver constitutes a waiver of trial by jury of all claims against all parties to such actions or proceedings, including claims against parties who are not parties to this Agreement. This waiver is knowingly, willingly and voluntarily made by each of the parties hereto, and the parties hereby represent that no representations of fact or opinion have been made by any individual to induce this waiver of trial by jury or to in any way modify or nullify its effect. The parties further represent that, in connection with the signing of this Agreement and the making of this waiver, they have been represented, or have had the opportunity to be represented, by independent legal counsel of their own selection.

Section 12.11 **Relationship of the Parties**. This Agreement provides for the making of the Loan by Lender, in its capacity as a lender, to Borrower, in its capacity as a borrower, and for the payment of interest and repayment of principal by Borrower to Lender. The relationship between Lender and Borrower is limited to that of creditor/secured party, on the one hand, and debtor, on the other hand. The provisions herein for compliance with financial covenants, delivery of financial statements and reserve accounts, as applicable, are intended solely for the benefit of Lender to protect its interests as lender in assuring payments of interest and repayment of principal, and nothing contained in this Agreement shall be construed as permitting or obligating Lender to act as a financial or business advisor or consultant to Borrower, as permitting or obligating Lender to control Borrower or to conduct Borrower's operations, as creating any fiduciary obligation on the part of Lender to Borrower, or as creating any joint venture, agency, or other relationship between the parties other than as explicitly and specifically stated in this Agreement. Each of Borrower and Guarantor acknowledges that it has had the opportunity to obtain the advice of experienced counsel of its own choosing in connection with the negotiation and execution of this Agreement and to obtain the advice of such counsel with respect to all matters contained herein, including, without limitation, the provision for waiver of trial by jury. Each of Borrower and Guarantor further acknowledges that it is experienced with respect to financial and credit matters and has made its own independent decision to apply to Lender for credit and to execute and deliver this Agreement.

Section 12.12 **Consent to Jurisdiction and Service of Process**. Borrower irrevocably consents that any legal action or proceeding against it, under, arising out of, or in any manner relating to this Agreement, the Note, any of the other Loan Documents, or any other instrument or document executed and delivered in connection therewith may be brought at the sole election of Lender in any Circuit Court in the State of Maryland or in United States District Court for the State of Maryland. Borrower, by the execution and delivery of this Agreement, expressly and irrevocably assents and submits to the personal jurisdiction of any of such courts in any such action or proceeding. Borrower further irrevocably consents to the service of any complaint, summons, notice or other process relating to any such action or proceeding by delivery thereof to it by hand or by mail in the manner provided for in Section 12.1 hereof (except by facsimile transmission). Borrower hereby expressly and irrevocably waives any claim or defense in any such action or proceeding based on any alleged lack of personal jurisdiction, improper venue or *forum non conveniens* or any similar basis. Nothing in this Section shall affect or impair in any manner or to any extent the right of Lender to commence legal proceedings or otherwise proceed against Borrower in any other jurisdiction or to serve process in any manner permitted by law.

Section 12.13 **Recitals**. The Recital paragraphs which appear at the beginning of this Agreement are incorporated herein by reference as if fully set forth herein anew.

Section 12.14 **Conflict**. In the event of any inconsistency or conflict between any of the terms or provisions of any of the Loan Documents, the term or provision which places a greater limitation on Borrower or which imposes a greater burden on Borrower, financial or otherwise, shall control.

Section 12.15 **Further Assurances**. Borrower will, upon Lender's request, (a) promptly correct any misstatement or inaccuracy whether due to a unilateral mistake on the part of Lender or mutual mistake on the part of Lender and Borrower, or due to clerical error or scrivener's error; (b) execute, acknowledge, deliver, procure, record or file such further instruments and do such further acts as Lender deems necessary, desirable or proper to carry out the purposes of the Loan Documents and to identify and subject to the liens and security interest of the Loan Documents any property intended to be covered thereby, including any renewals, additions, substitutions, replacements, or appurtenances to the Property; (c) execute, acknowledge, deliver, procure, file or record any document or instrument Lender deems necessary, desirable, or proper to protect the liens or the security interest under the Loan Documents against the rights or interests of third persons; and (d) provide such certificates, documents, reports, information, affidavits and other instruments and do such further acts deemed necessary, desirable or proper by Lender to comply with the requirements of any agency having jurisdiction over Lender so long as Borrower's rights are not reduced thereby and Borrower's obligations are not expanded thereby. Furthermore, the undersigned Borrower and Guarantor do hereby appoint Jason A. Pardo, Esquire and Russell S. Drazin, Esquire, as attorney-in-fact, either of whom may act alone, to correct any errors in the Loan Documents; and to sign or initial where changes are made as they, as attorney-in-fact, may deem proper and necessary in his sole and absolute discretion. No changes or modifications shall be made by said attorney-in-fact which shall substantially alter the terms and conditions of the loan transaction, or change the general meaning thereof.

In the event said attorney-in-fact exercises his rights hereunder, the affected parties shall receive a copy of the corrected documents. This power of attorney is hereby irrevocably granted by the undersigned and shall survive any disability of the undersigned.

Section 12.16 **Earn Out.**    Intentionally deleted.

Section 12.17 **Entire Agreement**. The Loan Documents shall completely and fully supersede all other agreements, both written and oral, between Lender and Borrower relating to the Obligations. Neither Lender nor Borrower shall hereafter have any rights under such prior agreements but shall look solely to the Loan Documents for definition and determination of all of their respective rights, liabilities and responsibilities relating to the Obligations.

Section 12.18 **Subordination**. Lender hereby agrees that it shall subordinate the lien, operation and effect of its Deed of Trust encumbering the Property to the condominium documents that Borrower intends to record among the Land Records of the District of Columbia.

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF**, the Borrower has executed and delivered this Agreement as of the day and year first above written.

**BORROWER**:

**POTOMAS CONSTRUCTION SHAW LLC**
**a District of Columbia limited liability company**

By: _____
Name:  Matthew E. Shkor
Title:  Manager

**GUARANTOR**:

_____
Matthew E. Shkor, individually

District of Columbia

I HEREBY CERTIFY that on this 7th day of May, 2018, before me, the subscriber, a Notary Public, in and for the jurisdiction aforesaid, personally appeared Matthew E. Shkor, personally well known to me (or satisfactorily proven) to be the person who acknowledged and executed the foregoing instrument, individually and on behalf of Borrower, and, being authorized so to do, executed the foregoing instrument for the purposes therein contained and that the same was delivered as such.

IN WITNESS WHEREOF I hereunto set my hand and official seal.

_____
Notary Public

My commission expires: _____

KEVIN DALE ANDERSON
Notary Public, District of Columbia
My Commission Expires Jan. 31, 2020

**LENDER:**

**CORNERSTONE CAPITAL LLC,**
a Maryland limited liability company

By:_____
Name:
Title:

Ha

### DEED OF TRUST, SECURITY AGREEMENT,
### ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FILING
### (Purchase Money)

**THIS DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FILING ("Deed of Trust")** is made as of the 7th day of May, 2018, (the **"Effective Date"**) by **Matthew E. Shkor ("Trustor")** to **Jason A. Pardo, Esquire and Russell S. Drazin, Esquire**, trustees, either of whom may act alone (collectively, **"Trustee"**), for the use and benefit of **Cornerstone Capital LLC**, a Maryland limited liability company ("**Lender**"), with an address of c/o Broadwater Capital, 1801 Pennsylvania Avenue, N.W., Suite 700, Washington, D.C. 20006, and any successor holder of the Note secured by this Deed of Trust ("**Beneficiary**"):

### R E C I T A L S :

(A)     Beneficiary has agreed to loan to **POTOMAC CONSTRUCTION SHAW, LLC ("Borrower")** the principal amount of **Three Million Eight Hundred Twenty Thousand and No/100 Dollars ($3,820,000.00) ("Loan")**.  The Loan shall be evidenced by a certain Promissory Note of even date herewith (as amended, restated or replaced from time to time, **"Note"**) made by Trustor payable to Beneficiary in the original principal amount of the Loan and due on the Maturity Date (as defined in the Note), except as may be accelerated pursuant to the terms hereof or of the Note or any other Loan Document (as defined in the Note).  Trustor is a guaranty of the Loan.

(B)     A condition precedent to Beneficiary's extension of the Loan to Trustor is, among other things, the execution and delivery by Trustor of this Deed of Trust.

(C)     The security of this Deed of Trust against the Real Estate (herein defined) shall be limited to principal amount of **Five Hundred Thousand and No/100 Dollars ($500,000.00)**.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Trustor agrees as follows:

In order to secure the payment of the indebtedness hereinafter referred to and the performance of the obligations, covenants, agreements, warranties and undertakings of Trustor hereinafter described, Trustor hereby GRANTS, BARGAINS, SELLS, CONVEYS, TRANSFERS, ASSIGNS, MORTGAGES, WARRANTS AND SETS OVER to Trustee for the benefit of Beneficiary, its successors and assigns, and grants to Beneficiary a security interest in, the following described property, rights and interest (referred collectively herein as **"Premises"**) all of which property, rights and interest are hereby granted and pledged primarily and on parity with the real estate (as defined below) and not secondarily:

**THE REAL ESTATE** located at **1738 R Street, N.W., Washington, D.C. 20009** and legally described on Exhibit A attached hereto and made a part hereof (**"Real Estate"**);

**TOGETHER WITH** all improvements of every nature whatsoever now or hereafter situated on the Real Estate, and all fixtures and personal property of every nature whatsoever now or hereafter owned by Trustor and located on, or used in connection with the Real Estate or the improvements thereon, or in connection with any construction thereon, including all extensions, additions, improvements, betterments, renewals, substitutions and replacements to any of the foregoing and all of the right, title and interest of Trustor in and to any such personal property or fixtures together with the benefit of any deposits or payments now or hereafter made on such personal property or fixtures by Trustor or on its behalf (**"Improvements"**);

**TOGETHER WITH** all easements, rights of way, gores of real estate, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, mineral rights, air rights, development rights and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances whatsoever, in any way now or hereafter belonging, relating or appertaining to the Real Estate, and the reversions, remainders, rents, issues and profits thereof, and all the estate, right, title, interest, property, possession, claim and demand whatsoever, at law as well as in equity, of Trustor of, in and to the same;

**TOGETHER WITH** all rents, revenues, issues, profits, proceeds, income, royalties, "accounts," including "health-care-insurance receivables," escrows, letter-of-credit rights (each as defined in the Code hereinafter defined), security deposits, impounds, reserves, tax refunds and other rights to monies from the Premises and/or the businesses and operations conducted by Trustor thereon, to be applied against the Indebtedness (hereinafter defined), all of which Trustor hereby absolutely and unconditionally assigns to Beneficiary; provided, however, that Trustor, so long as no Event of Default (as hereinafter defined) has occurred hereunder, may collect rent as it becomes due, but not more than one (1) month in advance thereof;

1

**TOGETHER WITH** all interest of Trustor in all leases now or hereafter of all or a portion of the Premises, whether written or oral (**"Leases"**), together with all security therefor and all monies payable thereunder, all of which Trustor hereby absolutely and unconditionally assigns to Beneficiary; subject, however, to the conditional permission hereinabove given to Trustor to collect the rentals under any such Lease;

**TOGETHER WITH** all fixtures and articles of personal property now or hereafter owned by Trustor and forming a part of or used in connection with the Real Estate or the Improvements, including, but without limitation, any and all air conditioners, antennae, appliances, apparatus, awnings, basins, bathtubs, bidets, boilers, bookcases, cabinets, carpets, coolers, curtains, dehumidifiers, disposals, doors, drapes, dryers, ducts, dynamos, elevators, engines, equipment, escalators, exercise equipment, fans, fittings, floor coverings, furnaces, furnishings, furniture, hardware, heaters, humidifiers, incinerators, lighting, machinery, motors, ovens, pipes, plumbing, pumps, radiators, ranges, recreational facilities, refrigerators, screens, security systems, shades, shelving, sinks, sprinklers, stokers, stoves, toilets, ventilators, wall coverings, washers, windows, window coverings, wiring, and all renewals or replacements thereof or articles in substitution therefor, whether or not the same are or shall be attached to the Real Estate or the Improvements in any manner; it being mutually agreed that all of the aforesaid property owned by Trustor and placed on the Real Estate or the Improvements, so far as permitted by law, shall be deemed to be fixtures, a part of the realty, and security for the Indebtedness (as hereinafter defined); notwithstanding the agreement hereinabove expressed that certain articles of property form a part of the realty covered by this Deed of Trust and be appropriated to its use and deemed to be realty, to the extent that such agreement and declaration may not be effective and that any of said articles may constitute goods (as said term is used in the Uniform Commercial Code as adopted in Maryland in effect from time to time (**"Code"**), this instrument shall constitute a security agreement, creating a security interest in such goods, as collateral, in Beneficiary, as a secured party, and Trustor, as Debtor, all in accordance with the Code; and

**TOGETHER WITH** all of Trustor's interests in "general intangibles" including "payment intangibles" and "software" (each as defined in the Code) now owned or hereafter acquired and related to the Premises, including, without limitation, all of Trustor's right, title and interest in and to: (i) all agreements, licenses, permits and contracts to which Trustor is or may become a party and which relate to the Premises; (ii) all obligations and indebtedness owed to Trustor thereunder; (iii) all intellectual property related to the Premises; and (iv) all choses in action and causes of action relating to the Premises;

**TOGETHER WITH** all of Trustor's accounts now owned or hereafter created or acquired as they relate to the Premises, including, without limitation, all of the following now owned or hereafter created or acquired by Trustor: (i) accounts, contract rights, health-care-insurance receivables, book debts, notes, drafts, and other obligations or indebtedness owing to the Trustor arising from the sale, lease or exchange of goods or other property and/or the performance of services; (ii) the Trustor's rights in, to and under all purchase orders for goods, services or other property; (iii) the Trustor's rights to any goods, services or other property represented by any of the foregoing; (iv) monies due to become due to the Trustor under all contracts for the sale, lease or exchange of goods or other property and/or the performance of services including the right to payment of any interest or finance charges in respect thereto (whether or not yet earned by performance on the part of the Trustor); (v) "securities," "investment property," "financial assets," and "securities entitlements" (each as defined in the Code); (vi) proceeds of any of the foregoing and all collateral security and guaranties of any kind given by any person or entity with respect to any of the foregoing; and (vii) all warranties, guarantees, permits and licenses in favor of Trustor with respect to the Premises;

**TOGETHER WITH** all proceeds of the foregoing, including, without limitation, all judgments, awards of damages and settlements hereafter made resulting from condemnation proceeds or the taking of the Premises or any portion thereof under the power of eminent domain, any proceeds of any policies of insurance, maintained with respect to the Premises or proceeds of any sale, option or contract to sell the Premises or any portion thereof.

**TO HAVE AND TO HOLD** the Premises unto Trustee, and its successors and substitutes in this trust and to its and their successors and assigns, in trust, WITH POWER OF SALE AND THE RIGHT OF RE-ENTRY AND POSSESSION, for the benefit of Beneficiary and its successors and assigns, upon the terms, provisions and conditions herein set forth.

**FOR THE PURPOSE OF SECURING THE FOLLOWING (collectively referred to herein as the "Indebtedness"):** (i) the payment of the Loan and all interest, late charges, prepayment premium (if any), Prepayment Fee (if any), reimbursement obligations, fees and expenses for letters of credit issued by Beneficiary for the benefit of Trustor, if any, and other indebtedness evidenced by or owing under the Note, any of the other Loan Documents, any interest rate swap or hedge agreement now or hereafter entered into between Trustor and Beneficiary and any application for letters of credit and master letter of credit agreement, together with any extensions, modifications, renewals or refinancings of any of the foregoing; (ii) the performance and observance of the covenants, conditions, agreements, representations, warranties and other liabilities and obligations of Trustor or any other obligor to or benefiting Beneficiary which are evidenced or secured by or otherwise provided in the Note, this Deed of Trust or any of the other Loan Documents, dated on or about the Effective Date which obligations, notwithstanding anything to the contrary in this Deed of

2

Trust, shall not be secured by this Deed of Trust; and (iii) the reimbursement to Beneficiary of any and all sums incurred, expended or advanced by Beneficiary pursuant to any term or provision of or constituting additional indebtedness under or secured by this Deed of Trust, any of the other Loan Documents, any interest rate swap or hedge agreement or any application for letters of credit and master letter of credit agreement, with interest thereon as provided herein or therein.

**IT IS FURTHER UNDERSTOOD AND AGREED THAT:**

1.    **Title**.  Trustor represents, warrants and covenants that (a) Trustor is the holder of the fee simple title to the Premises, free and clear of all liens and encumbrances, except those liens and encumbrances in favor of Beneficiary and as otherwise described on the title insurance policy accepted by Beneficiary (**"Permitted Exceptions"**); and (b) Trustor has legal power and authority to mortgage and convey the Premises.

2.    **Maintenance, Repair, Restoration, Prior Liens, Parking**.  Trustor covenants that, so long as any portion of the Indebtedness remains unpaid, Trustor will:

(a)    promptly repair, restore or rebuild any Improvements now or hereafter on the Premises which may become damaged or be destroyed to a condition substantially similar to the condition immediately prior to such damage or destruction, whether or not proceeds of insurance are available or sufficient for the purpose;

(b)    keep the Premises in good condition and repair, without waste, and free from mechanics', materialmen's or like liens or claims or other liens or claims for lien (collectively, **"Mechanics' Liens"**);

(c)    pay when due the Indebtedness in accordance with the terms of the Note and the other Loan Documents and duly perform and observe all of the terms, covenants and conditions to be observed and performed by Trustor under the Note, this Deed of Trust and the other Loan Documents;

(d)    pay when due any indebtedness which may be secured by a permitted lien or charge on the Premises on a parity with, superior to or inferior to, the lien hereof, and upon request exhibit satisfactory evidence of the discharge of such lien to the Beneficiary;

(e)    complete within a reasonable time any Improvements now or at any time in the process of erection upon the Premises;

(f)    comply with all requirements of law, municipal ordinances or restrictions and covenants of record with respect to the Premises and the use thereof;

(g)    obtain and maintain in full force and effect, and abide by and satisfy the material terms and conditions of, all material permits, licenses, registrations and other authorizations with or granted by any governmental authorities that may be required from time to time with respect to the performance of its obligations under this Deed of Trust;

(h)    make no material alterations in the Premises or demolish any portion of the Premises without Beneficiary's prior written consent, except as required by law or municipal ordinance;

(i)    suffer or permit no change in the use or general nature of the occupancy of the Premises, without the Beneficiary's prior written consent;

(j)    pay when due all operating costs of the Premises;

(k)    not initiate or acquiesce in any zoning reclassification with respect to the Premises, without Beneficiary's prior written consent;

(l)    provide and thereafter maintain adequate parking areas within the Premises as may be required by law, ordinance or regulation (whichever may be greater), together with any sidewalks, aisles, streets, driveways and sidewalk cuts and sufficient paved areas for ingress, egress and right-of-way, to and from the adjacent public thoroughfares necessary or desirable for the use thereof; and

(m)    cause the Premises at all times to be operated in compliance with all federal, state, local and municipal environmental, health and safety laws, statutes, ordinances, rules and regulations, including, without limitation, Trustor will (i) ensure, and cause each of its subsidiaries to ensure, that no person who owns twenty percent (20.00%) or more of the equity interests in the Trustor, or otherwise controls the Trustor or any of its subsidiaries is or shall be listed on the Specially

3

Designated Nationals and Blocked Person List or other similar lists maintained by the Office of Foreign Assets Control (**"OFAC"**), the Department of the Treasury or included in any Executive Orders, (ii) not use or permit the use of the proceeds of the Loan to violate any of the foreign asset control regulations of OFAC or any enabling statute or Executive Order relating thereto, and (iii) comply, and cause each of its subsidiaries to comply, with all applicable Bank Secrecy Act laws and regulations, as amended.

3. **Payment of Taxes and Assessments; Removal of Mechanics' Liens**. Trustor will pay when due and before any penalty attaches, all general and special taxes, assessments, water charges, sewer charges, and other fees, taxes, charges and assessments of every kind and nature whatsoever (all herein generally called **"Taxes"**), whether or not assessed against Trustor, if applicable to the Premises or any interest therein, or the Indebtedness, or any obligation or agreement secured hereby, subject to Trustor's right to contest the same, as provided by the terms hereof; and Trustor will, upon written request, furnish to the Beneficiary duplicate receipts therefor within ten (10) days after Beneficiary's request.

4. **Insurance**.

(a) Trustor shall at all times keep all buildings, improvements, fixtures and articles of personal property now or hereafter situated on the Premises insured against loss or damage by fire and such other hazards as may reasonably be required by Beneficiary, in accordance with the terms, coverages and provisions reasonably acceptable to Beneficiary, and such other insurance as Beneficiary may from time to time reasonably require. Unless Trustor provides Beneficiary evidence of the insurance coverages required hereunder, Beneficiary may purchase insurance at Trustor's expense to cover Beneficiary's interest in the Premises. The insurance may, but need not, protect Trustor's interest. The coverages that Beneficiary purchases may not pay any claim that Trustor makes or any claim that is made against Trustor in connection with the Premises. Trustor may later cancel any insurance purchased by Beneficiary, but only after providing Beneficiary with evidence that Trustor has obtained insurance as required by this Deed of Trust. If Beneficiary purchases insurance for the Premises, Trustor will be responsible for the costs of such insurance, including, without limitation, interest and any other charges which Beneficiary may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to the Indebtedness. The cost of the insurance may be more than the cost of insurance Trustor may be able to obtain on its own.

(b) Trustor shall not take out separate insurance concurrent in form or contributing in the event of loss with that required to be maintained hereunder unless Beneficiary is included thereon as the loss payee or an additional insured as applicable, under a standard deed of trust clause acceptable to Beneficiary and such separate insurance is otherwise acceptable to Beneficiary.

(c) In the event of a loss, Trustor shall give prompt notice thereof to Beneficiary, who shall have the sole and absolute right to make proof of loss. Beneficiary, solely and directly, shall receive such payment for loss from each insurance company concerned. Beneficiary shall have the right, at its option and in its sole discretion, to apply any insurance proceeds received by Beneficiary pursuant to the terms of this section, after the payment of all of Beneficiary's expenses, either (i) on account of the Indebtedness, irrespective of whether such principal balance is then due and payable, whereupon Beneficiary may declare the whole of the balance of Indebtedness, plus the "Prepayment Fee" (as defined in the Note), to be due and payable, or (ii) to the restoration or repair of the property damaged as provided in subsection (d) below; provided, however, that Beneficiary hereby agrees to permit the application of such proceeds to the restoration or repair of the damaged property, subject to the provisions of subsection (d) below, if (i) Beneficiary has received satisfactory evidence that such restoration or repair shall be completed no later than the date that is two (2) months prior to the Maturity Date; (ii) that the insurance proceeds will cover all costs of restoration or repair; and (iii) no Event of Default, or event that with the passage of time, the giving of notice or both would constitute an Event of Default, then exists. If insurance proceeds are made available to Trustor by Beneficiary as hereinafter provided, Trustor shall repair, restore or rebuild the damaged or destroyed portion of the Premises so that the condition and value of the Premises are substantially the same as the condition and value of the Premises prior to being damaged or destroyed. Any insurance proceeds applied on account of the unpaid principal balance of the Note shall be subject to the Prepayment Fee. In the event of foreclosure of this Deed of Trust, all right, title and interest of Trustor in and to any insurance policies then in force shall pass to the purchaser at the foreclosure sale.

(d) If insurance proceeds are made available by Beneficiary to Trustor, Trustor shall comply with the following conditions:

(i) Before commencing to repair, restore or rebuild following damage to, or destruction of, all or a portion of the Premises, whether by fire or other casualty, Trustor shall obtain from Beneficiary its approval of all site and building plans and specifications pertaining to such repair, restoration or rebuilding.

4

(ii)    Prior to each payment or application of any insurance proceeds to the repair or restoration of the improvements upon the Premises to the extent permitted in subsection (c) above (which payment or application may be made, at Beneficiary's option, through an escrow, the terms and conditions of which are satisfactory to Beneficiary and the cost of which is to be borne by Trustor), Beneficiary shall be satisfied as to the following:

(1)    no Event of Default or any event which, with the passage of time or giving of notice would constitute an Event of Default, has occurred;

(2)    either such Improvements have been fully restored, or the expenditure of money as may be received from such insurance proceeds will be sufficient to repair, restore or rebuild the Premises, free and clear of all liens, claims and encumbrances, except the lien of this Deed of Trust and the Permitted Exceptions, or, if such insurance proceeds shall be insufficient to repair, restore and rebuild the Premises, Trustor has deposited with Beneficiary such amount of money which, together with the insurance proceeds shall be sufficient to restore, repair and rebuild the Premises; and

(3)    prior to each disbursement of any such proceeds, Beneficiary shall be furnished with a statement of Beneficiary's architect (the cost of which shall be borne by Trustor), certifying the extent of the repair and restoration completed to the date thereof, and that such repairs, restoration, and rebuilding have been performed to date in conformity with the plans and specifications approved by Beneficiary and with all statutes, regulations or ordinances (including building and zoning ordinances) affecting the Premises; and Beneficiary shall be furnished with appropriate evidence of payment for labor or materials furnished to the Premises, and total or partial lien waivers substantiating such payments, and title insurance endorsements in form satisfactory to Beneficiary, insuring the continuing first priority of this Deed of Trust, subject only to the Permitted Exceptions.

(iii)    If Trustor shall fail to restore, repair or rebuild the Improvements within a time deemed reasonably satisfactory by Beneficiary, then Beneficiary, at its option, may after providing Trustor with written notice of such failure and a fifteen (15) day period within which to cure such failure (a) commence and perform all necessary acts to restore, repair or rebuild the said Improvements for or on behalf of Trustor, or (b) declare an Event of Default. If insurance proceeds shall exceed the amount necessary to complete the repair, restoration or rebuilding of the Improvements, such excess shall be applied on account of the Indebtedness irrespective of whether such Indebtedness is then due and payable without payment of any premium or penalty.

5.    **Condemnation**. If all or any part of the Premises are damaged, taken or acquired, either temporarily or permanently, in any condemnation proceeding, or by exercise of the right of eminent domain, the amount of any award or other payment for such taking or damages made in consideration thereof, to the extent of the full amount of the remaining unpaid Indebtedness, is hereby assigned to Beneficiary, who is empowered to collect and receive the same and to give proper receipts therefor in the name of Trustor and the same shall be paid forthwith to Beneficiary. Such award or monies shall be applied on account of the Indebtedness, irrespective of whether such Indebtedness is then due and payable and, at any time from and after the taking Beneficiary may declare the whole of the balance of the Indebtedness, plus the Prepayment Fee, to be due and payable. Notwithstanding the provisions of this section to the contrary, if any condemnation or taking of less than the entire Premises occurs and provided that no Event of Default and no event or circumstance which with the passage of time, the giving of notice or both would constitute an Event of Default then exists, and if such partial condemnation, in the reasonable discretion of Beneficiary, has no material adverse effect on the operation or value of the Premises, then the award or payment for such taking or consideration for damages resulting therefrom may be collected and received by Trustor, and Beneficiary hereby agrees that in such event it shall not declare the Indebtedness to be due and payable, if it is not otherwise then due and payable.

6.    **Stamp Tax**. If, by the laws of the United States of America, or of any state or political subdivision having jurisdiction over Trustor, any tax is due or becomes due in respect of the execution and delivery of this Deed of Trust, the Note or any of the other Loan Documents, Trustor shall pay such tax in the manner required by any such law. Trustor further agrees to reimburse Beneficiary for any sums which Beneficiary may expend by reason of the imposition of any such tax. Notwithstanding the foregoing, Trustor shall not be required to pay any income or franchise taxes of Beneficiary.

7.    **Effect of Extensions of Time and Other Changes**. If the payment of the Indebtedness or any part thereof is extended or varied, if any part of any security for the payment of the Indebtedness is released, if the rate of interest charged under the Note is changed or if the time for payment thereof is extended or varied, all persons now or at any time hereafter liable therefor, or interested in the Premises or having an interest in Trustor, shall be held to assent to such extension, variation, release or change and their liability and the lien and all of the provisions hereof shall continue in full force, any right of recourse against all such persons being expressly reserved by Beneficiary, notwithstanding such extension, variation, release or change.

5

8.      **Effect of Changes in Laws Regarding Taxation**.  If any law is enacted after the Effective Date requiring (a) the deduction of any lien on the Premises from the value thereof for the purpose of taxation or (b) the imposition upon Beneficiary of the payment of the whole or any part of the Taxes, charges or liens herein required to be paid by Trustor, or (c) a change in the method of taxation of mortgages or debts secured by mortgages or Beneficiary's interest in the Premises, or the manner of collection of taxes, so as to affect this Deed of Trust or the Indebtedness of the holders thereof, then Trustor, upon demand by Beneficiary, shall pay such Taxes or charges, or reimburse Beneficiary therefor; provided, however, that Trustor shall not be deemed to be required to pay any income or franchise taxes of Beneficiary.  Notwithstanding the foregoing, if in the opinion of counsel for Beneficiary it is or may be unlawful to require Trustor to make such payment or the making of such payment might result in the imposition of interest beyond the maximum amount permitted by law, then Beneficiary may declare all of the Indebtedness to be immediately due and payable.

9.      **Beneficiary's Performance of Defaulted Acts and Expenses Incurred by Beneficiary**.  If an Event of Default has occurred, Beneficiary may, but need not, make any payment or perform any act herein required of Trustor in any form and manner deemed expedient by Beneficiary, and may, but need not, make full or partial payments of principal or interest on prior encumbrances, if any, and purchase, discharge, compromise or settle any tax lien or other prior lien or title or claim thereof, or redeem from any tax sale or forfeiture affecting the Premises or consent to any tax or assessment or cure any default of Trustor in any lease of the Premises. All monies paid for any of the purposes herein authorized and all expenses paid or incurred in connection therewith, including reasonable attorneys' fees, and any other monies advanced by Beneficiary in regard to any tax or to protect the Premises or the lien hereof, shall be so much additional Indebtedness, and shall become immediately due and payable by Trustor to Beneficiary, upon demand, and with interest thereon accruing from the date of such demand until paid at the Default Rate (as defined in the Note) then in effect.  In addition to the foregoing, any costs, expenses and fees, including reasonable attorneys' fees, incurred by Beneficiary in connection with (a) sustaining the lien of this Deed of Trust or its priority, (b) protecting or enforcing any of Beneficiary's rights hereunder, (c) recovering any Indebtedness, (d) any litigation or proceedings affecting the Note, this Deed of Trust, any of the other Loan Documents or the Premises, including without limitation, bankruptcy and probate proceedings, or (e) preparing for the commencement, defense or participation in any threatened litigation or proceedings affecting the Note, this Deed of Trust, any of the other Loan Documents or the Premises, shall be so much additional Indebtedness, and shall become immediately due and payable by Trustor to Beneficiary, upon demand, and with interest thereon accruing from the date of such demand until paid at the Default Rate. The interest accruing under this section shall be immediately due and payable by Trustor to Beneficiary, and shall be additional Indebtedness evidenced by the Note and secured by this Deed of Trust.  Beneficiary's failure to act shall never be considered as a waiver of any right accruing to Beneficiary on account of any Event of Default.  Should any amount paid out or advanced by Beneficiary hereunder, or pursuant to any agreement executed by Trustor in connection with the Loan, be used directly or indirectly to pay off, discharge or satisfy, in whole or in part, any lien or encumbrance upon the Premises or any part thereof, then Beneficiary shall be subrogated to any and all rights, equal or superior titles, liens and equities, owned or claimed by any owner or holder of said outstanding liens, charges and indebtedness, regardless of whether said liens, charges and indebtedness are acquired by assignment or have been released of record by the holder thereof upon payment.

10.      **Security Agreement**.  Trustor and Beneficiary agree that this Deed of Trust shall constitute a Security Agreement within the meaning of the Code with respect to (a) all sums at any time on deposit for the benefit of Trustor or held by the Beneficiary (whether deposited by or on behalf of Trustor or anyone else) pursuant to any of the provisions of this Deed of Trust or the other Loan Documents, and (b) any personal property included in the granting clauses of this Deed of Trust, which personal property may not be deemed to be affixed to the Premises or may not constitute a "fixture" (within the meaning of the Code) (which property is hereinafter referred to as **"Personal Property"**), and all replacements of, substitutions for, additions to, and the proceeds thereof, and the "supporting obligations" (as defined in the Code) (all of said Personal Property and the replacements, substitutions and additions thereto and the proceeds thereof being sometimes hereinafter collectively referred to as **"Collateral"**), and that a security interest in and to the Collateral is hereby granted to the Beneficiary, and the Collateral and all of Trustor's right, title and interest therein are hereby assigned to Beneficiary, all to secure payment of the Indebtedness.  All of the provisions contained in this Deed of Trust pertain and apply to the Collateral as fully and to the same extent as to any other property comprising the Premises; and the following provisions of this section shall not limit the applicability of any other provision of this Deed of Trust but shall be in addition thereto:

(a)      Trustor (being the Debtor as that term is used in the Code) is and will be the true and lawful owner of the Collateral and has rights in and the power to transfer the Collateral, subject to no liens, charges or encumbrances other than the lien hereof, other liens and encumbrances benefiting Beneficiary and no other party, and liens and encumbrances, if any, expressly permitted by the other Loan Documents.

(b)      The Collateral is to be used by Trustor solely for business purposes.

(c)      The Collateral will be kept at the Real Estate and, except for Obsolete Collateral (as hereinafter defined), will not be removed therefrom without the consent of Beneficiary (being the Secured Party as that term is used in the Code). The Collateral may be affixed to the Real Estate but will not be affixed to any other real estate.

6

(d)    The only persons having any interest in the Premises are Trustor, Beneficiary and holders of interests, if any, expressly permitted hereby.

(e)    No Financing Statement (other than Financing Statements showing Beneficiary as the sole secured party, or with respect to liens or encumbrances, if any, expressly permitted hereby) covering any of the Collateral or any proceeds thereof is on file in any public office except pursuant hereto; and Trustor, at its own cost and expense, upon demand, will furnish to Beneficiary such further information and will execute and deliver to Beneficiary such financing statements and other documents in form satisfactory to Beneficiary and will do all such acts as Beneficiary may request at any time or from time to time or as may be necessary or appropriate to establish and maintain a perfected security interest in the Collateral as security for the Indebtedness, subject to no other liens or encumbrances, other than liens or encumbrances benefiting Beneficiary and no other party and liens and encumbrances (if any) expressly permitted hereby; and Trustor will pay the cost of filing or recording such financing statements or other documents, and this instrument, in all public offices wherever filing or recording is deemed by Beneficiary to be desirable. Trustor hereby irrevocably authorizes Beneficiary at any time, and from time to time, to file in any jurisdiction any initial financing statements and amendments thereto that (i) indicate the Collateral as all assets of Trustor (or words of similar effect), regardless of whether any particular asset comprised in the Collateral falls within the scope of Article 9 of the Uniform Commercial Code of the jurisdiction wherein such financing statement or amendment is filed, or as being of an equal or lesser scope or within greater detail, and (ii) contain any other information required by Section 5 of Article 9 of the Uniform Commercial Code of the jurisdiction wherein such financing statement or amendment is filed regarding the sufficiency or filing office acceptance of any financing statement or amendment, including whether Trustor is an organization, the type of organization and any organizational identification number issued to Trustor, and in the case of a financing statement filed as a fixture filing or indicating Collateral as as-extracted collateral or timber to be cut, a sufficient description of real property to which the Collateral relates. Trustor agrees to furnish any such information to Beneficiary promptly upon request. Trustor further ratifies and affirms its authorization for any financing statements and/or amendments thereto, executed and filed by Beneficiary in any jurisdiction prior to the date of this Deed of Trust.

(f)    Upon an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Code, including, without limitation, the right to take immediate and exclusive possession of the Collateral, or any part thereof, and for that purpose, so far as Trustor can give authority therefor, with or without judicial process, may enter (if this can be done without breach of the peace) upon any place where the Collateral or any part thereof may be situated and remove the same therefrom (provided that if the Collateral is affixed to real estate, such removal shall be subject to the conditions stated in the Code); and Beneficiary shall be entitled to hold, maintain, preserve and prepare the Collateral for sale, until disposed of, or may propose to retain the Collateral subject to Trustor's right of redemption in satisfaction of Trustor's obligations, as provided in the Code. Beneficiary may render the Collateral unusable without removal and may dispose of the Collateral on the Premises. Beneficiary may require Trustor to assemble the Collateral and make it available to Beneficiary for its possession at a place to be designated by Beneficiary which is reasonably convenient to both parties. Beneficiary will give Trustor at least ten (10) days' notice of the time and place of any public sale of the Collateral or of the time after which any private sale or any other intended disposition thereof is made. The requirements of reasonable notice shall be met if such notice is mailed, by certified United States mail or equivalent, postage prepaid, to the address of Trustor hereinafter set forth at least ten (10) days before the time of the sale or disposition. Beneficiary may buy at any public sale. Beneficiary may buy at private sale if the Collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations. Any such sale may be held in conjunction with any foreclosure sale of the Premises. If Beneficiary so elects, the Premises and the Collateral may be sold as one lot. The net proceeds realized upon any such disposition, after deduction for the expenses of retaking, holding, preparing for sale, selling and the reasonable attorneys' fees and legal expenses incurred by Beneficiary, shall be applied against the Indebtedness in such order or manner as Beneficiary shall select. Beneficiary will account to Trustor for any surplus realized on such disposition.

(g)    The terms and provisions contained in this section, unless the context otherwise requires, shall have the meanings and be construed as provided in the Code.

(h)    This Deed of Trust is intended to be a financing statement within the purview of the Code with respect to the Collateral and the goods described herein, which goods are or may become fixtures relating to the Premises. The addresses of Trustor (Debtor) and Beneficiary (Secured Party) are hereinbelow set forth. This Deed of Trust is to be filed for recording among the land records for Montgomery County, Maryland.

(i)    To the extent permitted by applicable law, the security interest created hereby is specifically intended to cover all Leases between Trustor or its agents as lessor, and various tenants named therein, as lessee, including all extended terms and all extensions and renewals of the terms thereof, as well as any amendments to or replacement of said Leases, together with all of the right, title and interest of Trustor, as lessor thereunder.

      (j)    Trustor represents and warrants that:

          (i.)    Trustor is the record owner of the Premises;

          (ii.)    Trustor is qualified to do business in Maryland; and

          (iii.)    The exact legal names of Trustor are as set forth in the first paragraph of this Deed of Trust.

      (k)    Trustor agrees that:

          (i)    Where Collateral is in possession of a third party, Trustor will join with the Beneficiary in notifying the third party of the Beneficiary's interest and obtaining an acknowledgment from the third party that it is holding the Collateral for the benefit of Beneficiary;

          (ii)    Trustor will cooperate with the Beneficiary in obtaining control with respect to Collateral consisting of: deposit accounts, investment property, letter of credit rights and electronic chattel paper; and

          (iii)    Until the Indebtedness is paid in full, Trustor will not change the state where it is located or change its company name without giving the Beneficiary at least 30 days' prior written notice in each instance.

      (l)    In addition to Beneficiary's rights under the Code, Beneficiary may, but shall not be obligated to, at any time and at the expense of Trustor (i) give notice to any person of Beneficiary's rights hereunder and enforce such rights; (ii) insure, protect, defend and preserve the Collateral and any rights or interests of Beneficiary therein; (iii) inspect such Collateral; and (iv) endorse, collect and receive any right to payment of money owing to Trustor under or from such Collateral. Beneficiary shall have no duty or obligation to make or give any presentments, demands for performance, notices of non-performance, notices of protest or notices of dishonor in connection with any of such Collateral.

      (m)    Trustor and Beneficiary agree that the filing of a financing statement in the records normally having to do with personal property shall never be construed as in any way derogating from or impairing this Deed of Trust and the intention of the parties that everything used in connection with the production of income from the Premises or adapted for use therein or which is described or reflected in this Deed of Trust is, and at all times and for all purposes and in all proceedings both legal or equitable shall be regarded as part of the real estate subject to the lien hereof, irrespective of whether (i) any such item is physically attached to improvements located on such real property or (ii) any such item is referred to or reflected in any financing statement so filed at any time. Similarly, the mention in any such financing statement of (A) the rights in or the proceeds of any fire or hazard insurance policy or (B) any award in eminent domain proceedings for taking or for loss of value or for any cause of action or proceeds thereof in connection with any damage or injury to the Premises or any part thereof shall never be construed as in any way altering any of the rights of Beneficiary as determined by this instrument or impugning the priority of Beneficiary's lien granted hereby or by any other recorded document, but such mention in such financing statement is declared to be for the protection of Beneficiary in the event any court shall at any time hold with respect to matters (A) and (B) above that notice of Beneficiary's priority of interest, to be effective against a particular class of persons, including, without limitation, the Federal government and any subdivision or entity of the Federal government, must be filed in the personal property records or other commercial code records.

      (n)    It is understood and agreed that, in order to protect Beneficiary from the effect of the Code, as amended from time to time, in the event that (i) Trustor intends to purchase any goods which may become fixtures to the Real Estate or Improvements, or any part thereof, and (ii) such goods would be subject to a security interest held by a seller or any other party, Trustor shall, before executing any security agreement or other document evidencing such security interest, obtain the prior written approval of Beneficiary, and all requests for such written approval shall be in writing and contain the following information:

          (A)    A description of the fixtures to be replaced, added to, installed or substituted;

          (B)    The address at which the fixtures will be replaced, added to, installed or substituted; and

          (C)    The name and address of the proposed holder and proposed amount of the security interest;

and any failure of Trustor to obtain such approval shall be a material breach of Trustor's covenants under this Deed of Trust, and shall, at the option of Beneficiary, entitle Beneficiary to all rights and remedies provided for herein upon default. No consent by Beneficiary pursuant to this section shall be deemed to constitute an agreement to subordinate any right of Beneficiary in fixtures or other property covered by this Deed of Trust.

8

(o) Beneficiary shall have the right to acquire by assignment from the holder of such security interest any and all contract rights, accounts receivable, negotiable or non-negotiable instruments or other evidence of Trustor's indebtedness for such personal property or fixtures and, upon acquiring such interest by assignment, shall have the right to enforce the security interest as assignee thereof in accordance with the terms and provisions of the Code then in effect and in accordance with any other provisions of law.

(p) If at any time Trustor fails to make any payment on an obligation secured by a security interest in such personal property or fixtures, Beneficiary, at its option, may at any time pay the amount secured by such security interest and the amount so paid shall be (i) secured by this Deed of Trust and shall be a lien on the Premises having the same priorities as the liens and security interests created by this Deed of Trust, and (ii) payable on demand with interest at the rate specified in the Note from the time of such payment. If Trustor shall fail to make such payment to Beneficiary within ten (10) days after demand, the entire principal sum secured thereby with all unpaid accrued interest and late charges or other amounts owing thereunder, shall, at the option of Beneficiary, become due and payable immediately.

11. **Restrictions on Transfer**.

(a) Trustor, without the prior written consent of Beneficiary, shall not effect, suffer or permit any Prohibited Transfer (as defined herein). Any conveyance, sale, assignment, transfer, lien, pledge, partitioning, mortgage, security interest or other encumbrance or alienation or any agreement to do any of the foregoing, with respect to any of the following properties or interests shall constitute a **"Prohibited Transfer"**:

(i) The Premises or any part thereof or interest therein, excepting only sales or other dispositions of condominium units in the ordinary course of business and excepting only sales or other dispositions of Collateral (herein called **"Obsolete Collateral"**) no longer useful in connection with the operation of the Premises, provided that prior to the sale or other disposition thereof, such Obsolete Collateral has been replaced by Collateral of at least equal value and utility which is subject to the lien hereof with the same priority as with respect to the Obsolete Collateral;

(ii) Any shares of capital stock of a corporate trustor, a corporation which is a general partner or managing member/manager in a partnership or limited liability company trustor, or a corporation which is the owner of substantially all of the capital stock of any corporation described in this subsection (other than the shares of capital stock of a corporate trustee or a corporation whose stock is publicly traded on a national securities exchange or on the National Association of Securities Dealers' Automated Quotation System);

(iii) All or any part of the managing member or manager interest, as the case may be, in a limited liability company trustor or a limited liability company which is a general partner of a partnership Trustor;

(iv) All or any part of the general partner or joint venture interest, as the case may be, of a partnership trustor or a partnership which is a manager of a limited liability company trustor or the conversion of a partnership trustor to a corporation or limited liability company; or

(v) If there shall be any change in control (by way of transfers of stock, partnership or member interests or otherwise) of Trustor or in any partner, member, manager or shareholder, as applicable, which directly or indirectly controls the day to day operations and management of Trustor and/or owns a controlling interest in Trustor; or

in each case whether any such conveyance, sale, assignment, transfer, lien, pledge, mortgage, security interest, encumbrance or alienation is effected directly, indirectly (including the nominee agreement), voluntarily or involuntarily, by operation of law or otherwise; provided, however, that the foregoing provisions of this Section shall not apply (i) to liens securing the Indebtedness, (ii) to the lien of current taxes and assessments not in default, (iii) to any transfers of the Premises, or part thereof, or interest therein, or any beneficial interests, or shares of stock or partnership or joint venture interests, as the case may be, by or on behalf of an owner thereof, who is deceased or declared judicially incompetent, to such owner's heirs, legatees, devisees, executors, administrators, estate or personal representatives, or (iv) to leases permitted by the terms of the Loan Documents, if any.

Notwithstanding the foregoing, as long as all of the Transfer Conditions (as defined below) are satisfied, a transfer of membership interests in Trustor (i) to a conservator pursuant to court order upon the legal disability of an individual member or (ii) to a Family Member (hereinafter defined) upon the death of an individual member shall not require the Beneficiary's consent. "Family Member" shall be defined as an individual member's spouse and any of his or her direct lineal

9

descendants. The term "Transfer Conditions" shall mean that all of the following conditions are satisfied concurrently with each such transfer: (1) there shall be no change in the day to day operations and management of Trustor and (2) Beneficiary shall be provided with a diagram showing the structure of Trustor and all constituent entities after such transfer occurs and a list of the names, types of interests and percentages of ownership of all owners of interests in Trustor and any constituent entities after such transfer occurs.

(b)     In determining whether or not to make the Loan, Beneficiary evaluated the background and experience of Trustor and its partners/members/officers in owning and operating property such as the Premises, found it acceptable and relied and continues to rely upon same as the means of maintaining the value of the Premises which is Beneficiary's security for the Note. Trustor and its partners/members/officers are well experienced in borrowing money and owning and operating property such as the Premises, were ably represented by a licensed attorney at law in the negotiation and documentation of the Loan and bargained at arm's length and without duress of any kind for all of the terms and conditions of the Loan, including this provision. Trustor recognizes that Beneficiary is entitled to keep its loan portfolio at current interest rates by either making new loans at such rates or collecting assumption fees and/or increasing the interest rate on a loan, if the security for which is purchased by a party other than the original Trustor. Trustor further recognizes that any secondary junior financing placed upon the Premises (a) may divert funds which would otherwise be used to pay the Note; (b) could result in acceleration and foreclosure by any such junior encumbrancer which would force Beneficiary to take measures and incur expenses to protect its security; (c) would detract from the value of the Premises should Beneficiary come into possession thereof with the intention of selling same; and (d) would impair Beneficiary's right to accept a deed in lieu of foreclosure, as a foreclosure by Beneficiary would be necessary to clear the title to the Premises. In accordance with the foregoing and for the purposes of (i) protecting Beneficiary's security, both of repayment and of value of the Premises; (ii) giving Beneficiary the full benefit of its bargain and contract with Trustor; (iii) allowing Beneficiary to raise the interest rate and collect assumption fees; and (iv) keeping the Premises free of subordinate financing liens, Trustor agrees that if this Section is deemed a restraint on alienation, that it is a reasonable one.

12.     **Events of Default; Acceleration**.  Each of the following shall constitute an **"Event of Default"** for purposes of this Deed of Trust:

(a)     Trustor fails to pay (i) any installment of principal or interest payable pursuant to the Note on the date when due, or (ii) any other amount payable to Beneficiary under the Note, this Deed of Trust or any of the other Loan Documents within five (5) days after the date when any such payment is due in accordance with the terms hereof or thereof;

(b)     Trustor fails to perform or cause to be performed any other obligation or observe any other condition, covenant, term, agreement or provision required to be performed or observed by Trustor under the Note, this Deed of Trust or any of the other Loan Documents; provided, however, that if such failure by its nature can be cured, then so long as the continued operation and safety of the Premises, and the priority, validity and enforceability of the liens created by this Deed of Trust or any of the other Loan Documents and the value of the Premises are not impaired, threatened or jeopardized, then Trustor shall have a period (**"Cure Period"**) of fifteen (15) days after Trustor obtains actual knowledge of such failure or receives written notice of such failure to cure the same and an Event of Default shall not be deemed to exist during the Cure Period;

(c)     the existence of any inaccuracy or untruth in any material respect in any representation or warranty contained in this Deed of Trust or any of the other Loan Documents or of any statement or certification as to facts delivered to Beneficiary by Trustor;

(d)     Trustor files a voluntary petition in bankruptcy or is adjudicated a bankrupt or insolvent or files any petition or answer seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under the present or any future federal, state, or other statute or law, or seeks or consents to, or acquiesces in the appointment of any trustee, receiver or similar officer of Trustor or of all or any substantial part of the property of Trustor or any of the Premises or all or a substantial part of the assets of Trustor are attached, seized, subjected to a writ or distress warrant or are levied upon unless the same is released or located within thirty (30) days;

(e)     the commencement of any involuntary petition in bankruptcy against Trustor or the institution against Trustor of any reorganization, arrangement, composition, readjustment, dissolution, liquidation or similar proceedings under any present or future federal, state or other statute or law, or the appointment of a receiver, trustee or similar officer for all or any substantial part of the property of Trustor which shall remain undismissed or undischarged for a period of sixty (60) days;

(f)     the occurrence of a Prohibited Transfer;

10

(g)    the occurrence of an "Event of Default" under the Note or any of the other Loan Documents; or

(h)    the occurrence of any default or event of default, after the expiration of any applicable periods of notice or cure, under any document or agreement evidencing or securing any other obligation or indebtedness of Trustor to Beneficiary.

If an Event of Default occurs, Beneficiary may, at its option, declare the whole of the Indebtedness to be immediately due and payable without further notice to Trustor, with interest thereon accruing from the date of such Event of Default until paid at the Default Rate.

13.    **Remedies and Application of Proceeds**.

Upon the occurrence of an Event of Default, Beneficiary may at any time, at its option and in its sole discretion, declare all Indebtedness to be due and payable and the same shall thereupon become immediately due and payable, including the Prepayment Fee, under the terms of the Indebtedness, with interest accruing thereon from the date of the Event of Default until paid, at the Default Rate.  In addition to exercising any other remedy available at law, in equity and/or under the other Loan Documents, Beneficiary may also do any or all of the following, concurrently or otherwise, at such time and in such order as Beneficiary may determine, in its sole discretion, although it shall have no obligation to do any of the following:

(a)    Either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court and without regard to the adequacy of Beneficiary's security, enter with or without process of law upon and take possession of the Premises, or any part thereof, and do any acts which Beneficiary deems necessary or desirable to preserve the value, marketability or rentability of the Premises, or to increase the income therefrom or to protect the security hereof and, with or without taking possession of any of the Premises, sue for or otherwise collect all rents and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees and expenses, upon the Indebtedness, all in such order as Beneficiary may determine.  The collection of rents and profits and the application thereof shall not cure or waive any Event of Default or notice thereof or invalidate any act done in response thereto or pursuant to such notice.  In furtherance of the foregoing, to the fullest extent permitted by applicable law, following the occurrence of an Event of Default and during the continuance thereof, Beneficiary shall have the right to apply to a court of competent jurisdiction for and obtain appointment of a receiver of the Premises as a matter of strict right and without regard to the value of the Premises or the adequacy of the security for the Indebtedness, the existence of a declaration that the Indebtedness is immediately due and payable, or the filing of a notice of default, and Trustor hereby consents to such appointment;

(b)    Bring an action in any court of competent jurisdiction to foreclose this instrument or to enforce any of the covenants hereof.

(c)    Elect to sell by power of sale the Premises and, upon such election, such notice of Event of Default and election to sell shall be given as may then be required by law.  Thereafter, upon the expiration of such time and the giving of such notice of sale as may then be required by law, at the time and place specified in the notice of sale, Trustee shall sell such Premises, or any portion thereof specified by Beneficiary, at public auction to the highest bidder for cash in lawful money of the United States.  Trustee may, and upon request of Beneficiary shall, from time to time, postpone the sale by public announcement thereof at the time and place noticed therefor.  If the Premises consists of several lots, parcels or interests, Beneficiary may designate the order in which the same shall be offered for sale or sold.  Trustor waives all rights to direct the order in which any of the Premises will be sold in the event of any sale under this Deed of Trust, and also any of right to have any of the Premises marshaled upon any sale.  In the case of a sale under this Deed of Trust, the said property, real, personal and mixed, may be sold in one parcel or more than one parcel.  Should Beneficiary desire that more than one such sale or other disposition be conducted, Beneficiary may, at its option, cause the same to be conducted simultaneously, or successively on the same day, or at such different days or times and in such order as Beneficiary may deem to be in its best interest.  Any person, including Trustor, Trustee or Beneficiary, may purchase at the sale.  Upon any sale, Trustee shall execute and deliver to the purchaser or purchasers a deed or deeds conveying the Premises so sold, but without any covenant or warranty whatsoever, express or implied, whereupon such purchaser or purchasers shall be let into immediate possession.  Beneficiary, from time to time before the trustee's sale pursuant to this section, may rescind any notice of Event of Default and of election to cause to be sold the Premises by executing and delivering to Trustee a written notice of such rescission, which notice, shall also constitute a cancellation of any prior Event of Default and demand for sale.  The exercise by Beneficiary of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring or impair the right of Beneficiary to execute and deliver to Trustee, as above provided, other declarations of default and demand for sale, and notices of breach or default, nor otherwise affect any provision, covenant or condition of the Note and/or of this Deed of Trust or any of the rights, obligations or remedies of the parties thereunder or hereunder.  In furtherance of the foregoing, the Beneficiary hereby directs and empowers the Trustee to take possession of any or all of the

11

Premises and to sell the Premises, in whole or in part, and in the case of default of any purchaser or purchasers, resell all the Premises as an entirety, or in such parcels as Beneficiary shall in writing request, or, in the absence of such request, as the Trustee may determine, at public auction at some convenient place in Montgomery County, Maryland, at such time, in such manner and upon such terms as the Trustee may fix. The notice of sale shall state the time and place of the sale, shall contain a brief general description of the Premises to be sold, and shall be sufficiently given if published in either *The Washington Post* or other publications where such notices are customarily published or in the place(s) where such sale is to take place, such advertisement of sale to be published five (5) times every other day (excluding Sundays and holidays) over a ten business day period prior to the day of said sale, subject to compliance with Section 42-815(b) of the D.C. Code, and Beneficiary or Trustee shall cause further public advertisement to be made as they deem advisable. Any such sale may be adjourned by the Trustee by announcement at the time and place appointed for such sale or for such adjourned sale(s), and, without further notice or publication, such sale may be made at the time and place to which same shall be so adjourned. Upon the completion of any sale, the Trustee shall execute and deliver to the purchaser(s) a good and sufficient deed of conveyance, or assignment and transfer, lawfully conveying, assigning and transferring, without warranty, the property sold.

(d)    Apply any sums then held in escrow or otherwise by Beneficiary in accordance with the terms of this Deed of Trust or any other Loan Document to the payment of the Indebtedness.

(e)    Exercise all rights available to Trustor under the Code.

(f)    Exercise each of its other rights and remedies under this Deed of Trust or any other Loan Documents.

(g)    Except as otherwise required by law, apply the proceeds of any foreclosure or disposition hereunder to payment of the following: (i) the expenses of such foreclosure or disposition, including, without limitation, the fees of Trustee and the costs of the Tests and Studies (hereinafter defined), (ii) the cost of any search or other evidence of title procured in connection therewith and revenue stamps on any deed or conveyance, (iii) all sums expended under the terms hereof, not then repaid, with accrued interest in the amount provided herein, (iv) all other sums secured hereby, and (v) the remainder, if any, to the person or persons legally entitled thereto.

(h)    Upon any sale or sales made under or by virtue of this section, whether made under the power of sale or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Beneficiary may bid for and acquire the Premises or any part thereof. In lieu of paying cash for the Premises, Beneficiary may make settlement for the purchase price by crediting against the Indebtedness the sales price of the Premises, as adjusted for the expenses of sale and the costs of the action and any other sums for which Trustor is obligated to reimburse Trustee or Beneficiary under this Deed of Trust.

(i)    In the event that Trustor has an equity of redemption and the Premises is sold pursuant to the power of sale or otherwise under or by virtue of this section, the purchaser may, during any redemption period allowed, make such repairs or alterations (but not additions) on said Premises as may be reasonably necessary for the proper operation, care, preservation, protection and insuring thereof. Any sums so paid together with interest thereon from the time of such expenditures at the Default Rate (if not prohibited by law, otherwise at the highest lawful contract rate) shall be added to and become a part of the amount required to be paid for redemption from such sale.

14.    **Beneficiary's Right of Possession in Case of Default**. At any time after an Event of Default has occurred, Trustor shall, upon demand of Beneficiary, surrender to Beneficiary possession of the Premises. Beneficiary, in its discretion, may, with process of law, enter upon and take and maintain possession of all or any part of the Premises, together with all documents, books, records, papers and accounts relating thereto, and may exclude Trustor and its employees, agents or servants therefrom, and Beneficiary may then hold, operate, manage and control the Premises, either personally or by its agents. Beneficiary shall have full power to use such measures, legal or equitable, as in its discretion may be deemed proper or necessary to enforce the payment or security of the avails, rents, issues, and profits of the Premises, including actions for the recovery of rent, actions in forcible detainer and actions in distress for rent. Without limiting the generality of the foregoing, Beneficiary shall have full power to:

(a)    cancel or terminate any lease or sublease for any cause or on any ground which would entitle Trustor to cancel the same;

(b)    elect to disaffirm any lease or sublease which is then subordinate to the lien hereof;

(c)    extend or modify any then-existing leases and to enter into new leases, which extensions, modifications and leases may provide for terms to expire, or for options to lessees to extend or renew terms to expire, beyond the Maturity Date and beyond the date of the issuance of a deed or deeds to a purchaser or purchasers at a foreclosure sale, it being understood and agreed that any such leases, and the options or other such provisions to be contained therein, shall be binding upon Trustor and all persons whose interests in the Premises are subject to the lien hereof and upon the purchaser or purchasers at

any foreclosure sale, notwithstanding any redemption from sale, discharge of the Indebtedness, satisfaction of any foreclosure judgment, or issuance of any certificate of sale or deed to any purchaser;

(d)     make any repairs, renewals, replacements, alterations, additions, betterments and improvements to the Premises as Beneficiary deems are necessary;

(e)     insure and reinsure the Premises and all risks incidental to Beneficiary's possession, operation and management thereof; and

(f)     receive all of such avails, rents, issues and profits.

15.     **Application of Income Received by Beneficiary**.  To the extent permitted by applicable law, Beneficiary, in the exercise of the rights and powers hereinabove conferred upon it, shall have full power to use and apply the avails, rents, issues and profits of the Premises to the payment of or on account of the following, in such order as Beneficiary may determine:

(a)     to the payment of the operating expenses of the Premises, including cost of management and leasing thereof (which shall include compensation to Beneficiary and its agent or agents, if management be delegated to an agent or agents, and shall also include lease commissions and other compensation and expenses of seeking and procuring tenants and entering into leases), established claims for damages, if any, and premiums on insurance hereinabove authorized;

(b)     to the payment of taxes and special assessments now due or which may hereafter become due on the Premises; and

(c)     to the payment of any Indebtedness, including any deficiency which may result from any foreclosure sale.

16.     **Rights Cumulative**.  Each right, power and remedy herein conferred upon Beneficiary is cumulative and in addition to every other right, power or remedy, express or implied, given now or hereafter existing under any of the Loan Documents or at law or in equity, and each and every right, power and remedy herein set forth or otherwise so existing may be exercised from time to time as often and in such order as may be deemed expedient by Beneficiary, and the exercise or the beginning of the exercise of one right, power or remedy shall not be a waiver of the right to exercise at the same time or thereafter any other right, power or remedy, and no delay or omission of Beneficiary in the exercise of any right, power or remedy accruing hereunder or arising otherwise shall impair any such right, power or remedy, or be construed to be a waiver of any Event of Default or acquiescence therein.

17.     **Beneficiary's Right of Inspection**.  In addition to Beneficiary's other inspection rights under this Deed of Trust, Beneficiary and its representatives shall have the right to inspect the Premises and the books and records with respect thereto at all reasonable times, and access thereto, subject to the rights of tenants in possession, shall be permitted for that purpose.

18.     **Release Upon Payment and Discharge of Trustor's Obligations**.  Beneficiary shall release this Deed of Trust and the lien hereof by proper instrument upon payment and discharge of all Indebtedness, including payment of all reasonable expenses incurred by Beneficiary in connection with the execution of such release.

19.     **Notices**.  Any notices, demands, requests, communications and waivers under this Deed of Trust shall be in writing and shall be (i) delivered in person, (ii) mailed, postage prepaid, either by registered or certified mail, return receipt requested, (iii) by overnight express carrier, addressed in each case as follows, or (iv) by confirmed facsimile transmission, so long as a duplicate copy of such notice is also sent by one of the other permitted forms of delivery:

         if to Lender:         Cornerstone Capital LLC
                                 c/o Broadwater Capital
                                 1801 Pennsylvania Avenue, N.W., Suite 700
                                 Washington, D.C.  20006
                                 Attn: Mark D. Schuman, Esquire

         if to Trustor:        1738 R Street, N.W.
                                 Washington, D.C. 20009

or to any other address as to any of the parties hereto, as such party shall designate in a written notice to the other party hereto.  All notices sent pursuant to the terms of this Section shall be deemed received (i) if personally delivered, then on the date of delivery or refusal to accept delivery, (ii) if sent by overnight, express carrier, then on the next federal banking day immediately following the day

sent, (iii) if sent by registered or certified mail, then on the earlier of the third federal banking day following the day sent or when actually received or (iv) if sent by facsimile, then on the date of such transmission.

20.    **Waiver of Rights**. The Trustor hereby covenants and agrees that it will not at any time insist upon or plead, or in any manner claim or take any advantage of, any stay, exemption or extension law or any so-called "Moratorium Law" now or at any time hereafter in force providing for the valuation or appraisement of the Premises, or any part thereof, prior to any sale or sales thereof to be made pursuant to any provisions herein contained, or to decree, judgment or order of any court of competent jurisdiction; or, after such sale or sales, claim or exercise any rights under any statute now or hereafter in force to redeem the property so sold, or any part thereof, or relating to the marshalling thereof, upon foreclosure sale or other enforcement hereof; and without limiting the foregoing:

(a)    To the extent permitted by law, the Trustor hereby expressly waives any and all rights of reinstatement and redemption, if any, under any order or decree of foreclosure of this Deed of Trust, on its own behalf and on behalf of each and every person, it being the intent hereof that any and all such rights of reinstatement and redemption of the Trustor and of all other persons are and shall be deemed to be hereby waived;

(b)    The Trustor will not invoke or utilize any such law or laws or otherwise hinder, delay or impede the execution of any right, power, or remedy herein or otherwise granted or delegated to the Beneficiary but will suffer and permit the execution of every such right, power and remedy as though no such law or laws had been made or enacted; and

(c)    If the Trustor is a trustee, Trustor represents that the provisions of this section (including the waiver of reinstatement and redemption rights) were made at the express direction of Trustor's beneficiaries and the persons having the power of direction over Trustor, and are made on behalf of the trust estate of Trustor and all beneficiaries of Trustor, as well as all other persons mentioned above.

(d)    To the full extent Trustor may do so, Trustor agrees that Trustor will not at any time insist upon, plead, claim or take the benefit or advantage of any law now or hereafter in force providing for any appraisement, valuation, stay, extension or redemption, and Trustor, for Trustor, Trustor's heirs, devisees, representatives, successors and assigns, and for any and all persons ever claiming any interest in the Premises, to the extent permitted by applicable law, hereby waives and releases all rights of redemption, valuation, appraisement, stay of execution, notice of intention to mature or declare due the whole of the secured indebtedness, notice of election to mature or declare due the whole of the secured indebtedness and all rights to a marshaling of assets of Trustor, including the Premises, or to a sale in inverse order of alienation in the event of foreclosure of the liens and/or security interests hereby created. Trustor shall not have or assert any right under any statute or rule of law pertaining to the marshaling of assets, sale in inverse order of alienation, the exemption of homestead, the administration of estates of decedents, or other matters whatever to defeat, reduce or affect the right of Beneficiary under the terms of this Deed of Trust to a sale of the Premises for the collection of the secured indebtedness without any prior or different resort for collection, or the right of Beneficiary under the terms of this Deed of Trust to the payment of the secured indebtedness out of the proceeds of sale of the Premises in preference to every other claimant whatever.

21.    **Expenses Relating to Note and Deed of Trust**.

(a)    Trustor will pay all reasonable expenses, charges, costs and fees relating to the Loan or necessitated by the terms of the Note, this Deed of Trust or any of the other Loan Documents, including without limitation, Beneficiary's reasonable attorneys' fees in connection with the negotiation, documentation, administration, servicing and enforcement of the Note, this Deed of Trust and the other Loan Documents, all filing, registration and recording fees, all other expenses incident to the execution and acknowledgment of this Deed of Trust and all federal, state, county and municipal taxes, and other taxes (provided Trustor shall not be required to pay any income or franchise taxes of Beneficiary), duties, imposts, assessments and charges arising out of or in connection with, the execution and delivery of the Note, this Deed of Trust, and any of the other Loan Documents. Trustor recognizes that, during the term of this Deed of Trust, Beneficiary:

(i)    May be involved in court or administrative proceedings, including, without restricting the foregoing, foreclosure, probate, bankruptcy, creditors' arrangements, insolvency, housing authority and pollution control proceedings of any kind, to which Beneficiary shall be a party by reason of the Loan Documents or in which the Loan Documents or the Premises are involved directly or indirectly;

(ii)    May make preparations following the occurrence of an Event of Default hereunder for the commencement of any suit for the foreclosure hereof, which may or may not be actually commenced;

14

        (iii)    May make preparations following the occurrence of an Event of Default hereunder for, and do work in connection with, Beneficiary's taking possession of and managing the Premises, which event may or may not actually occur;

        (iv)    May make preparations for and commence other private or public actions to remedy an Event of Default hereunder, which other actions may or may not be actually commenced;

        (v)    May enter into negotiations with Trustor or any of its agents, employees or attorneys in connection with the existence or curing of any Event of Default hereunder, the sale of the Premises, the assumption of liability for any of the Indebtedness or the transfer of the Premises in lieu of foreclosure; or

        (vi)    May enter into negotiations with Trustor or any of its agents, employees or attorneys pertaining to Beneficiary's approval of actions taken or proposed to be taken by Trustor which approval is required by the terms of this Deed of Trust.

        (b)    All expenses, charges, costs and fees described in this Section shall be so much additional Indebtedness, shall bear interest from the date so incurred until paid at the Default Rate and shall be paid, together with said interest, by Trustor forthwith upon demand.

    22.    **Further Instruments**.  Upon request of Beneficiary, Trustor shall execute, acknowledge and deliver all such additional instruments and further assurances of title and shall do or cause to be done all such further acts and things as may reasonably be necessary fully to effectuate the intent of the Note, this Deed of Trust, and any of the other Loan Documents.

    23.    **Indemnity**.  Trustor hereby covenants and agrees that no liability shall be asserted or enforced against Beneficiary in the exercise of the rights and powers granted to Beneficiary in this Deed of Trust, and Trustor hereby expressly waives and releases any such liability.  Trustor shall indemnify and save Beneficiary harmless from and against any and all liabilities, obligations, losses, damages, claims, costs and expenses (including reasonable attorneys' fees and court costs) (collectively, **"Claims"**) of whatever kind or nature which may be imposed on, incurred  by, or asserted against Beneficiary at any time by any third party which relate to or arise from: (a) any suit or proceeding (including probate and bankruptcy proceedings), or the threat thereof, in, or to which Beneficiary may or does become a party, either as plaintiff or as a defendant, by reason of this Deed of Trust or for the purpose of protecting the lien of this Deed of Trust; (b) the offer for sale or sale of all or any portion of the Premises; and (c) the ownership, leasing, use, operation or maintenance of the Premises, if such Claims relate to or arise from actions taken prior to the surrender of possession of the Premises to Beneficiary in accordance with the terms of this Deed of Trust; provided, however, that Trustor shall not be obligated to indemnify or hold Beneficiary harmless from and against any Claims directly arising from the gross negligence or willful misconduct of Beneficiary.  All costs provided for herein and paid for by Beneficiary shall be so much additional Indebtedness and shall become immediately due and payable upon demand by Beneficiary and with interest thereon from the date incurred by Beneficiary until paid at the Default Rate.

    24.    **Compliance with Environmental Laws**.

        (a)    Trustor covenants and agrees, at Trustor's sole cost and expense, to indemnify, defend (at trial and appellate levels, and with attorneys, consultants and experts reasonably acceptable to Beneficiary), and hold Beneficiary harmless from and against any and all liens, damages (including, without limitation, consequential damages), losses, liabilities, obligations, settlement payments, penalties, claims, judgments, suits, proceedings, costs, disbursements or expenses of any kind or of any nature whatsoever (including reasonable attorneys', consultants' and experts' fees and disbursements actually incurred in investigating, defending, settling or prosecuting any claim, litigation or proceeding) which may at any time be imposed upon, incurred by or asserted against Beneficiary or the Premises, and arising directly or indirectly from or out of: (i) the past, present or future presence, release or threat of release of any hazardous substances on, in, under or affecting all or any portion of the Premises or any surrounding areas, regardless of whether or not caused by or within the control of any Trustor; or (ii) the past, present or future violation of any environmental laws, relating to or affecting the Premises, whether or not caused by or within the control of Trustor.

        (b)    Trustor hereby authorizes Beneficiary, any prospective bidder at any foreclosure sale and their respective officers, directors, employees, agents and independent contractors to enter upon all or any portion of the Premises (including, without limitation, following the occurrence of a default hereunder) for the purpose of conducting such tests, inspections, inquiries, examinations, studies, analyses, samples, surveys, and other information gathering activities (collectively, the **"Tests and Studies"**) with respect to the Premises as any of them may from time to time deem necessary or appropriate, including, without limitation, Tests and Studies with respect to the presence of Hazardous Materials (as defined in the Indemnity) in or around the Premises and the occurrence of any actual, proposed or threatened storage, existence, release, removal, remediation, handling or transportation of any Hazardous Substances (as defined in the Indemnity) in or around the

Premises. Except in case of an emergency, or when the Trustor or any tenant has abandoned the Premises, or if it is impracticable to do so, Beneficiary shall give Trustor reasonable advance notice of Beneficiary's intent to enter the Premises and shall enter the Premises only during normal business hours. Trustor hereby covenants and agrees to cooperate fully with such parties in their efforts to conduct the Tests and Studies, and further covenants and agrees to make available to such parties such portions of the Premises as any of them may designate. If Beneficiary is refused the right of entry and inspection by the Trustor or any tenant of the Premises, or is otherwise unable to enter and conduct Tests and Studies on the Premises without a breach of peace, Beneficiary may obtain an order from a court of competent jurisdiction, the appointment of a receiver, or both, to enable Beneficiary to exercise its rights under this section. The decision of Beneficiary as to whether there exists a release or threatened release of Hazardous Substances onto the Premises shall be deemed reasonable and conclusive as between the parties hereto. The results of all Tests and Studies shall be and at all times remain the property of Beneficiary and under no circumstances shall Beneficiary have any obligation whatsoever to disclose or otherwise make available to Trustor or any other party such results or any other information obtained by them in connection with such Tests and Studies.

(c)     Notwithstanding the provisions of subsection (a) above, Beneficiary hereby reserves the right, and Trustor hereby expressly authorizes Beneficiary to make available to any party (including, without limitation, any governmental agency or authority and any prospective bidder at any foreclosure sale of the Premises), any and all information which Beneficiary may have with respect to the Premises, whether provided by Trustor or any third party or obtained as a result of Tests and Studies, including, without limitation, environmental reports, surveys and engineering reports. Trustor consents to Beneficiary notifying any party (either as part of a notice of sale or otherwise) of the availability of any or all of the Tests and Studies and the information contained therein. Trustor acknowledges that Beneficiary cannot control or otherwise assure the truthfulness or accuracy of the Tests and Studies, and that the release of Tests and Studies, or any information contained therein, to prospective bidders at any foreclosure sale of the Premises may have a material and adverse effect upon the amount which a party may bid at such sale. Trustor agrees that Beneficiary shall have no liability whatsoever as a result of delivering any or all of the Tests and Studies or any information contained therein to any third party, and Trustor hereby releases, remises and forever discharges Beneficiary from any and all claims, damages, or causes of action, arising out of, connected with or incidental to the Tests and Studies or the delivery thereof.

(d)     All costs and expenses incurred by Beneficiary pursuant to this section, including, without limitation, costs of consultants and contractors, costs of repair of any physical injury to the Premises normal and customary to the Tests and Studies, court costs and reasonable attorneys' fees, whether incurred in litigation or not and whether before or after judgment, shall be payable by Trustor and, to the extent advanced or incurred by Beneficiary, shall be reimbursed to Beneficiary by Trustor upon demand. Any and all costs and expenses incurred or advanced by Beneficiary pursuant to this section, together with interest thereon at the rate then applicable under the Note, shall be secured by this Deed of Trust and shall enjoy the same priority as the original principal amount of the Note.

25.    **Miscellaneous**.

(a)     **Successors and Assigns**. This Deed of Trust and all provisions hereof shall be binding upon and enforceable against Trustor and its assigns and other successors. This Deed of Trust and all provisions hereof shall inure to the benefit of Beneficiary, its successors and assigns and any holder or holders, from time to time, of the Note.

(b)     **Invalidity of Provisions: Governing Law**. In the event that any provision of this Deed of Trust is deemed to be invalid by reason of the operation of law, or by reason of the interpretation placed thereon by any administrative agency or any court, Trustor and Beneficiary shall negotiate an equitable adjustment in the provisions of the same in order to effect, to the maximum extent permitted by law, the purpose of this Deed of Trust, and the validity and enforceability of the remaining provisions, or portions or applications thereof, shall not be affected thereby and shall remain in full force and effect. This Deed of Trust is to be construed in accordance with and governed by the laws of Maryland.

(c)     **Beneficiary in Possession**. Nothing herein contained shall be construed as constituting Beneficiary a mortgagee in possession in the absence of the actual taking of possession of the Premises by Beneficiary pursuant to this Deed of Trust.

(d)     **Relationship of Beneficiary and Trustor**. Beneficiary shall in no event be construed for any purpose to be a partner, joint venturer, agent or associate of Trustor or of any lessee, operator, concessionaire or licensee of Trustor in the conduct of their respective businesses, and, without limiting the foregoing, Beneficiary shall not be deemed to be such partner, joint venturer, agent or associate on account of Beneficiary becoming a mortgagee in possession or exercising any rights pursuant to this Deed of Trust, any of the other Loan Documents, or otherwise. The relationship of Trustor and Beneficiary hereunder is solely that of debtor/creditor.

(e) **Time of the Essence**. Time is of the essence of the payment by Trustor of all amounts due and owing to Beneficiary under the Note and the other Loan Documents and the performance and observance by Trustor of all terms, conditions, obligations and agreements contained in the Note, this Deed of Trust, and the other Loan Documents.

(f) **No Merger**. The parties hereto intend that this Deed of Trust and the lien hereof shall not merge in fee simple title to the Premises, and if Beneficiary acquires any additional or other interest in, or to the Premises or the ownership thereof, then, unless a contrary intent is manifested by Beneficiary as evidenced by an express statement to that effect in an appropriate document duly recorded, this Deed of Trust and the lien hereof shall not merge in the fee simple title and this Deed of Trust may be foreclosed as if owned by a stranger to the fee simple title.

(g) **Consent to Jurisdiction** TO INDUCE BENEFICIARY TO ACCEPT THIS DEED OF TRUST, TRUSTOR IRREVOCABLY AGREES THAT, SUBJECT TO BENEFICIARY'S SOLE AND ABSOLUTE ELECTION, ALL ACTIONS OR PROCEEDINGS IN ANY WAY ARISING OUT OF OR RELATED TO THIS DEED OF TRUST WILL BE LITIGATED IN COURTS HAVING SITUS IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND. TRUSTOR HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF CIRCUIT COURT FOR MONTGOMERTY COUNTY, MARYLAND, WAIVES PERSONAL SERVICE OF PROCESS UPON TRUSTOR, AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY REGISTERED MAIL DIRECTED TO TRUSTOR AT THE ADDRESS STATED HEREIN AND SERVICE SO MADE WILL BE DEEMED TO BE COMPLETED UPON ACTUAL RECEIPT.

(h) **Waiver of Jury Trial**. TRUSTOR AND BENEFICIARY (BY ACCEPTANCE HEREOF), HAVING BEEN REPRESENTED BY COUNSEL EACH KNOWINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS (a) UNDER THIS DEED OF TRUST OR ANY OTHER LOAN DOCUMENT OR ANY RELATED AGREEMENT OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION WITH THIS DEED OF TRUST OR (b) ARISING FROM ANY BANKING RELATIONSHIP EXISTING IN CONNECTION WITH THIS DEED OF TRUST, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING WILL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. TRUSTOR AGREES THAT IT WILL NOT ASSERT ANY CLAIM AGAINST BENEFICIARY OR ANY OTHER PERSON INDEMNIFIED UNDER THIS DEED OF TRUST ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES.

(i) **Complete Agreement**. This Deed of Trust, the Note and the other Loan Documents constitute the complete agreement between the parties with respect to the subject matter hereof and the same may not be modified, altered or amended except by an agreement in writing signed by both Trustor and Beneficiary.

26. **Additional Agreements**.

(a) Beneficiary may substitute the trustee hereunder in any manner now or hereafter provided by law or, in lieu thereof, Beneficiary may from time to time, by an instrument in writing, substitute a successor or successors to any trustee named herein or acting hereunder, which instrument, executed and acknowledged by Beneficiary and recorded among the land records for Montgomery County, Maryland, shall be conclusive proof of proper substitution of such successor trustee, who shall thereupon and without conveyance from the predecessor trustee, succeed to all its title, estate, rights, powers and duties.

(b) It is expressly stipulated and agreed to be the intent of Beneficiary and Trustor, at all times to comply with applicable laws governing the highest lawful rate or amount of interest payable on the Loan (or applicable United States federal law to the extent that it permits Beneficiary to contract for, charge, take, reserve or receive a greater amount of interest than under applicable law). If the applicable law is ever judicially interpreted so as to render usurious any amount called for under this Deed of Trust, the Note, or under any of the other Loan Documents, or contracted for, charged, taken, reserved or received with respect to the Loan, or if Beneficiary's exercise of the option to accelerate the maturity of the Note or if any prepayment by Trustor results in Trustor having paid any interest in excess of that permitted by applicable law, then it is Trustor's and Beneficiary's express intent that all excess amounts theretofore collected by Beneficiary be credited on the principal balance of the Note (or, if the Note and all other obligations have been or would thereby be paid in full, refunded to Trustor), and the provisions of this Deed of Trust, the Note and the other Loan Documents immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new documents, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder or thereunder. All sums paid or agreed to be paid to Beneficiary for the use, forbearance or detention of the Loan shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of the Loan until payment in full, so that the rate or amount of interest on account of the Loan does not exceed the usury ceiling

from time to time in effect and applicable to the Loan for so long as the Loan is outstanding. Notwithstanding anything to the contrary contained herein, in the Note, or in any of the other Loan Documents, it is not the intention of Beneficiary to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.

27.    **Future Advances**. This Deed of Trust shall secure not only existing indebtedness, but also such future advances, whether such advances are obligatory or to be made at the option of Beneficiary, or otherwise, to the same extent as if such future advances were made on the date of the execution of this Deed of Trust. Any such future advances, whether obligatory or to be made at the option of the Beneficiary, or otherwise, may be made either prior to or after the due date of the Note or any other notes secured by this Deed of Trust. This Deed of Trust is given for the specific purpose of securing any and all indebtedness by the Trustor to Beneficiary (but in no event shall the secured indebtedness exceed at any time the maximum principal amount set forth in this section) in whatever manner this indebtedness may be evidenced or represented, until this Deed of Trust is satisfied of record. All covenants and agreements contained in this Deed of Trust shall be applicable to all further advances made by Beneficiary to Trustor under this future advance clause.

**IN WITNESS WHEREOF**, the Trustor  has executed and delivered this Agreement as of the day and year first above written.

**TRUSTOR:**

Matthew E. Shkor

District of Columbia

I HEREBY CERTIFY that on $\overline{7}$ day of May, 2018, before me, the subscriber, a Notary Public, in and for the jurisdiction aforesaid, personally appeared Matthew E. Shkor, personally well known to me (or satisfactorily proven) to be the person who acknowledged and executed the foregoing instrument and, being authorized so to do, executed the foregoing instrument for the purposes therein contained and that the same was delivered as such.

IN WITNESS WHEREOF I hereunto set my hand and official seal.

Notary Public
My commission expires: _____

KEVIN DALE ANDERSON
Notary Public, District of Columbia
My Commission Expires Jan. 31, 2020

18

DC18-0507

## EXHIBIT A – LEGAL DESCRIPTION

All that certain lot or parcel of land situate in the District of Columbia and being more particularly described as follows:

Lot numbered 0152 in Square Numbered 0155 in a subdivision made by Fisher and Hillyer as per plat recorded in Liber 14 at Folio 18 among the Records in the Office of the Surveyor for the District of Columbia.

Property Address:    1738 R Street, N.W.
                     Washington, DC 20009

TAX ID #: **Square 0155 Lot 0152**

## EXHIBIT A

### LEGAL DESCRIPTION
**1738 R Street, N.W., Washington, D.C. 20009**

# EXHIBIT H

# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,000,000.00 | 04-16-2018 | 04-16-2028 | 5332 | | | | |

References in the boxes above are for our use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Matthew E. Shkor
1738 R Street, NW
Washington, DC 20009

**Lender:** CAPITAL BANK, N.A.
Church Street Office
One Church Street, Suite 300
Rockville, MD 20850

## CREDIT LIMIT: $2,000,000.00

DATE OF AGREEMENT: April 16, 2018

**Introduction.** This Home Equity Line of Credit Agreement and Disclosure ("Agreement") governs your line of credit (the "Credit Line" or the "Credit Line Account") issued through CAPITAL BANK, N.A.. In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every person who signs this Agreement, including all Borrowers named above. The words "we," "us," "our," and "Lender" mean CAPITAL BANK, N.A.. You agree to the following terms and conditions:

**Promise to Pay.** You promise to pay CAPITAL BANK, N.A., or order, the total of all credit advances and FINANCE CHARGES, together with all costs and expenses for which you are responsible under this Agreement or under the "Deed of Trust" which secures your Credit Line. You will pay your Credit Line according to the payment terms set forth below. If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means we can require any Borrower to pay all amounts due under this Agreement, including credit advances made to any Borrower. Each Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any Borrower from responsibility under this Agreement, and the others will remain responsible.

**Term.** The term of your Credit Line will begin as of the date of this Agreement ("Opening Date") and will continue until April 16, 2028 ("Maturity Date"). All indebtedness under this Agreement, if not already paid pursuant to the payment provisions below, will be due and payable upon maturity. The draw period of your Credit Line will begin on April 20, 2018 (the "Effective Disbursement Date") and will continue as follows: One Hundred Twenty (120) Months. You may obtain credit advances during this period ("Draw Period"). You agree that we may renew or extend the period during which you may obtain credit advances or make payments. You further agree that we may renew or extend your Credit Line Account.

**Minimum Payment.** Your "Regular Payment" will equal the amount of your accrued FINANCE CHARGES. You will make 119 of these payments. You will then be required to pay the entire balance owing in a single balloon payment. If you make only the minimum payments, you may not repay any of the principal balance by the end of this payment stream. Your payments will be due monthly. Your "Minimum Payment" will be the Regular Payment, plus any amount past due and all other charges. An increase in the ANNUAL PERCENTAGE RATE may increase the amount of your Regular Payment. You agree to pay not less than the Minimum Payment on or before the due date indicated on your periodic billing statement.

**Balloon Payment.** Your Credit Line Account is payable in full upon maturity in a single balloon payment. You must pay the entire outstanding principal, interest and any other charges then due. Unless otherwise required by applicable law, we are under no obligation to refinance the balloon payment at that time. You may be required to make payments out of other assets you own or find a lender, which may be us, willing to lend you the money. If you refinance the balloon payment, you may have to pay some or all of the closing costs normally associated with a new credit line account, even if you obtain refinancing from us.

**How Your Payments Are Applied.** Unless otherwise agreed or required by applicable law, payments and other credits will be applied first to Finance Charges; then to unpaid principal; then to late charges and other charges; and then to any amounts that exceed your Credit Limit.

**Receipt of Payments.** All payments must be made in U.S. dollars and must be received by us consistent with any payment instructions provided on or with your periodic billing statement. If a payment is made consistent with our payment instructions but received after 3:00 Eastern Time on a business day, we will apply your payment to your Credit Line on the next business day.

**Credit Limit.** This Agreement covers a revolving line of credit for the principal amount of Two Million & 00/100 Dollars ($2,000,000.00), which will be your "Credit Limit" under this Agreement. During the Draw Period we will honor your request for credit advances subject to the section below on Lender's Rights. You may borrow against the Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit. Your Credit Limit is the maximum amount you may have outstanding at any one time. You agree not to attempt, request, or obtain a credit advance that will make your Credit Line Account balance exceed your Credit Limit. Your Credit Limit will not be increased should you overdraw your Credit Line Account. If you exceed your Credit Limit, you agree to repay immediately the amount by which your Credit Line Account exceeds your Credit Limit, even if we have not yet billed you. Any credit advances in excess of your Credit Limit will not be secured by the Deed of Trust covering your principal dwelling.

**Charges to your Credit Line.** We may charge your Credit Line to pay other fees and costs that you are obligated to pay under this Agreement, the Deed of Trust or any other document related to your Credit Line. In addition, we may charge your Credit Line for funds required for continuing insurance coverage as described in the paragraph titled "Insurance" below or as described in the Deed of Trust for this transaction. We may also, at our option, charge your Credit Line to pay any costs or expenses to protect or perfect our security interest in your principal dwelling. These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your principal dwelling. If you do not pay your property taxes, we may charge your Credit Line and pay the delinquent taxes. Any amount so charged to your Credit Line will be a credit advance and will decrease the funds available, if any, under the Credit Line. However, we have no obligation to provide any of the credit advances referred to in this paragraph.

**Credit Advances.** Beginning on the Effective Disbursement Date of this Agreement, you may obtain credit advances under your Credit Line as follows:

**Credit Line Checks.** Writing a preprinted "Home Equity Line Check" that we will supply to you.

**Telephone Request.** Requesting a credit advance from your Credit Line to be applied to your designated account by telephone. Except for transactions covered by the federal Electronic Fund Transfers Act and unless otherwise agreed in your deposit account agreement, you acknowledge and agree that we do not accept responsibility for the authenticity of telephone instructions and that we will not be liable for any loss, expense, or cost arising out of any telephone request, including any fraudulent or unauthorized telephone request, when acting upon such instructions believed to be genuine.

**Requests By Mail.** Requesting an advance by mail.

**Requests in Person.** Requesting a credit advance in person at any of our authorized locations.

If there is more than one person authorized to use this Credit Line Account, you agree not to give us conflicting instructions, such as one Borrower telling us not to give advances to the other.

**Limitations on the Use of Checks.** We reserve the right not to honor Home Equity Line Checks in the following circumstances:

**Credit Limit Violation.** Your Credit Limit has been or would be exceeded by paying the Home Equity Line Check.

**Termination or Suspension.** Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we paid the Home Equity Line Check.

If we pay any Home Equity Line Check under these conditions, you must repay us, subject to applicable laws, for the amount of the Home Equity Line Check. The Home Equity Line Check itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a check is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. We may choose not to return Home Equity Line Checks along with your periodic billing statements; however, your use of each Home Equity Line Check will be reflected on your periodic statement as a credit advance. We do not "certify" Home Equity Line Checks drawn on your Credit Line.

**Transaction Requirements.** The following transaction limitations will apply to the use of your Credit Line:

**Credit Line Home Equity Line Check, Telephone Request, Request By Mail and In Person Request Limitations.** There are no transaction limitations for the writing of Home Equity Line Checks, requesting an advance by telephone, requesting an advance by mail or requesting an advance in person.

**Limitation on All Access Devices.** You may not use any access device, whether described above or added in the future, for any illegal or unlawful transaction, and we may decline to authorize any transaction that we believe poses an undue risk of illegality or unlawfulness. Notwithstanding the foregoing, we may collect on any debt arising out of any illegal or unlawful transaction.

**Authorized Signers.** The words "Authorized Signer" on Home Equity Line Checks as used in this Agreement mean and include each person who

## HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE
**(Continued)**                                            Page 2

---

(a) signs the application for this Credit Line, (b) signs this Agreement, or (c) has executed a separate signature authorization card for the Credit Line Account.

**Lost Home Equity Line Checks.** If you lose your Home Equity Line Checks or if someone is using them without your permission, you agree to let us know immediately. The fastest way to notify us is by calling us at (301) 468-8848. You also can notify us at Capital Bank, N.A. One Church Street, Ste. 300, Rockville, MD 20850.

**Future Credit Line Services.** Your application for this Credit Line also serves as a request to receive any new services (such as access devices) which may be available at some future time as one of our services in connection with this Credit Line. You understand that this request is voluntary and that you may refuse any of these new services at the time they are offered. You further understand that the terms and conditions of this Agreement will govern any transactions made pursuant to any of these new services.

**Collateral.** You acknowledge this Agreement is secured by the following collateral described in the security instrument listed herein: a Deed of Trust dated April 16, 2018, to a trustee in favor of us on real property located in the District of Columbia. The Real Property or its address is commonly known as 1738 R Street, NW, Washington, DC 20009.

**Insurance.** You must obtain insurance on the Property securing this Agreement that is reasonably satisfactory to us. You may obtain property insurance through any company of your choice that is reasonably satisfactory to us. You have the option of providing any insurance required under this Agreement through an existing policy or a policy independently obtained and paid for by you, subject to our right, for reasonable cause before credit is extended, to decline any insurance provided by you. Subject to applicable law, if you fail to obtain or maintain insurance as required in the Deed of Trust, we may purchase insurance to protect our own interest, add the premium to your balance, pursue any other remedies available to us, or do any one or more of these things.

**Right of Setoff.** To the extent permitted by applicable law, we reserve a right of setoff in all your accounts with us (whether checking, savings, or some other account), including without limitation, all accounts you may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. You authorize us, to the extent permitted by applicable law, to charge or setoff all sums owing on this Agreement against any and all such accounts.

**Periodic Statements.** If you have a balance owing on your Credit Line Account or have any account activity, we will send you a periodic statement, unless prohibited by applicable law. It will show, among other things, credit advances, FINANCE CHARGES, other charges, payments made, other credits, your "Previous Balance," and your "New Balance." Your statement also will identify the Minimum Payment you must make for that billing period and the date it is due.

**When FINANCE CHARGES Begin to Accrue.** Periodic FINANCE CHARGES for credit advances under your Credit Line will begin to accrue on the date credit advances are posted to your Credit Line. There is no "free ride period" which would allow you to avoid a FINANCE CHARGE on your Credit Line credit advances.

**Method Used to Determine the Balance on Which the FINANCE CHARGE Will Be Computed.** A daily FINANCE CHARGE will be imposed on all credit advances made under your Credit Line imposed from the date of each credit advance based on the "daily balance" method. To get the daily balance, we take the beginning balance of your Credit Line Account each day, add any new advances, and subtract any unpaid FINANCE CHARGES and any payments or credits. This gives us the "daily balance."

**Method of Determining the Amount of FINANCE CHARGE.** Any FINANCE CHARGE is determined by applying the "Periodic Rate" to the balance described herein. Then we add together the periodic FINANCE CHARGES for each day in the billing cycle. This is your FINANCE CHARGE calculated by applying a Periodic Rate.

You also agree to pay FINANCE CHARGES, not calculated by applying a Periodic Rate, as set forth below:

**Additional Finance Charges.** The following additional FINANCE CHARGES will be charged to your Credit Line or paid in cash:

| | | |
|---|---|---|
| Processing Fee to Capital Bank (POC)*: | In Cash | $350.00 |
| Flood Certification Fee to Lereta (POC)*: | In Cash | $10.00 |
| Tax Service Fee to Lereta (POC)*: | In Cash | $224.00 |
| Appraisal Fee to Appraisal Source (POC)*: | In Cash | $400.00 |
| Credit Report Fee to Equifax (POC)*: | In Cash | $30.00 |
| settlement Fees to Standard Title Group, LLC (POC)*: | In Cash | $7,676.50 |

**Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE.** We will determine the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE as follows. We start with an independent index which is the highest base rate on corporate loans posted by at least 75% of the nation's 30 largest banks that The Wall Street Journal publishes as the Prime Rate (the "Index"). We will use the most recent Index value available to us as of the date of any ANNUAL PERCENTAGE RATE adjustment. The Index is not necessarily the lowest rate charged by us on our loans. If the Index becomes unavailable during the term of this Credit Line Account, we may designate a substitute index after notice to you. To determine the Periodic Rate that will apply to your account, we add a margin to the value of the Index, then divide the value by 365 days. To obtain the ANNUAL PERCENTAGE RATE we multiply the Periodic Rate by the number of days in a year (366 during leap years). This result is the ANNUAL PERCENTAGE RATE. The ANNUAL PERCENTAGE RATE includes only interest and no other costs.

The Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line will increase or decrease as the Index increases or decreases from time to time. Adjustments to the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE resulting from changes in the Index will take effect daily. In no event will the Periodic Rate result in a corresponding ANNUAL PERCENTAGE RATE that is less than 4.750% or more than 24.000%, nor will the Periodic Rate or corresponding ANNUAL PERCENTAGE RATE exceed the maximum rate allowed by applicable law. Today the Index is 4.750% per annum, and therefore the initial Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line are as stated below:

**Current Rates for the First Payment Stream**

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 0.250% | 5.000% | 0.01370% |

Notwithstanding any other provision of this Agreement, we will not charge interest on any undisbursed loan proceeds, except as may be permitted during any Right of Rescission period. No matter what else may be stated in any other provision of this Agreement or in any other document you may have with us, you do not agree or intend to pay, and we do not agree or intend to charge any interest or fee for the Home Equity Line of Credit Agreement and Disclosure which would in any way cause us to contract for, charge or collect more for the Credit Line Account than the maximum we would be permitted to charge or collect by any applicable federal or Maryland state law. Any such excess interest or unauthorized fee will be applied first to reduce the unpaid principal balance of the Credit Line Account, and when the principal has been paid in full, be refunded to you.

**Conditions Under Which Other Charges May Be Imposed.** You agree to pay all the other fees and charges related to your Credit Line as set forth below:

**Returned Items.** You may be charged $7.50 if you pay your Credit Line obligations with a check, draft, or other item that is dishonored upon second presentment for any reason, unless applicable law requires a lower charge or prohibits any charge.

**Fee to Stop Payment.** Your Credit Line Account may be charged $30.00 when you request a stop payment on your account.

**Late Charge.** Your payment will be late if it is not received by us within **10 days after the "Payment Due Date"** shown on your periodic statement. If your payment is late we may charge you 5.000% of the unpaid amount of the payment or $5.00, whichever is greater.

**Lender's Rights.** Under this Agreement, we have the following rights:

**Termination and Acceleration.** We can terminate your Credit Line Account and require you to pay us the entire outstanding balance in one payment, and charge you certain fees, if any of the following happen: (1) You commit fraud or make a material misrepresentation at any time in connection with this Credit Agreement. This can include, for example, a false statement about your income, assets, liabilities, or any other aspects of your financial condition. (2) You do not meet the repayment terms of this Credit Agreement. (3) Your action or inaction adversely affects the collateral for the plan or our rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

## HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE
**(Continued)**                                                                                          Page 3

**Suspension or Reduction.** In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect:

(1) The value of your property declines significantly below the property's appraised value for purposes of this Credit Line Account. This includes, for example, a decline such that the initial difference between the Credit Limit and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances.

(2) We reasonably believe that you will be unable to fulfill your payment obligations under your Credit Line Account due to a material change in your financial circumstances.

(3) You are in default under any material obligations of this Credit Line Account. We consider all of your obligations to be material. Categories of material obligations include the events described above under Termination and Acceleration, obligations to pay fees and charges, obligations and limitations on the receipt of credit advances, obligations concerning maintenance or use of the property or proceeds, obligations to pay and perform the terms of any other deed of trust, mortgage or lease of the property, obligations to notify us and to provide documents or information to us (such as updated financial information), obligations to comply with applicable laws (such as zoning restrictions), and obligations of any comaker.

(4) We are precluded by government action from imposing the ANNUAL PERCENTAGE RATE provided for under this Agreement.

(5) The priority of our security interest is adversely affected by government action to the extent that the value of the security interest is less than one hundred twenty percent (120%) of the Credit Limit.

(6) We have been notified by governmental authority that continued advances may constitute an unsafe and unsound business practice.

**Change In Terms.** We may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the change will unequivocally benefit you throughout the remainder of your Credit Line Account, or if the change is insignificant (such as changes relating to our data processing systems). If the Index is no longer available, we will choose a new Index and margin. The new Index will have an historical movement substantially similar to the original Index, and the new Index and margin will result in an ANNUAL PERCENTAGE RATE that is substantially similar to the rate in effect at the time the original Index becomes unavailable. We may prohibit additional extensions of credit or reduce your Credit Limit during any period in which the maximum ANNUAL PERCENTAGE RATE under your Credit Line Account is reached. Any change to this Credit Line Account will be made in accordance with the law and will apply to amounts you owe when the change becomes effective, as well as to any credit advances made after the date of the change.

**Collection Costs.** Subject to any limits under applicable law, upon default, you agree to pay our reasonable attorneys' fees and all of our other collection expenses, whether or not there is a lawsuit, including legal expenses for bankruptcy proceedings. You further agree to pay these attorneys' fees and expenses even if incurred after the date of any judgment we may obtain and agree that the obligation will survive the entry of, and not be merged into, any judgment.

**Access Devices.** If your Credit Line is suspended or terminated, you must immediately return to us all Home Equity Line Checks and any other access devices. Any use of Home Equity Line Checks or other access devices following suspension or termination may be considered fraudulent. You will also remain liable for any further use of Home Equity Line Checks or other Credit Line access devices not returned to us.

**Delay in Enforcement.** We may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right. If we delay or waive any of our rights, we may enforce that right at any time in the future without advance notice. For example, not terminating your account for non-payment will not be a waiver of our right to terminate your account in the future if you have not paid.

**Cancellation by you.** If you cancel your right to credit advances under this Agreement, you must notify us in writing at the address shown on your periodic billing statement or other designated address and return all Home Equity Line Checks and any other access devices to us. Despite cancellation, your obligations under this Agreement will remain in full force and effect until you have paid us all amounts due under this Agreement.

**Prepayment.** You may prepay all or any amount owing under this Credit Line at any time without penalty, except we will be entitled to receive all accrued FINANCE CHARGES, and other charges, if any. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments. Instead, they will reduce the principal balance owed on the Credit Line. You agree not to send us payments marked "paid in full", "without recourse", or similar language. If you send such a payment, we may accept it without losing any of our rights under this Agreement, and you will remain obligated to pay any further amount owed to us. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: CAPITAL BANK, N.A., Church Street Office, One Church Street, Suite 300 Rockville, MD  20850.

**Notices.** All notices will be sent to your address as shown in this Agreement. Notices will be mailed to you at a different address if you give us written notice of a different address. You agree to advise us promptly if you change your mailing address.

**Credit Information and Related Matters.** You authorize us to release information about you to third parties as described in our privacy policy and our Fair Credit Reporting Act notice, provided you did not opt out of the applicable policy, or as permitted by law. You agree that, upon our request, you will provide us with a current financial statement, a new credit application, or both, on forms provided by us. You also agree we may obtain credit reports on you at any time, in our sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in your financial condition. We may require a new appraisal of the Property which secures your Credit Line at any time, including an internal inspection, at our sole option and expense.

**Transfer or Assignment.** Without prior notice or approval from you, we reserve the right to sell or transfer your Credit Line Account and our rights and obligations under this Agreement to another lender, entity, or person, and to assign our rights under the Deed of Trust. Your rights under this Agreement belong to you only and may not be transferred or assigned. Your obligations, however, are binding on your heirs and legal representatives. Upon any such sale or transfer, we will have no further obligation to provide you with credit advances or to perform any other obligation under this Agreement.

**Tax Consequences.** You understand that neither we, nor any of our employees or agents, make any representation or warranty whatsoever concerning the tax consequences of your establishing and using your Credit Line, including the deductibility of interest, and that neither we nor our employees or agents will be liable in the event interest on your Credit Line is not deductible. You should consult your own tax advisor for guidance on this subject.

**Notify Us of Inaccurate Information We Report to Consumer Reporting Agencies.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: CAPITAL BANK, N.A. Church Street Office One Church Street, Suite 300 Rockville, MD 20850.

**JURY WAIVER. WE AND YOU EACH HEREBY WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH WE OR YOU MAY BE PARTIES, ARISING OUT OF, OR IN ANY WAY PERTAINING TO, THIS AGREEMENT. IT IS AGREED THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTIONS OR PROCEEDINGS. THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY US AND YOU, AND WE AND YOU EACH HEREBY REPRESENT THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. YOU FURTHER REPRESENT THAT YOU HAVE BEEN REPRESENTED IN THE SIGNING OF THIS AGREEMENT AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED OF YOUR OWN FREE WILL, AND THAT YOU HAVE HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.**

**HOME EQUITY LINE OF CREDIT CLOSING COSTS WAIVER AGREEMENT.** An exhibit, titled "HOME EQUITY LINE OF CREDIT CLOSING COSTS WAIVER AGREEMENT," is attached to this Agreement and by this reference is made a part of this Agreement just as if all the provisions, terms and conditions of the Exhibit had been fully set forth in this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to us and, to the extent not preempted by federal law, the laws of the State of Maryland without regard to its conflicts of law provisions. This Agreement has been accepted by us in the State of Maryland.

**Choice of Venue.** If there is a lawsuit, you agree upon our request to submit to the jurisdiction of the courts of Montgomery County, State of Maryland.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Interpretation.** You agree that this Agreement, together with the Deed of Trust, is the most reliable evidence of your agreements with us. If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, the Deed of Trust or any other document to prove what you owe us or that a transaction has taken place. The copy, microfilm, microfiche, or optical image will have the same validity as the original. You agree that, except to the extent you can show there is a billing error, your most current periodic statement is the most reliable evidence of your obligation to pay.

**Severability.** If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the

## HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE
### (Continued)

Page 4

rest of this Agreement will not be valid or enforced.  Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

**Acknowledgment.**  You understand and agree to the terms and conditions in this Agreement.  By signing this Agreement, you acknowledge that you have read this Agreement.  You also acknowledge receipt of a completed copy of this Agreement, including the Fair Credit Billing Notice and the early home equity line of credit application disclosure, in addition to the handbook entitled "What you should know about Home Equity Lines of Credit," given with the application.

**Applicable Lending Law.**  To the extent not preempted by federal law, this loan is being made under the terms and provisions of Subtitle 9 of Title 12 of the Maryland Commercial Law Article.

This Agreement is dated April 16, 2018.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

X _____ (Seal)
   Matthew E. Shkor

## HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE
**(Continued)**                                                             Page 5

### BILLING ERROR RIGHTS

#### YOUR BILLING RIGHTS

#### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify us in case of errors or questions about your bill.**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at

> **CAPITAL BANK, N.A.**
> **Church Street Office**
> **One Church Street, Suite 300**
> **Rockville, MD 20850**

or at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than sixty (60) days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

> Your name and account number.
>
> The dollar amount of the suspected error.
>
> Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

**Your rights and our responsibilities after we receive your written notice.**

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date on which it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

## HOME EQUITY LINE OF CREDIT CLOSING COSTS WAIVER AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $2,000,000.00 | 04-16-2018 | 04-16-2028 | 5550 | | | | |

References in the boxes above are for our use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Matthew E. Shkor
1738 R Street, NW
Washington, DC 20009

**Lender:** CAPITAL BANK, N.A.
Church Street Office
One Church Street, Suite 300
Rockville, MD 20850

This HOME EQUITY LINE OF CREDIT CLOSING COSTS WAIVER AGREEMENT is attached to and by this reference is made a part of the Home Equity Line of Credit Agreement and Disclosure, dated April 16, 2018, and executed in connection with a loan or other financial accommodations between CAPITAL BANK, N.A. and Matthew E. Shkor.

It is hereby agreed that Capital Bank will pay the closing costs totaling $8,690.50 referenced on the HUD-1 Settlement Statement as Paid Outside of Closing (POC), if your account is opened and if the following conditions are met:

1. Your account must remain open and active for at least thirty six (36) months from the closing date.

2. Your account must be paid as agreed and/or not suspended or terminated for any reason(s) as described in the Home Equity Line of Credit Agreement and Disclosure.

If any of the above conditions are not met, you will be responsible for payment of the closing costs in the total amount of $8,690.50. If you become responsible for the closing costs you must pay them on demand by Capital Bank, or the costs will be added to the principal balance of your loan.

THIS HOME EQUITY LINE OF CREDIT CLOSING COSTS WAIVER AGREEMENT IS EXECUTED ON APRIL 16, 2018.

BORROWER:

X _____ (Seal)
Matthew E. Shkor

LaserPro, Ver. 18.1.10.007 Copr. Finastra USA Corporation 1997, 2018. All Rights Reserved. - MD C:\CFI\LPL\G25.FC TR-3602 PR-14

# EXHIBIT I

Doc #: 2018040919
04/24/2018 03:36 PM

RECORDATION REQUESTED BY:
CAPITAL BANK, N.A.
Church Street Office
One Church Street, Suite 300
Rockville, MD 20850

WHEN RECORDED MAIL TO:
CAPITAL BANK, N.A.
Church Street Office
One Church Street, Suite 300
Rockville, MD 20850

SEND TAX NOTICES TO:
Matthew E. Shkor
1738 R Street, NW
Washington, DC 20009

_____

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

# DEED OF TRUST

## THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST.

## DEFAULT ON PAYMENTS MAY RESULT IN

## THE LOSS OF YOUR HOME.

**MAXIMUM LIEN.** The maximum principal amount secured by this Deed of Trust is $2,000,000.00 plus interest and costs of collection.

**THIS DEED OF TRUST is dated April 16, 2018,** among Matthew E. Shkor, whose address is 1738 R Street, NW, Washington, DC 20009 ("Grantor"); CAPITAL BANK, N.A., whose address is Church Street Office, One Church Street, Suite 300, Rockville, MD 20850 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Joanie Kreger, whose address is One Church Street, Suite 300, Rockville, MD 20850 (referred to below as "Trustee").

**CONVEYANCE AND GRANT.** For valuable consideration, Grantor hereby grants unto Trustee in Trust for the benefit of Lender as Beneficiary all of Grantor's existing and future right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; and all rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the **"Real Property"**) located in the District of Columbia:

> Lot Numbered 0152 in Square Numbered 0155 in a subdivision made by Fisher and Hillyer as per plat recorded in Liber 14 at Folio 18 among the Records in the Office of the Surveyor for the District of Columbia.

The Real Property or its address is commonly known as 1738 R Street, NW, Washington, DC 20009. The Real Property tax identification number is 0155 0152.

**REVOLVING LINE OF CREDIT.** This Deed of Trust secures the Indebtedness including, without limitation, a revolving line of credit, which obligates Lender to make advances to Grantor so long as Grantor complies with all the terms of the Credit Agreement. Such advances may be made, repaid, and remade from time to time, subject to the limitation that the total outstanding balance owing at any one time, not including finance charges on such balance at a fixed or variable rate or sum as provided in the Credit Agreement, any temporary overages, other charges, and any amounts expended or advanced as provided in either the Indebtedness paragraph or this paragraph, shall not exceed the Credit Limit as provided in the Credit Agreement. It is the intention of Grantor and Lender that this Deed of Trust secures the balance outstanding under the Credit Agreement from time to time from zero up to the Credit Limit as provided in the Credit Agreement and any intermediate balance.

Grantor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF EACH OF GRANTOR'S AGREEMENTS AND OBLIGATIONS UNDER THE CREDIT AGREEMENT, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Grantor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Grantor's obligations under the Credit Agreement, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

> **Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

> **Duty to Maintain.** Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

> **Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by District of Columbia law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender, together with such other hazard and liability insurance as Lender may require. Policies shall be written in form, amounts, coverages and basis acceptable to Lender and issued by a company or companies acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the maximum amount of Grantor's credit line and the full unpaid principal balance of any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Deed of Trust, to the extent compliance with the terms of this Deed of Trust would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Deed of Trust for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**LENDER'S EXPENDITURES.** If Grantor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, (C) to make repairs to the Property or to comply with any obligation to maintain Existing Indebtedness in good standing as required below, then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Credit Agreement from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; or (B) be added to the balance of the Credit Agreement and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Credit Agreement. The Deed of Trust also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Grantor warrants generally that: (a) Grantor holds good and marketable title to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Promises.** All promises, agreements, and statements Grantor has made in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature and shall remain in full force and effect until such time as Grantor's Indebtedness is paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Deed of Trust:

**Existing Lien.** The lien of this Deed of Trust securing the Indebtedness may be secondary and inferior to an existing lien. Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Grantor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Deed of Trust by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Credit Agreement; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place convenient to Lender and make it available to Lender promptly following Lender's request to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Credit Agreement, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-In-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, terminates the credit line account, and otherwise performs all the obligations imposed upon Grantor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Grantor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Any reconveyance fee required by law shall be paid by Grantor, if permitted by applicable law.

**EVENTS OF DEFAULT.** Grantor will be in default under this Deed of Trust if any of the following happen: (A) Grantor commits fraud or makes a material misrepresentation at any time in connection with the Credit Agreement. This can include, for example, a false statement about Grantor's income, assets, liabilities, or any other aspects of Grantor's financial condition. (B) Grantor does not meet the repayment terms of the Credit Agreement. (C) Grantor's action or inaction adversely affects the collateral or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without Lender's permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**RIGHTS AND OBLIGATIONS OF GRANTOR AND CONSEQUENCES OF DEFAULT.** Grantor's rights under this Deed of Trust include the right to use and occupy the Property and to receive the Rents, until an Event of Default shall occur and Lender takes such steps as are necessary to terminate such rights, such as foreclosure. Upon payment in full of the Indebtedness, Lender will release and satisfy this Deed of Trust. Should

Grantor default: (A) Grantor is entitled under Section 42.815 of the D.C. Code to be given written notice of Lender's intention to foreclose at least thirty (30) days in advance of the date of such sale; (B) Grantor may also have the right under Section 42.815.01 of the D.C. Code to cure Grantor's default and prevent sale or other disposition of the Property by tendering in the form of cash, cashier's check or certified check all sums necessary to bring the Indebtedness current, including any reasonable late charges, with the exception of any amounts due by operation of any acceleration clause that may be included in the Credit Agreement or in this Deed of Trust, and performing any other obligation which Grantor would have been bound to perform in the absence of an Event of Default or acceleration. The right to cure may not be exercised more than one (1) time in any two (2) consecutive calendar years. Grantor's obligations include the obligations to pay in a timely manner any sums due under the Credit Agreement and this Deed of Trust, including any deficiency which may remain after foreclosure, and to comply in a timely manner with all the covenants and agreements set forth in the Credit Agreement and this Deed of Trust, and all extensions, renewals and modifications of the Credit Agreement and this Deed of Trust. If an Event of Default occurs, all sums outstanding under the Credit Agreement and this Deed of Trust may be declared immediately due and payable in full, and the Property may be foreclosed upon. **Grantor's failure to cure any Event of Default in a timely manner prior to the Foreclose sale will result in the loss of Grantor's home at the foreclosure sale.**

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Grantor's obligations under this Deed of Trust, after Grantor's failure to do so, that decision by Lender will not affect Lender's right to declare Grantor in default and to exercise Lender's remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option, after giving all required notices of default and after passage of any grace period, to declare the entire Indebtedness immediately due and payable.

**Foreclosure.** At the request of the holder of the Credit Agreement, Trustee shall have the power and it shall be Trustee's duty to sell the Property or any part thereof at public auction, in such manner, and at such time and place, upon such terms and conditions, and upon such public notice as Trustee may deem best for the interest of all concerned consisting of advertisement in a newspaper of general circulation in the District of Columbia for at least five (5) times over the ten (10) calendar days prior to the sale, or for such other period as applicable law may require, and in case of default of any purchaser, to re-sell the same with postponement of sale or re-sale and upon such public notice thereof as Trustee may determine, and upon compliance by the purchaser with the terms of sale, and upon judicial approval as may be required by law, convey the Property to and at the cost of the purchaser, who shall not be liable to see to the application of the purchase money. The proceeds of sale shall be applied by Trustee as follows: (a) first, to pay all proper advertising expenses, auctioneer's allowance, the expenses, if any, required to correct any irregularity in the title, premium for Trustee's bond, auditor's fee, attorneys' fees, and all other expenses of sale incurred in or about the protection and execution of this Deed of Trust, and all moneys advanced for taxes, assessments, insurance, and with interest thereon at the rate provided in the Credit Agreement, and all taxes and assessments due upon the Property at time of sale, and to retain as compensation a commission of five percent (5%) on the amount of the sale or sales; (b) second, to pay the whole amount then remaining unpaid on the Indebtedness; (c) third, to pay liens of record against the Property according to their priority of lien and to the extent that funds remaining in Trustee's hands are available; and (d) last, to pay the remainder of the proceeds, if any, to Grantor, Grantor's heirs, personal representatives, successors or assigns upon the delivery and surrender to the purchaser of possession of the Property, less costs and expenses of obtaining possession.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Will.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at will of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Credit Agreement or available at law or in equity.

**Notice of Sale.** Unless otherwise required by law, Trustee or Lender shall give Grantor written notice of any sale of the Real Property at least thirty (30) days in advance of the intended date of the sale. The notice will be sent by certified mail, return receipt requested, to Grantor's last known address.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Credit Agreement rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Grantor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Grantor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender will have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, at any time hereafter and without prior notice and without specifying any reason, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of Deeds for the District of Columbia. The instrument shall contain, in addition to all

other matters required by applicable law, the names of the original Lender, Trustee, and Grantor, the book and page where this Deed of Trust is recorded, and the name of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Power to Act Separately.** If more than one Trustee is named in this Deed of Trust, any Trustee may act alone, without the joinder of any other Trustee, to exercise any or all the powers given to the Trustees collectively in this Deed of Trust or by applicable law.

**NOTICES.** Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, or when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any person may change his or her address for notices under this Deed of Trust by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be Grantor's responsibility to tell the others of the notice from Lender.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** What is written in this Deed of Trust and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Deed of Trust. To be effective, any change or amendment to this Deed of Trust must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Deed of Trust will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the District of Columbia. In all other respects, this Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Maryland without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Deed of Trust is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Credit Agreement and this Deed of Trust has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of Maryland.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Montgomery County, State of Maryland.

**No Waiver by Lender.** Grantor understands Lender will not give up any of Lender's rights under this Deed of Trust unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Deed of Trust. Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again. Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests. Grantor waives presentment, demand for payment, protest, and notice of dishonor.

**Severability.** If a court finds that any provision of this Deed of Trust is not valid or should not be enforced, that fact by itself will not mean that the rest of this Deed of Trust will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Deed of Trust even if a provision of this Deed of Trust may be found to be invalid or unenforceable.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their heirs, personal representatives, successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**DEFINITIONS.** The following words shall have the following meanings when used in this Deed of Trust:

**Beneficiary.** The word "Beneficiary" means CAPITAL BANK, N.A., and its successors and assigns.

**Borrower.** The word "Borrower" means Matthew E. Shkor and includes all co-signers and co-makers signing the Credit Agreement and all their successors and assigns.

**Credit Agreement.** The words "Credit Agreement" mean the credit agreement dated April 16, 2018, **with credit limit of $2,000,000.00** from Grantor to Lender, together with all modifications of and renewals, replacements, and substitutions for the promissory note or agreement. NOTICE TO GRANTOR: THE CREDIT AGREEMENT CONTAINS A VARIABLE INTEREST RATE.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Deed of Trust.

**Grantor.** The word "Grantor" means Matthew E. Shkor.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Credit Agreement or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Credit Agreement or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means CAPITAL BANK, N.A., its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Credit Agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all

DEED OF TRUST
(Continued)
Page 6

replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means Joanie Kreger, whose address is One Church Street, Suite 300, Rockville, MD 20850 and any substitute or successor trustees.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND GRANTOR AGREES TO ITS TERMS.

THIS DEED OF TRUST IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS DEED OF TRUST IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GRANTOR:

X _____ (Seal)
Matthew E. Shkor
1738 R Street, NW
Washington, DC 20009

Signed, acknowledged and delivered in the presence of:

X _____
   Witness

X _____
   Witness

---

## INDIVIDUAL ACKNOWLEDGMENT

DISTRICT OF COLUMBIA      )
                          ) SS
                          )

I, Hakietta D. Privett , a Notary Public in and for the District of Columbia, do hereby certify that Matthew E. Shkor, who is personally well known to me as the person who executed the Deed of Trust bearing the date of April 16, 2018, personally appeared before me in the District of Columbia and acknowledged said Deed of Trust to be his or her act and deed, and that he or she executed said Deed of Trust for the purposes therein contained.

Witness my hand and official seal this _____ 16 _____ day of _____ April _____, 20 18.

_____ (Notarial Seal)

Notary Public _____

My commission expires  10-31-2022

---

## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all Indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Credit Agreement secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

_____

Date: _____   Beneficiary: _____

                                   By: _____

                                   Its: _____

**DEED OF TRUST**
**(Continued)**

GRANTOR:

X _____ (Seal)
Matthew E. Shkor
1738 R Street, NW
Washington, DC  20009

TRUSTEE:

X _____
Joanie Kreger
One Church Street, Suite 300
Rockville, MD  20850

LENDER:

CAPITAL BANK, N.A.

X _____
Authorized Officer
Church Street Office
One Church Street, Suite 300
Rockville, MD  20850

LaserPro, Ver. 18.1.10.007  Copr. Finastra USA Corporation 1997, 2018.    All Rights Reserved.    - DC/MD   C:\CFI\LPL\G01.FC   TR-3602
PR-14

## SECURITY AFFIDAVIT — CLASS 1

★ ★ ★

**Government of the District of Columbia**
Office of Tax and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374

| 0155 | | 0152 |
|---|---|---|
| Square | Suffix | Lot |

I, (We) **MATTHEW E. SHKOR** _____ the owner(s) of the real property described within certify, subject to criminal penalties for making false statements pursuant to section 22-2405 of the District of Columbia Official Code, that the real property described within is Class 1 Property, as that class of property was established pursuant to section 47-813(c-4), with 5 or fewer units:

_____
*Signature*

_____
*Signature*

Subscribed and sworn to me before this __16th__ day of _____April_____, 20 18 .

_____
*Notary Public*

My Commission Expires: _____
mmddyyyy



**Government of the
District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374

## Real Property Recordation and Transfer Tax Form FP 7/C

**PART A - Type of Instrument**

☐ Deed ☐ Tax Deed ☒ Deed of Trust ☐ Trustee's Deed
☐ Modification ☐ Lease for a Term of 30 years or more ☐ Other

**PART B - Property Description/Data/Property Being Conveyed**

| **0155** | | **0152** | | | |
|---|---|---|---|---|---|
| Square | Suffix | Lot | Square | Suffix | Lot |

If more than one lot, list Square/Suffix/Lots below or attach addendum.

**Square and/or Parcel** [                    ] **Lot(s)** [                    ]

**Property Address** | **1738** | **R Street** | **NW** | Unit No. [      ]
Street Number | Street Name | Quadrant

**Property Use** ☒ Residential ☐ Commercial ☐ Condominium ☐ Apartment
In addition to the use above, is this property being rented? ☐ Yes ☒ No

**Interest Transferred** ☐ Fee ☐ Leasehold ☐ Leasehold Improvement
☐ Easement ☒ Other

**Interest Conveyed** [      ] % Does this transfer include Condo Parking? ☐ Yes ☒ No

If YES, what is the parking account? | [        ] | [        ] | [        ]
Square | Suffix | Lot

**Sale Type** ☒ Single/Parcel Improved - Arms Length
☐ Single/Parcel Vacant - Arms Length
☐ Multiple Parcels ☐ Arms Length ☐ Not Arms Length

**Date of Deed** [            ] **Consideration $** [            ] (Part H. Line #1)

Was personal property included in this transfer? ☐ Yes ☒ No

If YES, what type? [            ] Estimated Value $ [            ]

**PART C - Instrument Submitted by or Contact Person**

Name [            ] Firm **Standard Title Group LLC**
Address **1734 20th Street, NW**
City **Washington** State **DC** Zip **20009**

**PART D - Return Instrument To**

Name [            ] Firm **Standard Title Group LLC**
Address **1734 20th Street, NW** Phone **202-888-0132**
City **Washington** State **DC** Zip **20009**

**PART E - Grantor(s) Information**

Grantor **MATTHEW E. SHKOR** Grantor [            ]
Grantor [            ] Grantor [            ]
Address **1738 R Street, NW** Phone **703-505-5160**
City **Washington** State **DC** Zip **20009**

modified format                                          ROD 1 revised 08/2017



**Government of the
District of Columbia**

Office of Tax
and Revenue

Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374

| 0155 | | 0152 |
|------|--------|------|
| Square | Suffix | Lot |

**Grantor Tenancy**   ☐ Tenants in Common   ☐ Joint Tenants   ☐ Trustee
                      ☐ Tenants by Entireties   ☒ Sole

## PART F - Grantee(s) Information

| Grantee | **CAPITAL BANK, N.A.** | Grantee | |
|---------|------------------------|---------|--|
| Grantee | | Grantee | |

Address  **One Church Street, Suite 300**     Phone  **240-2831906**

City  **Rockville**     State  **MD**     Zip  **20850**

**Grantee Tenancy**   ☐ Tenants in Common   ☐ Joint Tenants   ☐ Trustee
                      ☐ Tenants by Entireties   ☒ Sole

Interest Acquired  [ ]

## PART G - Mailing Address for Grantee  (If different from Part F)

| Last Name | First Name | Middle Name |
|-----------|-----------|-------------|

Unit #  [ ]   Address  [ ]   Phone  [ ]

City  [ ]   State  [ ]   Zip  [ ]

## PART H - Consideration and Financing

'complete all items; insert zero if no amount'

Tax Exemption Application
Recordation Tax/Transfer Tax
(Cite to Specific DC Code Provision)

**I. Deed**

| | | |
|---|---|---|
| 1. Acquisition Price | 0 | / |
| *Cash* | 0 | / |
| *Amount of 1st Deed of Trust* | 0 | |
| Exempt Amount(s) | | |
| Purchase Money Amount | 0 | |
| Other Exempt Amount | 0 | |
| Nonexempt Amount(s) | 0 | |
| *Amount of 2nd Deed of Trust* | 0 | |
| Exempt Amount(s) | | |
| Purchase Money Amount | 0 | |
| Other Exempt Amount | 0 | |
| Nonexempt Amount(s) | 0 | |
| *Assumed* | 0 | |
| Exempt Amount(s) | | |
| Purchase Money Amount | 0 | |
| Other Exempt Amount | 0 | |
| Nonexempt Amount(s) | 0 | |
| 2. Latest Assessed Value if No or Nominal Consideration (less than 30% of assessed value) | 0 | / |

modified format

ROD 1 revised 08/2017



**Government of the District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374

| | 0155 | | | 0152 |
|---|---|---|---|---|
| | Square | | Suffix | Lot |

Tax Exemption Application
Recordation Tax/Transfer Tax
(Cite to Specific DC Code Provision)

### II. Deeds of Trust (no transfer of title)

| | | |
|---|---|---|
| Amount of Deed of Trust | 2,000,000.00 | |
| Exempt Amount(s) | 2,000,000.00 | 21 |
| Nonexempt Amount(s) | 0 | |

**3. Total Amount of all Nonexempt Deeds of Trust (I & II)**  0

---

### PART I - Computation of Tax

If the residential deed transfer is for a total consideration of less than $400,000 use Lines 1 and 2.
All other deed transfers, security instruments and commercial transactions use Lines 3, 4, and 5.

| | | | |
|---|---|---|---|
| 1. | Recordation Tax | .725% of Line 1, Part H (attach form ROD 11) | $ |
| 2. | Recordation Tax | 1.1% of Line 1 or Line 2, Part H | $ |
| 3. | Transfer Tax | 1.1% of Line 1 or Line 2, Part H | $ |
| 4. | Transfer Tax | 1.45% of Line 1 or Line 2, Part H | $ |
| 5. | Transfer Tax | 1.45% of Line 1 or Line 2, Part H | $ |
| 6. | Recordation Tax | 1.45% of Line 3, Part H | $  EXEMPT |
| 7. | Total | | $ |

---

### PART J - Affidavit (Part A to J)

I/We hereby swear or affirm under penalty of perjury that this return, including any accompanying schedules/documents/and statements, has been examined by me/us and to the best of my/our knowledge and belief, the statements and representations are correct and true, I/We hereby acknowledge that any false statement or misrepresentations I/We made on this return is punishable by criminal penalties under the laws of the District of Columbia.

| Grantor(s) | Grantee(s) |
|---|---|
| **MATTHEW E. SHKOR** | **CAPITAL BANK, N.A. by Standard Title Group LLC** |
| Typed Name | Typed Name |
| Signature | Signature |
| Date  **4/16/2018** | Date  **4/16/2018** |
| Subscribed to and sworn to before me by Grantor(s) this **16th** day of **April**, 201**8** | Subscribed to and sworn to before me by Grantee(s) this **16th** day of **April**, 201**8** |
| Notary Public | Notary Public |
| My Commission Expires: **10-31-2022** mm/dd/yyyy | My Commission Expires: mm/dd/yyyy |



This information is subject to audit within three years of filing.
Please keep all supporting documentation.

modified format

ROD 1 revised 08/2017

Doc #: 2018040919
Filed & Recorded
04/24/2018 03:36 PM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
   RECORDING FEES      $150.00
   SURCHARGE         $6.50
TOTAL:            $156.50

# EXHIBIT J

In re: Matthew Edward Shkor
Chapter 7 Bankruptcy Case 21-00041-ELG


WORKSHEET AS OF APRIL 15, 2021


The Capital Bank, NA claim against Matthew Edward Shkor arising from Loan #5356 is
a secured claim arising from a loan secured by first lien position deed of trust against the real
property located at 1738 R Street, NW, Washington, DC 20009.

Loan #5356 Matthew Shkor Note
Principal Balance:                              $ 2,000,000.00
Accrued Interest (through April 15, 2021):  $      62,986.29 accruing at $260.2739/day (4.75%)
Late fees through 4/15/2021:                $       9,559.03
Legal Fee through 3/31/2021:                $
Collateral Release fee:                     $          50.00
Total for #5356:                            $ 2,072,595.32


Total claim against Debtor through 4/15/2021:       $2,072,595.32


Additional attorney fees, costs and interest continue to accrue.  Claim will be amended as
appropriate.

# EXHIBIT K

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re: | ) |
| | ) |
| MATTHEW EDWARD SHKOR | )    Case No. 21-00041-ELG |
| | )    Chapter 7 |
|     Debtor. | ) |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) |
| | ) |
| CORNERSTONE CAPITAL, LLC | ) |
| | ) |
|     Movant, | ) |
| | ) |
| v. | ) |
| | ) |
| MATTHEW EDWARD SHKOR, | ) |
| | ) |
| and | ) |
| | ) |
| BRYAN S. ROSS, CHAPTER 7 TRUSTEE | ) |
| | ) |
|     Respondents. | ) |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) |

## AFFIDAVIT IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY

I, Mark Schuman, hereby declare and affirm the following under the penalties of perjury:

1.      I am a Principal of Cornerstone Capital, LLC ("Cornerstone"), and am authorized to sign this Affidavit on behalf of Cornerstone.

2.      This Affidavit is provided in support of the Consent Motion for Relief from Stay (the "Motion") filed on behalf of Movant in the above-captioned case.

3.      I make this affirmation based upon my review of the books and records kept in the ordinary course of business by Cornerstone and my personal knowledge. As part of my job responsibilities for Cornerstone, I have personal knowledge of and am familiar with the types of records maintained by Cornerstone in connection with the loan that is subject of the Motion, and the procedures for creating those types of records. I have access to and have reviewed the books, records and files of Cornerstone that pertain to the loan given to Potomac Construction Shaw LLC,

guaranteed by the Debtor and secured by the real property located at 1738 R Street, N.W., Washington, D.C. 20009 (the "Property").

4.   The information in this Affidavit is taken from Cornerstone's business records regarding the loan and/or my personal knowledge. The records are: (a) made at or near the time of the occurrence of the matters recorded by person with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the ordinary course of Cornerstone's regularly conducted business activities; and (c) it is the regular practice of Cornerstone to make such records.

5.   Exhibits A through E of the Motion are true and accurate copies of what the purport to be, with such documents being signed and delivered to Cornerstone.

6.   As evidenced by Cornerstone's Proof of Claim Number 24, the Debtor owed Cornerstone a total of $2,646,034.90 comprised of $2,517,077.83 in principal and $128,957,07 in interest as of February 5, 2021 (the "Debt"), which is secured by the Property.

7.   Since the Petition Date, Cornerstone has received no payments on the Debt. Accordingly, with a statutory interest rate of 10% per annum, as of April 3, 2024, the balance of the Debt secured by the Property is $3,568.963.50.

8.   The Debtor vacated the Property in December 2023.  Since that time, Cornerstone's records show that it has taken the following actions, among others, to protect and maintain the Property:

    a.   Fix a broken window for the Property,

    b.   Secure the doors and windows of the Property,

    c.   Repair a heating issue with the Property, and

    d. Have someone go out and check the Property approximately every two weeks to ensure there is no damage or other issues.

9.    Cornerstone has spent approximately $1,000 out-of-pocket on the repairs, plus substantial additional amounts in the form of time and labor for repeatedly having to check on the Property.

I declare and affirm under the penalties of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Date: _Apr 12th_, 2024        _____

                                   Mark Schuman
                                   Principal of Cornerstone Capital, LLC