IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | * | |
| MATTHEW EDWARD SHKOR | * | Case No: 21-00041-ELG |
| Debtor | * | (Chapter 7) |

\* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| CORNERSTONE CAPITAL, LLC | * | |
| Movant | * | |
| v. | * | |
| MATTHEW EDWARD SHKOR and BRYAN S. ROSS, CHAPTER 7 TRUSTEE | * | |
| Respondents | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**REPLY TO CAPITAL BANK N.A.'S OBJECTION TO CORNERSTONE CAPITAL, LLC'S CONSENT MOTION FOR RELIEF FROM AUTOMATIC STAY**

Cornerstone Capital, LLC ("Cornerstone"), by and through its undersigned counsel, files this reply to Capital Bank N.A.'s ("Capital Bank") objection (the "Objection")[Dkt. 211] to Cornerstone's Consent Motion for Relief from the Automatic Stay (the "Motion")[Dkt. 208], to which Motion the debtor Matthew Edward Shkor ("Shkor") consented, and states as follows:

I. JURISDICTION AND VENUE

1.   This court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. § 362.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

II. BACKGROUND

2.   The Debtor filed a voluntary petition for relief on February 5, 2021 (the "Petition Date"), under Chapter 7 of Title 11 of the United States Bankruptcy Code.

3.   On February 5, 2021, Bryan S. Ross was appointed as the chapter 7 trustee in this case.

---

Catherine Keller Hopkin, 976744
YVS Law, LLC
185 Admiral Cochrane Drive, Suite 130
Annapolis, Maryland  21401
(443) 569-0788
chopkin@yvslaw.com
Counsel for Cornerstone Capital, LLC

The Property

4. The Debtor is the owner of real property located at 1738 R Street, N.W., Washington, D.C. 20009 (the "Property"). [Dkt. 42 at p.3].

5. The Property is more particularly described as all that certain lot or parcel of land situated in the District of Columbia and being more particularly described as Lot Numbered 0152 in Square Numbered 0155 in a subdivision made by Fisher and Hillyer as per plat recorded in Liber 14 at Folio 18 among the Records in the Office of the Surveyor for the District of Columbia.

6. Cornerstone filed the Motion, seeking relief from the automatic stay so that it can commence a foreclosure of the Property. Given that the Debtor filed this case over three years ago, Cornerstone has been deprived the opportunity to liquidate its collateral (i.e., the Property) despite the Debtor having no equity therein. For the many years that this case has been pending, there have been dramatic shifts in both the real estate market and applicable interest rates, thus directly impacting Cornerstone's ability to receive the benefit of the bargain it made in exchange for the loan of funds to the Debtor and his entities.

7. The Trustee does not object to the Motion and the Debtor affirmatively consents to it. Capital Bank, however, filed the sole Objection. The Objection states, essentially, a single argument as to why the Motion must be denied: because the priority of Cornerstone and Capital Bank's liens is being reviewed by the United States District Court for the District of Columbia, Capital Bank argues that no foreclosure may be commenced or consummated until such time as all appeals are resolved. Objection, pp. 2-3.

8. Putting aside the failure of Capital Bank to cite any applicable law within this District, a logical review of the foreclosure process satisfies this argument.

A. Lifting the Automatic Stay Does Not Prejudice Capital Bank's Right to Receive Net Proceeds if it Prevails on Appeal.

9. First, Capital Bank argues that a purchaser will not know whether it is purchasing the Property subject to Capital Bank's lien. Id. pp 3. However, Cornerstone certainly may choose to schedule and conduct the auction and to accept only those bids that exceed the Capital Bank balance of debt, which was specified by this Court as constituting a principle balance of

$1,583,473.95 plus interest of five (5%) percent interest from April 18, 2018. *See,* Memorandum Opinion, pp. 21 [Dkt. 99]. That amount is easily calculable, and is $1,824,104.71 as of May 28, 2024, with per diem interest accruing at $213.70. Cornerstone can (and likely, will) accept only those bids that exceed the Capital Bank indebtedness; or can choose to submit a credit bid that exceeds this balance, which will provide payment in full to Capital Bank if it prevails in the pending appeal.

10. The Debtor has scheduled the Property as having a value of $3,495,000.00, thus achieving a sale price or credit bid in excess of $1.8 million is entirely likely if not probable. [Dkt. 42 at p.3].

11. Cornerstone is willing to escrow any sale proceeds until such time as the appeal of the lien priority dispute is finally resolved.

B. Capital Bank's Legal Authority is Both Non-Binding and Also Factually Inapposite.

12. Capital Bank cites two cases outside of the District of Columbia for the proposition that a property subject to a lien priority dispute cannot be foreclosed. Objection, pp. 2-3.

13. Issuing from Connecticut and Rhode Island courts, these decisions are obviously not binding on this Court. However, these two cases are also neither informative nor persuasive. This is because, unlike the two cases cited by Capital Bank, the value of this particular Property exceeds the value of the Capital Bank debt even if Capital Bank prevails. Thus, there is no prejudice to Capital Bank's right to credit bid, or to its right to receive net proceeds from a sale to Cornerstone or a third party.

14. Here, Capital Bank's current "payoff" is $1,824,104.71. *See,* Calculation attached as **Exhibit A**. Capital Bank is free to credit bid the amount of its payoff if it wishes to purchase the Property. If it prevails in the appeal, it will secure the Property for the amount of its indebtedness. If Cornerstone prevails in the appeal, Capital Bank will be required to pay the purchase price of $1,824,104.71 to Cornerstone – which, will be held in escrow pending the appeal decision. In either scenario, Capital Bank has the right to credit bid if it is in first lien position, and it has a right to pay sale proceeds to Cornerstone if it does not prevail – the credit bid and purchase price will be the same, and not less than $1,824,104.71.

15. If Cornerstone chooses to credit bid against its first priority lien (assuming it eventually prevails on appeal) it can bid not less than $1,824,104.71 – and will, conversely, either credit bid that amount against its first position lien or, if it does not prevail on appeal, will pay sale proceeds to Capital Bank equal or greater than $1,824,104.71.

16. With respect to a third party, it may bid whatever it chooses and so long as Cornerstone accepts a bid at least as great as Capital Bank's "payoff," which Cornerstone will agree to do, it will pay the proceeds to either Cornerstone or Capital Bank, with the same result.

17. The only difference that will result in this scenario where the appeal is pending, is that Cornerstone and Capital Bank both will need to be prepared to pay funds equal to their "credit bids," if they do not prevail on appeal. This is a completely rational expectation. If Capital Bank does not wish to bid in such a scenario, it can certainly abstain from bidding at all.

18. It is not accurate to say that Capital Bank will lose its ability to credit bid if the Property is submitted to a foreclosure auction prior to the conclusion of the appeal; it simply will credit bid with the caveat that it may need to fund the purchase price if ultimately it is found to be in junior position to Cornerstone. However, there is no other way to mitigate Cornerstone's continuing losses and deprivation of the right to foreclose on its collateral if the Motion is denied, other than to grant stay relief and permit Cornerstone to commence foreclosure. When weighing the two options, the more equitable approach that results in the least damages is clearly to grant Cornerstone relief.

C. <u>Cornerstone May Obtain Stay Relief to Commence But Schedule the Auction Date for After the Resolution of the Appeal.</u>

19. Furthermore, Cornerstone can also commence the foreclosure process and simply choose not to advertise and publish the proposed sale until such time as the appeal is resolved; however, it could use the time prior to that date to submit all necessarily pleadings and notices and any other pre-sale requirements so that the sale could be quickly conducted following the appeal.

20. It must be recognized that Cornerstone irrefutably has the right to foreclose on the Property, even if it is from a second lien position. *See, i.e.,* DC. Code §42-815(c)(1)(A) (authorizing foreclosure pursuant to power of sale provision); *see also* 1999 D.C. ALS 263, 1999

D.C. Stat 263, 1999 D.C. Law 263, 1999 D.C. Act 552 ("A valid foreclosure of a lien instrument terminates all interests in the foreclosed real property that are subordinate to the lien instrument being foreclosed and whose subordinate interest holders are properly joined or notified to the extent required under applicable law. Foreclosure of a lien instrument does not terminate interests in the foreclosed real property that are senior to the lien instrument being foreclosed, including statutory liens.")

21. If Capital Bank's objection is sustained and Cornerstone continues to be thwarted in disposing of its collateral, it will result in a deprivation of Cornerstone's right to foreclose on the Property and discontinue additional further damages that it is suffering.

22. This is particularly persuasive here, where Cornerstone has been forced to secure the Property and engage measures to protect its value, where Capital Bank has steadfastly refused to either sell the Property or otherwise preserve its value.

23. If the Court is inclined to give any weight to Capital Bank's arguments, such concerns can be easily addressed by incorporating in any order granting stay relief a provision that Cornerstone will agree to (i) accept only those bids that exceed the balance of the Capital Bank indebtedness that is secured by the Property (assuming for this calculation that Capital Bank prevails in the lien priority appeal) and/or (ii) escrow any net sale proceeds pending the final resolution of the appeal. Choosing instead to refuse to lift the automatic stay would run afoul of the express provisions of Bankruptcy Code 362(d), however, and would also wrongly deprive Cornerstone its right to foreclose on the Property from *either* a priority or a subordinate position, both of which are permitted in the District of Columbia.

>*/s/ Catherine Keller Hopkin*
>Catherine Keller Hopkin, 976744
>YVS Law, LLC
>185 Admiral Cochrane Drive, Suite 130
>Annapolis, Maryland  21401
>(443) 569-0788
>chopkin@yvslaw.com
>Counsel for Cornerstone Capital, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of May 2024, notice of filing the Reply to Capital Bank's Objection to Cornerstone's Consent Motion for Relief from Automatic Stay (the "Reply") was served by CM/ECF to those parties listed on the docket as being entitled to such electronic notices, which parties are identified on the attached service list; and a copy of the Reply was mailed first class, postage prepaid to the parties so identified on the attached service list.

*/s/ Catherine Keller Hopkin*
Catherine Keller Hopkin

**The following parties received a
copy of the filing by first class mail:**

Matthew Edward Shkor
1738 R Street, N.W.
Washington, D.C.  20009

Bryan S. Ross, Chapter 7 Trustee
1776 K Street N.W., Suite 200
Washington, D.C.  20006-1222

**The following parties received
CM/ECF notice of the filing:**

Lawrence J. Anderson, Esquire
(landerson@nealon.com)
Counsel for Capital Bank, N.A.
Nealon & Associates, P.C.
119 North Henry Street
Alexandria, Virginia  22314

Jill Diane Caravaggio, Esquire
(jill@jill-lawoffice.net)
Counsel for Ferguson Enterprises, LLC
8923 Fingerboard Road, Suite C
Frederick, Maryland  21704

Darrell W. Clark, Esquire
(darrell.clark@stinson.com)
Counsel for Chapter 7 Trustee
Stinson LLP
1775 Pennsylvania Ave NW, Suite 800
Washington, D.C.  20006

Valerie Edwards, Esquire
(valerie@antonlegal.com)
Counsel for Eileen Cowdery
Antonopolos & Associates
1725 DeSales Street NW, Suite 600
Washington, D.C.  20036

Alan D. Eisler, Esquire
(aeisler@e-hlegal.com)
Counsel for Debtor
Eisler Hamilton, LLC
1 Research Court, Suite 450
Rockville, Maryland  20850

Kristen S. Eustis, Esquire
(kristen.s.eustis@usdoj.gov)
Office of the United States Trustee
1725 Duke Street, Suite 650
Alexandria, Virginia  22314

Christopher J. Giaimo, Esquire
(christopher.giaimo@squirepb.com)
Counsel for Compass Concierge, LLC
Squire Patton Boggs
2550 M Street
Washington, D.C.  20037

Neil D Goldman, Esquire
(ngoldman@goldmanvanbeek.com)
Counsel for Christian G. Waller
Goldman & Van Beek, P.C.
510 King Street, Suite 416
Alexandria, Virginia  20854

Richard E. Hagerty, Esquire
(richard.hagerty@troutmansanders.com)
Counsel for Goldman Sachs Bank USA
Troutman Pepper Hamilton Sanders LLP
401 9th Street, N.W., Suite 1000
Washington, D.C.  20004

Catherine Keller Hopkin, Esquire
(chopkin@yvslaw.com)
Counsel for Cornerstone Capital, LLC
YVS Law, LLC
185 Admiral Cochrane Drive, Suite 130
Annapolis, Maryland  21401

Jason Kutcher, Esquire
(jason.kutcher@troutmansanders.com)
Counsel for Goldman Sachs Bank USA
Troutman Pepper Hamilton Sanders LLP
401 9th Street, N.W., Suite 1000
Washington, D.C.  20004

Arthur P. Lander, CPA
(artlander@aol.com)
Arthur Lander CPA PC
300 North Washington Street, Suite 104
Alexandria, Virginia  22314

Alexander M. Laughlin, Esquire
(alex.laughlin@ofplaw.com)
Counsel for Capital Bank, N.A.
Odin, Feldman & Pittleman, P.C.
1775 Wiehle Avenue, Suite 400
Reston, Virginia  20190

Jeffrey M. Orenstein, Esquire
(jorenstein@wolawgroup.com)
Counsel for Dila Development
Wolff & Orenstein, LLC
15245 Shady Grove Road, Suite 465
Rockville, Maryland  20852

Bryan S. Ross, Chapter 7 Trustee
(ysnore@aol.com)
1776 K Street N.W., Suite 200
Washington, D.C.  20006-1222

Michael N. Russo, Jr., Esquire
(russo@councilbaradel.com)
Counsel for MatCap
Council, Baradel, Kosmerl & Nolan, P.A.
125 West Street, 4th Floor
Post Office Box 2289
Annapolis, Maryland  21401

Richard M. Sissman, Esquire
(rsissmanesq@his.com)
Counsel for BMC East, LLC
Law Offices of Richard M. Sissman
1485 Chain Bridge Road, Suite 105
McLean, Virginia  22101

Benjamin P. Smith, Esquire
(bsmith@shulmanrogers.com)
Counsel for VVS RI Development LLC
Shulman Rogers Gandal Pordy & Ecker
12505 Park Potomac Avenue, Sixth Floor
Potomac, Maryland  20854

Maurice Belmont VerStandig, Esquire
(mac@mbvesq.com)
Counsel for VVS RI Development LLC
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, Suite 665
Henderson, Nevada  89012

U. S. Trustee for Region Four
(ustpregion04.dc.ecf@usdoj.gov)
1725 Duke Street, Suite 650
Alexandria, Virginia  22314

Shawn C. Whittaker, Esquire
(shawn@whittaker-law.com)
Counsel for AG's Enterprise, Inc.
Whittaker & Associates, P.C.
1010 Rockville Pike, Suite 607
Rockville, Maryland  20852